WILLIAMS SIMONS & LANDIS PLLC
Eric Carr (SBN 333128)
ecarr@wsltrial.com
Fred I. Williams (*pro hac vice*)
fwilliams@wsltrial.com
Lea Brigtsen (*pro hac vice*)
lbrigtsen@wsltrial.com
The Littlefield Building
601 Congress Avenue, Suite 600
Austin, TX 78701
Telephone: +1 512 543 1354

Todd E. Landis (*pro hac vice forthcoming*)
tlandis@wsltrial.com
2633 McKinney Avenue, Suite 130 #366
Dallas, TX 75204
Telephone: +1 512 543 1357

John Wittenzellner (*pro hac vice forthcoming*)
johnw@wsltrial.com
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Telephone: +1 512 543 1373

**Attorneys for Defendant DROPBOX, INC.**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>DROPBOX, INC.,<br><br>        Defendant. | Case No. 23-cv-03264-JD<br><br>**DEFENDANT DROPBOX, INC.'S MOTION TO DISMISS PLAINTIFF ENTANGLED MEDIA, LLC'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**<br><br>Hearing Date: August 24, 2023<br>Hearing Time: 10:00 a.m.<br>Courtroom: Courtroom 11 – 19th Floor<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

    I.       Introduction ........................................................................................................... 1

    II.      Background ............................................................................................................ 2

         A.     The '338 Patent .................................................................................... 2

         B.     The '260 Patent .................................................................................... 5

    III.     Applicable Law ..................................................................................................... 8

    IV.    Argument .............................................................................................................. 9

         A.     *Alice* Step One:  The Claims Of The Asserted Patents Are Directed To An Abstract Idea. ......................................................................... 10

             1.     Cataloging Files Is an Abstract Idea. ........................................... 10

             2.     Providing a Visual Representation of Files Is an Abstract Idea. ............................................................................................... 11

             3.     Updating the Catalog Is an Abstract Idea. ................................... 12

             4.     Transferring Files Between Devices Is an Abstract Idea. ............. 13

             5.     Plaintiff's Previous Arguments are Unpersuasive. ...................... 13

         B.     *Alice* Step Two:  The Claims Of The Asserted Patents Do Not Recite An Inventive Concept. ............................................................. 15

    V.     Conclusion .......................................................................................................... 18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F. 3d 1253 (Fed. Cir. 2016) ................................................................................................ 14

*Alice Corp. Pty. Ltd v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ...................................................................................................... passim

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ................................................................................................ 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................... 9

*Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*
    135 F. Supp. 3d 1175 (D. Haw. 2015) .......................................................................... 11, 12, 13

BSG Tech. LLC v. Buyseasons, Inc.,
    899 F.3d 1281 (Fed. Cir. 2018) .................................................................................... 10, 12, 13

*CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*,
    233 F. Supp. 3d 509 (E.D. Va. 2017) ...................................................................................... 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014) .................................................................................... 10, 11, 13

*Enfish, LLC v. Microsoft Corp.*,
    No. 2015-2044, 822 F.3d 1327 (Fed. Cir. 2016) ...................................................................... 10

*Hawk Techs. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ................................................................................................ 14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ................................................................................................ 18

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ................................................................................................ 13

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ...................................................................................... 2, 14, 16

*Intellectual Ventures LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ................................................................................................. 9

*Maxell, Ltd. v. Vizio, Inc.*,
    2022 U.S. Dist. LEXIS 108403 (C.D. Cal., Mar. 9, 2002) ...................................................... 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ............................................................................................................. 13, 15

*Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*,
   2020 U.S. Dist. LEXIS 47914 (N.D. Cal. Mar. 19, 2020) (Donato, J.) ..................................... 11

*TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*,
   823 F.3d 607 (Fed. Cir. 2016) ............................................................................................ 10, 11

*TS Patents LLC v. Yahoo! Inc.*,
   279 F. Supp. 3d 968 (N.D. Cal. 2017) (Koh, J.) .................................................................. 11, 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .......................................................................................... 15, 17

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ............................................................................................ 14, 18

*Whitserve LLC v. Dropbox, Inc.*,
   854 Fed. Appx. 367 (Fed. Cir. 2021) ................................................................................. 13, 16

**Statutes**

35 U.S.C. § 101 ........................................................................................................................ passim
FED. R. CIV. P. 12(b)(6) ............................................................................................................... 1, 9
FED. R. CIV. P. 8(a)(2) ..................................................................................................................... 8

1                  **NOTICE OF MOTION AND MOTION**

2             **TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE that on August 24, 2023 at 10:00 a.m., or as soon thereafter as

4  this matter may be heard, in this Court, located at San Francisco Courthouse, Courtroom 11 – 19th

5  Floor, 450 Golden Gate Avenue, San Francisco, CA 9410, Defendant Dropbox, Inc. ("Dropbox")

6  will and hereby does move for an Order granting Dropbox's motion to dismiss Plaintiff Entangled

7  Media, LLC's ("Plaintiff") First Amended Complaint under Rule 12(b)(6).

8        Dropbox respectfully requests that the Court dismiss Plaintiff's First Amended Complaint

9  because U.S. Patent Nos. 8,296,338 (Dkt. 19-1, the "'338 Patent") and 8,484,260 (Dkt. 19-2, the

10  "'260 Patent") (collectively, the "Asserted Patents") are invalid under 35 U.S.C. § 101.[1]

11        This Motion is based upon this Notice of Motion and Motion, the accompanying

12  Memorandum of Points and Authorities, the [Proposed] Order filed concurrently herewith, and

13  upon such other and further matters, papers, and arguments as may be submitted to the Court at or

14  before the hearing on this Motion.

