1   WILLIAMS SIMONS & LANDIS PLLC          Todd E. Landis (*pro hac vice forthcoming*)
    Eric Carr (SBN 333128)                  tlandis@wsltrial.com
2   ecarr@wsltrial.com                      2633 McKinney Avenue, Suite 130 #366
    Fred I. Williams (*pro hac vice*)       Dallas, TX 75204
3   fwilliams@wsltrial.com                  Telephone: +1 512 543 1357
    Lea Brigtsen (*pro hac vice*)
4   lbrigtsen@wsltrial.com                  John Wittenzellner (*pro hac vice forthcoming*)
    The Littlefield Building                johnw@wsltrial.com
5   601 Congress Avenue, Suite 600          1735 Market Street, Suite A #453
    Austin, TX 78701                        Philadelphia, PA 19103
6   Telephone: +1 512 543 1354              Telephone: +1 512 543 1373

7   **Attorneys for Defendant DROPBOX, INC.**

8                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**

10  ENTANGLED MEDIA, LLC,                   Case No. 23-cv-03264-JD

11           Plaintiff,                     **DEFENDANT DROPBOX, INC.'S CORRECTED
                                            MOTION TO DISMISS PLAINTIFF
12       v.                                 ENTANGLED MEDIA, LLC'S FIRST
                                            AMENDED COMPLAINT UNDER RULE
13  DROPBOX, INC.,                          12(b)(6)**

14           Defendant.
                                            Hearing Date: August 24, 2023
15                                          Hearing Time: 10:00 a.m.
                                            Courtroom: Courtroom 11 – 19th Floor
16                                          Judge: Hon. James Donato

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 24, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, in this Court, located at San Francisco Courthouse, Courtroom 11 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 9410, Defendant Dropbox, Inc. ("Dropbox") will and hereby does move for an Order granting Dropbox's motion to dismiss Plaintiff Entangled Media, LLC's ("Plaintiff") First Amended Complaint under Rule 12(b)(6).[1]

Dropbox respectfully requests that the Court dismiss Plaintiff's First Amended Complaint because U.S. Patent Nos. 8,296,338 (Dkt. 19-1, the "'338 Patent") and 8,484,260 (Dkt. 19-2, the "'260 Patent") (collectively, the "Asserted Patents") are invalid under 35 U.S.C. § 101.[2]

This Motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, and such additional papers and arguments as may be presented at or in connection with the hearing.

Dated:  July 24, 2023

By: */s/ Fred I. Williams*

WILLIAMS SIMONS & LANDIS PLLC
Eric Carr (SBN 333128)
ecarr@wsltrial.com
Fred I. Williams (*pro hac vice*)
fwilliams@wsltrial.com
Lea Brigtsen (*pro hac vice*)
lbrigtsen@wsltrial.com
The Littlefield Building
601 Congress Ave., Suite 600
Austin, TX 78701
Telephone: +1 512 543 1354

*Attorneys for Defendant Dropbox, Inc.*

---

[1] Dropbox files this corrected motion to comply with paragraph 18 of the Court's standing order for civil cases, which sets a 15-page limit on opening briefs.

[2] Dropbox previously moved to dismiss this case, on the same grounds, while it was pending in the United States District Court for the Western District of Texas.  Dkt. 21.  That motion was denied as moot when that court granted Dropbox's motion to transfer venue to this Court on June 30, 2023.  Dkt. 31 at 1, 15.

# <u>TABLE OF CONTENTS</u>

**Page**

I.      Introduction ........................................................................................................... 1

II.     Background ........................................................................................................... 1

     A.      The '338 Patent ....................................................................................... 1

     B.      The '260 Patent ....................................................................................... 5

III.    Applicable law ..................................................................................................... 7

IV.     Argument .............................................................................................................. 7

     A.      *Alice* Step One:  The Claims Of The Asserted Patents Are Directed
           To An Abstract Idea. ............................................................................... 8

          1.      Cataloging Files Is an Abstract Idea. ........................................ 8

          2.      Providing a Visual Representation of Files Is an Abstract
               Idea. .......................................................................................... 10

          3.      Updating the Catalog Is an Abstract Idea. ................................ 10

          4.      Transferring Files Between Devices Is an Abstract Idea. ......... 11

          5.      Plaintiff's Previous Arguments are Unpersuasive. ................... 12

     B.      *Alice* Step Two:  The Claims Do Not Recite An Inventive Concept. ....... 13

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Alice Corp. Pty. Ltd v. CLS Bank Int'l*,
573 U.S. 208 (2014) ......................................................................................................... passim

6

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ................................................................................................ 12

7

*Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*
135 F. Supp. 3d 1175 (D. Haw. 2015) ............................................................................... 10, 11

8

9

*BSG Tech. LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................ 9, 11

