UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DROPBOX INC.,<br><br>    Defendant. | Case No. 23-cv-03264-PCP<br><br>**ORDER DENYING MOTION TO DISMISS** |

Plaintiff Entangled Media, LLC alleges that defendant Dropbox Inc. infringes two patents related to cloud-based file systems. Dropbox moves to dismiss Entangled Media's first amended complaint, contending that the claims of the asserted patents are not patent-eligible under 35 U.S.C. § 101. For the reasons that follow, the Court denies Dropbox's motion to dismiss.

## BACKGROUND

The Court accepts the following facts from Entangled Media's complaint as true for the purposes of Dropbox's Rule 12(b)(6) motion to dismiss.

Entangled Media owns U.S. Patent Nos. 8,296,338 ("the '338 Patent") and 8,484,260 ("the '260 Patent") (collectively, the asserted patents). The '338 patent was issued on October 23, 2012, and is titled "Method for a Cloud-Based Meta-File System to Virtually Unify Remote and Local Files Across a Range of Devices' Local File Systems." Dkt. No. 19-1, '338 Patent, at 2. The '260 Patent is a divisional application of the '338 Patent. Dkt. No. 19-2, '260 Patent, at 2. The '260 Patent was issued on July 9, 2013, and is titled "Method for Cloud-Based Meta-File System to Virtually Unify Remote and Local Files Across a Range of Devices' Local File System." *Id.* The patents share substantially the same specification.

The claims generally relate to "a system and method for using data virtualization coupled

with a cloud-based file system that is shared among devices and integrated into the device operating system so as to unify the representation of files across devices for availability of and access to data across multiple devices a user might own." '338 Patent at 1:20–25.[1] The invention seeks to overcome the shortcomings of prior art methods for data synchronization that typically relied on either "locally installed software for file replication across devices" or "online backup/storage based file replication across devices." *Id.* at 1:28–30. These prior methods required large amounts of storage, *id.* at 1:50–55, and existing methods for increasing storage capacity were expensive and involved "third-party on-line storage or device storage upgrades," *id.* at 1:55–58. Further, these methods required that "the data on separate devices [be] kept separated when synchronized-local data is stored in a set of locations within the operating system's native file system (e.g., 'My Documents', 'My Pictures', etc.), while remote data on other devices or other online services [be] kept in a new location such as a new directory/folder or secondary location (e.g., removable hard drive) mounted on the device." *Id.* at 1:59–65. These methods also demanded a "high-degree of user involvement for their operation," requiring users to "designate certain files and/or directories for synchronization or backup" and "consciously store content to be synced or backed-up in those locations." *Id.* at 1:65–2:2.

Unlike the prior art, Entangled Media's invention does not require "physical data replication across multiple devices." *Id.* at 2:18–20. Instead, it "creates a virtual representation of data on all of the devices using metadata indexing" that "allows for otherwise impossible amounts of data to be virtually stored on each device" without requiring that the files themselves be stored on all devices. *Id.* at 2:20–28. The solution "does not require data to be stored on a provider server, but instead stores only light-weight metadata … online." *Id.* 2:29–32. It "establishes the ability for user devices to be aware of one another and communicate directly when data is requested," *id.* at 2:32–34, and "can also incorporate files stored in an online service account, such as a photo account or video account (exemplary—YouTube.com or Picasa.com)," *id.* at 2:35–37.

The claims of the '260 Patent disclose a method for improving computer functionality by

---

[1] The citations herein are to the column and line number of the cited patent.

2

1   allowing for the transfer of physical files located on different devices using a peer-to-peer
2   connection. *See* '260 Patent, at 11:25–52. While the claims of the '338 Patent disclose a "process
3   for establishing a singular file system across multiple devices," '338 Patent at 11:22–23, the '260
4   Patent discloses a "process for operating on files located on multiple devices using a singular file
5   system" to facilitate the transfer of a file from the first device to the second device through a
6   brokered peer-to-peer connection, '260 Patent at 11:54–52. The latter process "allows the devices
7   to communicate and share their data and resources directly and negates the need for a server,
8   which eliminates additional costs and complex set-ups" and "is typically faster than transferring
9   over other types of network connections." First Amended Complaint (FAC) ¶ 39.

