John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ENTANGLED MEDIA, LLC, | C.A. No. 5:23-cv-03264-PCP-VKD |
| Plaintiff, | **PLAINTIFF ENTANGLED MEDIA, LLC'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | |
| DROPBOX, INC., | Hearing Date: May 2, 2024 |
| Defendant. | Time: TBD |
| | Location: Courtroom 08, 4th Floor |
| | Judge: Hon. P. Casey Pitts |

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ................................................................................................. 1

3    II.    LEGAL PRINCIPLES OF CLAIM CONSTRUCTION ....................................... 1

4    III.    LEGAL PRINCIPLES OF INDEFINITENESS ................................................. 2

5    IV.    BACKGROUND OF THE INVENTION ........................................................... 3

6    V.    CLAIM CONSTRUCTION REGARDING U.S. PATENT NO. 8,296,338 ........................... 4

7        A.    "Singular file system" ('338 Claim 1, 7; '260 Claim 1, 4, 5, 7, 8) ............................ 4

8        B.    "Providing by the at least one server the single master meta-index and meta-
             indices for each of the other multiple devices to each of the multiple devices
9             via the individual software clients" (Claim 1) ................................................ 5

10       C.    "Continually updating the single master meta-index on the at least one server
             and each of the multiple devices in response to changes to the data indexed
11            thereon" (Claim 1) ........................................................................................... 7

12       D.    "Visual representation of the virtual files on a remote one of each of the
             multiple devices that is indistinguishable from a visual representation of an
13            actual file that is located on a local one of the multiple devices" (Claim 5) ................. 9

14       E.    "The virtual files indistinguishable from the local files" (Claim 1) / "*The
             virtual files indistinguishable from the local files* by the local file system at
15            each of the multiple devices" (Claim 1) ....................................................... 12

16   VI.    CLAIM CONSTRUCTION REGARDING U.S. PATENT NO. 8,484,260 ........................... 14

17       A.    "Is identical to" (Claim 1) / "A visual representation of the singular file system
             on the first device *is identical to* a visual representation of the singular file
18            system on the second device" (Claim 1) ....................................................... 14

19
         B.    "Requesting by a software client on the first device that a peer-to-peer
20            connection be brokered by server-based web service between the first and the
             second device" (Claim 1) ............................................................................... 16

21
         C.    "Transferring the corresponding physical file from the second device to the
22            first device" (Claim 1) .................................................................................... 17

23
         D.    "Pushing the physical file back to the second device" (Claim 6) ............................ 19

24
         E.    "Appear indistinguishable to the singular file system" (Claim 1) / "Modifying
25            the singular file system on the first device to make local files and virtual files
             *appear indistinguishable to the singular file system*" (Claim 1) ................. 20

26
     VII.    CONCLUSION ................................................................................................. 23

27

28

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Allergan Sales, LLC v. Sandoz, Inc.*,
    935 F.3d 1370 (Fed. Cir. 2019) ................................................................. 6

4

*American Technical Ceramic Corp. v. Presidio Components, Inc.*,
    14-CV-6544, 2018 WL 1525686 (E.D. N.Y. March 27, 2018)..................... 23

5

6

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ................................................................. 6

7

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
    249 F.3d 1341 (Fed. Cir. 2001) ................................................................. 2

8

9

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*,
    809 F.3d 1223 (Fed. Cir. 2015) .......................................................... 2, 22

10

*Good Kaisha IP Bridge 1 v. OmniVision Tech.*,
    Case No. 17-cv-00778-BLF, 2018 WL 1989577 (N.D. Cal. March 20, 2018).............................. 7

11

*HZNP Medicines LLC v. Actavis Labs. UT, Inc.*,
    940 F.3d 680 (Fed. Cir. 2019) ................................................................. 3

12

13

*Impinj, Inc. v. NXP USA, Inc.*,
    No. 19-CV-03161-YGR, 2022 WL 2125134 (N.D. Cal. Mar. 21, 2022) ...................... 20

14

*Innova/Pura Water, Inc. v. Safari Water Filtration Sys. Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004) ................................................................. 1

15

16

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ................................................................. 1

17

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370, 116 S. Ct. 1384 (1996) ....................................................... 2

18

19

*Medrad, Inc. v. MRI Devices Corp.*,
    401 F.3d 1313 (Fed. Cir. 2005) ............................................................... 17

20

*Microsoft Corp. v. I4I Limited Partnership*,
    564 U.S. 91 (2011) ................................................................................ 2

21

22

*Nature Simulation Sys. v. Autodesk, Inc.*,
    50 F.4th 1358 (Fed. Cir. 2022) ................................................................. 2

23

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898, 134 S. Ct. 2120 (2014) ....................................................... 2

24

25

*Nikken USA, Inc. v. Robinsons-May, Inc.*,
    51 Fed. Appx. 874 (Fed. Cir. 2002) .......................................................... 5

26

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 3, 5, 6

27

28

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
  653 F.3d 1296 (Fed. Cir. 2011) ........................................................................ 2

*Spectrum Int'l v. Sterilite Corp.*,
  164 F.3d 1372 (Fed. Cir. 1998) ........................................................................ 2

*Thorner v. Sony Comp. Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ...................................................................... 20

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .................................................................... 1, 4

**Statutes**

35 U.S.C. § 112 ................................................................................................ 2

35 U.S.C. § 282 ................................................................................................ 2

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| A. | Declaration of George Edwards, Ph.D. Regarding U.S. Patent Nos. 8,296,338 and 8,484,260 dated February 5, 2024 |
| B. | U.S. Patent No. 8,296,338 |
| C. | Oxford English Dictionary, Second Edition, Volume VII. Clarendon Press Oxford, 1991, p. 682 |
| D. | Response in *Ex-Parte* Reexamination of U.S. Patent No. 8,484,260, Control No. 90/015,221 dated November 13, 2023 |
| E. | Notice of Intent to Issue *Ex Parte* Reexamination Certificate, Control No. 90/015,221 dated December 21, 2023 |
| F. | Declaration of Patrick McDaniel Regarding Claim Construction dated February 5, 2024 |
| G. | U.S. Patent No. 8,484,260 |
| H. | Microsoft computer dictionary, Fifth Edition. Microsoft Press, 2002, pp. 12, 73, 192, 271, 430-431 |
| I. | Declaration of Patrick McDaniel, Ph.D. – U.S. Patent No. 8,484,260 (Claims 1-8) dated December 14, 2023, submitted in Case No. IPR2024-00285. |

