MORGAN, LEWIS & BOCKIUS LLP
Michael J. Lyons, Bar No. 202284
michael.lyons@morganlewis.com
Austin L. Zuck, Bar No. 318434
austin.zuck@morganlewis.com
Katerina Hora Jacobson, Bar No. 342384
katerina.horajacobson@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Karon N. Fowler, Bar No. 308145
karon.fowler@morganlewis.com
110 North Wacker Drive
Chicago, IL 60606-1511
Tel: +1.312.324.1000
Fax: +1.312.324.1001

Attorneys for Defendant
Dropbox, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ENTANGLED MEDIA, LLC, | Case No. 5:23-cv-03264-PCP |
| Plaintiff, | **DEFENDANT DROPBOX, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** |
| v. | |
| DROPBOX, INC., | Hearing Date:    May 2, 2024 |
| Defendant. | Time:    1:00 PM |
| | Location:    Courtroom 08, 4th Floor |
| | Judge:    Hon. P. Casey Pitts |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND AND TECHNOLOGY OVERVIEW ........................ 1

    A.    U.S. Patent No. 8,296,338 ("the '338 Patent") ........................ 1

    B.    U.S. Patent No. 8,484,260 ("the '260 Patent") ........................ 2

III.   DISPUTED PHRASES OF THE '338 PATENT ................................ 2

    A.    Phrase 1: "providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients" (claim 1) ............................ 2

        1.    Dropbox's construction reflects the plain and ordinary meaning. .............. 3

        2.    Plaintiff's construction ignores the intrinsic record to rewrite the claim and improperly broaden its scope ....................................... 5

    B.    Phrase 2: "virtual files indistinguishable from the local files by the local file system at each of the multiple devices" (claim 1) .................................... 6

    C.    Phrase 3: "continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon" (claim 1) .................. 8

    D.    Phrase 4: "singular file system" ('338 Patent claim 1) / ('260 Patent claims 1, 4) ................................................................... 11

    E.    Phrase 5: "visual representation of the virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one of the multiple devices" (claim 5) ....................................................... 12

IV.    DISPUTED PHASES OF THE '260 PATENT .................................... 14

    A.    Phrase 6: "modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system" (claim 1) ......................................... 14

    B.    Phrase 7: "a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device" (claim 1) ..................................... 17

    C.    Phrase 8: "requesting by a software client on the first device that a peer-to-peer connection be brokered by server-based web service between the first and second device" / "if the peer-to-peer connection is brokered." (claim 1) ...... 19

    D.    Phrase 9: "transferring the corresponding physical file from the second device to the first device" (claim 1) ............................................ 21

    E.    Phrase 10: "pushing the physical file back to the second device" (claim 6) ......... 24

V.     CONCLUSION ................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                                            **Page(s)**

3
4
*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ................................................................................................6

5
*Canopy Growth Corp. v. GW Pharma Ltd.*,
   No. 2022-1603, 2023 WL 3048243 (Fed. Cir. Apr. 24, 2023) ..................................................5
6

7
*Eon Corp. IP Holdings v. Silver Spring Networks*,
   815 F.3d 1314 (Fed. Cir. 2016) ..............................................................................................10

8
9
*Godo Kaisha IP Bridge 1 v. OmniVision Techs., Inc.*,
   No. 17-CV-00778-BLF, 2018 WL 1989577 (N.D. Cal. Mar. 20, 2018) ...................................6

10
*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
   527 F.3d 1379 (Fed. Cir. 2008) ................................................................................................6
11

12
*Merck & Co. v. Teva Pharms. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) ..............................................................................................19

13
14
*NobelBiz, Inc. v. LiveVox, Inc.*,
   No. 13-CV-1773-YGR, 2015 WL 225223 (N.D. Cal. Jan. 16, 2015) .......................................6

15
*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................8
16

17
*Planet Bingo, LLC v. VKGS, LLC*,
   No. 1:12-CV-00219, 2013 WL 1729574 (W.D. Mich. Apr. 22, 2013) ...................................15

18
19
*Samsung Elecs. Am., Inc., v. Prisua Eng'g Corp.*,
   948 F.3d 1342 (Fed. Cir. 2020) ..............................................................................................17

20
*Seachange Int'l Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) ................................................................................................4

21
22
*Solaria Corp. v. Canadian Solar Inc.*,
   No. 20-CV-02169-JST, 2021 WL 11701385 (N.D. Cal. Nov. 19, 2021) ...........................5, 21

23
*Thorner v. Sony Comput. Ent. Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ..............................................................................................21
24

25
*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
   529 F.3d 1364 (Fed. Cir. 2008) ................................................................................................3

26
*Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*,
   No. 1:20-CV-03951-LGS, 2021 WL 2823563 (S.D.N.Y. July 7, 2021) .................................15
27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

## I.    INTRODUCTION

Defendant Dropbox, Inc. ("Dropbox") submits its Response to Plaintiff Entangled Media, LLC's ("Plaintiff") Opening Claim Construction Brief (Dkt. No. 101, "Br.").  The Court should adopt Dropbox's proposed constructions because they closely adhere to the claim language and the clearly articulated purported point(s) of novelty of the Asserted Patents—which are in the same family and share the same specification.  For example, Dropbox's constructions capture the Asserted Patent's description of a "singular file **system**" that stores a single local/physical file with only corresponding virtual files present across connected devices and that provides an identical visual representation of the singular file system on each device including indistinguishable representations of its local and virtual files.  The claimed system accomplishes this through the creation of separate meta-indices for each of the multiple connected devices which are integrated into a single master index of metadata.  The claimed system then distributes to each of the multiple connected devices not only the master meta-index, but also the individual meta-indices of the other connected devices.  The result according to the Asserted Patents is that the physical file appears to be available locally on each device even though it is only stored in "a single physical location" and is moved from one device to another depending on which device seeks to perform an operation on the file.

Plaintiff attempts to run from the claim language and described point of novelty of its claimed "singular file system," supplanting specific limitations with vague assertions about what the inventors had intended to encompass.  The Court should adopt Dropbox's proposed constructions that are based on the intrinsic record and reject the self-serving revisions proposed by Plaintiff.

## II.    BACKGROUND AND TECHNOLOGY OVERVIEW

### A.    U.S. Patent No. 8,296,338 ("the '338 Patent")

The asserted '338 and '260 Patents share the same title and specification and generally relate to a distributed file system across multiple devices.  The '338 Patent discusses "[a] system and process that establish a singular shared file system among devices."  Ex. B ('338 Patent) at Abstract. It describes a system that "create[s] a virtual representation of data on all of the devices via metadata

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

1  indexing." *Id.*  For each device, a "software client [] scans and inventories the selected data into a

2  meta[data]-index." *Id.* at 5:60-62.  A "web service integrates all of the individual meta-indices for

3  all of the user's registered devices into a … master index of metadata" and then "sends the meta-

4  indices for each of the registered devices to each of the other individual registered user devices."