15              **MEMORANDUM OF POINTS AND AUTHORITIES**

16  **I.    INTRODUCTION**

17        The claims of the Asserted Patents are directed to the abstract idea of cataloging files to

18  display the files in a single location, regardless of their source (i.e., the files can be physically

19  located across different devices). *See, e.g.*, '338 Patent at 2:12-18. But that same abstract idea has

20  existed in the real world for generations. Much like the claimed "singular file system," the Sears

21  catalog allowed shoppers to view in one location (i.e., the catalog itself) products (i.e., files) from

22  different locations—Sears brick-and-mortar stores stocked some of the products, whereas some of

23  the products would need to be ordered from vendors for delivery to the customer's home or delivery

24  for in-store pickup. And like the claims of the Asserted Patents, the Sears catalog used an index—

25  in the form of product numbers—to provide a singular way to refer to products, regardless of their

26

27    [1] Dropbox previously moved to dismiss this case, on the same grounds, while it was pending in
the United States District Court for the Western District of Texas. Dkt. 21. That motion was

28  denied as moot when that court granted Dropbox's motion to transfer venue to the Northern
District of California on June 30, 2023. Dkt. 31 at 1, 15.

location.  Applying the abstract idea of the Sears catalog to computer files does not make it any less abstract and, therefore, the claims of the Asserted Patents fail step one of the *Alice* analysis. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("We have previously determined that performing otherwise abstract activity on the Internet does not save the idea from being patent-ineligible.").

The claims of the Asserted Patents fare no better under step two of the *Alice* analysis.  For example, the claims of the '338 Patent require combining individual indices from each location into one combined index.  But combining data is a conventional function of computers.  Although the claims of the '260 Patent require transferring files via a "peer-to-peer connection," the specification makes clear that the peer-to-peer connection is one of the "web services" that was well-known at the time of the alleged invention, and it is used in a traditional way, i.e., to transfer files.  The purpose of the First Amended Complaint is transparent—Plaintiff belatedly introduced new allegations, in response to Dropbox's previous motion to dismiss (Dkt. 16), in an attempt to salvage the fact that its patents do not recite an inventive concept.  But those allegations are immaterial and contradicted by the specifications of the '338 and '260 Patents.  Accordingly, Dropbox respectfully requests that the Court grant this motion.

## II.    BACKGROUND

### A.    The '338 Patent

The '338 Patent discusses the use of metadata from documents located on various devices to create a visual representation that shows which documents are accessible to a user across multiple devices.  *See* '338 Patent at 1:19-25.  The '338 Patent aims to address the problem of accessing documents from device A (when the documents are located on device B) by inventorying files based on metadata, generating and providing a catalog to a user, and then updating the catalog based on changes to the metadata.  *See id.* at 2:3-11, 2:20-28.  The '338 Patent purports that "[t]his allows for otherwise impossible amounts of data to be virtually stored on each device, even if there is no physical storage room available for the data on each device."  *Id.* at 2:26-28.

Just as the Sears catalog provided a solution to the fact that a brick-and-mortar store could not store the entire plethora of products in the catalog, the file system of the alleged invention of

the '338 Patent allows the user to view files that cannot be stored in one device. *See id.*

Asserted claim 1 is representative of the other independent claims of the '338 Patent (claims 7 and 10). As shown below, claims 7 and 10 merely recite the same subject matter as claim 1, but in "system" and "computer-readable storage medium" form, without any material difference in the claimed subject matter:

| The '338 Patent | | |
| --- | --- | --- |
| **Claim 1** | **Claim 7** | **Claim 10** |
| A process for establishing a singular file system across multiple devices comprising: | A system for establishing a singular file system across multiple devices comprising:<br><br>a web-accessible server;<br>at least one software client plug-in;<br>multiple devices for storing and operating on files; | A non-transitory computer-readable storage medium storing a set of instructions that, when executed by a processor, cause the processor to perform operations, comprising: |
| receiving user information to open an account for establishing a singular file system across multiple devices via a web-based system that includes at least one server; | wherein the web-accessible server receives user information to open an account for establishing a singular file system across multiple devices, | registering multiple devices with an account for establishing a singular file system across the multiple devices; |
| installing an individual software client on each of the multiple devices via the web-based system; | installs the at least one software plug-in on each of the multiple devices, | |
| accepting registration of multiple devices via the web-based system; | accepts registration of the multiple devices, wherein the at least one software plug-in varies in accordance with an operating system of each of the multiple devices; | |
| scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data; | further wherein the at least one software client plug-in scans its respective one of the multiple devices to inventory files thereon, creates a meta-index to files for the inventoried data, | scanning each of the multiple devices to inventory data on each of the multiple devices and create a meta-index of the files for the inventory data; |
| providing by the individual software clients via the multiple devices individual meta-indices of the inventoried data for each of the multiple devices to the at least one server; | provides the meta-index of the inventoried data for its respective one of the multiple devices to the web-accessible server; | |
| integrating by the at least one server the individual meta-indices to create a single | further wherein the web-accessible server receives meta-indices from each of the | generating a single master meta-index from meta-indices of files corresponding to |

| | | |
|---|---|---|
| master meta-index; | multiple devices and integrates the meta-indices to create a single meta-index, | inventory data on each of the multiple devices; |
| providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients; | provides the single meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients, | providing the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices, |
| integrating metadata from the meta-indices of each of the other multiple devices into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices; and | integrates at each of the multiple devices metadata from the meta-indices of each of the other multiple devices into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices, | metadata from the meta-indices of each of the other multiple devices to be integrated into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices; and |
| continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon, | and continually updates the single meta-index on each of the multiple devices in response to operations on the files indexed thereon, | |
| wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the single meta-data index by modifying file systems of each of the multiple devices to include virtual files for data from the single meta-data index that is not local to a multiple device. | wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the single meta-data index by modifying file systems of each of the multiple devices to include virtual files for data from the single meta-data index that is not local to a multiple device. | facilitating storage of data within each of the multiple devices in accordance with the single master meta-index by modifying file systems of each of the multiple devices to include virtual files for data from the single master meta-data index that is not local to a multiple device. |

'338 Patent at 11:22-59 (claim 1), 12:11-50 (claim 7), 12:63-13:20 (claim 10).

Claim 1 catalogs files based on metadata by scanning documents on registered devices for metadata. *See id.* at 11:24-34 ("receiving user information . . . installing an individual software client on each of the multiple devices . . . accepting registration of multiple devices . . . [and] scanning each of the multiple devices . . . to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data[.]"). The specification describes the

metadata as nothing more than standard metadata that is kept in conventional filesystems, "such as file name, file type, file size, local path the file is stored in, date created, date modified, etc." *See id.* at 6:6-7. Those processes are akin to vendors providing a listing of their products to Sears for inclusion in the catalog. Then, much like at Sears, the "at least one server" combines the individual file indices (the product offerings) into "a single master meta-index" (i.e., the catalog). *See id.* at 11:39-40. That "single-master meta-index" is then provided to each registered device, so that the same listing of files can be displayed on each device. *See id.* at 11:41-50. Claim 1 also requires that the "single master meta-index" is continually updated, which is no different than Sears updating its catalog as the product offerings change. *See id.* at 11:51-53.

The § 101 analysis of the dependent claims is not materially different from the analysis of the independent claims. Claim 2 merely recites the obvious—software clients vary based on the operating system for which they are written. *See id.* at 11:60-62, 9:48-56. Claim 3 discusses that users can select categories of data to be inventoried, and claim 4 recites specific categories of files— both of which are no different than a user selecting a section of the Sears catalog (e.g., tools or clothing). *See id.* at 11:63-67. Claim 6 merely recites the metadata identified in the specification, which is just standard metadata that is kept in conventional filesystems. *See id.* at 12:7-10, 6:6-7.

The remaining dependent claims merely recite limitations that are already recited in claim 1. Claims 5, 9, and 14 essentially recite the "integrating metadata from the meta-indices of each of the other multiple devices . . . to generate virtual files . . . indistinguishable from the local files by the local file system at each of the multiple devices" limitation in claim 1. *See id.* at 11:22-59 (claim 1), 12:1-6 (claim 5), 12:57-62 (claim 9), 14:16-19 (claim 14). Claim 8 essentially recites the "modifying file systems . . . to include virtual files for data from the single meta-data index that is not local to a multiple device" limitation in claim 1. *Compare id.* at 11:56-59 (claim 1), *with id.* at 12:51-56 (claim 8). And claims 11-13 essentially recite the "continually updating the single master meta index . . . in response to changes to the data indexed" limitation in claim 1. *Compare id.* at 11:51-53 (claim 1), *with id.* at 13:21-14:15 (claims 11-13).

**B.      The '260 Patent**

The '260 Patent is a divisional of the '338 Patent with a substantially overlapping

specification. Where the claims of the '338 Patent cover how the "singular file system" is created and maintained, the claims of the '260 Patent forego those details in favor of generic limitations about moving files between devices. In terms of the Sears catalog, the new limitations in the '260 Patent cover the option of shipping an item to the brick-and-mortar store for in-store pickup or to the customer's home. The option of shipping an item for in-store pickup is particularly well-known in the context of ordering clothing when the store does not have the customer's size in stock, so that the customer can try on the clothing, and potentially have it marked for alteration, before taking it home.