10

*CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*,
233 F. Supp. 3d 509 (E.D. Va. 2017) ...................................................................................... 13

11

12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ............................................................................................ 9, 11

13

*Enfish, LLC v. Microsoft Corp.*,
No. 2015-2044, 822 F.3d 1327 (Fed. Cir. 2016) ....................................................................... 8

14

15

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) .................................................................................................. 7

16

*Hawk Techs. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ................................................................................................ 12

17

18

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) ................................................................................................ 15

19

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ............................................................................................ 1, 13

20

21

*Intellectual Ventures LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .................................................................................................. 8

22

*Maxell, Ltd. v. Vizio, Inc.*,
2022 U.S. Dist. LEXIS 108403 (C.D. Cal., Mar. 9, 2002) ...................................................... 13

23

24

*Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*,
2020 U.S. Dist. LEXIS 47914 (N.D. Cal. Mar. 19, 2020) (Donato, J.) .................................... 9

25

*TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*,
823 F.3d 607 (Fed. Cir. 2016) ............................................................................................... 8, 9

26

27

*TS Patents LLC v. Yahoo! Inc.*,
279 F. Supp. 3d 968 (N.D. Cal. 2017) (Koh, J.) ...................................................................... 10

28

**DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 23-CV-03264-JD**

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
    874 F.3d 1329 (Fed. Cir. 2017) ............................................................................. 13, 15

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................... 12, 15

*Whitserve LLC v. Dropbox, Inc.,*
    854 Fed. Appx. 367 (Fed. Cir. 2021) ................................................................... 11, 14

**Statutes**

35 U.S.C. § 101 ...................................................................................................... passim
Fed. R. Civ. P. 12(b)(6) ............................................................................................... 7

iii

**I.     INTRODUCTION**

The claims of the Asserted Patents are directed to the abstract idea of cataloging files to display the files in a single location, regardless of their source (i.e., the files can be physically located across different devices).  *See, e.g.*, '338 Patent at 2:12-18.  But that same abstract idea has existed in the real world for generations.  Much like the claimed "singular file system," the Sears catalog allowed shoppers to view in one location (i.e., the catalog itself) products (i.e., files) from different locations—Sears stores stocked some of the products, while some of the products would need to be ordered from vendors for delivery to the customer's home or for in-store pickup.  And like the claims of the Asserted Patents, the Sears catalog used an index—in the form of product numbers—to provide a singular way to refer to products, regardless of their location.  Applying the abstract idea of the Sears catalog to computer files does not make it any less abstract, and the claims of the Asserted Patents fail step one of the *Alice* analysis.  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("We have previously determined that performing otherwise abstract activity on the Internet does not save the idea from being patent-ineligible.").

The claims of the Asserted Patents fare no better under step two of the *Alice* analysis.  For example, the claims of the '338 Patent require combining individual indices from each location into one combined index.  But combining data is a conventional function of computers.  Although the claims of the '260 Patent require transferring files via a "peer-to-peer connection," the specification makes clear that the peer-to-peer connection is one of the "web services" that was well-known at the time of the alleged invention, and it is used in a traditional way, i.e., to transfer files.  The purpose of the First Amended Complaint is transparent—Plaintiff belatedly introduced new allegations, in response to Dropbox's previous motion to dismiss (Dkt. 16), in an attempt to salvage the fact that its patents do not recite an inventive concept.  But those allegations are immaterial and contradicted by the specifications of the '338 and '260 Patents.  Accordingly, Dropbox respectfully requests that the Court grant this motion.

**II.     BACKGROUND**

**A.     The '338 Patent**

The '338 Patent discusses the use of metadata from documents located on various devices

to create a visual representation that shows which documents are accessible to a user across multiple devices.  *See* '338 Patent at 1:19-25.  The '338 Patent aims to address the problem of accessing documents from device A (when the documents are located on device B) by inventorying files based on metadata, generating and providing a catalog to a user, and then updating the catalog based on changes to the metadata.  *See id.* at 2:3-11, 2:20-28.  The '338 Patent purports that "[t]his allows for otherwise impossible amounts of data to be virtually stored on each device, even if there is no physical storage room available for the data on each device."  *Id*. at 2:26-28.