        Claim 1 of the '338 Patent recites:

> A process for establishing a singular file system across multiple devices comprising: receiving user information to open an account for establishing a singular file system across multiple devices via a web-based system that includes at least one server; installing an individual software client on each of the multiple devices via the web-based system; accepting registration of multiple devices via the web based system; Scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data; providing by the individual software clients via the multiple devices individual meta-indices of the inventoried data for each of the multiple devices to the at least one server; integrating by the at least one server the individual meta indices to create a single master meta-index; providing by the at least one server the single master meta index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients; integrating metadata from the meta-indices of each of the other multiple devices into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices; and continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon, wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the single meta-data index by modifying file systems of each of the multiple devices to include virtual files for data from the single meta-data index that is not local to a multiple device.

'338 Patent at 11:22–59.

Claim 1 of the '260 Patent recites:

> A process for operating on files located on multiple devices using a singular file system comprising: accepting a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device: modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; intercepting the request by a software client on the first device; determining by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device; and performing the operation on the transferred corresponding physical file at the first device.

'260 Patent at 11:25–52.

In March 2017, Entangled Media founder and named inventor Erik Caso identified and explained the asserted patents to a senior executive on Dropbox's corporate development team. FAC ¶¶ 19–20, 65. "After a few discussions between Mr. Caso and Dropbox, Dropbox decided not to license the technology developed by Entangled Media" and proceeded to "introduc[e] Smart Sync, which incorporated the claimed technology." *Id.* ¶ 65.

In December 2022, Entangled Media commenced this action against Dropbox in the Western District of Texas, claiming that Dropbox infringes "at least claim 1 of the '338 Patent" and "at least claim 1 of the '260 Patent" under 35 U.S.C. § 271(a).[2] FAC ¶¶ 69, 86. Specifically, Entangled Media alleges that various Dropbox products that contain Smart Sync functionality— including Dropbox Plus, Family, Professional, and Business (Standard, Advanced, Enterprise)—

---

[2] The Court focuses its analysis on asserted claim 1 of the '338 Patent and asserted claim 1 of the '260 Patent. Entangled Media concedes that these claims "are the only independent claims specifically asserted against Dropbox in the First Amended Complaint." Dkt. No. 53, at 12. Dropbox does not ask this Court to evaluate the dependent claims separately.

1    incorporate technology covered by the asserted patents. *See id.* ¶¶ 64, 78. Because Dropbox had
2    prior notice of the asserted patents, Entangled Media alleges that Dropbox's infringement is
3    willful. *Id.* ¶¶ 82, 98.
4        Entangled Media filed a first amended complaint on March 29, 2023. The case was
5    transferred to this Court in June 2023. Dropbox now moves to dismiss the first amended complaint
6    pursuant to Rule 12(b)(6).

## LEGAL STANDARD

When considering a motion to dismiss an action for failure to state a claim under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). The pleadings must allege facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "can provide the framework of a complaint," but the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 679.

35 U.S.C. § 101 makes patentable "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." This broad provision has an important exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). A patent is "not rendered ineligible ... simply because it involves an abstract concept." *Id.* at 217. But if a patent does involve an abstract concept, it must apply that concept "to a new and useful end." *Id.* Thus, in determining whether a patent is eligible under Section 101, the first issue is "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, the question then becomes whether the "additional elements" of the claim "transform [its] nature ... into a patent-eligible application." *Id.* (cleaned up). This inquiry involves "a search for an 'inventive concept' ... sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (cleaned up).