1    **I.    INTRODUCTION**

2    Plaintiff Entangled Media, Inc. ("Entangled Media") hereby submits its Opening Claim

3    Construction Brief for United States Patent Nos. 8,296,338 ("'338") and 8,484,260 ("'260")

4    (collectively, the "Asserted Patents") to address ten disputed claim terms/phrases. Of these terms,

5    Defendant Dropbox, Inc. ("Dropbox") argues that one term is indefinite.

6    In general, Entangled Media requests the Court apply plain and ordinary meaning or, when

7    necessary, adopt common-sense constructions that stem from the teachings of the intrinsic record. On

8    the other hand, Dropbox reaches for contradictory evidence outside the intrinsic record, unfairly

9    limiting the scope of the asserted claims to avoid infringement. The Court should adopt Entangled

10    Media's proposed constructions and find that Dropbox has not met its burden on indefiniteness.

11    **II.    LEGAL PRINCIPLES OF CLAIM CONSTRUCTION**

12    Claim construction is a matter of law "exclusively within the providence of the court,"

13    *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), and is governed by established

14    legal standards. Claims are construed to have the meaning they would have to a fictional person of

15    ordinary skill in the art ("POSITA") at the time of the invention. *See Innova/Pura Water, Inc. v.*

16    *Safari Water Filtration Sys. Inc.*, 381 F.3d 1111 (Fed. Cir. 2004). The POSITA is an objective person

17    who has average knowledge, skill, and expertise in the claimed invention's specific technical or

18    scientific field. *See Phillips*, 415 F.3d 1303 (*en banc*).[1]

19    "It is well-settled that, in interpreting an asserted claim, courts should look first to the intrinsic

20    evidence of record, i.e., the patent itself, including the claims, the specification (drawings and written

21    description) and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90

22    F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he claims themselves provide substantial guidance as to the

23    meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. "To begin with, the context in which a

24    term is used in the asserted claim can be highly instructive." *Id.* Caution must be exercised, however,

25    when looking to other claims since limitations in dependent claims cannot be read into the

---

26    [1] Here, Entangled Media states that, for purposes of the Asserted Patents, a POSITA would possess a

27    bachelor's degree in computer science, electrical engineering, or similar discipline, and have two
        years of relevant experience in software engineering or a similar field. Ex. A, ¶ 42.  Dropbox has

28    proposed a similar definition.  Ex. F, ¶ 36.

independent claims from which they depend. *Id.* at 1314-15 (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)).

"The specification 'is always highly relevant to the claim construction analysis. Usually, it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). But the claims should not be construed to cover only the preferred embodiment or one of the disclosed embodiments. *See, e.g., Phillips*, 415 F.3d at 1323. Likewise, while the specification is instructive as to claim meaning, it is a "cardinal sin" of claim construction to read limitations from the specification into the claims. *See, e.g., Phillips*, 415 F.3d at 1320; *see also Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011).

The prosecution history can also inform claim interpretation, such as by showing how the patentee understood the invention. *Phillips*, 415 F.3d at 1317. An explicit statement made by the patentee during prosecution to distinguish the claimed invention over prior art may also serve to narrow the scope of the claim. *See, e.g., Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998). The prosecution history may also provide a definition for a claim term when none can be found in the specification. *See Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341 (Fed. Cir. 2001).

Courts can also use extrinsic evidence, such as "expert and inventor testimony, dictionaries, and learned treatises" in claim construction. *Phillips*, 415 F.3d at 1317.

## III.    LEGAL PRINCIPLES OF INDEFINITENESS

A patent is presumed valid. 35 U.S.C. § 282. Accordingly, when a patent issues, it is presumed to comply with the definiteness requirement established under 35 U.S.C. § 112. *See Nature Simulation Sys. v. Autodesk, Inc.*, 50 F.4th 1358, 1361 (Fed. Cir. 2022). "The burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent." *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015). The party asserting indefiniteness must therefore prove invalidity by clear and convincing evidence. *Id.*; *see also Microsoft Corp. v. I4I Limited Partnership*, 564 U.S. 91 (2011).

Under 35 U.S.C. § 112, a claim must "particularly point[] out and distinctly claim[] the subject matter" regarded as the invention. Courts apply this definiteness requirement by assessing

whether "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120 (2014) (quoting *Markman*, 517 U.S. at 373).

General principles of claim construction apply when evaluating indefiniteness. *See HZNP Medicines LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 688 (Fed. Cir. 2019). Claim terms should be given the ordinary and customary meaning to a person of ordinary skill in the art at the time of the invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The claim language is "of primary importance" when determining the bounds of the claimed invention. *Id.* at 1312.

## IV. BACKGROUND OF THE INVENTION

The '338 Patent, entitled "Method for a Cloud-Based Meta-File System to Virtually Unify Remote and Local Files Across a Range of Devices' Local File Systems," issued on October 23, 2012 to inventors Erik Caso and Michael Abraham of Entangled Media. The '338 Patent claims priority to a provisional application filed on May 5, 2009. The '260 Patent is a divisional of the '338 Patent, and shares the same title and priority date. The '260 Patent issued on July 9, 2013. The Asserted Patents share a common specification.[2]

The Asserted Patents relate generally to the field of data virtualization, and more specifically to a method for using data virtualization with a cloud-based file system, shared among devices and integrated into the device operating system.  Ex. B, 1:19-25. Virtually representing the data means the files can be stored in one physical location, or at least less than all physical locations, and not stored on all devices, instead using a meta-index to store the lightweight metadata. *Id.*, 2:12-51; Figs 2, 3 and 6. The meta-index contains each of the meta-indices of all the other devices, creating a single master meta-index.  *Id.*, 6:4-24.  The meta-index and single file system also ensures that the local and virtual files appear in the same directory/folder.  *Id.*, 2:12-51; Figs 2, 3 and 6. The result is that the patented invention allows consumers to share and synchronize their digital content, such as photos, videos and documents, across all internet-connected devices. *Id.*

---

[2] Because the Asserted Patents share a common specification, references herein in the "Background of the Invention" section will be made to the '338 Patent for brevity.