5  *Id.* at 6:13-20.  Using the meta-indices, the system "integrat[es] metadata from the meta-indices of

6  each of the other multiple devices … to generate virtual files stored in the same locations as local

7  files of [a] local file system" such that "the virtual files [are] indistinguishable from the local files"

8  at each of the devices.  *Id.* at 11:45-50.

9        **B.**      **U.S. Patent No. 8,484,260 ("the '260 Patent")**

10        The '260 Patent states that prior art file systems used "replication software" so that "the

11  same data [is] physically replicated on each device."  *Id.* at 2:34-37; *id.* at 2:39-41.  The

12  specification explains that "[t]he most obvious shortcoming of the data synchronization

13  implementations described above is the amount of storage space that is required." *Id.* at 2:54-56.

14  To purportedly overcome this  shortcoming, the '260 Patent "creates a unified representation of all

15  data on all registered devices," so that "the files are not actually stored on all devices and thus, ***with***

16  ***the exception of a single physical location***, they take up limited space (i.e. storage) on any

17  additional device's hard drive."  *Id.* at 2:16-30.  It also states that local and virtual files appear

18  indistinguishable to the singular file system (*id.* at 5:28-39, 6:38-45), and the visual representation

19  of the singular file system is "identical" on the first and second devices (*id.* at 11:39-42).  The patent

20  further describes "a process for operating on files located on multiple devices using a singular file

21  system." *Id.* at 3:13-15.  In other words, the patent maintains only a single local (or physical) file

22  and relocates that physical file depending on the device requesting to operate on that file.

23  **III.**    **DISPUTED PHRASES OF THE '338 PATENT**

24        **A.**      **Phrase 1: "providing by the at least one server the single master meta-index**
25                **and meta-indices for each of the other multiple devices to each of the multiple**
              **devices via the individual software clients" (claim 1)**

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| The at least one server provides to each of the multiple devices via the individual software clients both (1) the | No construction needed; plain and ordinary meaning. However, to the extent the Court determines that a |

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| single master meta-index and (2) each of the separate, individual meta-indices of each of the other devices. | specific construction is warranted: "The at least one server provides to each of the multiple devices via the individual software clients the single master meta-index with each of the meta-indices of each of the other devices." |

The crux of the parties' dispute is whether claim 1 requires the server to provide each user device with both (1) the single master meta-index and (2) each of the separate, individual meta-indices of each of the other devices, as Dropbox proposes. Or the server need only provide a master meta-index without also providing the separate individual meta-indices of each other device, as Plaintiff suggests. For the following reasons, Dropbox's construction should be adopted.

### 1. Dropbox's construction reflects the plain and ordinary meaning.

The plain language confirms that "the at least one server" provides to each of the multiple devices: (1) "the single master meta-index;" and (2) "meta-indices for each of the other multiple devices." As Plaintiff acknowledges (Br. at 6), the claim uses the conjunction "and" to indicate that what is being "provided by the at least one server" is both "the single master meta-index ***and*** meta-indices for each of the other multiple devices." Ex. F (McDaniel Decl.) ¶ 44. Thus, Dropbox's construction correctly reflects that "both (1) the single master meta-index and (2) each of the separate, individual meta-indices of each of the other devices" are provided. *See, e.g.*, *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376 (Fed. Cir. 2008) (affirming construction of "said dial tone actuating switch electronically connected to said phone line ***and*** said electronic circuit" to mean "said dial tone actuating switch electronically connected to ***both*** the said phone line ***and*** said electronic circuit board, such that electricity can pass among these elements." (emphasis added)).

Other claim limitations confirm Dropbox's construction. Immediately before the disputed phrase, claim 1 recites two other limitations directed to creating and sharing "individual meta-indices": (i) "scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data"; and (ii) "providing by the individual software clients via the multiple devices

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

individual meta-indices of the inventoried data for each of the multiple devices to the at least one server." From this, a PHOSITA would understand that the devices each create their own "individual meta-indices" by "scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices," and that each device separately provides its "individual meta-indices" to the server. Ex. F ¶ 46. And because these individual meta-indices originate from each individual device, a PHOSITA would understand that they remain separate, individual meta-indices when the server provides them to each of the multiple devices. *Id.*

The specification confirms that the at least one server provides both (1) the single master meta-index and (2) each of the separate, individual meta-indices of each of the other devices. It discusses "providing by the at least one server **the single master meta-index** to each of the multiple devices via the individual software clients." Ex. B at 3:4-6. Separately, the specification discusses how "[t]he web service then sends **the meta-indices of each of the registered devices** to each of the other individual registered user devices S20." *Id.* at 6:17-20. Indeed, Figure 6 shows four, individual meta-indices for each of the four user devices and a single master meta-index.

The prosecution history confirms the same. Therein, Applicant argued that reference "Ben-Shaul describes storing the virtual personal disk of Computing Device 130a [*i.e.*, an individual meta-index] in a central data center 102 [*i.e.*, server with master meta index] and not in other Computing Devices such as 130b or 130n [*i.e.*, other multiple devices]." Ex. 1 ('338 Patent File History) at 10. To overcome Ben-Shaul—which disclosed sharing a master meta index but not individual meta-indices—Applicant amended claim 1 as follows: "providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients." *Id.* at 2 (addition in red and underlined). This confirms that the server provides not only the single master meta-index, but also separately, provides meta-indices for each of the other multiple devices. *See Seachange Int'l Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005) ("Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language."). Plaintiff's argument during

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

1    prosecution conclusively establishes that sending a single master indicate does not meet the further

2    requirement of also sending "meta-indices for each of the other multiple devices," even if the master

3    meta-index integrates the information from the individual meta-indices.

4         Contrary to Plaintiff's suggestion (Br. at 6), the use of "both" in Dropbox's construction is

5    not "superfluous" because it clarifies that the server provides not only the master meta-index, but

6    also the individual meta-indices. *See, e.g.*, *Canopy Growth Corp. v. GW Pharma Ltd.*, No. 2022-

7    1603, 2023 WL 3048243, at *5 (Fed. Cir. Apr. 24, 2023) ("Canopy contends, for example, that the

8    district court's inclusion of 'both' in its construction somehow rewrites the claim. But to achieve

9    the object of definition or clarification, it is typical in presenting a clarifying interpretation that one

10   uses expressions absent from the interpreted language itself.").

11        Plaintiff also incorrectly contends that "it would not be clear to a POSITA what 'separate'

12   means in Dropbox's construction or why such separation is important to the claimed invention."

13   Br. at 6.  That is answered by the claim language and would cause no confusion for a PHOSITA.

14   Using "separate" makes clear that there is an individual meta-index belonging to each device.  Put

15   differently, each device has its own, separate meta-index distinct from the master meta-index that

16   integrates each of the individual meta-indices. *See* Ex. B at 6:15-20 ("The web service then sends

17   the meta-indices for each of the registered devices to each of the other individual registered user

18   devices S20."), 7:18 ("creates a meta-index for the device data"), 7:52-53 ("providing the meta-

19   index for its device to the web service").  Thus, a PHOSITA would understand that the disputed

20   phrase requires the server to provide each *separate* meta-index to each device.