Asserted claim 1 is representative of the other independent claims of the '260 Patent (claims 7 and 8). As shown below, claims 7 and 8 merely recite the same subject matter as claim 1, but in "computer-readable storage medium" and apparatus form, without any material difference in the claimed subject matter:

| The '260 Patent | | |
|---|---|---|
| **Claim 1** | **Claim 7** | **Claim 8** |
| A process for operating on files located on multiple devices using a singular file system comprising: | A non-transitory computer-readable storage medium storing a set of instructions that, when executed by a processor, cause the processor to perform operations, comprising: | A client comprising: <br><br> a memory; <br> at least one processor configured to: |
| accepting a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device; | accepting a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device; | accept a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device; |
| modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; | modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; | modify the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; |
| intercepting the request by a software client on the first device; | intercepting the request by a software client on the first device; | intercept the request by a software client on the first device; |
| determining by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by | determining by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by | determine by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by |

| | | |
|---|---|---|
| reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and | reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and | reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and |
| if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; | if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; | if the file is the virtual file of the corresponding file physically located on the second device, request by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; |
| if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device; and | if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device; and | if the peer-to-peer connection is brokered, transfer the corresponding physical file from the second device to the first device; and |
| performing the operation on the transferred corresponding physical file at the first device. | performing the operation on the transferred corresponding physical file at the first device. | perform the operation on the transferred corresponding physical file at the first device. |

'260 Patent at 11:25-52 (claim 1), 12:5-35 (claim 7), 12:36-65 (claim 8).

The first limitation of claim 1 is what any file system does—it receives a request to operate on a file. *Id.* at 11:27-29. That process is akin to accepting an order for a product in the Sears catalog. The next limitation is similar to the claims of the '338 Patent, displaying all files in the same location. *Id.* at 11:30-33. The next two limitations use file metadata to determine whether the requested file is located on the user's device (i.e., the "first device") or on a different device (i.e., the "second device"), which is akin to determining whether the brick-and-mortar Sears location stocks a product. *See id.* at 11:34-42. The remaining limitations call for transferring the file to the user's device (i.e., the "first device") if the file is located on a different device (i.e., the "second device"), which is akin to shipping a product to the customer's home or to the brick-and-mortar store for in-store pickup. *See id.* at 11:43-52. Although the independent claims call for the file to be transferred via a "peer-to-peer connection," the specification states that peer-to-peer connections are just one type of conventional "web service" that can be used to transfer files. *See id.* at 4:48-58.

Like the '338 Patent, the § 101 analysis of the dependent claims of the '260 Patent is not materially different from that of the independent claims. Dependent claims 2 and 3 merely claim alternative web services that are enumerated in the specification. *Compare id.* at 11:53-58 (claims 2 and 3), *with id.* at 4:48-58. Dependent claim 6 recites "upon completing the operation, pushing the physical file back to the second device; and retaining the virtual file at the first device," which is akin to the abstract idea of returning an item (i.e., the "physical file") to a vendor while keeping the item listing (i.e., the virtual file) in the catalog. *See* '260 Patent at 12:1-4. The remaining dependent claims merely recite limitations that are recited in claim 1 of the '338 Patent. Claim 4 is akin to the "continually updating the single master meta-index . . . in response to changes to the data indexed thereon" limitation in claim 1 of the '338 Patent. *Compare* '260 Patent at 11:59-62 (claim 4), *with* '338 Patent at 11:51-53 (claim 1). Claim 5 is similar to the "visual representation of an actual file that is physically located on a another of the multiple devices" limitation in Claim 9 of the '338 Patent. *Compare* '260 Patent at 11:63-66 (claim 5), *with* '338 Patent at 12:58-60 (claim 9).

## III.    APPLICABLE LAW

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court articulated a two-step test for determining eligibility under § 101 in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). At step one, the court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. If the claims are directed to an abstract idea, then the court proceeds to step two and looks to the elements of the claim "both individually and as an ordered combination" to determine whether there is an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (internal quotations and citation omitted).

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

1  court can dismiss a complaint that fails to meet this standard. FED. R. CIV. P. 12(b)(6). To survive

2  dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is

3  plausible on its face. *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008)

4  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when

5  the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant

6  is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

7  **IV.    ARGUMENT[2]**

8  The claims of the Asserted Patents are directed to the non-patentable abstract ideas of

9  cataloging files using a piece of information about the file (i.e., metadata), and providing a

10  corresponding visual representation in one location (i.e., a user interface). The '338 Patent adds

11  the diminutive step of updating the catalog, while the '260 Patent transfers a file located on one

12  device to another device. Applying the age-old idea of the paper catalog to computers via software

13  fails to render the claims patent-eligible. *See Intellectual Ventures LLC v. Capital One Bank (USA)*,

14  792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become nonabstract by limiting

15  the invention to a particular field of use or technological environment, such as the Internet").