Just as the Sears catalog provided a solution to the fact that a store could not store the entire plethora of products in the catalog, the file system of the alleged invention of the '338 Patent allows the user to view files that cannot be stored in one device.  *See id.*

Asserted claim 1 is representative of the other independent claims of the '338 Patent (claims 7 and 10) because claims 7 and 10 recite the same subject matter as claim 1:

| The '338 Patent | | |
|---|---|---|
| **Claim 1** | **Claim 7** | **Claim 10** |
| A process for establishing a singular file system across multiple devices comprising: | A system for establishing a singular file system across multiple devices comprising: <br><br> a web-accessible server; at least one software client plug-in; multiple devices for storing and operating on files; | A non-transitory computer-readable storage medium storing a set of instructions that, when executed by a processor, cause the processor to perform operations, comprising: |
| receiving user information to open an account for establishing a singular file system across multiple devices via a web-based system that includes at least one server; | wherein the web-accessible server receives user information to open an account for establishing a singular file system across multiple devices, | registering multiple devices with an account for establishing a singular file system across the multiple devices; |
| installing an individual software client on each of the multiple devices via the web-based system; | installs the at least one software plug-in on each of the multiple devices, | |
| accepting registration of multiple devices via the web-based system; | accepts registration of the multiple devices, wherein the at least one software plug-in varies in accordance with an operating system of each of the multiple devices; | |
| scanning each of the multiple devices by each of the individual software clients to inventory data on each of the | further wherein the at least one software client plug-in scans its respective one of the multiple devices to inventory | scanning each of the multiple devices to inventory data on each of the multiple devices and create a meta-index of the |

| | | |
|---|---|---|
| multiple devices and create a meta-index of the files for the inventoried data; | files thereon, creates a meta-index to files for the inventoried data, | files for the inventory data; |
| providing by the individual software clients via the multiple devices individual meta-indices of the inventoried data for each of the multiple devices to the at least one server; | provides the meta-index of the inventoried data for its respective one of the multiple devices to the web-accessible server; | |
| integrating by the at least one server the individual meta-indices to create a single master meta-index; | further wherein the web-accessible server receives meta-indices from each of the multiple devices and integrates the meta-indices to create a single master meta-index, | generating a single master meta-index from meta-indices of files corresponding to inventory data on each of the multiple devices; |
| providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients; | provides the single meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients, | providing the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices, |
| integrating metadata from the meta-indices of each of the other multiple devices into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices; and | integrates at each of the multiple devices metadata from the meta-indices of each of the other multiple devices into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices, | metadata from the meta-indices of each of the other multiple devices to be integrated into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices; and |
| continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon, | and continually updates the single meta-index on each of the multiple devices in response to operations on the files indexed thereon, | |
| wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the single meta-data index by modifying file systems of each of the multiple devices to include virtual files for data from the single meta-data index that is not local to a multiple device. | wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the single meta-data index by modifying file systems of each of the multiple devices to include virtual files for data from the single meta-data index that is not local to a multiple device. | facilitating storage of data within each of the multiple devices in accordance with the single master meta-index by modifying file systems of each of the multiple devices to include virtual files for data from the single master meta-data index that is not local to a multiple device. |

3

Claim 1 catalogs files based on metadata by scanning documents on registered devices for metadata. *See id.* at 11:24-34 ("receiving user information . . . installing an individual software client on each of the multiple devices . . . accepting registration of multiple devices . . . [and] scanning each of the multiple devices . . . to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data[.]"). The specification describes the metadata as nothing more than standard metadata that is kept in conventional filesystems, "such as file name, file type, file size, local path the file is stored in, date created, date modified, etc." *See id.* at 6:6-7. Those processes are akin to vendors providing a listing of their products to Sears for inclusion in the catalog. Then, much like at Sears, the "at least one server" combines the individual file indices (the product offerings) into "a single master meta-index" (i.e., the catalog). *See id.* at 11:39-40. That "single-master meta-index" is then provided to each registered device, so that the same listing of files can be displayed on each device. *See id.* at 11:41-50. Claim 1 also requires that the "single master meta-index" is continually updated, which is no different than Sears updating its catalog as the product offerings change. *See id.* at 11:51-53.

The § 101 analysis of the dependent claims is not materially different from the analysis of the independent claims. Claim 2 merely recites the obvious—software clients vary based on the operating system for which they are written. *See id.* at 11:60-62, 9:48-56. Claim 3 discusses that users can select categories of data to be inventoried, and claim 4 recites specific categories of files— both of which are no different than a user selecting a section of the Sears catalog (e.g., tools or clothing). *See id.* at 11:63-67. Claim 6 merely recites the metadata identified in the specification, which is just standard metadata that is kept in conventional filesystems. *See id.* at 12:7-10, 6:6-7.

The remaining dependent claims merely recite limitations that are already recited in claim 1. Claims 5, 9, and 14 essentially recite the "integrating metadata from the meta-indices of each of the other multiple devices . . . to generate virtual files . . . indistinguishable from the local files by the local file system at each of the multiple devices" limitation in claim 1. *See id.* at 11:22-59 (claim 1), 12:1-6 (claim 5), 12:57-62 (claim 9), 14:16-19 (claim 14). Claim 8 essentially recites the "modifying file systems . . . to include virtual files for data from the single meta-data index that is not local to a multiple device" limitation in claim 1. *Compare id.* at 11:56-59 (claim 1), *with id.*

at 12:51-56 (claim 8).  And claims 11-13 essentially recite the "continually updating the single master meta index . . . in response to changes to the data indexed" limitation in claim 1.  *Compare id.* at 11:51-53 (claim 1), *with id.* at 13:21-14:15 (claims 11-13).