Patents are "presumed valid." 35 U.S.C. § 282(a). The "burden of establishing invalidity"

1   is on the party asserting it. *Id.* This requires "clear and convincing evidence." *Microsoft Corp. v.*

2   *i4i Ltd. P'ship.*, 564 U.S. 91, 95 (2011). Eligibility "is a question of law" with "underlying

3   questions of fact." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358–59 (Fed.

4   Cir. 2020).

## ANALYSIS

### I. The Court Can Evaluate Dropbox's Section 101 Ineligibility Arguments Without Additional Factual Development.

Patent eligibility "may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). "If there are claim construction disputes at the Rule 12(b)(6) stage," the Court "must proceed by adopting the non-moving party's constructions," or the Court "must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (cleaned up).

Entangled Media argues that the Court "cannot resolve Dropbox's motion without first determining the proper constructions of several key claim terms." Dkt. No. 53, at 11. Specifically, Entangled Media contends that "the construction of the terms 'integrates at each of the multiple devices metadata from the meta-indices;' 'at least one software plug-in … devices' and 'wherein the individual software clients facilitate storage of the data … in accordance with the single meta-data index' from Claim 7 of the '338 patent will demonstrate the specific technological architecture required in order to achieve the claimed system and whether a person of ordinary skill in the art would recognize this hardware architecture as not conventional as of the priority date." *Id.* With respect to the '260 patent, Entangled Media argues that "construction of the term 'peer-to-peer connection be brokered by a server-based web service' will show whether the claimed system employs unconventional hardware architecture, as reflected in the patent's specification." *Id.* Entangled Media emphasizes that courts in this district sometimes defer Section 101 challenges in similar situations. *See, e.g.*, *V. Sattui Winery v. Landmark Tech. A, LLC*, Case No. 3:19-cv-

United States District Court
Northern District of California

1    05207-JD (N.D. Cal. Sept. 30, 2020), Dkt. No. 28 (deferring "plaintiff's motion to dismiss the
2    counterclaims for patent eligibility … until after claim construction").

3         By contrast, Dropbox argues that there is no genuine claim construction dispute that would
4    warrant delaying resolution of the Section 101 determination. Entangled Media, it argues, merely
5    "lists a series of terms from the Asserted Claims as allegedly presenting 'claim construction
6    disputes' without "propos[ing] any actual construction for the listed terms" or explaining "how
7    any particular construction would alter the Section 101 analysis." Dkt. No. 58, at 6 (citing
8    *Whitepages, Inc. v. Isaacs*, 196 F. Supp. 3d 1128, 1135 (N.D. Cal. 2016)).

9         Dropbox is correct that Entangled Media has not demonstrated the existence of a
10   meaningful claim construction dispute that could affect this Court's analysis of its patents' validity
11   under Section 101. While identifying several terms purportedly requiring construction, Entangled
12   Media fails to explain why the construction of these claims might alter the Court's "understanding
13   of the basic character of the claimed subject matter," *Content Extraction & Transmission LLC v.*
14   *Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014), particularly where the first
15   amended complaint already discusses the ways in which the invention improves upon prior art.

16        Because the "claimed subject matter is readily ascertainable from the face of the patent,"
17   *Internet Pats. Corp. v. Gen. Auto Ins. Servs., Inc.*, 29 F. Supp. 3d 1264, 1268 (N.D. Cal. 2013),
18   Dropbox's Section 101 arguments can and will be addressed at this stage rather than reserved until
19   claim construction.

20   **II.    The Patents' Claims Are Patent-Eligible.**

21        *Alice Corporation v. CLS Bank International* established a two-step test for determining
22   patent eligibility under 35 U.S.C. § 101. 573 U.S. at 217. At the first step, the Court "determine[s]
23   whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.*
24   If the patent is *not* directed to a patent ineligible concept, the inquiry ends. If the claims *are*
25   directed to a patent ineligible concept, the Court proceeds to the second step, which examines "the
26   elements of the claim to determine whether it contains an 'inventive concept' sufficient to
27   transform the claimed abstract idea into a patent-eligible application." *Id.* at 221. This inquiry
28   involves determining "whether the claim elements, individually and as an ordered combination,

contain an inventive concept, which is more than merely implementing an abstract idea using 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Cooperative Ent.*, 50 F.4th at 130 (citing *Content Extraction*, 776 F.3d at 1347–48).