1    The claims of the '260 Patent additionally disclose using a peer-to-peer network for

2 transferring data between the devices. This option allows the devices to communicate and share their

3 data and resources. *Id.*, 8:38-48; Ex. A, ¶ 49.

4   **V.    CLAIM CONSTRUCTION REGARDING U.S. PATENT NO. 8,296,338**

5       **A.    "Singular file system" ('338 Claim 1, 7; '260 Claim 1, 4, 5, 7, 8)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "System wherein local and virtual files are shown in the same directories/folders" | "A system with a common, unified view of all data across more than one device so that all of a user's devices appear to share one single native file system containing all of the user's files across all devices." |

11    Entangled Media's proposed construction comports with the intrinsic record. At the outset, in

12 the specification, the patentee defined "file system" to mean "the component within an operating

13 system responsible for managing all manner of files, as well as presenting them within a graphical

14 user interface." Ex. B, 4:25-27. *See Vitronics*, 90 F.3d at 1582 ("a patentee may choose to be his own

15 lexicographer and use terms in a manner other than the ordinary meaning, as long as the special

16 definition of the term is clearly stated in the patent specification or file history."). Therefore, the

17 Court need only determine what it means to be a ***singular*** file system.

18    The purpose of the patented invention is to "unify the representation of files across devices for

19 availability of and access to data across multiple devices a user might own." Ex. B, 1:19-25. As the

20 patentee explained in its Response in Ex-Parte Reexamination of Patent No. 8,484,260, Ex. D, 7,

21 "[t]he disadvantage of prior art mounting or mapping systems is that they do not provide a ***singular***

22 ***file system*** in which the local files and virtual files share ***the same directory or folder*** on the first

23 device, nor a visual representation of the singular file system on the first device that is identical to a

24 visual representation of the singular file system on the second device."[3]

25    The patented system provides that unified and singular view of the files. The prior art cited in

26 the reexamination, on the other hand, discloses a separate presentation and management of files. For

---

27

[3] Unless otherwise noted, all contents of internal quotations that are bolded and italicized are

28 "emphasis added."

example, the Tsang reference shows two devices separately in a combined file space, each with their own "Documents" folder and a listing of the files found on each device in that device's separate folder. *See* Ex. D, 8. As the patentee pointed out, the invention of the '260 Patent requires that the local and virtual files share a ***same*** location on the first device, which is something Tsang (and the other prior art) does not disclose. *Id.*, 11-12. Reexamination proceedings are considered part of a patent's file history, and therefore intrinsic evidence to be accorded great weight during claim construction. *See Phillips*, 415 F.3d at 1317. And statements made by a patentee during a reexamination proceeding are relevant to determining claim scope. *See Nikken USA, Inc. v. Robinsons-May, Inc.*, 51 Fed. Appx. 874, 884 (Fed. Cir. 2002).

The patentee prevailed in the reexamination, with the patentability of the challenged claims confirmed, because the Examiner agreed that none of the cited prior art disclosed a singular file system on the first device wherein the local files and virtual files share the same location on the first device. *See* Ex. E, 16-18.

These statements in the reexamination proceeding show that the patentee intended "singular" to mean "same"—as in, sharing the same location (a directory or folder) on a device. Entangled Media's proposed construction aligns with that understanding. Taken together with the patentee's definition of "file system" in the specification, Entangled Media's proposed construction of "singular file system" ("system wherein local and virtual files are shown in the same directories/folders") captures the patentee's intent as reflected in the intrinsic record.

**B.** **"Providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients" (Claim 1)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>**"The at least one server provides to each of the multiple devices via the individual software clients the single master meta-index** | **"The at least one server provides to each of the multiple devices via the individual software clients both (1) the single master meta-index and (2) each of the separate, individual meta-indices of each of the other devices."** |

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| **with each of the meta-indices of each of the other devices."** | |

The Court should find that the disputed term "providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients" is easily understood without further construction because the plain and ordinary meaning provides an objective boundary regarding the scope of the claim.

Dropbox does not request construction of several terms found in this disputed phrase, such as "master meta-index," "meta-indices of each of the other devices," and "individual software clients." And the only meaningful difference between Dropbox's proposed construction and the claim language appears to be Dropbox's addition of the words "both" and "each of the separate, individual." These additional terms should not be imported into the claim language.

First, the addition of the word "both" is superfluous because the plain and ordinary meaning of this disputed phrase requires the server to provide the single master meta-index ***and*** meta-indices for each of the other multiple devices. Dropbox's construction provides nothing not already recited by the claim itself. *See Apple, Inc. v. Ameranth, Inc*., 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Construing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant.").

Second, it would not be clear to a POSITA what "separate" means in Dropbox's proposed construction or why such separation is important to the claimed invention. *See* Ex. A, ¶ 90. Nothing in the specification or file history discusses how separation of the meta-indices is achieved and maintained, or even how it is necessary to the claimed invention. It would also be unclear how to ensure the required separation between the meta-indices given the claim's preceding requirement of "integrating" the individual meta-indices to create a single master meta-index. *Id.*

Similarly, the language of Claim 1 shows that the server need not provide ***individual*** meta-indices of each of the other devices. *See Allergan Sales, LLC v. Sandoz, Inc*., 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("[C]laim construction must begin with the words of the claims themselves."). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to

the meaning of the term. *See Phillips*, 415 F.3d at 1314. Here, prior to this term, the phrase "individual meta-indices" appears twice in Claim 1 of the '338 Patent: (1) "providing by the individual software clients via the multiple devices ***individual meta-indices*** of the inventoried data …" and (2) "integrating by the at least one server the ***individual meta-indices*** to create a single master meta-index." Ex. B, 11:22-59 [Claim 1]. The claimed steps that occur after the integration of the individual meta-indices do not include the phrase "individual meta-indices." A POSITA would therefore understand that the claim does not require the meta-indices to stay individual after the integration. Ex. A, ¶ 92.

Dropbox's proposed construction unnecessarily imports redundancy into the claim and improperly seeks to rewrite the claim language to import a "separateness" requirement that does not exist. Claim construction aims to clarify ambiguities, not simply re-write the claims using different words. *Good Kaisha IP Bridge 1 v. OmniVision Tech.*, Case No. 17-cv-00778-BLF, 2018 WL 1989577 at *8 (N.D. Cal. March 20, 2018). Dropbox's construction does not add clarity, and provides no reason to re-write the claim.