21             **2.    Plaintiff's construction ignores the intrinsic record to rewrite the claim
                        and improperly broaden its scope.**
22

23        Plaintiff's arguments should be rejected for several reasons.  ***First***, Plaintiff contends that

24   no construction is needed because the phrase "is easily understood without further construction"

25   and "the plain and ordinary meaning provides an objective boundary regarding the scope of the

26   claim."  Br. at 6.  But the parties' dispute belies this contention.  Indeed, claim construction is

27   appropriate when, as here, "the parties present a fundamental dispute regarding the scope of a claim

28   term."  *Solaria Corp. v. Canadian Solar Inc.*, No. 20-CV-02169-JST, 2021 WL 11701385, at *1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

(N.D. Cal. Nov. 19, 2021) (citation omitted); *see NobelBiz, Inc. v. LiveVox, Inc*., No. 13-CV-1773-YGR, 2015 WL 225223, at *9 (N.D. Cal. Jan. 16, 2015) ("Although the phrase 'outbound call' is a common term easily understood by a jury, this dispute over the scope of the asserted claim is a question of law, and the Court must resolve the question of scope.").

 **Second**, in its proffered alternative construction, Plaintiff attempts to remove the need to provide separate "meta-indices for each of the other multiple devices" by deleting the recited "and" to conflate the master and individual meta-indices: "the single master meta-index ~~and~~ [with each of] the meta-indices of each of the other ~~multiple~~ devices."[1] *See* Br. at 5-6 (annotated modifications added). In doing so, Plaintiff improperly re-writes the phrase to suggest that sending the single master meta-index *alone* somehow constitutes sending *both* "the single master meta-index *and* meta-indices for each of the other multiple devices." Plaintiff thus eviscerates the claim requirement to provide the individual meta-indices, thereby rendering the language superfluous. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Construing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant."). This effort to read out a limitation is especially troubling here because Plaintiff added this limitation during prosecution to distinguish prior art. *Helmsderfer v. Bobrick Washroom Equip., Inc*., 527 F.3d 1379, 1383 (Fed. Cir. 2008); *Godo Kaisha IP Bridge 1 v. OmniVision Techs., Inc.*, No. 17-CV-00778-BLF, 2018 WL 1989577, at *8 (N.D. Cal. Mar. 20, 2018).

## B. Phrase 2: "virtual files indistinguishable from the local files by the local file system at each of the multiple devices" (claim 1)

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | The virtual files manageable as if they were local files by the local file system at each of the multiple devices |

 Phrase 2 should retain its plain and ordinary meaning, as Dropbox proposes. Plaintiff's construction should be rejected because it rewrites the claim language so that even "virtual files"

---

[1] For this same reason, Plaintiff is incorrect that that its construction "aligns with Dropbox's construction after removing the terms 'both' and 'each of the separate, individual' and follows the teachings of the '338 Patent." Br. at 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

1  that are distinguishable from the local files by the local files system would be considered

2  "indistinguishable" merely because they are "manageable as if they were local files."

3          The claim language readily resolves this dispute.  Claim 1 recites the step of "integrating

4  metadata from the meta-indices of each of the other multiple devices into a local file system of each

5  of the multiple devices to generate virtual files stored in the same locations as local files of the local

6  file system, ***the virtual files indistinguishable from the local files by the local file system at each***

7  ***of the multiple devices***."  From this plain language, a PHOSITA would understand that (1) the

8  virtual files must be "indistinguishable" from the local files, and (2) they are specifically

9  "indistinguishable" to "the local file system at each of the multiple devices." Ex. F ¶ 53.

10         The specification confirms the same.  *Id.* ¶ 55.  It explains that "[t]he virtual files **appear**

11 **in essentially all ways the same as** a local file, **making them indistinguishable** unless such a

12 distinction is enabled as a separate option." Ex. B at 6:34-36.  It further explains that "[t]he virtual

13 files appear to the user exactly as local files," and "regardless of a user interacting with the physical

14 or virtual version of a file, they are treated as if they were the same." *Id.* at 7:62-8:22.  Thus,

15 consistent with the claim language, the specification confirms that the local file system cannot

16 distinguish between virtual and local files, as they appear the same to the system.

17         This is further confirmed by the prosecution history for the related '260 Patent (a divisional

18 of the '338 Patent).  Applicant argued that the Aboulhosn reference did not disclose "modify[ing]

19 the singular file system on the first device to make local files and virtual files appear

20 **indistinguishable to the singular file system**" because it "uses the **file name extension 'vf' to**

21 **discriminate and distinguish** between virtual files and local files." Ex. 2 ('260 Patent File

22 History) at 7.  Significantly, Plaintiff argued that the claimed invention differed from Aboulhosn

23 because the virtual file name was distinguishable and not based on whether Aboulhosn was able to

24 manage the virtual files as if they were local files.  Thus, a PHOSITA would also have understood

25 that if a virtual file has an identifying characteristic that differentiates it from its corresponding

26 local file (like the file name extension in Aboulhosn), then that virtual file cannot be said to be

27 indistinguishable from the local file by the local file system, regardless how it is managed. Ex. F ¶

28 56.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

This plain meaning also comports with ordinary dictionary definitions. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("dictionaries and treatises can be useful in claim construction"). For example, the Oxford English Dictionary defines "indistinguishable" as "[n]ot distinguishable; that cannot be distinguished… Incapable of being discriminated or recognized as different from something else, or from each other; of which the difference cannot be perceived."). Ex. 3; Ex. F ¶ 54.

Plaintiff's construction ignores this plain meaning and does not reflect a PHOSITA's understanding based on the intrinsic evidence. Ex. F ¶ 58. It requires **only** that "the virtual files" be "**manageable** as if they were local files by the local file system," regardless whether the local file system is able to distinguish between virtual and local files or whether the virtual files are in "**essentially all ways** the same as a local file." *Id.* at ¶ 59. This is not what the claim says.

Citing to column 5, lines 24-35, Plaintiff contends that the patent "instructs that the local and remote files are **managed as if they are stored in the same location**, *i.e.*, the virtual files are **managed as if they were local files**." Br. At 12. This statement does not suggest that managing files in the same way means the files are "indistinguishable by the local file system." Further the cited portion of the specification only says "to manage remote and local files **as if they are all stored in the same location**," not to manage virtual files **as if they were local files**, as Plaintiff suggests.

With no support in the specification for its construction, Plaintiff invokes what it calls a "'transparent' concept" and purported "related concepts … that include 'information hiding,' 'encapsulation,' and 'abstraction'" that have no intrinsic support. Br. at 13. And none of these vague "concepts" are necessary or helpful in interpreting the term "indistinguishable" used in the claims, or justify replacing it with "manageable as if they were local files." Indeed, a local file system may choose to "manage" virtual files as if they are local files even if the local file system distinguishes the virtual files from local files.