16  Automating the process of creating and updating the catalog, or transferring files using basic

17  computer technology, does not render the claims patent-eligible. *See Alice*, 573 U.S. at 225 (claims

18  using computers to automate "well-understood, routine, conventional activities" are invalid)

19  (annotation omitted).

20  Further, the asserted claims do not "contain[] an 'inventive concept' sufficient to

21  'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221. The claims do

22  no more than claim the abstract idea of using information in a document (metadata) to locate that

23  document among numerous documents, and apply that idea using standard computer technology.

24  This is not enough to support a "patent-eligible application." *See id.* at 217. Dropbox respectfully

25  submits that the Court should grant this motion and hold that the claims of the Asserted Patents are

26  invalid because they claim non-patentable subject matter.

27

28  ---

[2] Dropbox contends that claim construction is not necessary to the determination of whether the claims of the Asserted Patents are invalid under 35 U.S.C. § 101.

A.    *Alice* **Step One:  The Claims Of The Asserted Patents Are Directed To An Abstract Idea.**

The first step in addressing patent eligibility is to determine whether the claims at issue are directed to an abstract idea.  *Id.*  A relevant inquiry at step one is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea."  *See Enfish, LLC v. Microsoft Corp.*, No. 2015-2044, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  Claims "directed to an improvement in the <u>functioning</u> of a computer" pass the first step in determining patent eligibility, while claims "simply adding conventional computer components to well-known business practices," and claims reciting "use of an abstract mathematical formula on any general purpose computer" or "a purely conventional computer implementation of a mathematical formula" or "generalized steps to be performed on a computer using conventional computer activity" are directed to an abstract idea.  *Id.* at 1338.

### 1.    Cataloging Files Is an Abstract Idea.

In *In re TLI*, the Federal Circuit concluded that claims that use classification data from digital images (i.e., metadata) to record and administer those images (i.e., create a catalog) "are simply directed to the abstract idea of classifying and storing digital images in an organized manner."  *TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 613 (Fed. Cir. 2016) (affirming district court's grant of motion to dismiss for failure to claim patent-eligible subject matter under 35 U.S.C. § 101).  The court reasoned that

> like the claims at issue in *Content Extraction* which were directed to "collecting data," "recognizing certain data within the collected data set," and "storing the recognized data in memory," 776 F.3d at 1347, attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner is a well-established "basic concept" sufficient to fall under *Alice* step 1.

*Id.* at 613; *see also BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1283 (Fed. Cir. 2018) (holding ineligible claims of "several patents related to systems and methods for indexing information stored in wide access databases").

Here, the claims are directed to the abstract idea of cataloging documents via metadata.

Like *In re TLI* and *Content Extraction*,[3] claim 1 of the '338 Patent is directed to the abstract idea of "scanning each of the multiple devices . . . to inventory data . . . and create a meta-index of the files for the inventoried data" (collecting data), and "integrating metadata from the meta-indices . . . into a local file system." '338 Patent at 11:31-46 (collecting and cataloging metadata). Claim 1 of the '260 Patent is even more abstract because it does not include any limitations regarding how the catalog of files (i.e., the claimed "singular file system") is created or operates. *See* '260 Patent at 11:25-52 (claim 1).

Using metadata in files "for the purpose of storing those [files] in an organized manner is a well-established 'basic concept' sufficient to fall under *Alice* step 1." *In re TLI*, 823 F.3d at 613. The asserted claims recite a longstanding business practice—using information in a document to create a catalog for organization—and thus are directed to an abstract idea. *See Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*, 2020 U.S. Dist. LEXIS 47914, *10, *12 (N.D. Cal. Mar. 19, 2020) (Donato, J.) (granting motion to dismiss and concluding that the asserted patent "is indistinguishable from the patent in *In re TLI*" because the asserted patent "focus[es] on associating information with images and organizing them, regardless of their digital or physical nature."). All claims of the Asserted Patents are therefore directed to an abstract idea.

### 2.    Providing a Visual Representation of Files Is an Abstract Idea.

Providing a visual representation is also an abstract idea. In *Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*, the District of Hawaii found that video-on-demand patent claims were directed to the abstract idea "of using the same hierarchical ordering based on metadata to facilitate the display and locating of video content." 135 F. Supp. 3d 1175, 1185 (D. Haw. 2015). Courts have similarly granted motions to dismiss when the asserted claims are directed to "organizing and viewing data on a network in a reducible hierarchy" because those claims "fall[] within the realm of 'collecting, classifying, and filtering data' that the Federal Circuit has found is abstract." *TS Patents LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 987 (N.D. Cal. 2017) (Koh, J.) (emphasis and internal annotations omitted) (granting motion to dismiss when the asserted patents were directed

---

[3] *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

1    to ineligible subject matter).