## B.    The '260 Patent

The '260 Patent is a divisional of the '338 Patent with a substantially overlapping specification.  Where the claims of the '338 Patent cover how the "singular file system" is created and maintained, the claims of the '260 Patent forego those details in favor of generic limitations about moving files between devices.  In terms of the Sears catalog, the new limitations in the '260 Patent cover the option of shipping an item to Sears for in-store pickup or to the customer's home.  The option of shipping an item for in-store pickup is particularly well-known in the context of ordering clothing when the store does not have the customer's size in stock, so that the customer can try on the clothing, and potentially have it marked for alteration, before taking it home.

Asserted claim 1 is representative of the other independent claims of the '260 Patent (claims 7 and 8) because independent claims 7 and 8 recite the same subject matter as claim 1:

| The '260 Patent | | |
|---|---|---|
| **Claim 1** | **Claim 7** | **Claim 8** |
| A process for operating on files located on multiple devices using a singular file system comprising: | A non-transitory computer-readable storage medium storing a set of instructions that, when executed by a processor, cause the processor to perform operations, comprising: | A client comprising:<br><br>a memory;<br>at least one processor configured to: |
| accepting a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device; | accepting a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device; | accept a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device; |
| modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; | modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; | modify the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; |
| intercepting the request by a software client on the first device; | intercepting the request by a software client on the first device; | intercept the request by a software client on the first device; |
| determining by the software client if the file is physically located on the first device or | determining by the software client if the file is physically located on the first device or | determine by the software client if the file is physically located on the first device or |

DEFENDANT'S MOTION TO DISMISS
CASE NO. 23-CV-03264-JD

| | | |
|---|---|---|
| if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and | if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and | if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and |
| if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; | if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; | if the file is the virtual file of the corresponding file physically located on the second device, request by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; |
| if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device; and | if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device; and | if the peer-to-peer connection is brokered, transfer the corresponding physical file from the second device to the first device; and |
| performing the operation on the transferred corresponding physical file at the first device. | performing the operation on the transferred corresponding physical file at the first device. | perform the operation on the transferred corresponding physical file at the first device. |

The first limitation of claim 1 is what any file system does—it receives a request to operate on a file. *Id.* at 11:27-29. That process is akin to accepting an order for a product in the Sears catalog. The next limitation is similar to the claims of the '338 Patent, displaying all files in the same location. *Id.* at 11:30-33. The next two limitations use file metadata to determine whether the requested file is located on the user's device (the "first device") or on a different device (the "second device"), which is akin to determining whether the Sears store stocks a product. *See id.* at 11:34-42. The remaining limitations call for transferring the file to the user's device (the "first device") if the file is located on a different device (the "second device"), which is akin to shipping a product to the customer's home or to the Sears store for in-store pickup. *See id.* at 11:43-52. Although the independent claims call for the file to be transferred via a "peer-to-peer connection," the specification states that peer-to-peer connections are just one type of conventional "web service" that can be used to transfer files. *See id.* at 4:48-58.

Like the '338 Patent, the § 101 analysis of the '260 Patent's dependent claims is not materially different from that of the independent claims. Dependent claims 2 and 3 merely claim alternative web services that are enumerated in the specification. *Compare id.* at 11:53-58 (claims 2 and 3), *with id.* at 4:48-58. Dependent claim 6 recites "upon completing the operation, pushing the physical file back to the second device; and retaining the virtual file at the first device," which is akin to the abstract idea of returning an item (the "physical file") to a vendor while keeping the item listing (the virtual file) in the catalog. *See* '260 Patent at 12:1-4. The remaining dependent claims merely recite limitations that are recited in claim 1 of the '338 Patent. Claim 4 is akin to the "continually updating the single master meta-index . . . in response to changes to the data indexed thereon" limitation in claim 1 of the '338 Patent. *Compare* '260 Patent at 11:59-62 (claim 4), *with* '338 Patent at 11:51-53 (claim 1). Claim 5 is similar to the "visual representation of an actual file that is physically located on a another of the multiple devices" limitation in Claim 9 of the '338 Patent. *Compare* '260 Patent at 11:63-66, *with* '338 Patent at 12:58-60.

## III.   APPLICABLE LAW

The Supreme Court articulated a two-step test for determining eligibility in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). At step one, the court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. If the claims are directed to an abstract idea, then the court proceeds to step two and looks to the claim elements "both individually and as an ordered combination" to determine if there is an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (internal quotations and citation omitted). The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. In many cases, too, evaluation can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted).[3]

## IV.   ARGUMENT

The claims of the Asserted Patents are directed to the non-patentable abstract ideas of

---

[3] Claim construction is not necessary to determine patent eligibility here.