    **A.**    ***Alice* Step One: The Claims of the Asserted Patents Are Not Directed to an Abstract Idea.**

The claims of Entangled Media's asserted patents are all directed to software rather than hardware. The Federal Circuit has emphasized, however, that "claims directed to software, as opposed to hardware" are not "inherently abstract." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (2016). "Software can make non-abstract improvements to computer technology just as hardware improvements can, and sometimes the improvements can be accomplished through either route." *Id.* In cases involving software-based improvements to computer technology, the Court's inquiry at *Alice*'s first step is to ask "whether the focus of the claims is on the specific asserted improvement in computer capabilities … or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1135–36; *see Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) ("[T]his inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool.").

Dropbox argues that the asserted claims are "directed to the abstract idea of cataloging files to display the files in a single location, regardless of their source" and that this is comparable to Sears's catalog. According to Dropbox, the asserted claims simply apply the idea embodied in the Sears catalog—an "abstract idea [t]hat has existed in the real world for generations"—to computer files. The "Sears catalog allowed shoppers to view in one location (i.e., the catalog itself) products (i.e., files) from different locations—Sears stocked some of the products, while some of the products would need to be ordered from vendors for delivery to the customer's home or for in-store pickup." Dkt. No. 42, at 6. The Sears catalog "used an index—in the form of product numbers—to provide a singular way to refer to products, regardless of their location," *id.*, and, in Dropbox's view, the asserted claims involve nothing more than the application to computer files

8

of the same abstract concept. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("We have previously determined that performing otherwise abstract activity on the Internet does not save the idea from being patent-ineligible.").

Dropbox identifies four different concepts previously found abstract by the Federal Circuit that it contends the asserted patents claim. First, Dropbox argues that the claims are directed to the abstract idea of "cataloguing files," particularly via metadata. Dkt. No. 42, at 13–14 (citing *In re TLI Commc'ns. LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016); *Content Extraction*, 776 F.3d at 1347). Second, Dropbox argues that the claims are directed to the abstract idea of "providing a visual representation of files." Dkt. No. 42, at 15 (citing *TS Patents LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 987 (N.D. Cal. 2017); *Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*, 135 F. Supp. 3d 1175, 1185 (D. Haw. 2015)). Third, Dropbox argues that "the '338 Patent adds the diminutive step of updating the catalog based on changes in the metadata" and as such is directed to the abstract idea of "updating a catalog." Dkt. No. 42, at 15 (citing *BSG Tech LLC v. BuySeasons LLC, Inc.*, 899 F.3d 1281, 1283 (Fed. Cir. 2018)). Fourth, Dropbox argues that the '260 Patent "adds the abstract step of transferring a file located on a first device to a second device." Dkt. No. 42, at 16 (citing *Whitserve LLC v. Dropbox, Inc.*, 854 Fed. Appx. 367, 371 (Fed. Cir. 2021); *Content Extraction*, 776 F.3d at 1347; *Broadband iTV*, 135 F. Supp. 3d at 1186).

Entangled Media counters that the asserted patents' claims are directed to technological solutions to technological problems. Specifically, "Asserted Claim 1 of the '338 Patent is directed to unifying the representation of and access to files and data across all of a user's different devices" and "Asserted Claim 1 of the '260 Patent is directed to unifying the representation of and access to files and data across all of a user's devices via a peer-to-peer connection between devices." Dkt. No. 53, at 12. As such, the invention addresses the "inability of multiple user devices to share and synchronize user files" by "creating a unified representation of all data on all registered devices." *Id.* at 13–14. The solution improves upon the prior art and improves the functionality of a computer by increasing available storage and allowing for interoperability without user input. *Id.* at 14. The '260 Patent, through the use of peer-to-peer connections, "allow[s] devices to communicate and share data directly, negating the need for a server and

9

1  increasing transfer speeds and more flexible networks." *Id.* at 15.