Should the Court determine a specific construction is warranted, Entangled Media proposes the construction: "[t]he at least one server provides to each of the multiple devices via the individual software clients the single master meta-index with each of the meta-indices of each of the other devices." This construction aligns with Dropbox's construction after removing the terms "both" and "each of the separate, individual" and follows the teachings of the '338 Patent. Ex. B, 6:15-18.

For these reasons, Entangled Media's construction should be adopted and Dropbox's rejected.

**C.    "Continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon" (Claim 1)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>**"While the software client is running, updating the single master meta-index on the** | **"Running update software without interruption to immediately update in response to changes to the data indexed on each of the multiple devices (1) the single master meta-index on the at least one server, and (2) the single master meta-index on each of the multiple devices."** |

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| **at least one server and each of the multiple devices in response to changes to the data indexed thereon"** | |

The parties disagree about what it means for the master meta-index to be "continually updating." As an initial matter, a POSITA at the time of the invention would have understood that the master meta-index is updated by the software in response to changes to the indexed data, and not through any action initiated by the user. *See* Ex. A, ¶¶ 20-22. The specification supports this reading. *See* Ex. B, 2:45-49 ("[accounting for local and remote files] is done ***without the user having to continually designate files for inclusion or exclusion***."); 5:24-35 ("Critical to the unique nature of this system is that it is totally transparent, ***not requiring the user to interact with the software***. . . . enabling the local operating system to manage remote and local file[s] as if they are all stored in the same location. For example, moving a file on one device results in the file moving on all other devices . . ."). Therefore, a POSITA would understand that "continually updating" means updating without the need for user intervention.

Moreover, the specification provides an example where the meta-indices are updated in response to a change in the data that is initiated by the running software client:

> By way of example, if the physical file of File.DOC$_{PHY}$ is located on the hard drive of Device A, a virtual file of File.DOC$_{VIR}$ will be located in the same corresponding file directory of the hard drive on registered Device B and Device C. When the user moves File.DOC$_{PHY}$ from its stored directory (e.g. . . . /My Documents/Proposals) on the hard drive of Device A to the desktop directory of Device A, ***this move will be indexed by the software client of Device A, provided to the web service, the user meta-index database at the web service will be updated to reflect the move***, the software clients of Devices B and C will be notified of the move and the software clients of Devices B and C will updated Devices B and C, respectively, to show File.DOC$_{VIR}$ on the desktops (or equivalent locations) thereof.

Ex. B, 8:2-17. Importantly, the invention's response would be initiated as long as the software client is running. *See* Ex. A, ¶ 21. In sum, a POSITA would understand that "continually" means the update is done in response to changes made while the software client is running. *Id.*, ¶ 22. Entangled Media's proposed construction captures this understanding.

Dropbox's proposed construction is far too restrictive. First, the intrinsic record contains no support for Dropbox's proposition that "continually" means ***the software*** must be run "without interruption." Instead, the word "continually" in the claim language refers to the way in which the meta-index is updated. A POSITA would understand that the meta-index is continually updated whenever the data changes—there is no indication in the intrinsic record that the software itself must be run "continually," or without interruption. Dropbox's proposed construction fails because it is based on a misreading of the claim language.

Second, there is likewise no intrinsic support for requiring the software to "immediately" update. While an immediate update may be one possible mode of operation, the claims are not so restricted. In addition, Dropbox's proposed construction would also require the Court to construe "immediately" as it relates to the relevant technology. That is not a straightforward task. For example, a single dictionary provides several alternate, contrasting definitions for "immediately," any of which could reasonably apply under Dropbox's construction. Ex. C ("immediately: 1. Without intermediary. . . ; 2. With no person, thing, or distance, intervening in time, space, order, or succession; next or just . . . closely, proximately, directly; 3. Without any delay or lapse of time; instantly, directly, straightaway, at once."). In sum, Dropbox's proposed construction introduces more uncertainty to the Court's task, not less.

The Court should find that no construction is needed for this phrase. However, if the Court wishes to construe this phrase, it should adopt Entangled Media's proposed construction, which aligns with the intrinsic record and how a POSITA would have understood "continually updating" at the time of the invention.

**D.** **"Visual representation of the virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one of the multiple devices" (Claim 5)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "The same list of files is shown on multiple devices regardless whether those files include both virtual and actual files" | Plain and ordinary meaning |

A POSITA would have understood this disputed phrase to mean: "The same list of files is shown on multiple devices regardless whether those files include both virtual and actual files." Ex. A, ¶ 64. This is because (i) the invention focuses on a singular file system where multiple devices have the same lists of virtual and actual files; (ii) the specification provides special context and use of the term "indistinguishable"; and (iii) the specification acknowledges that, due to different devices and operating systems being used, the visual representations of virtual files on remote devices will contain some differences relative to visual representations of actual files on local devices. However, despite these format, size, and other differences resulting from the use of different devices, a POSITA would have understood this phrase to mean that the visual representations of the files on multiple devices would show the same list of files on these multiple devices regardless whether those files include both virtual and actual files. *Id.*, ¶¶ 68-69.

As stated in other sections of this brief, including the discussion regarding the term "singular file system" (section I above), the specification and related file histories distinguish the claimed invention from prior art "mounting" systems. *See id.*, ¶¶ 65-67; Ex. B, 1:58-65; Ex. D, 7. Prior art mounted systems could, for example, involve two computers mounting their respective remote folder into the other computer. Ex. A, ¶ 65. This would render each remote folder visible within a local file system of the other computer, but the respective local and remote files for each computer (i) would not be located in the same folder and (ii) would contain different lists of files in their respective local and remote folders. *Id.*

The Asserted Patents, on the other hand, teach a singular file system where, for example, two or more computers each have a respective single folder/file location that shows the same list of files—even if the files include a mix of virtual and actual files. *Id.*, ¶ 66. This is demonstrated by Figure 6 of the patents, which the specification explains:

> FIG. 6 illustrates an exemplary unified file structure **20** UFS created from the individual device file structures **12** UFS, **14** UFS and **16** UFS and on-line service file structure 18 UFS in accordance with the methods described herein. This unified file structure **20** UFS will replace file structures **12** UFS, **14** UFS and **16** UFS in devices **12**, **14** and **16**.[4]

---

[4] Although the specification refers to various unified file structures with the acronym UFS, Figure 6 actually denotes all of these structures with the acronym FS rather than UFS.