C.    **Phrase 3: "continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon" (claim 1)**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8                                      DROPBOX RESP. CLAIM CONST. BR.
                                       CASE NO. 5:23-CV-03264-PCP

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| Running update software without interruption to immediately update in response to changes to the data indexed on each of the multiple devices (1) the single master meta-index on the at least one server, and (2) the single master meta-index on each of the multiple devices. | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>While the software client is running, updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon |

The parties agree that Phrase 3 requires, in response to changes to the data indexed on each of the multiple devices, updating both (1) the single master meta-index on the at least one server and (2) the single master meta-index on each of the multiple devices. The parties' dispute centers on the meaning of "continually updating" within the larger phrase. Dropbox proposes that "continually updating" requires "running update software without interruption to immediately update," whereas Plaintiff suggests it means only that updates occur "while the software client is running." For the following reasons, Dropbox's construction should be adopted.

The claim language supports Dropbox's construction. The claim unambiguously states that the updating will occur "continually." Thus, the software responsible for the updating must run without interruption. If the update software is interrupted, then the updating will be delayed and will occur intermittently, whenever the software happens to be running, and not "continually."

The specification confirms this meaning. It explains that updates to the single master meta-index are performed "upon completion of any modification to the file," *i.e.*, as soon as a file is modified. Ex. F ¶ 63. It further explains that "[u]pon completion of **any modification to the file**, all changes are propagated back to the remote device and the local file is restored to its 'virtual' state." Ex. B at 6:62-64. It is "[a]t this point" that "the local device removes the aforementioned file from memory, so that it is stored only in the single location/device on which it was originally kept." *Id.* at 6:65-67. And the '338 Patent states that: "**the aforementioned file's metadata is updated (such as 'date last modified') and propagated to all other devices**." *Id.* at 7:1-2. To perform updates to the single master meta-index "upon completion of any modification to the file," a PHOSITA would understand the update software needs to continually run—*i.e.*, without interruption.

1    The specification also describes "providing by **the at least one server** the single master

2    meta-index to each of the multiple devices **via the individual software clients**; and **continually**

3    **updating** the single master meta-index on the at least one server and each of the multiple devices

4    in response to changes to the data indexed thereon." *Id.* at 3:4-8.  According to the specification,

5    "**the web-accessible server**… provides the single master meta-index to each of the multiple

6    devices via the **individual software clients**, and **continually updates** the single master meta-index

7    on each of the multiple devices in response to operations on the files indexed thereon." *Id.* at 3:43-

8    50.  And the specification defines "Software Client (or the Client)" as "a piece of software that is

9    installed **and runs continuously on the device**." *Id.* at 4:41-42.

10    Based on these descriptions in the specification, Dropbox properly proposes construing the

11    term to mean "running update software without interruption to immediately update in response to

12    changes to the data indexed on each of the multiple devices (1) the single master meta-index on the

13    at least one server, and (2) the single master meta-index on each of the multiple devices."

14    Plaintiff takes issue with Dropbox's construction, suggesting that "the word 'continually'

15    in the claim language refers to the way in which the meta-index is updated" and not to when the

16    update software runs.  Br. at 9.  This is a distinction without a difference.  Although the word

17    "continually" is an adverb that modifies the verb "updating," it is the software that performs the

18    update.  Indeed, Plaintiff admits that a PHOSITA "would have understood that the master meta-

19    index **is updated by the software** in response to changes to the indexed data."  Br. at 8; *see also*

20    Ex. B at 4:41-42 (defining "Software Client (or the Client)" as "a piece of software that is installed

21    **and runs continuously on the device**").

22    Plaintiff also errs in suggesting Dropbox's construction would "require the Court to

23    construe 'immediately' as it relates to the relevant technology."  Br. at 9.  Tellingly, Plaintiff cites

24    nothing in support.  If the law required "the impossible task of resolving all questions of meaning

25    with absolute, unequivocal finality," as Plaintiff suggests, then "[s]uch an endeavor could proceed

26    ad infinitum, as every word—whether a claim term itself, or the words a court uses to construe a

27    claim term—is susceptible to further definition, elucidation, and explanation." *Eon Corp. IP*

28    *Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

Finally, Plaintiff questions how Dropbox construes "continually" while its own construction effectively reads this limitation entirely out of the claims. If Phrase 3 only requires "updating" to occur "while the software client is running," then even occasional or intermittent updates would be covered so long as the software client is only running occasionally or intermittently. Ex. F ¶ 65.

**D.    Phrase 4: "singular file system" ('338 Patent claim 1) / ('260 Patent claims 1, 4)**

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| A system with a common, unified view of all data across more than one device so that all of a user's devices appear to share one single native file system containing all of the user's files across all devices. | System wherein local and virtual files are shown in the same directories/folders |

Claim 1 of the '338 Patent recites "[a] process for establishing a ***singular file system*** across multiple devices comprising" a series of steps, including the step of "receiving user information to open an account for establishing a ***singular file system*** across multiple devices via a web-based system that includes at least one server." *See also* Ex. G at Cl. 1 ("A process for operating on files located on multiple devices using a ***singular file system*** comprising."). This claim language provides little guidance as to the meaning of "singular file system" except to make clear that it is established "across multiple devices."

But the specification confirms that a "singular file system" is the "**one single native file system** containing all the user's files" that is shared by all the user's devices and provides a common, unified view for all the user's files across all the user's devices. Ex. F ¶ 71. For example, the specification states that "the present solution creates **a unified representation** of all data on all registered devices—it ensures that all a user's devices appear to **share** **one single native file system** containing all the user's files across all devices, and that **this file system is that of the device operating system**, instead of any third party solution or secondary representation." Ex. B at 2:12-18. Moreover, the "method of **data unification** does not rely on file replication or cloning, but instead creates 'virtual' file unification using a proprietary technique of differentiating local, physically stored data files versus remote data files and creating a **unified, virtual representation of remote data** on a local device." *Id.* at 5:6-11; *see id.* at 4:25-27 ("File System-is the component within an operating system responsible for managing all manner of files, as well as presenting them

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

within a graphical user interface").

Plaintiff's construction ignores the specification's description of the claimed "singular file system" in favor of an argument it recently submitted in a reexamination proceeding.[2]  In response to an *ex parte* reexamination of the '260 Patent, Plaintiff asserted that a system that does not display local and virtual files "in the same directories/folders" would not constitute a "singular file system." Plaintiff stated that "[t]he disadvantage of prior art mounting or mapping systems is that they do not provide a *singular file system* in which the local files and virtual files share *the same directory or folder* on the first device, nor a visual representation of the singular file system on the first device that is identical to a visual representation of the singular file system on the second device."  Ex. D at 7 (emphasis in original). While the reexamination may contain a clear disavowal of subject matter, it does not change the meaning of the term "singular file system" as used in the specification and the claims.

**E.    Phrase 5: "visual representation of the virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one of the multiple devices" (claim 5)**

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| Plain and ordinary meaning | The same list of files is shown on multiple devices regardless whether those files include both virtual and actual files. |

Even though the intrinsic and extrinsic evidence confirms the plain and ordinary meaning of this phrase, Plaintiff's proposed construction seeks to re-write the claim language and to eliminate entirely the recited requirement that the ***visual representations* of virtual files and the actual file must be indistinguishable**.