2        Like *Broadband iTV* and *TS Patents LLC*, the claims asserted here are directed to the

3    abstract idea of providing a visual representation of files. '338 Patent at 11:35-50 ("providing . . .

4    individual meta-indices of the inventoried data for each of the multiple devices . . . integrating . . .

5    the individual meta-indices to create a single master meta-index; providing . . . the single master

6    meta-index and meta-indices for each of the other multiple devices . . . integrating metadata from

7    the meta-indices of each of the other multiple devices . . . to generate virtual files . . .

8    indistinguishable from the local files by the local file system at each of the multiple devices"); *id.*

9    at 3:18-20 ("wherein a visual representation of the singular file system on the first device is identical

10   to a visual representation of the singular file system on the second device"). The fact that the claims

11   call for displaying files from different devices in a "singular file system" is of no moment because

12   "how to transmit, receive, store, and organize information deriving from multiple sources is not a

13   creature of the Internet age: solutions to this problem date back to the invention of smoke signals."

14   *Broadband iTV*, 135 F. Supp. 3d at 1186 (citation and annotation omitted). All claims of the

15   Asserted Patents are therefore directed to an abstract idea.

### 3.   Updating the Catalog Is an Abstract Idea.

17       The '338 Patent adds the diminutive step of updating the catalog based on changes in the

18   metadata. *See* '338 Patent at 11:51-59 ("continually updating the single master meta index . . . in

19   response to changes to the data indexed . . . [and] modifying file systems . . . to include virtual files

20   for data from the single meta-data index that is not local to a multiple device."). The Federal Circuit

21   has found that claims directed to a "'self-evolving generic index' for organizing information stored

22   in a database" are patent ineligible. *BSG Tech.*, 899 F.3d at 1283. The court reasoned that "a

23   method of indexing wherein a user adds data to a database . . . after 'receiving summary comparison

24   usage information'" amounts to the abstract idea of "having users consider previous item

25   description before they describe items to achieve more consistent item descriptions." *Id.* at 1286.

26   "[T]he recitation of a database structure slightly more detailed than a generic database does not

27   save the asserted claims at [*Alice*] step one." *Id.* at 1287.

28       Like the claims in *BSG Tech*, the claims of the '338 Patent are directed to the patent-

ineligible concept of updating a catalog based on changes to metadata. *See* '338 Patent at 11:33-58. An index that "continually update[es] the single master meta-index on the at least one server . . . in response to changes to the data indexed thereon" ('338 Patent at 11:51-53), is akin to the abstract idea of "having users consider previous item descriptions before they describe items to achieve more consistent item descriptions." *BSG Tech*, 899 F.3d at 1286. All claims of the '338 Patent are therefore directed to an abstract idea.

### 4. Transferring Files Between Devices Is an Abstract Idea.

The '260 Patent adds the abstract step of transferring a file located on a first device to a second device. *See* '260 Patent at 11:43-51 ("if the file is the virtual file of the corresponding file physically located on the second device . . . transferring the corresponding physical file from the second device to the first device"). The District of Hawaii in *Broadband iTV* explained that "how to transmit, receive, store, and organize information deriving from multiple sources is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals." *Broadband iTV*, 135 F. Supp. 3d at 1186 (citation and annotation omitted); *see Whitserve LLC v. Dropbox, Inc.*, 854 Fed. Appx. 367, 371 (Fed. Cir. 2021) (affirming district court's grant of Dropbox's motion to dismiss because "transmitting, saving, and storing of client records is a fundamental business practice that 'existed well before the advent of computers and the Internet'") (citing *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017)); *see also Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known."). The '260 Patent is also a divisional of the '338 Patent with a substantially overlapping specification. Claim 1 of the '260 Patent is therefore directed to an abstract idea for the same reasons as Claim 1 of the '338 Patent. All claims of the Asserted Patents are therefore directed to an abstract idea.

### 5. Plaintiff's Previous Arguments are Unpersuasive.

Under *Alice* step one, Plaintiff previously argued that "cataloging files" supposedly oversimplifies the 10 steps of claim 1 of the '338 Patent. *See* Dkt. 23 at 13. That argument fails because the Supreme Court's precedent dictates that the number of steps in a claim is immaterial to patent eligibility. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 82

(2012) ("simply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714, 715 (Fed. Cir. 2014) (holding that claims setting forth "eleven steps for displaying an advertisement in exchange for access to copyrighted media" were abstract and unpatentable because all eleven steps involved "routine, conventional activity"). The fact that the asserted claims recite generic elements across multiple steps does not shift the focus away from their core idea of cataloging files to display the files in a single location. *See e.g.*, '338 Patent at 2:12-18.