1    cataloging files using a piece of information about the file (i.e., metadata), and providing a

2    corresponding visual representation in one location (i.e., a user interface).  The '338 Patent adds

3    the diminutive step of updating the catalog, while the '260 Patent transfers a file located on one

4    device to another device.  Applying the age-old idea of the paper catalog to computers via software

5    fails to render the claims patent-eligible.  *See Intellectual Ventures LLC v. Capital One Bank (USA)*,

6    792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become nonabstract by limiting

7    the invention to a particular field of use or technological environment, such as the Internet").

8    Automating the process of creating and updating the catalog, or transferring files using basic

9    computer technology, does not render the claims patent-eligible.  *See Alice*, 573 U.S. at 225 (claims

10   using computers to automate "well-understood, routine, conventional activities" are invalid).

11           Further, the asserted claims do not "contain[] an 'inventive concept' sufficient to

12   'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221.  The claims do

13   no more than claim the abstract idea of using information in a document (metadata) to locate that

14   document among numerous documents, and apply that idea using standard computer technology.

15   This is not enough to support a "patent-eligible application." *See id.* at 217.

16           **A.      *Alice* Step One:  The Claims Of The Asserted Patents Are Directed To An**

17                    **Abstract Idea.**

18           The first step  determining whether the claims are directed to an abstract idea. *Id*.  The

19   relevant inquiry is "to ask whether the claims are directed to an improvement to computer

20   functionality versus being directed to an abstract idea." *See Enfish, LLC v. Microsoft Corp.*, No.

21   2015-2044, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  Claims "directed to an improvement in the

22   <u>functioning</u> of a computer" pass the first step for, while claims "simply adding conventional

23   computer components to well-known business practices," and claims reciting "use of an abstract

24   mathematical formula on any general purpose computer" or "a purely conventional computer

25   implementation of a mathematical formula" or "generalized steps to be performed on a computer

26   using conventional computer activity" are directed to an abstract idea. *Id.* at 1338.

27           **1.      Cataloging Files Is an Abstract Idea.**

28           In *In re TLI*, the Federal Circuit concluded that claims that use classification data from

1    digital images (i.e., metadata) to record and administer those images (i.e., create a catalog) "are

2    simply directed to the abstract idea of classifying and storing digital images in an organized

3    manner." *TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823

4    F.3d 607, 613 (Fed. Cir. 2016) (affirming district court's grant of motion to dismiss for failure to

5    claim patent-eligible subject matter under 35 U.S.C. § 101).  The court reasoned that

6    > like the claims at issue in *Content Extraction* which were directed to "collecting
>    data," "recognizing certain data within the collected data set," and "storing the
7    > recognized data in memory," 776 F.3d at 1347, attaching classification data, such as
>    dates and times, to images for the purpose of storing those images in an organized
8    > manner is a well-established "basic concept" sufficient to fall under *Alice* step 1.

9    *Id.* at 613; *see also BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1283 (Fed. Cir. 2018)

10   (holding ineligible claims of "several patents related to systems and methods for indexing

11   information stored in wide access databases").

12        Here, the claims are directed to the abstract idea of cataloging documents via metadata.

13   Like *In re TLI* and *Content Extraction*,[4] claim 1 of the '338 Patent is directed to the abstract idea

14   of "scanning each of the multiple devices . . . to inventory data . . . and create a meta-index of the

15   files for the inventoried data" (collecting data), and "integrating metadata from the meta-indices . .

16   . into a local file system." '338 Patent at 11:31-46 (collecting and cataloging metadata).  Claim 1

17   of the '260 Patent is even more abstract because it does not include any limitation on how the

18   catalog of files (the "singular file system") is created or operates.  *See* '260 Patent at 11:25-52.

19        Using metadata in files "for the purpose of storing those [files] in an organized manner is a

20   well-established 'basic concept' sufficient to fall under *Alice* step 1."  *In re TLI*, 823 F.3d at 613.

21   The asserted claims recite a longstanding business practice—using information in a document to

22   create a catalog for organization—and thus are directed to an abstract idea.  *See Rothschild Digital*

23   *Confirmation, LLC v. Skedulo Holdings Inc.*, 2020 U.S. Dist. LEXIS 47914, *10, *12 (N.D. Cal.

24   Mar. 19, 2020) (Donato, J.) (granting motion to dismiss and concluding that the asserted patent "is

25   indistinguishable from the patent in *In re TLI*" because the asserted patent "focus[es] on associating

26   information with images and organizing them, regardless of their digital or physical nature.").

27

28   ---

[4] *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed.
Cir. 2014).