2    Entangled Media's arguments are sufficient to preclude a finding of Section 101
3  ineligibility at this time. Dropbox's analogy to the Sears catalog ignores the claimed invention's
4  focus on improving computer functionality and providing a solution to file management problems
5  that are unique to computer-based digital information systems. As the specification for the '338
6  patent explains,[3] existing methods for data synchronization often required "locally installed
7  software for file replication across devices" or "online backup/storage based file replication across
8  devices." '338 Patent at 1:28–30. These methods required large amounts of storage, *id.* at 1:50–55,
9  and existing methods for increasing storage capacity were expensive and involved "third-party on-
10 line storage or device storage upgrades," *id.* at 1:55–58. Further, these methods required that "the
11 data on separate devices [be] kept separated when synchronized-local data is stored in a set of
12 locations within the operating system's native file system (e.g., 'My Documents', 'My Pictures',
13 etc.), while remote data on other devices or other online services [be] kept in a new location such
14 as a new directory/folder or secondary location (e.g., removable hard drive) mounted on the
15 device." *Id.* at 1:59–65. These methods also demanded a "high-degree of user involvement for
16 their operation," requiring users to "designate certain files and/or directories for synchronization
17 or backup" and "consciously store content to be synced or backed-up in those locations." *Id.* at
18 1:65–2:2.

19   Because the claimed invention addresses problems unique to computer-based digital
20 information systems, the asserted patents "do not merely recite the performance of some business
21 practice known from the pre-Internet world along with the requirement to perform it on the
22 Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to
23 overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC*
24 *v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

25   The Federal Circuit has "routinely" found comparable software claims "patent eligible

---

[3] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) ("The 'directed to' inquiry may also involve looking to the specification to understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention.").

under *Alice* step one [because] they are directed to improvements to the functionality of a computer or network platform itself." *Uniloc*, 957 F.3d at 1307. In *Visual Memory LLC v. NVIDIA Corp.*, for example, the Federal Circuit held that claims were directed to "an improved computer memory system, not to the abstract idea of categorical data storage," where the invention "obviate[d] the need to design a separate memory system for each type of processor," thereby improving cost-effectiveness, efficiency, and performance problems of prior art, and "enabling interoperability with multiple different processors." 867 F.3d 1253, 1259 (Fed. Cir. 2017). Likewise, in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, the Federal Circuit found that claims "directed to a particular manner of summarizing and presenting information in electronic devices" were directed to "an improved user interface for computing devices, not to the abstract idea of an index." 880 F.3d 1356, 1362 (Fed. Cir. 2018). This was so despite the fact that "the generic idea of summarizing information certainly existed prior to the invention." *Id.* The Federal Circuit emphasized that the specification in that patent clarified that its claims "disclose an improved user interface for electronic devices, particularly those with small screens," resulting in increased speed of a user's navigation. *Id.* at 1363.

Like the patents in these Federal Circuit cases, Entangled Media's asserted patents "are directed to improvements to the functionality of a computer or network platform itself," not to mere abstract concepts implemented using computer technology. *Uniloc*, 957 F.3d at 1307. Dropbox therefore has not established by clear and convincing evidence that Claim 1 of each asserted patent is directed to an abstract idea.

**B.     *Alice* Step Two: The Claims Recite an Inventive Concept.**

Even if the asserted patents' claims were directed to an abstract idea, for Rule 12(b)(6) purposes the claims appear to recite an inventive concept that would transform that otherwise abstract idea into a patent-eligible invention. *See Alice*, 573 U.S. at 221.

To transform an otherwise abstract idea into a patent-eligible invention, a patent claim must do more than state an abstract idea and say, "apply it" or "apply it with a computer." *Id.* at 223–24. That is because "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws,

11

1  phenomena, and ideas patentable." *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 82

2  (2012). "[W]hether particular claim limitations are abstract or, as an ordered combination, involve

3  an inventive concept that transforms the claim into patent eligible subject matter, must be decided

4  on a case-by-case basis in light of the particular claim limitations, patent specification, and

5  invention at issue." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed.