Ex. B, 9:12-18. Figure 6 accordingly shows how, after a file structure on each device has been modified, a visual representation of the singular file system on each device shows the same list of files, namely, the list of files labeled 20 FS. Ex. A, ¶ 67.



Figure 6

Dropbox proposes to use "plain meaning" of the disputed phrase, which would involve importing dictionary definitions for "indistinguishable" (such as "incapable of being discriminated or recognized as different …."). *See, e.g.,* Ex. F, ¶¶ 53-54, 73-76. Such a proposal contravenes the '338 Patent specification as outlined above and how a POSITA would have understood the disputed phrase. Moreover, the use of the term "indistinguishable" within the disputed phrase does not mean that there can be no differences between the (i) visual representation of virtual files on remote devices and (ii) the visual representation of actual files on local devices. To the contrary, a POSITA would readily understand that visual representations of files on remote computers could differ somewhat from visual representations on a local device, depending on different screen sizes, color settings, other user interface customizations, and computers running different operating systems with different user interfaces that present files to users somewhat differently. Ex. A, ¶ 68.

This is acknowledged by the '338 Patent: "In the exemplary embodiments described herein, ***the software clients recognize and account for differences in file structures and nomenclature***. So, for example, documents stored in the 'Documents' folder of a user's registered Mac would show up in the 'My Documents' folder of a Windows system registered to the same user." Ex. B, 9:5-10.  The '338 Patent elsewhere states: "The client creates the virtual representation of all remote files using the same 'path' or storage location on the remote device, resulting in a common, ***single view of all data across all devices that is consistent with the formatting and structure of the local files system***." Ex. B, 5:19-23.  Finally, the '338 Patent acknowledges that virtual and local files can be deemed "indistinguishable," even if they differ in some ways, as long as they "appear ***in essentially all way***s the same as a local file." Ex. B, 6:34-36. ("The virtual files ***appear in essentially all ways*** the same as a local file, making them indistinguishable unless such a distinction is enabled as a separate option.")

For these reasons, Entangled Media's construction should be adopted and Dropbox's rejected.

**E.** **"The virtual files indistinguishable from the local files" (Claim 1) / "*The virtual files indistinguishable from the local files* by the local file system at each of the multiple devices" (Claim 1)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "The virtual files manageable as if they were local files" | Plain and ordinary meaning |

A POSITA would have known that the phrase "the virtual files indistinguishable from the local files" or as used in the larger phrase, "the virtual files indistinguishable from the local files by the local file system at each of the multiple devices" referred to and meant "[t]he virtual files manageable as if they were local files." Ex. A, ¶ 52. A POSITA would further understand that this phrase, as used in claim 1 of the '338 Patent, refers to the portion of the specification that instructs that the local and remote files are managed as if they are stored in the same location, *i.e.*, the virtual files are managed as if they were local files:

> Critical to the unique nature of this system is that it is totally transparent, not requiring the user to interact with Software, nor distinguish files in local vs. remote locations. All file metadata is integrated into the local device so that the view of data is common across all devices as if the files were actually stored locally across all devices, even though they are not. ***In essence, each device file system then acts as if it is a shared file system; enabling the local operating system to manage remote and local file as if they are all stored in the same***

*location.* For example, moving a file on one device results in the file moving on all other devices, even if it was moved on a device where that file is virtual.

Ex. B, 5:24-35; *see also* Ex. A, ¶ 53. Plaintiff's construction is also consistent with other sections of

the specification noting that physical and virtual files are treated the same—*i.e.*, virtual files are

managed as if they were local files:

> The virtual files act as mock files and mock the properties of the physical file. By way of example, if the physical file of File.DOC$_{PHY}$ is located on the hard drive of Device A, a virtual file of File. DOC$_{VIR}$ will be located in the same corresponding file directory of the hard drive on registered Device B and Device C. When the user moves File. DOC$_{PHY}$ from its stored directory (e.g. . . . /My Documents/Proposals) on the hard drive of Device A to the desktop directory of Device A, this move will be indexed by the software client of Device A, provided to the web service, the user meta-index database at the web service will be updated to reflect the move, the software clients of Devices B and C will be notified of the move and the software clients of Devices B and C will update[] Devices B and C, respectively, to show File. DOC$_{VIR}$ on the desktops (or equivalent locations) thereof. Conversely, if the same actions were performed on a virtual file, instead of the physical file, the same corresponding routines and results would occur, thus ensuring that ***regardless of a user interacting with the physical or virtual version of a file, they are treated as if they were the same***.

Ex. B, 8:1-23.

The above sections of the specification, as well as others, note the "transparent" (*i.e.*, invisible

or behind-the-scenes) nature of the claimed system. For example, when interacting with remote files,

portions of the claimed file system do so transparently relative to portions of the local system:

> During the time that the request to Device B for the file transfer to Device A is happening, the operating system, and in turn the requesting application (Adobe Reader) has no idea that the requested file is not local to Device A and is simply waiting for that command to return the number of bytes that it requested so that it can display them. The software clients, in combination with the web service, transparently perform numerous commands to request, locate and retrieve a physical copy of the virtual file without the knowledge of the requesting application or operating system.

Ex. B, 8:51-61.  A POSITA would understand this "transparent" concept and that "virtual files

indistinguishable from the local files by the local file system" means the virtual files are manageable

as if they were local files. *See* Ex. A, ¶¶ 53-56, 61. For example, a POSITA would understand related

concepts in the computer science and software programming fields that include "information hiding,"

"encapsulation," and "abstraction." *See* Ex. A, ¶ 53-56; and Ex. H. These practices enable virtual files

to be managed as if they were local files by providing a common interface for both types of files. In

this way, the common interface is an "abstraction" of a file that "encapsulates" the internal structure of each file (*i.e.*, whether it is virtual or local). Ex. A, ¶¶ 58-60.

Dropbox proposes a "plain meaning" for this disputed term, and seeks to rely on dictionary definitions of "indistinguishable" that would improperly restrict the claim scope. For example, if a virtual file has any file property different from its corresponding local file, that virtual file cannot be "indistinguishable" from the local file by the local file system. Ex. F, ¶¶ 54, 56.  This goes too far, and contradicts the specification sections cited above, including the "transparent" nature of the system and how a POSITA would have understood that aspects of the claimed system would be hidden from portions of the local system.