The claim's plain language requires that the **visual representation** of the virtual files displayed on remote devices must be indistinguishable from the **visual representation** of an actual file displayed on the device where it is stored locally.  Ex. F ¶ 75.  In contrast to claim 1, which requires the virtual files themselves to be "**indistinguishable** from the local files **by the local file**

---

[2] Although reexamination proceedings are part of a patent's file history and intrinsic evidence, Plaintiff's *ex parte* reexamination response was submitted on November 13, 2023, which is almost a year after filing of its Complaint on December 16, 2022. It was thus prepared in anticipation of being used as intrinsic evidence for this claim construction proceeding.  Plaintiff's attempts to pass off its own attorney argument as purported intrinsic evidence should be given no weight.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

1    **system**," claim 5 (which contains disputed Phrase 5) requires the "**visual representation**" of the

2    virtual and local files to be **indistinguishable**.  Ex. F ¶ 75.  Thus, claim 5 focuses on "visual

3    representations" of virtual files that are seen by the user.  *Id.*

4         As explained in Section III.B above, a PHOSITA would understand the plain and ordinary

5    meaning of "indistinguishable" to require that the visual representations of the virtual and local

6    files **appear the same to the user** on each of the multiple devices.  Ex. F ¶ 76.  A PHOSITA would

7    understand that the user would not be able to visually tell the difference between the virtual and

8    local files.  *Id.*  This is expressly confirmed in the specification: "The virtual files **appear** in

9    essentially all ways **the same as a local file**, **making them indistinguishable** unless such a

10   distinction is enabled as a separate option."  Ex. B at 6:34-36.  As the specification explains, "[t]he

11   virtual files **appear to the user exactly as local files**."  *Id*. at 7:62.

12        In contrast, there is no support in the claim or specification for Plaintiff's construction.

13   Most notably, neither the claims nor the specification equate indistinguishable visible

14   representations of virtual and actual files with simply providing the "same list of files."  Nothing

15   in Plaintiff's construction ascribes any meaning to the word "indistinguishable" as used to refer to

16   the "visual representation of the virtual files" in comparison to the "a visual representation of an

17   actual file."  Ex. F ¶ 78.  For example, although Plaintiff cites to Figure 6 in support, Plaintiff

18   concedes Figure 6 shows only "a visual representation of the **singular file system,**" not a visual

19   representation of **virtual or local files** as required by claim.  *See* Br. at 11.

20        Plaintiff further attempts to justify reading "indistinguishable" out of the claims by arguing

21   "use of the term 'indistinguishable' within the disputed phrase does not mean that there can be no

22   differences between (i) visual representation of virtual files on remote devices and (ii) the visual

23   representation of actual files on local files."  *Id.*  According to Plaintiff, visual representations of

24   files on remote computers versus those of files on a local device may differ due to "different screen

25   size, color settings, other user interface customizations, and computers running different operating

26   systems with different user interfaces that present files to users somewhat differently."  *Id.*

27        But this misses the mark.  This disputed phrase appears within claim 5, which recites

28   "wherein *the individual software clients facilitate creation of* a visual representation of the virtual

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one of the multiple devices." That is, the claim is concerned with the indistinguishability of the visual representations, the creation of which were facilitated by *the individual software clients*. It is not concerned with immaterial variations in how this visual representation may be rendered on any particular display screen in light of a user's display settings. For example, when the same icon is displayed for virtual and local files, they do not become "distinguishable" simply because a user's display renders one of the icons using different display settings, whereas a visual representation of a virtual file identified with a "vf" extension will be distinguishable from a local file as discussed *supra* at Section III.B.

## IV.   DISPUTED PHASES OF THE '260 PATENT

### A.   Phrase 6: "modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system" (claim 1)

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| Indefinite<br><br>In the alternative, plain and ordinary meaning. | In light of Plaintiff's proffered constructions for "singular file system" and "appear indistinguishable to the singular file system," no additional construction is needed; plain and ordinary meaning for the remainder of this phrase.<br><br>Accordingly, the proposed construction for the specifically identified phrase is: Modifying the system wherein local and virtual files are shown in the same directories/folders on the first device to make local files and virtual files manageable by the system wherein local and virtual files are shown in the same directories/folders as if they are stored in the same location |

The claim language contains the conflicting requirements that the singular file system must both (1) not know whether a file is local or virtual, and (2) have access to metadata that indicates whether the file is local or virtual. Specifically, claim 1 requires "modifying the singular file system on the first device to make local files and virtual files **appear indistinguishable *to the singular file system*.**" If the local files and virtual files appear indistinguishable to the singular file system, then the singular file system is unable to tell whether a file is local or virtual. But Claim 1 also requires "determining by the software client if the file is physically located on the first device or if the file is a virtual file on a corresponding file physically stored on a second device by **reviewing**

**file metadata**."  If the software client of the singular file system is able to review file metadata to determine whether a file is local or virtual, then the singular file system is able to distinguish between local files and virtual files.

These contradictory requirements are irreconcilable, rendering the claim indefinite.  *See Zeta Glob. Corp. v. Maropost Mktg. Cloud, Inc.*, No. 1:20-CV-03951-LGS, 2021 WL 2823563, at *5 (S.D.N.Y. July 7, 2021) (finding indefiniteness based on "facially incompatible meanings" of terms that were "contradictory" and "nonsensical"); *Planet Bingo, LLC v. VKGS, LLC*, No. 1:12-CV-00219, 2013 WL 1729574, at *7 (W.D. Mich. Apr. 22, 2013) (finding dependent claims indefinite where "[t]he plain language of the Independent claims is incompatible with the plain language of the dependent claims").  Claim 1 requires the "software client" of the singular file system to review metadata to determine whether a file is virtual or local and the specification confirms that the singular file system has access to this metadata, thereby enabling the singular file system to be able to distinguish between a virtual or local (*i.e.*, physical file) via that metadata.

The specification's description of the relationship between file metadata and the singular file system confirm that the claim language is internally contradictory.  First, as noted above, claim 1 *requires* that each file has metadata indicating whether the file is local or virtual.  Ex. G ('260 Patent) at Cl. 1 (determining whether the file is local or virtual "by **reviewing file metadata**").  The specification describes this metadata by explaining that "the software client provides … [f]or each identified data file, [a] meta-index [that] includes metadata such as file name, file type, file size, local path the file is stored in, date created, date modified, etc." *Id.* at 6:8-11.  The specification further states that virtual files "have the file name, the file size, the file type, the date it was created, the date it was modified, **all that the physical file has** except that it doesn't take any space on the local device **with the exception of the space required for meta-data storage**." *Id.* at 7:66-8:6.  Thus, the metadata described in the specification indicates whether a file is local or virtual.