Plaintiff also previously argued that "the claims of the Asserted Patents are directed to a technological advance in how multiple devices can communicate and share files, and also improve computer functionality by saving significant storage space and improving device interoperability . . . ." Dkt. 23 at 21. Plaintiff's argument fails under a long line of Federal Circuit precedent because the claims do not describe "how the purported invention improves the [alleged] functionality [of saving storage space and improving device interoperability] and are recited at such a level of result-oriented generality that those claims amount to a mere implementation of an abstract idea." *Hawk Techs. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357-58 (Fed. Cir. 2023) (finding claims claiming the "functional results" of "receiving video images," "displaying one or more of the digitized images," "storing at least a subset of the converted images," "receiving ... a request to receive one or more specific streams of the video images," "transmitting ... a version of one or more of the video images," and "displaying only the one or more requested specific streams of the video images" to be directed to an abstract idea). The asserted claims do not "describe how the alleged goal of [saving storage space and improving device interoperability] is achieved," and therefore "amount to a mere implementation of an abstract idea. *Id.; see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding claims abstract because they "do not claim a particular way of programming or designing the software ... but instead merely claim the resulting systems"); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (finding claim abstract where it contains nothing "directed to how to implement [the abstract idea]. Rather, the claim is drawn to the idea itself"); *Symantec Corp.*, 838 F.3d at 1316 ("[W]hen a claim directed to an abstract idea contains no restriction on how the result is accomplished and the

mechanism is not described, although this is stated to be the essential innovation, then the claim is not patent-eligible.") (cleaned up).

Plaintiff then argued, without citing any case law, that saving storage space and improving device interoperability are sufficient technological solutions to survive step one of the *Alice* framework. Federal district courts have, in fact, held the opposite. *See CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, 233 F. Supp. 3d 509, 515 (E.D. Va. 2017) (granting motion to dismiss for claiming non-patentable subject matter because "the use of a remote database to save storage space on a tracking device is hardly an unconventional solution."); *Maxell, Ltd. v. Vizio, Inc.*, 2022 U.S. Dist. LEXIS 108403, at *14, *27 (C.D. Cal., Mar. 9, 2002) (granting motion to dismiss the '893 patent for claiming non-patentable subject matter because "[t]he claim limitations describe these components in generic terms without explaining how a component or combination of components improves device interoperability or user experience.") (emphasis in original).

All claims of the Asserted Patents are therefore directed to an abstract idea.

**B.    *Alice* Step Two:  The Claims Of The Asserted Patents Do Not Recite An Inventive Concept.**

The second step in addressing patent eligibility is to determine whether the remaining elements, either in isolation or combination, are sufficient to transform the nature of the claim into a patent-eligible application. *Alice*, 573 U.S. at 217.  The required inventive concept must "ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* at 218.  Mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. *See id.* at 225 (concluding claims that "simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer" are not patent eligible).  Rather, the components must involve more than performance of "'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* (quoting *Mayo*, 566 U.S. at 73).

The claims of the Asserted Patents do not recite an inventive concept because they claim nothing more than "generic functional language to achieve the[] purported solutions." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).  Claim 1 of

the '338 Patent recites steps related to creating, combining, and updating a catalog of files.  *See* '338 Patent at 11:22-59.  But those steps recite nothing more than the desired result without reciting any improvement to computer functionality to attain the desired functionality.  *See id.*  Claim 1 of the '260 Patent fares no better because it recites displaying and performing operations on a "singular file system," again, without reciting any improvement to computer functionality to attain the desired functionality.  *See* '260 Patent at 11:25-52.  As a result, the claims do not recite an inventive concept.  *See Symantec Corp.*, 838 F.3d at 1316 (claims do not recite an inventive concept when they lack "specific or limiting recitation of . . . improved computer technology").

The claims of the Asserted Patents do not recite an inventive concept for the additional reason that they merely recite generic components used in a conventional way.  Claim 1 of the '338 Patent recites "devices," a "file system," a "software client," and a "server."  The specification describes the "devices" as any computing device that can communicate data over the Internet.  *See* '338 Patent at 4:15-24.  And those devices are used in a conventional way—to store files, transmit information about those files over the Internet, and display the contents of a file system.  *See id.* at 11:22-59; *see also Whitserve LLC*, 854 Fed. Appx. at 371, 372 (affirming motion to dismiss because "the claimed computers are described as being capable of sending, over the Internet, a request for a copy of data records, receiving the request, and transmitting a copy of the requested data. . . . The claims recite generic computer components performing routine conventional functions.").  The claimed "file system" does nothing more than manage files and present them in a graphical user interface, which is the conventional functionality of a file system.  *See* '338 Patent at 4:25-35.  The devices perform those functions using a generic "software client."  *See id.* at 4:41-42.  The claimed "server" receives information about files from the devices, combines that information into one "single master meta-index," and provides that index back to the devices.  *See id.* at 11:35-44.  Collecting, combining, and transmitting information are conventional functionality of a webserver.  *See id.* at 4:43-53.  Claim 1 of the '260 Patent recites transferring files via a "peer-to-peer connection," but that connection is nothing more than one type of generic "Web Service" that is used for its conventional functionality of transferring files.  *See* '260 Patent at 4:48-58.  Neither the claims nor the specification describe any improvement to those generic components.