DEFENDANT'S MOTION TO DISMISS
CASE NO. 23-CV-03264-JD

**2.      Providing a Visual Representation of Files Is an Abstract Idea.**

Providing a visual representation is also an abstract idea.  In *Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*, the District of Hawaii found that video-on-demand patent claims were directed to the abstract idea "of using the same hierarchical ordering based on metadata to facilitate the display and locating of video content."  135 F. Supp. 3d 1175, 1185 (D. Haw. 2015).  Courts have similarly granted motions to dismiss when the asserted claims are directed to "organizing and viewing data on a network in a reducible hierarchy" because those claims "fall[] within the realm of 'collecting, classifying, and filtering data' that the Federal Circuit has found is abstract."  *TS Patents LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 987 (N.D. Cal. 2017) (Koh, J.) (emphasis and internal annotations omitted).

Like *Broadband iTV* and *TS Patents LLC*, the asserted claims here are directed to the abstract idea of providing a visual representation of files.  '338 Patent at 11:35-50 ("providing . . . individual meta-indices of the inventoried data for each of the multiple devices . . . integrating . . . the individual meta-indices to create a single master meta-index; providing . . . the single master meta-index and meta-indices for each of the other multiple devices . . . integrating metadata from the meta-indices of each of the other multiple devices . . . to generate virtual files . . . indistinguishable from the local files by the local file system at each of the multiple devices"); *id.* at 3:18-20 ("wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device").  The fact that the claims call for displaying files from different devices in a "singular file system" is of no moment because "how to transmit, receive, store, and organize information deriving from multiple sources is not a creature of the Internet age:  solutions to this problem date back to the invention of smoke signals." *Broadband iTV*, 135 F. Supp. 3d at 1186 (citation and annotation omitted).

**3.      Updating the Catalog Is an Abstract Idea.**

The '338 Patent adds the diminutive step of updating the catalog based on changes in the metadata.  *See* '338 Patent at 11:51-59 ("continually updating the single master meta index . . . in response to changes to the data indexed . . . [and] modifying file systems . . . to include virtual files for data from the single meta-data index that is not local to a multiple device.").  The Federal Circuit

has found that claims directed to a "'self-evolving generic index' for organizing information stored in a database" are patent ineligible. *BSG Tech.*, 899 F.3d at 1283. The court reasoned that "a method of indexing wherein a user adds data to a database . . . after 'receiving summary comparison usage information'" amounts to the abstract idea of "having users consider previous item description before they describe items to achieve more consistent item descriptions." *Id.* at 1286. "[T]he recitation of a database structure slightly more detailed than a generic database does not save the asserted claims at [*Alice*] step one." *Id.* at 1287.

Like the claims in *BSG Tech*, the claims of the '338 Patent are directed to the patent-ineligible concept of updating a catalog based on changes to metadata. *See* '338 Patent at 11:33-58. An index that "continually update[es] the single master meta-index on the at least one server . . . in response to changes to the data indexed thereon" ('338 Patent at 11:51-53), is akin to the abstract idea of "having users consider previous item descriptions before they describe items to achieve more consistent item descriptions." *BSG Tech*, 899 F.3d at 1286.

### 4. Transferring Files Between Devices Is an Abstract Idea.

The '260 Patent adds the abstract step of transferring a file located on a first device to a second device. *See* '260 Patent at 11:43-51 ("if the file is the virtual file of the corresponding file physically located on the second device . . . transferring the corresponding physical file from the second device to the first device"). The *Broadband iTV* court explained that "how to transmit, receive, store, and organize information deriving from multiple sources is not a creature of the Internet age:  solutions to this problem date back to the invention of smoke signals." *Broadband iTV*, 135 F. Supp. 3d at 1186 (citation and annotation omitted); *see Whitserve LLC v. Dropbox, Inc.*, 854 Fed. Appx. 367, 371 (Fed. Cir. 2021) (affirming district court's grant of Dropbox's motion to dismiss because "transmitting, saving, and storing of client records is a fundamental business practice that 'existed well before the advent of computers and the Internet'"); *see also Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known."). The '260 Patent is also a divisional of the '338 Patent with a substantially overlapping specification. Claim 1 of the '260 Patent is therefore directed to an

1    abstract idea for the same reasons as Claim 1 of the '338 Patent.

2              **5.      Plaintiff's Previous Arguments are Unpersuasive.**

3          Plaintiff has previously argued that "cataloging files" would oversimplify the 10 steps of

4    claim 1 of the '338 Patent.  *See* Dkt. 23 at 13.  That argument fails because controlling precedent

5    dictates that the number of steps in a claim is immaterial to patent eligibility.  *See Ultramercial,*

6    *Inc. v. Hulu, LLC*, 772 F.3d 709, 714, 715 (Fed. Cir. 2014) (holding that claims with "eleven steps

7    for displaying an advertisement in exchange for access to copyrighted media" were abstract and

8    unpatentable because all eleven steps involved "routine, conventional activity").  That the asserted

9    claims recite generic elements across multiple steps does not shift the focus away from their core

10   idea of cataloging files to display the files in a single location.  *See e.g.*, '338 Patent at 2:12-18.