6  Cir. 2021). In particular, the Court must consider whether the claims merely recite generic

7  computer processes and machinery or alternatively whether the non-generic arrangement of those

8  processes and machinery gives rise to an inventive concept. *See Bascom Glob. Internet Servs., Inc.*

9  *v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2016). The "[i]nquiry therefore must

10 turn to any requirements for how the desired result is achieved." *Two-Way Media Ltd. v. Comcast*

11 *Cable Commc'ns*, LLC, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (cleaned up). While the pleadings

12 and specification can help to illuminate the inventive concept, they cannot supply it. *See Am. Axle*

13 *& Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020); *ChargePoint, Inc. v.*

14 *SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

15   Dropbox argues that "the claims of the Asserted Patents do not recite an inventive concept

16 because they claim nothing more than 'generic functional language' to achieve the[] purported

17 solutions." Dkt. No. 42, at 18 (citing *Two-Way Media*, 874 F.3d at 1339). In particular, Dropbox

18 argues that the claims of the '338 Patent merely recite the desired results without reciting any

19 improvement, and that the claims of the '260 patent "recite[] displaying and performing operations

20 on a 'singular file system' again, without reciting any improvement to computer functionality to

21 attain the desired functionality." Dkt. No. 42, at 18. According to Dropbox, the claims "merely

22 recite generic components used in a conventional way." Dkt. No. 42, at 18–19.

23   Entangled Media argues in response that Claim 1 of the '338 Patent recites ten steps for

24 "establishing a singular file system across multiple devices." Dkt. No. 53, at 18. The specification

25 and first amended complaint assert that this is "a specific improvement to prior art" qualifying as

26 an inventive concept under *Alice*. In opposing Dropbox's motion, Entangled Media cites

27 *Cooperative Entertainment*, in which the Federal Circuit found "plausible factual allegations that

28 the claims include inventive concepts" sufficient to preclude dismissal under Rule 12(b)(6)

because the claim language, the written description, and the amended complaint described how the patent's particular arrangements of elements provided for a technical improvement over prior art. 50 F.4th at 135–36.

Drawing all inferences in favor of Entangled Media, the claims of both asserted patents plausibly recite a technical solution and improvement upon prior art amounting to an inventive concept. As Entangled Media notes, the asserted patents describe a specific 10-step process for establishing the cross-device file system at issue. The specification explains how the process articulated in '338 Patent Claim 1 is different from and improves upon the prior art. It explains that, in contrast to the prior art, the invention addresses storage capacity barriers, 1:50–55, eliminates the need for high-need user involvement, 1:65–67, and eliminates the need for physical data replication across multiple devices, 2:18–20. The solution also "establishes the ability for user devices to be aware of one another and communicate directly when data is requested," 2:32–34, and "can also incorporate files stored in an online service account, such as a photo account or video account (exemplary—YouTube.com and Picasa.com)," 2:34–37. The first amended complaint reiterates those benefits. *See* FAC ¶¶ 23–41. The claims of the '260 Patent further disclose using a peer-to-peer network for purposes of transferring data between devices to increase the speed of transfer and more easily extend to new devices. FAC ¶ 39; '260 Patent 11:43–50.

The Federal Circuit has held that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. Entangled Media has plausibly alleged that the claims of its asserted patents include such an invention, *see Cooperative Ent.*, 50 F.4th at 136, and go beyond merely claiming "conventional computer and network components operating according to their ordinary functions," *Two-Way Media*, 874 F.3d at 1341.

## CONCLUSION

For the foregoing reasons, Dropbox's Motion to Dismiss is denied.

**IT IS SO ORDERED.**

13

Dated: February 13, 2024

P. Casey Pitts
United States District Judge

14