For these reasons, Entangled Media's construction should be adopted and Dropbox's rejected.

## VI.    CLAIM CONSTRUCTION REGARDING U.S. PATENT NO. 8,484,260

### A.    "Is identical to" (Claim 1) / "A visual representation of the singular file system on the first device *is identical to* a visual representation of the singular file system on the second device" (Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| With respect to "is identical to": **"Shows the same list of files as"** | With respect to "is identical to": **"exactly the same as and does not differ in any way from"** |

The parties' positions regarding this disputed phrase largely track the disputed phrase at Section V.D of this brief. This disputed phrase regards the ***visual representation*** of singular file systems on different devices being identical, rather than section V.D's visual representation of ***virtual*** files on remote devices being indistinguishable from the visual representation of local files on local devices. Rather than argue "plain meaning" as Dropbox did for the "indistinguishable" term (in section V.D), Dropbox in this instance affirmatively argues that "identical," as used in claim 1 of the '260 Patent, means "exactly the same as and does not differ in any way from."

As discussed in Section V.D, a POSITA would have understood this phrase to mean: "The visual representation of the singular file system on the first device shows the same list of files as the visual representation of the singular file system on the second device." Ex. A, ¶ 63. This is due at least to (i) the invention's focus on a singular file system where multiple devices have the same lists of virtual and actual files; and (ii) the specification's acknowledgement that due to different devices

and operating systems being used, the visual representations of the singular file systems on different devices can contain some differences. *Id.*, ¶¶ 65-68. In other words, the specification acknowledges that the visual representation of the singular file system on different devices can be different at least in some respects, but that it is identical at least with respect to the singular file systems on the different devices showing the same/identical list of files. *Id.*, ¶¶ 68-69.

Incorporating by reference arguments from Section V.D, the Asserted Patents distinguish the prior art by teaching a singular file system where, for example, two or more computers or devices each have a respective single folder/file location that shows the same list of files. *Id.*, ¶¶ 65-67; Ex. G, 1:62-2:2; Ex. D, 7.  As discussed in Section V.D, Figure 6 of the Asserted Patents shows how after a file structure on each device has been modified, a visual representation of the singular file system on each device shows the same list of files, namely, the list of files labeled 20 FS. Ex. A, ¶¶ 66-67.

The use of the term "identical" within the disputed phrase does not mean that there can be no differences between the visual representations of the singular file system of different devices. To the contrary, a POSITA would readily understand that visual representation of the singular file system across different devices could show some differences, depending on different screen sizes, color settings, other user interface customizations, and computers running different operating systems that present files to users somewhat differently. *Id.*, ¶ 68. The Asserted Patents expressly acknowledge these differences in file structures, nomenclature, formatting, and structure of local files systems. *See, e.g.*, Ex. B, 5:19-23; 9:5-10.

Contrary to the specification's guidance that the visual representation of the singular file system may differ is some respects, and therefore would not be identical in all respects, Dropbox doubles down on a proposed construction that proposes precisely the opposite. But requiring the visual representations of the singular file system across different devices be "exactly the same and does not differ in any way" clashes with the specification's acknowledgement that there can be differences in the visual representations of the singular file system on different devices. A POSITA would also know that "is identical to" as used in claim 1 of the '260 Patent does not mean "exactly the same as and does not differ in any way from." Ex. A, ¶ 68.

For these reasons, Entangled Media's construction should be adopted and Dropbox's rejected.

1

2

**B.**    **"Requesting by a software client on the first device that a peer-to-peer connection be brokered by server-based web service between the first and the second device" (Claim 1)**

3

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>**"a software client on the first device requests that a server-based web service provide communication parameters for a peer-to-peer connection between the first and second device."** | **"a software client on the first device requests that a server-based web service establish a peer- to-peer connection between the first and second device."** |

4

5

6

7

8

9

10

11    The parties' dispute centers on the meaning of the term "brokered." Entangled Media

12    proposes that this term would be readily understood by a jury without construction. The word

13    "broker" when used as a verb in computer science generally means to "facilitate" or "arrange." Ex.

14    A, ¶ 96. Thus, the term "brokered" has a meaning analogous to the general English usage of this

15    term.

16    To the extent the Court requires a construction, Entangled Media proposes that "brokered"

17    mean to "provide communication parameters." The specification directly supports this construction

18    as it uses the term "broker a connection" and then immediately defines it to mean to provide

19    "communication protocol and parameters": "[T]he software client . . . asks the web service to ***broker***

20    ***a connection*** between Device A and Device B S125. The web service determines what type of

21    connection is possible between Device A and Device B and ***instructs both devices of the***

22    ***communication protocol and parameters*** to be used for the transfer." Ex. G, 8:42-48. This definition

23    of "brokered" is further supported by the specification's teachings where the act of brokering

24    involves ***instructing*** the devices how to communicate: identifying the protocol to be used by the

25    devices and providing the parameters of the communication. *Id.*

26    Dropbox's proposal re-writes the claim language while construing the word "brokered" to

27    mean "establish." This construction has no support in the specification or file history. Nowhere do the

28    patents teach that "broker" means "establish" and none of Dropbox's dictionary definitions include

an entry for "broker." Dropbox also ignores the specification's definition of brokering to include instructing both devices of the communication protocol and parameters to be used for the transfer. *Id.* Dropbox also cites the specification's definition of "Web Service' to support its construction, but that citation does not discuss the claimed "brokered" term. *Id.*, 4:48-58. Given the clear definition of "brokered" in the specification, Dropbox's proposal should be rejected. *See Medrad, Inc. v. MRI Devices Corp.,* 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

C.    **"Transferring the corresponding physical file from the second device to the first device" (Claim 1)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>**"transmitting the data of the corresponding physical file from the second device to the first device."** | **"relocating the content of the corresponding file off of the second device and to the first device"** |

The parties' dispute centers on whether the term "transferring," as it is used in the '260 Patent, necessitates removing or deleting a file from its original location when it is transferred to another location. Because Dropbox's proposed construction finds no support in the specification, it should be rejected.

Dropbox proposes that, as part of the transfer of the corresponding physical file from the ***second device [remote device]*** to the ***first device [local device]***, the content of the corresponding file is necessarily removed from the ***second device [remote device]***.