The specification explains that the aggregated file metadata becomes an essential part of the singular file system.  In particular, the specification indicates that "[a]ll file metadata is *integrated into* the local device," Ex. G at 5:31-34, and these local meta-indices are then combined into a "master index of metadata," *id.* at 8:11-19.  Significantly, "[t]his **master index of metadata thus**

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

1   *becomes the* **singular file system** **that all devices use**; integrated locally into a device's operating

2   system via the software client." *Id.* at 8:19-21.  Thus, it cannot be meaningfully disputed that the

3   singular file system includes the master index of metadata that indicates whether a file is local or

4   virtual.  *See id.* at claim 4 (depending from claim 1 and reciting "updating metadata **of the singular**

5   **file system**").

6          This is the crux of the claim's incompatibility: the singular file system includes the metadata

7   indicating whether the file is local or virtual.   Because the singular file system knows whether the

8   file is local or virtual, there is no way to **modify the singular file system to make** local files and

9   virtual files "appear indistinguishable to the singular file system" as the claim requires.  Thus, the

10  claim is indefinite.

11         The prosecution history confirms this indefiniteness.  During prosecution, Applicant argued

12  that the prior art Clarke reference did not teach that "local and virtual files appear indistinguishable

13  to the singular file system" because "the client system in Clarke distinguishes and discriminates

14  locally stored object [sic] and shared [*i.e.*, virtual] objects" by "explicitly determin[ing] whether

15  the object being accessed is a shared [*i.e.*, virtual] object."  Ex. 2 at 6.  This highlights the claim's

16  inconsistency.  Clarke did not meet the claim requirement of having a system where "local files

17  and virtual files appear indistinguishable" because Clarke's "client system" does exactly what is

18  described elsewhere in the claims, namely, "determine[es] by the software client if the file is

19  physically located on the first device or if the file is a virtual file on a corresponding file physically

20  stored on a second device by reviewing file metadata."  Ex. F ¶ 85.

21         As a further example, to overcome another prior art reference during prosecution

22  (Aboulhosn), the Applicant argued that "Aboulhosn uses the ***file name extension 'vf' to***

23  ***discriminate and distinguish between virtual files and local files***."  Ex. 2 at 6-7.  In doing so,

24  Applicant affirmatively asserted that file attributes such as a file name and type (*i.e.*, metadata)

25  "distinguish" whether a file is local or virtual.  *See* Ex. G at 6:10-11 (explaining "metadata" includes

26  "file name, file type, file size, local path the file is stored in, date created, date modified, etc.").

27  Here again, Applicant argued that the claim's requirement that "local files and virtual files appear

28  indistinguishable" could not be met by a system where a determination of whether a file is local or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

virtual could be made by reviewing the metadata.  However, this is explicitly required by a conflicting limitation of claim 1.  Unsurprisingly, Plaintiff does not address the file history, Applicant's discussion of Aboulhosn or Clarke, or Dr. McDaniel's related testimony (Ex. F ¶ 85-87) in its Opening Brief.

If the Court does not find this Phrase invalid as indefinite (which it is), the Court should afford this phrase its plain and ordinary meaning.  As discussed with respect to Phrase 2 for the '338 Patent (*see* Section III.B), the specification aligns with the language's plain meaning that the local file system cannot distinguish between virtual and local files, as they appear the same to the system.

Plaintiff's construction must be rejected.  It improperly replaces "appear indistinguishable" with "manageable by the system as if [the local and virtual files] are stored in the same location." But "manageable" is ambiguous, and a PHOSITA would not be able to determine the scope of "manageable" with reasonable certainty.  Ex. F ¶ 87.  More fundamentally, Plaintiff's "manageable" construction conflicts with the specification's explanation that "virtual files **appear** in **essentially all ways** as the local file, making them **indistinguishable**."  Ex. G at 6:38-40.  The prosecution history further indicates that local and virtual files "*appear* indistinguishable *to* the file system" because they lack distinguishing file attributes.  Ex. F ¶ 87.  Indeed, Applicant argued during prosecution that file attributes such as ".vf" in a file name would distinguish a local file from a virtual file.  *Id.*, Ex. 2 at 6-7.

Accordingly, because local and virtual files cannot appear indistinguishable to the singular file system while simultaneously containing file attributes within their respective metadata indicating whether the files are local or virtual, a PHOSITA would not understand the scope of the claim with reasonable certainty and it should be found invalid as indefinite.  Ex. F ¶ 89.[3]

**B.      Phrase 7: "a visual representation of the singular file system on the first device**

---

[3] Plaintiff's comments concerning Dr. McDaniel's declaration in the IPR are a red herring.  *See* Br. at 22. It is well established that, except for certain circumstances, the PTAB cannot invalidate claims for indefiniteness in an IPR.  *See, e.g.*, *Samsung Elecs. Am., Inc., v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1350 (Fed. Cir. 2020)  Dr. McDaniel stated that "for the purposes of this [IPR] declaration, I do not believe there are any express constructions needed." Ex. I ¶ 69.  Plaintiff has not—and cannot—alleged any inconsistency in the substance of Dr. McDaniel's declaration.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

17

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

**is identical to a visual representation of the singular file system on the second device" (claim 1)**

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| "a visual representation of the singular file system on the first device **is exactly the same as and does not differ in any way from** a visual representation of the singular file system on the second device" | "A visual representation of the **system wherein local and virtual files are shown in the same directories/folders** on the first device **shows the same list of files** as a visual representation of the **system wherein local and virtual files are shown in the same directories/folders** on the second device" |

The parties dispute whether "a visual representation of the singular file system on the first device" being "identical" to the "visual representation of the singular file system on the second device" means (i) it is exactly the same as and does not differ in any way on both devices (as Dropbox proposes), or (ii) merely requires showing the same list of files (as Plaintiff proposes). For the following reasons, Dropbox's proposed construction is correct and should be adopted.

Claim 1 unambiguously requires the "**visual representation** of **the singular file system**" on a first and second device to be "**identical**." Put differently, the way in which the singular file system is visually presented to the user on a first device must be "identical" to how it is presented on a second device. A PHOSITA would readily understand that the claim's use of "identical" means "exactly the same as and does not differ in any way." Ex. F ¶ 92.

The specification confirms this understanding. It states that a "File System" is "the component within an operating system responsible for managing all manner of files, ***as well as presenting them within a graphical user interface***." Ex. G at 4:30-32. The specification further explains that the singular file system maintains "a **common, single view** of **all data across all devices**." *Id.* at 5:23-27. The specification confirms that "virtual files appear to the user **exactly as** local files" and virtual files have "all that the physical file has" such as "a thumb nail with an icon…the file name, the file size, the file type, the date it was created, [and] the date it was modified." *Id.* 7:66-5, *see also id.* 6:38-40 ("The virtual files appear in **essentially all ways the same** as a local file.").

From this, a PHOSITA would have understood that for the visual representation of the singular file system to be "identical" across devices, each visual representation of the singular file system must provide "a common, single view" including not only the same list of files, but a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

representation of each file with an identical visual appearance (*e.g.*, same thumb nails or icons, file name, file size, and other file properties).  Ex. F ¶ 92.