The new allegations in Plaintiff's Amended Complaint[4] also recite generic components used in conventional ways. *See* Am. Compl., at ¶¶ 32-33 (alleging that virtual representations save storage space because "the files are not store anywhere other than one physical location"), 34 (alleging that storing metadata, "rather than all the data itself[,]" saves storage space), 35 (alleging that devices "communicate directly when data is requested"), 36 (alleging that "after the initial installation" user does not have to "designate files for inclusion"), 37 (alleging that the invention can "recognize and account for differences" when "one user device runs on the Windows operating system and another runs on a Mac or Linux operating system"), 38 (alleging that the invention may be located within a distributed network or dedicated machine), 39 (alleging that the '260 Patent uses peer-to-peer network configurations). Even when those allegations are taken as true, they fail to show that the claims of the Asserted Patents recite an inventive concept because the claims recite nothing more than "generic functional language to achieve the[] purported solutions." *Two-Way Media*, 874 F.3d at 1339. Plaintiff's new allegations do not show that the claim elements, either in isolation or combination, are sufficient to transform the nature of the claim into a patent-eligible application. *Alice*, 573 U.S. at 217.

Plaintiff's new allegations regarding the specifications of the Asserted Patents, alleged prior art, third-party reviews of Plaintiff's Younity app, and the Asserted Patent's prosecution history are immaterial for similar reasons. *See id.*; Am. Compl., at ¶¶ 23-31 (restating portions of the specification of the '338 Patent), 41-45 (discussing third-party reviews of Younity app), 47-63 (discussing prosecution history). As demonstrated above, the specifications of the Asserted Patents actually support Dropbox's contention that the claims of the Asserted Patents do not recite an inventive concept. Plaintiff's "Younity app" is not material because, as Plaintiff concedes, it does not practice the claims of the Asserted Patents. *See* Am. Compl., at ¶ 31 ("The technology underlying the Younity app is also captured in part by the Entangled Media Patents-in-Suit."). The fact that the Patent Office issued the Asserted Patents after prosecution is not material—under Plaintiff's flawed logic, <u>no patent</u> could be found to lack an inventive concept under step two of

---

[4] Plaintiff's Amended Complaint removed all allegations of indirect infringement. *Compare* Compl., at ¶ 49, *with* Am. Compl., at ¶ 98.

1  the *Alice* analysis because <u>all patents</u> must undergo prosecution before they are issued by the Patent

2  Office.  The claims of the Asserted Patents, when considered as an "ordered combination," do not

3  recite an inventive concept.  The fact that the asserted claims combine the idea of cataloging

4  documents and providing a visual representation with other basic computer functions—such as

5  updating documents and transferring files—similarly fails to render the claims patentable.  *See*

6  *Ultramercial*, 772 F.3d at 714, 715 (holding that claims setting forth "eleven steps for displaying

7  an advertisement in exchange for access to copyrighted media" were abstract and unpatentable

8  because all eleven steps involved "routine, conventional activity").  The dependent claims do not

9  add any patentable significance or confer any inventive concept for the reasons discussed in Section

10  II.  Whether "taken individually or in combination, the recited limitations neither improve the

11  functions of the computer itself, nor provide specific programming, tailored software, or

12  meaningful guidance for implementing the abstract concept."  *Intellectual Ventures I LLC v.*

13  *Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017).  Accordingly, the claims of the

14  Asserted Patents do not recite an inventive concept, and the claims of the Asserted Patents should

15  be found unpatentable.

16  **V.    CONCLUSION**

17     For the foregoing reasons, Dropbox respectfully submits that the Court should hold that the

18  Asserted Patents are invalid under 35 U.S.C. § 101 and dismiss Plaintiff's First Amended

19  Complaint.

20

21

22

23

24

25

26

27

28

1    Dated:  July 14, 2023

2    Respectfully Submitted:

3                                              By: */s/ Fred I. Williams*

4                                              WILLIAMS SIMONS & LANDIS PLLC
                                               Eric Carr (SBN 333128)
5                                              ecarr@wsltrial.com
                                               Fred I. Williams (*pro hac vice*)
6                                              fwilliams@wsltrial.com
                                               Lea Brigtsen (*pro hac vice*)
7                                              lbrigtsen@wsltrial.com
                                               The Littlefield Building
8                                              601 Congress Ave., Suite 600
                                               Austin, TX 78701
9                                              Telephone: +1 512 543 1354
10
                                               Todd E. Landis (*pro hac vice forthcoming*)
11                                             tlandis@wsltrial.com
                                               2633 McKinney Ave., Suite 130 #366
12                                             Dallas, TX 75204
                                               Telephone: +1 512 543 1357
13
14                                             John Wittenzellner (*pro hac vice forthcoming*)
                                               johnw@wsltrial.com
15                                             1735 Market Street, Suite A #453
                                               Philadelphia, PA 19103
16                                             Telephone: +1 512 543 1373
17
18                                             *Attorneys for Defendant Dropbox, Inc.*

19

20

21

22

23

24

25

26

27

28