11         Plaintiff also previously argued that "the claims of the Asserted Patents are directed to a

12   technological advance in how multiple devices can communicate and share files, and also improve

13   computer functionality by saving significant storage space and improving device interoperability .

14   . . ." Dkt. 23 at 21.  That argument fails under Federal Circuit precedent because the claims do not

15   describe "how the purported invention improves the [alleged] functionality [of saving storage space

16   and improving device interoperability] and are recited at such a level of result-oriented generality

17   that those claims amount to a mere implementation of an abstract idea."  *See Hawk Techs. Sys.,*

18   *LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357-58 (Fed. Cir. 2023) (finding claims claiming the

19   "functional results" of "receiving video images," "displaying one or more of the digitized images,"

20   "storing at least a subset of the converted images," "receiving ... a request to receive one or more

21   specific streams of the video images," "transmitting ... a version of one or more of the video

22   images," and "displaying only the one or more requested specific streams of the video images" to

23   be directed to an abstract idea).  The asserted claims do not "describe how the alleged goal of

24   [saving storage space and improving device interoperability] is achieved," and therefore "amount

25   to a mere implementation of an abstract idea. *Id.*; *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d

26   1229, 1241 (Fed. Cir. 2016) (finding claims abstract because they "do not claim a particular way

27   of programming or designing the software ... but instead merely claim the resulting systems").

28         Plaintiff has also argued, without citing any law, that saving storage space and improving

1   device interoperability are sufficient technological solutions to survive *Alice* step one. Federal

2   district courts have, in fact, held to the contrary.  *See CalAmp Wireless Networks Corp. v.*

3   *ORBCOMM, Inc.*, 233 F. Supp. 3d 509, 515 (E.D. Va. 2017) (dismissing under section 101 because

4   "the use of a remote database to save storage space on a tracking device is hardly an unconventional

5   solution."); *Maxell, Ltd. v. Vizio, Inc.*, 2022 U.S. Dist. LEXIS 108403, at *16, *27 (C.D. Cal., Mar.

6   9, 2002) (dismissing under section 101 because "[t]he claim limitations describe these components

7   in generic terms without explaining *how* a component or combination of components improves

8   device interoperability or user experience.") (emphasis in original). All claims of the Asserted

9   Patents are therefore directed to an abstract idea.

10          **B.      *Alice* Step Two:  The Claims Do Not Recite An Inventive Concept.**

11          The second step under *Alice* is determining whether the remaining elements, either in

12   isolation or combination, are sufficient to transform the nature of the claim into a patent-eligible

13   application. *Alice*, 573 U.S. at 217.  The required inventive concept must "ensure that the patent in

14   practice amounts to significantly more than a patent upon the [abstract idea] itself."  *Id.* at 218.

15   Recitation of "well-understood, routine, conventional activities previously known to the industry"

16   is insufficient to confer patent eligibility to an otherwise abstract idea.  *Id* at 225.

17          The claims of the Asserted Patents do not recite an inventive concept because they claim

18   nothing more than "generic functional language to achieve the[] purported solutions."  *Two-Way*

19   *Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).  Claim 1 of

20   the '338 Patent recites steps related to creating, combining, and updating a catalog of files.  *See*

21   '338 Patent at 11:22-59.  But those steps recite nothing more than the desired result without reciting

22   any improvement to computer functionality to attain the desired functionality.  *See id.*  Claim 1 of

23   the '260 Patent fares no better because it recites displaying and performing operations on a "singular

24   file system," again, without reciting any improvement to computer functionality to attain the

25   desired functionality.  *See* '260 Patent at 11:25-52.  As a result, the claims do not recite an inventive

26   concept.  *See Symantec Corp.*, 838 F.3d at 1316 (claims do not recite an inventive concept when

27   they lack "specific or limiting recitation of . . . improved computer technology").