Putting aside the issue of whether any limitation from the specification should be imported into the claims in the first instance, Dropbox has not—and cannot—point to any place in the specification where files being transferred from a second device to a first device are deleted from the second device as Dropbox proposes. Indeed, the portion of the specification cited by Dropbox makes

clear that even after a file is transferred from the remote device [second device] to the local device [first device], "it can be viewed, edited, or modified in any way by the user" and that "[u]pon completion of any modification to the file, all changes are propagated back to the remote device and the local file is restored to its 'virtual' state." Ex. G, 6:64-7:4. The specification provides that the *local device [first device]* then removes the file from memory, but that removal is not inherent to the transfer, itself, and says nothing about whether the file is first removed from the *remote device [second device]* as Dropbox proposes. In other words, the fact that a file may be ultimately deleted from the *local device [first device]* in one embodiment—which Dropbox will be unable to show should be imported into the claim—cannot be said to mean that the file must also be deleted from the *remote device [second device]* as an inherent part of the transfer from the second device to the first. *See id.*, 7:1-4; *see also id.*, 3:13-32 (silent as to removal or deletion of file from remote device during transfer), 8:10-20 (same).

And the specification describes elsewhere that "the entirety of the physical file need not be downloaded [from the remote device] in order to be responsive to most actions." *Id.*, 8:64-66. If the entirety of the physical file is not downloaded to the first device, and the file is subsequently "relocate[d] . . . off of" the second device as Dropbox proposes, it is unclear, then, how the entirety of the file could be preserved such that "it can be viewed, edited, or modified in any way by the user" as the specification provides. *See id.*, 6:46-7:4; *See* Ex. A, ¶ 80.

Dropbox's expert's contention that its proposed construction is necessitated by dependent claim 6—which provides that the modified physical file is "push[ed] . . . back" to the second device after modification—is misplaced. *See* Ex. F, ¶ 107. The modified physical file could still be pushed back to the second device [remote device] whether or not the original version of the file is deleted when the file is first "transferr[ed]" from the second device to the first. *See* Ex. A, ¶ 76-79; *see also infra*, Section VI.D.

A POSITA would understand that Defendant's proposed construction is belied by the specification and does not reflect the plain and ordinary meaning of the term. *See* Ex. A, ¶ 80. Entangled Media believes that no construction is necessary for this term, but if the Court is inclined

to construe it, the Court should find that it means "transmitting the data of the corresponding physical file from the second device to the first device."

### D.    "Pushing the physical file back to the second device" (Claim 6)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>**"Transmitting the data of the physical file to the second device at the instigation of the first device."** | **"pushing the content of the file off of the first device and back to the second device"** |

Again, Dropbox again attempts to bootstrap a deletion requirement onto the claim without any support in the claim language or the specification. Specifically, Dropbox proposes that the term "push" be construed to require that the physical file be removed from the first device.

A POSITA would understand that the term "push" is often used to represent a communication, message, or transmission that occurs at the instigation of the sender. *See* Ex. A, ¶ 77, Ex. H, 430-431. The meaning of "push" contrasts with that of "pull," which refers to a communication, message, or transmission that occurs at the instigation of the receiver. *Id.* The disclosures in the '260 Patent are consistent with the plain and ordinary meaning of the term "push." For example, the '260 Patent states, "[u]pon completion of any modification to the file, all changes are propagated back to the remote device." Ex. G, 6:66-7:1; *see* Ex. A, ¶ 77. The specification then specifies "*at this point*, the local device removes the aforementioned file from memory, so that it is stored only in the single location device on which it was originally kept." Ex. G, 7:1-4. Thus, in this embodiment, only *after* the file has been pushed to the second device will any physical file be deleted from the first device. Dropbox conflates these separate steps in an attempt to import a limitation into the claims without the required disavowal or lexicography. *See Impinj, Inc. v. NXP USA, Inc.*, No. 19-CV-03161-YGR, 2022 WL 2125134, at *3 (N.D. Cal. Mar. 21, 2022) ("Reading a limitation into a claim beyond its ordinary meaning is improper absent disavowal or lexicography.") (citing *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012)).

1    Again, Entangled Media asks the Court to give this term its plain and ordinary meaning, but

2    to the extent it is inclined to construe it, such construction should reflect the breadth of the claim as

3    written and Entangled Media's proposal should be adopted.

    **E.    "Appear indistinguishable to the singular file system" (Claim 1) / "Modifying the singular file system on the first device to make local files and virtual files *appear indistinguishable to the singular file system*" (Claim 1)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "Manageable by the singular file system as if they are stored in the same location" | Indefinite |

9    As testified by Plaintiff's technical expert, Dr. Edwards, a POSITA would not conclude that

10   the phrase "appear indistinguishable to the singular file system," standing alone and as part of the

11   longer phrase "modifying the singular file system on the first device to make local files and virtual

12   files appear indistinguishable to the singular file system" is indefinite. Ex. A, ¶ 51. To the contrary,

13   Dr. Edwards opines that the phrase "appear indistinguishable to the singular file system" means

14   "manageable by the singular file system as if they are stored in the same location." *Id.*

15   As Dr. Edwards explains, a POSITA would know that the disputed phrase, as used in claim 1

16   of the '260 Patent, refers to the portion of the specification that explains that local and remote files

17   are managed as if they are stored in the same location:

> Critical to the unique nature of this system is that it is totally transparent, not requiring the user to interact with Software, nor distinguish files in local vs. remote locations. All file metadata is integrated into the local device so that the view of data is common across all devices as if the files were actually stored locally across all devices, even though they are not. ***In essence, each device file system then acts as if it is a shared file system; enabling the local operating system to manage remote and local file as if they are all stored in the same location.*** For example, moving a file on one device results in the file moving on all other devices, even if it was moved on a device where that file is virtual."

23   Ex. G, 5:28-39; *See also* Ex. A, ¶ 53.

24   This "transparent" (*i.e.*, invisible or behind-the-scenes) nature of the claimed system

25   addresses, among other things, the appearance of various aspects of the claimed file system. For

26   example, when interacting with remote files, portions of the claimed file system do so transparently

27   relative to portions of the local system:

28

1
2
3
4

> During the time that the request to Device B for the file transfer to Device A is happening, the operating system, and in turn the requesting application (Adobe Reader) has no idea that the requested file is not local to Device A and is simply waiting for that command to return the number of bytes that it requested so that it can display them. The software clients, in combination with the web service, transparently perform numerous commands to request, locate and retrieve a physical copy of the virtual file without the knowledge of the requesting application or operating system.