Dictionary definitions of the term "identical" confirm this plain and ordinary meaning.  For example, the Oxford English Dictionary defines "identical" as "the **same**; the **very same: said of one thing (or set of things)** viewed at different times or in different relations."  Ex. 4; Ex. F ¶ 93.

In contrast, Plaintiff's construction is divorced from the claim language's plain meaning and significantly broadens the scope.  Specifically, Plaintiff rewrites "identical" to incorrectly suggests that the visual representation of the entire "singular file system"—as required by the claims—applies only to showing "the same list of files."  Br. at 14-15.  This is not what the claim says.

The claim requires the "visual representation of the singular file system" to be "identical" on both the first and second device.  To require that only a portion of the singular file system—e.g., "the list of files" as Plaintiff proposes—be "the same" fails to give meaning to the claim as issued. *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

### C.    Phrase 8: "requesting by a software client on the first device that a peer-to-peer connection be brokered by server-based web service between the first and second device" / "if the peer-to-peer connection is brokered." (claim 1)

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| "a software client on the first device requests that a server-based web service establish a peer-to-peer connection between the first and second device." | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>"A software client on the first device requesting that a server-based web service facilitate a file transfer from the second device to the first device / If a file transfer channel is established."<br><br>Alternatively: "a software client on the first device requests that a server-based web service provide communication parameters for a peer-to-peer connection between the first and second device." |

The crux of the dispute for Phrase 8 focuses on what the claimed "web service" must do to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19                                    DROPBOX RESP. CLAIM CONST. BR.
                                      CASE NO. 5:23-CV-03264-PCP

"broker" a "peer-to-peer connection" between devices.  In particular, whether requesting "a peer-to-peer connection be brokered by server-based web service between the first and second device" requires the server-based web service (i) to establish the peer-to-peer connection (as Dropbox proposes) or (ii) merely to facilitate or provide communication parameters for the peer-to-peer connection (as Plaintiff proposes).  For the following reasons, Dropbox's construction should be adopted.

The intrinsic evidence confirms the plain and ordinary meaning.  Ex. F ¶ 96-98.  Claim 1 is for a "process for operating and files" and requires in response to a request to operate on file that: : "if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-web service between the first device and the second device."  It further recites that, "if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device."  Dependent claim 2, in turn, recites: "wherein if the peer-to-peer connection cannot be brokered between the first device and the second device, an alternative connection is established by the server-based web service."

From this plain language, as confirmed by the specification, a PHOSITA would understand that when a request is made on a first device to operate on a virtual file stored on second device, a web service brokers a "peer-to-peer connection" "between the first and second device" by establishing a connection between the first and second devices.  Ex. F ¶ 97-98.  For example, the '260 specification explains that the software client on Device A "asks the web service to **broker** a connection between Device A and B."  Ex. G at 8:41-45.  Then, "the web service **determines** what type of connection is possible between Device A and Device B and **instructs** both devices of the communication protocol and parameters to be used for the transfer."  *Id.*; *see also id.* at 8:48-49 ("Initially, the web service **determines if a peer-to-peer connection is available**.").

The specification also defines "web service"—the claimed broker—as "an information manager that coordinates information, communication and activities with the clients [and] also coordinates the transfer of files between devices by **establishing** a transfer protocol."  Ex. G at 4:48-58.  As described in the specification, the brokering web service coordinates all aspects of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20                                    DROPBOX RESP. CLAIM CONST. BR.
                                      CASE NO. 5:23-CV-03264-PCP

1  establishing the peer-to-peer connection from the initial determination whether a peer-to-peer

2  connection is available to instructing the devices regarding the particular transfer protocol to use

3  along with the other parameters that will be involved in the transfer.  Thus, Dropbox's construction

4  reflects the specification's guidance.[4]

5       In contrast, Plaintiff's construction is inconsistent with the intrinsic and extrinsic evidence.

6  According to Plaintiff, the term "brokered" "would be readily understood by a jury without

7  construction" such that no further construction is required.  Br. at 16.  But the parties' dispute

8  demonstrates otherwise.  *Solaria*, 2021 WL 11701385, at *1.

9       Plaintiff's alternative construction incorrectly reduces the requirement to broker the peer-

10  to-peer connection to simply "provide communication parameters."  In support, Plaintiff cites a

11  portion of the specification that discusses the web service instructing devices about

12  "communication protocol and parameters."  Br. at 16 (citing '260 Patent at 8:42-48).  At best, the

13  portions of the specification on which Plaintiff relies describes some steps that may be undertaken

14  by the web service to establish the peer-to-peer connection.  But it does not provide an express and

15  limiting definition of the term "brokered."  Indeed, this is far from the clear definition and "clearly

16  express[ed]…intent" required to redefine a term.  *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d

17  1362, 1365 (Fed. Cir. 2012) (citations omitted).

18       **D.    Phrase 9: "transferring the corresponding physical file from the second device to the first device" (claim 1)**

19

20

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| "relocating the content of the corresponding file off of the second device and to the first device" | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>"Transmitting the data of the corresponding physical file from the second device to the first device." |

24       The parties' dispute centers on whether the claims cover the purported novel aspect of the

25  patent (as reflected in Dropbox's proposed construction) or if the claims cover the prior art systems

26  the patent sought to improve upon (as reflected in Plaintiff's proposed construction).  Dropbox's

27

28  [4] For the same reasons, Plaintiff errs in suggesting there is "no support in the specification" for construing "brokered" to mean "established" in the context of Dropbox's construction.  Br. at 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

1    construction captures the purportedly novel concept that there is only one "physical file" stored in

2    a single physical location on a particular device, and with only virtual files on the other remote

3    devices.  In contrast, Plaintiff's construction ignores this purportedly novel concept in its entirety.

4        The specification confirms that a transfer requires the corresponding physical file to be

5    relocated to the second device.  It explains that the patented invention "establish[es] a singular

6    shared file system among devices … [such] that the **files are not actually stored on all devices**

7    and thus, **with the exception of _a single physical location_**, they do not need to take up any space

8    (i.e. storage) on any additional device's hard drive."  Ex. G at Abstract; _id._ at 2:26-30 (same).  In

9    other words, the files are stored in only a "single physical location" at a time.

10       The specification also discusses the prior art systems, which purportedly "require[d] that

11   ALL designated data is stored online and is then in turn **replicated** across all devices that are

12   connected to the online storage server."  Ex. G at 44-57.  According to the patent, "[t]hese [prior

13   art] services **duplicate** all designated data between devices being synchronized AND store an

14   **additional copy** on their servers. Each file stored on N devices results in **N+1 duplicates of the**

15   **same file**."  _Id._ at 1:44-50.  The specification further explains that "the most obvious shortcoming"

16   of the prior art was "the amount of storage space that is required."  _Id._ at 1:54-56.  To overcome

17   this shortcoming, the purported invention "**do[es]** _not require physical data replication_ **across**

18   **multiple devices**" and instead "creates a virtual representation of data on all of the devices…and

19   the files are not actually stored on all devices and thus, with the exception of a **single physical**

20   **location**, they take up limited space (i.e. storage) on any additional device's hard drive."  _Id._ at

21   2:22-30.