28          The claims of the Asserted Patents do not recite an inventive concept for the additional

reason that they merely recite generic components used in a conventional way.  Claim 1 of the '338 Patent recites "devices," a "file system," a "software client," and a "server."  The specification describes the "devices" as any computing device that can communicate data over the Internet.  *See* '338 Patent at 4:15-24.  And those devices are used in a conventional way—to store files, transmit information about those files over the Internet, and display the contents of a file system.  *See id.* at 11:22-59; *see also Whitserve LLC*, 854 Fed. Appx. at 371, 372 (affirming motion to dismiss because "the claimed computers are described as being capable of sending, over the Internet, a request for a copy of data records, receiving the request, and transmitting a copy of the requested data. . . . The claims recite generic computer components performing routine conventional functions.").  The claimed "file system" does nothing more than manage files and present them in a graphical user interface, which is the conventional functionality of a file system.  *See* '338 Patent at 4:25-35.  The devices perform those functions using a generic "software client."  *See id.* at 4:41-42.  The claimed "server" receives information about files from the devices, combines that information into one "single master meta-index," and provides that index back to the devices.  *See id.* at 11:35-44.  Collecting, combining, and transmitting information are conventional functionality of a webserver.  *See id.* at 4:43-53.  Claim 1 of the '260 Patent recites transferring files via a "peer-to-peer connection," but that connection is nothing more than one type of generic "Web Service" that is used for its conventional functionality of transferring files.  *See* '260 Patent at 4:48-58.  Neither the claims nor the specification describe any improvement to those generic components.

The new allegations in Plaintiff's Amended Complaint also recite generic components used in conventional ways.  *See* Am. Compl., at ¶¶ 32-33 (alleging that virtual representations save storage space because "the files are not store anywhere other than one physical location"), 34 (alleging that storing metadata, "rather than all the data itself[,]" saves storage space), 35 (alleging that devices "communicate directly when data is requested"), 36 (alleging that "after the initial installation" user does not have to "designate files for inclusion"), 37 (alleging that the invention can "recognize and account for differences" when "one user device runs on the Windows operating system and another runs on a Mac or Linux operating system"), 38 (alleging that the invention may be located within a distributed network or dedicated machine), 39 (alleging that the '260 Patent

uses peer-to-peer network configurations). Even when those allegations are taken as true, they fail to show that the claims recite any inventive concept because the claims recite nothing more than "generic functional language to achieve the[] purported solutions." *Two-Way Media*, 874 F.3d at 1339. Plaintiff's new allegations do not show that the claim elements, in isolation or combination, are sufficient to transform the claim into a patent-eligible application. *Alice*, 573 U.S. at 217.

Plaintiff's new allegations, alleged prior art, third-party reviews of Plaintiff's Younity app, and the Asserted Patent's prosecution history are immaterial for similar reasons. *See id.*; Am. Compl., at ¶¶ 23-31 (restating portions of the specification of the '338 Patent), 41-45 (discussing third-party reviews of Younity app), 47-63 (discussing prosecution history). As demonstrated above, the specifications actually support Dropbox's contention that the claims do not recite an inventive concept. Plaintiff's "Younity app" is not material because, as Plaintiff concedes, it does not practice the claims of the Asserted Patents. *See* Am. Compl., at ¶ 31 ("The technology underlying the Younity app is also captured in part by the Entangled Media Patents-in-Suit."). The fact that the Patent Office issued the Asserted Patents after prosecution is not material—under Plaintiff's flawed logic, no patent could be found to lack an inventive concept under *Alice* step two because all patents have undergone prosecution before they issue. The claims of the Asserted Patents, when considered as an "ordered combination," do not recite an inventive concept. The fact that the asserted claims combine the idea of cataloging documents and providing a visual representation with other basic computer functions—such as updating documents and transferring files—similarly fails to render the claims patentable. *See Ultramercial*, 772 F.3d at 714, 715 (holding claims were abstract because all eleven steps involved "routine, conventional activity"). The dependent claims do not add any patentable significance or confer any inventive concept for the reasons discussed in Section II. Whether "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). Accordingly, the claims of the Asserted Patents do not recite an inventive concept, and the claims of the Asserted Patents should be found unpatentable.

1   Dated:  July 24, 2023

2   Respectfully Submitted:

3                                          By: */s/ Fred I. Williams*

4                                          WILLIAMS SIMONS & LANDIS PLLC
                                           Eric Carr (SBN 333128)
5                                          ecarr@wsltrial.com
6                                          Fred I. Williams (*pro hac vice*)
                                           fwilliams@wsltrial.com
7                                          Lea Brigtsen (*pro hac vice*)
                                           lbrigtsen@wsltrial.com
8                                          The Littlefield Building
                                           601 Congress Ave., Suite 600
9                                          Austin, TX 78701
10                                         Telephone: +1 512 543 1354

11                                         Todd E. Landis (*pro hac vice forthcoming*)
                                           tlandis@wsltrial.com
12                                         2633 McKinney Ave., Suite 130 #366
                                           Dallas, TX 75204
13                                         Telephone: +1 512 543 1357

14                                         John Wittenzellner (*pro hac vice forthcoming*)
15                                         johnw@wsltrial.com
                                           1735 Market Street, Suite A #453
16                                         Philadelphia, PA 19103
                                           Telephone: +1 512 543 1373
17
18                                         *Attorneys for Defendant Dropbox, Inc.*

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 23-CV-03264-JD**