5   Ex. G, 8:54-64.  This "transparency" would be widely understood by a POSITA and would

6   underscore to a POSITA, in view of the specification portions identified above, that the phrase

7   "appear indistinguishable to the singular file system" means "manageable by the singular file system

8   as if they are stored in the same location." *See* Ex. A, ¶¶ 53-56, 61. Consistent with the discussion of

9   "transparent" above, the appearance of different system elements to a wider system would

10  additionally be understood by a POSITA, because they relate to practices within the computer science

11  and software programming fields such as "information hiding," "encapsulation," and "abstraction."

12  *Id.,* ¶ 53-56; and Ex. H, 12, 192, 271.  A POSITA would have also understood that, in computer

13  software, software and data components may have an interface (or even multiple interfaces) that

14  defines their externally accessible properties and characteristics—*i.e.*, how they "appear" to other

15  software and data components. *Id.*, ¶ 57. Additionally, a POSITA would have understood that

16  externally accessible properties and characteristics of a component—*i.e.*, the component's

17  "appearance"—may change depending on the context and/or which external component is involved.

18  *Id.*, ¶ 59.  Dr. Edwards testifies that, having such basic computer science and software programming

19  knowledge as described above, a POSITA reading claim 1 of the '260 Patent would have understood

20  the phrase "appear indistinguishable to the singular file system" in light of the specification. *Id.*, ¶ 60.

21      Dr. Edwards further testifies that a POSITA would not have found the phrase "appear

22  indistinguishable to the singular file system," standing alone and as part of the longer phrase

23  "modifying the singular file system on the first device to make local files and virtual files appear

24  indistinguishable to the singular file system" to be indefinite.  Ex. A, ¶ 61.  Rather, a POSITA would

25  have known that the phrase "appear indistinguishable to the singular file system" means "manageable

26  by the singular file system as if they are stored in the same location" in the context of claim 1 of the

27  '260 Patent. *Id.*

28

Dropbox's position appears to be primarily, if not wholly, based on its argument that local and virtual files cannot appear indistinguishable to a file system because metadata indicates whether the files are local or virtual. *See, e.g.*, Ex. F, ¶¶ 84, 88-89. This position, in turn, relies on their assumption that "the metadata of a particular file is typically stored alongside the file in a file system in which the file resides." *Id.*, ¶ 84. Yet Dropbox's assumption is not borne out, nor even directly supported by their evidence.  At best, it appears to be an overgeneralization, which cannot meet the evidentiary burden to find claim 1 of the '260 Patent indefinite, particularly in view of Dr. Edwards' testimony for how and why that claim limitation would be understood by a POSITA. *See, e.g., Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015); *THX, Ltd. v. Apple, Inc.*, 13-cv-01161-HSG, 2016 WL 6563340, at *13 (N.D. Cal., Nov. 4, 2016) (finding Apple did not meet its burden to show indefiniteness where the plaintiff's expert provided "context-specific analysis of [the disputed term] to highlight the portions of the specification that inform a person of ordinary skill in the art regarding the scope of the invention with reasonable certainty," particularly where "a person of ordinary skill in the art would be able to ascertain general guidelines for the [disputed term] from the specification's design goals and examples.").

Dropbox's general allegations regarding indefiniteness, and Dr. McDaniel's testimony on this issue, directly contradict Dr. McDaniel's prior testimony submitted in support of Dropbox's petition for *Inter Partes* Review ("IPR") before the Patent Office challenging the validity of the '260 Patent. *See generally* Ex. I.  After acknowledging that IPR proceedings and district courts employ the same claim construction standard, Dr. McDaniel applied these same claim construction standards and testified that no claim construction was needed. Instead, he applied "plain and ordinary meaning" to all terms, which included claim 1 and the claim language Dropbox now asserts to be indefinite.  Ex. I, 36-37. Such inconsistent testimony undermines Dropbox's indefiniteness position. *See, e.g., American Technical Ceramic Corp. v. Presidio Components, Inc.*, 14-CV-6544, 2018 WL 1525686 at *15 (E.D. N.Y. March 27, 2018)  (finding the construction of a term in an IPR proceeding, which necessarily involves construction and application of claim terms, helps raise question as to how the same claim term can be found indefinite on a clear and convincing evidence standard in district court).

The '260 Patent enjoys a presumption of validity, which may only be overcome by clear and convincing evidence.  Here, Dropbox cannot meet its burden. For all of the above-cited reasons, Entangled Media's construction should be adopted and Dropbox's indefiniteness allegations should be rejected.

## VII.    CONCLUSION

For the reasons set forth above, Entangled Media respectfully requests that the Court reject Dropbox's constructions and adopt Entangled Media's constructions for the disputed claim terms.

1

2    Dated: March 21, 2024                    */s/ John E. Lord*
                                             John E. Lord (SBN 216111)
3                                            SKIERMONT DERBY LLP
                                             633 W. Fifth Street, Suite 5800
4                                            Los Angeles, CA 90071
                                             Phone: (213) 788-4500
5                                            Fax: (213)788-4545
                                             jlord@skiermontderby.com
6

7                                            Paul J. Skiermont (*pro hac vice*)
                                             (TX Bar No. 24033073)
8                                            Jaime K. Olin (SBN 243139)
                                             Ryan A. Hargrave (*pro hac vice*)
9                                            (TX Bar No. 24071516)
                                             Alexander E. Gasser (*pro hac vice*)
10                                           (WI Bar 1022659)
                                             SKIERMONT DERBY LLP
11                                           1601 Elm Street, Suite 5800
                                             Dallas, TX 75201
12                                           Phone: (214) 978-6600
                                             Fax: (214) 978-6601
13                                           pskiermont@skiermontderby.com
                                             jolin@skiermontderby.com
14                                           rhargrave@skiermontderby.com
                                             agasser@skiermontderby.com
15

16

17                                           *Attorneys for Plaintiff*
                                             ENTANGLED MEDIA, LLC
18

19

20

21

22

23

24

25

26

27

28