22       Figures 2 and 3 and the related discussion further explain this purported solution.  Both

23   Figures show that, if a file is local, the local device may "[p]erform [the] operation on [the] locally

24   stored file" and the software client notifies other devices of any changes to the file.  Ex. G at Figs.

25   2-3 (S28, S68).  If the file is not local, the software client "**transfer[s the] physical file from**

26   remote device to [the] requesting local device."  _Id._ (S30, S70).  "**Once the file has been**

27   **transferred** from the remote device to the local device, it can be viewed, edited, or modified in any

28   way by the user."  _Id._ at 6:47-57; _see id._ at 6:57-59 ("The file is then transferred from the remote

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22                    DROPBOX RESP. CLAIM CONST. BR.
                     CASE NO. 5:23-CV-03264-PCP

device to the local device and the operation is performed on the file at the local device.").

The dependent claims also support Dropbox's construction. Claim 6 depends from claim 1 and further recites "upon completing the operation, **pushing the physical file back to the second device**; and retaining the virtual file at the first device." A PHOSITA would have understood that claim 6 would only require the physical file to be *pushed back* to the second device if the physical file were no longer stored at the second device after it was transferred (*i.e.,* relocated) to the first device as required by claim 1. Ex. F ¶ 106-107.

Dr. McDaniel confirms that a PHOSITA would understand that the claim requires that the physical file be relocated from one location (*e.g.*, second device) to another (*e.g.*, first device). Ex. F ¶ 104-05. This is also consistent with the technical definition of "transfer," as "[t]he movement of data **from one location to another**." Ex. 5 (Microsoft Computer Dictionary, 5th Ed.) at 527.

***Plaintiff's Construction is Incorrect.*** Plaintiff's only intrinsic support for its assertion that the physical file need not *actually* transferred from one location to another is an out-of-context statement from the specification that "the entirety of the physical file need not be downloaded in order to be responsive to most actions." Br. at 18 (quoting Ex. G at 8:64-66). Read in context, this statement supports Dropbox's construction, not Plaintiff's.

The specification continues: "… just as with streaming video, **the underlying transfer continues** while the user action is taking place… ." Ex. G at 8:66-67. In other words, the relocation of the file from the second device and to the first device continues even if the first device is able to open a portion of the file before the relocation has completed. This could obviate the need to wait for an entire very large file to be completely transferred before a user could begin to view at least some portions of the file while the underlying transfer continues.

Plaintiff's construction fails for at least three additional reasons. ***First***, Plaintiff improperly replaces "transferring" with "transmitting" without any basis in the patent for doing so. Br. At 17. The '260 Patent never uses the word "transmit" or any variation thereof. Instead, as Dropbox's construction reflects by using the term "re-location," the specification consistently discusses the "location" of the file and transferring files between locations. *See* Ex. G at Abstract ("files are not actually stored on all devices and thus, with the exception of a single physical **location**"), 2:26-30,

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

6:26-28, 7:1-4; Ex. F ¶ 108. **Second**, a PHOSITA would recognize "transmitting" as a term that is broader than "transferring." Whereas "transmit" means "[t]o **send** information over a communication line or circuit" (Ex. 5 at 528), "transfer" means "[t]o **move** data **from one place to another**" (*id.* at 527)—only the latter of which is appropriate here. **Third**, as discussed above, the claimed invention seeks to avoid creating duplicate physical files across multiple devices, thereby saving storage space. Yet Plaintiff's construction relying on the notion of mere transmission suggests that copies of the physical file may be retained at both the first and second devices, creating duplicate files across devices and compounding the prior art problem that the '260 Patent purports to solve. Ex. F ¶ 109-110.

**E.     Phrase 10: "pushing the physical file back to the second device" (claim 6)**

| Dropbox's Proposed Construction | Entangled Media's Proposed Construction |
|---|---|
| "pushing the content of the file off of the first device and back to the second device" | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>"Transmitting the data of the physical file to the second device at the instigation of the first device." |

The parties' dispute for Phrase 10 is similar to that for Phrase 9. Whereas Dropbox's proposed construction captures the purported point of novelty of maintaining a file in only "a single physical location" without replicating the physical file to multiple devices, Plaintiff's construction would broaden the claim's scope to permit maintaining multiple physical copies of a file in multiple locations, thereby occupying storage space in multiple devices. *See* Br. at 19.

Dropbox's proposed construction reflects the plain and ordinary meaning of the claim language. Specifically, Phrase 10 recites "pushing…***back to*** the second device," and this plainly indicates that the physical file is not already on the second device to which it is being pushed back.

Phrase 10 appears in dependent claim 6, which recites: "The process according to claim 1, further comprising: upon completing the operation, **pushing the physical file back to the second device**; and retaining the virtual file at the first device." As explained above, claim 1 (from which claim 6 depends) requires that when a physical file is "transferred" from a second device to a first device, the physical file that was originally located on the second device must be "relocated" to the

first device such that the physical file is no longer stored on the second device.  This context for claim 1 informs a PHOSITA's understanding of the disputed term in claim 6 (and vice versa): claim 6 requires that the physical file to be ***pushed back*** to the second device.  Ex. F ¶ 114; *see Phillips*, 415 F.3d at 1314–15.

In contrast, Plaintiff's use of "transmitting" improperly broadens the claim's scope to encompass transmitting a mere *copy* of a file without transferring the physical file from its original location.  This is contrary to the purported novelty of the '260 Patent's claimed invention.  Plaintiff's construction also fails to give meaning to the words "pushing" and "back to."  If the physical file's contents were already located on the second device, there would be no need to push "**the** physical file's contents ***back to*** the second device."

A PHOSITA would understand "pushing" in the context of claim 6 to mean moving the physical file away from the first device, and a PHOSITA would further understand "back to" in this context to mean that the physical file is being returned to its original location.  Ex. F ¶ 115.  Thus, "pushing the physical file back to the second device" connotes that the physical file's contents are removed off and away from the first device and returned back to the second device.  Ex. F ¶ 115-16.  Contrary to Dr. Edwards' assertions, "pushing the physical file back to the second device" informs a PHOSITA about the directional flow of a physical file's transfer between devices—i.e., from the first device "back to" the second device (as captured in Dropbox's construction)—not whether such flow is "requested by" a certain device (as Plaintiff's construction suggests).  *Id.*

## V.  CONCLUSION

The court should adopt Dropbox's proposed claim constructions and reject Plaintiff's.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP

Dated:  April 4, 2024

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By   /s/ Michael J. Lyons

Michael J. Lyons
Karon N. Fowler
Austin L. Zuck
Katerina Hora Jacobson

Attorneys for Defendant
Dropbox, Inc.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26

DROPBOX RESP. CLAIM CONST. BR.
CASE NO. 5:23-CV-03264-PCP