United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENTANGLED MEDIA, LLC,

Plaintiff,

v.

DROPBOX INC.,

Defendant.

Case No.  23-cv-03264-PCP

**CLAIM CONSTRUCTION ORDER**

This is a patent case involving cloud-based file systems. The patented invention aims to overcome shortcomings of prior art methods for data synchronization by creating a virtual representation of data across devices through metadata indexing without requiring physical data replication across those devices. Plaintiff Entangled Media claims that defendant Dropbox Inc. infringes two of its patents. Entangled Media's asserted patents are U.S. Patent No. 8,296,338 ("the '338 Patent"), issued on October 23, 2012, and U.S. Patent No. 8,484,260 ("the '260 Patent"), a divisional application of the '338 Patent, issued on July 9, 2013.

Entangled Media and Dropbox dispute the construction of ten terms in these patents, which share a common specification. After considering the claims, specifications, prosecution histories, briefing, argument, and other relevant evidence, the Court construes the terms as set forth below.

**BACKGROUND**

The following technical backgrounds is drawn from the shared specification of the patents.

The claims generally relate to "a system and method for using data virtualization coupled with a cloud-based file system that is shared among devices and integrated into the device operating system so as to unify the representation of files across devices for availability of and access to data across multiple devices a user might own." '338 Patent at 1:20–25. The invention seeks to overcome the shortcomings of prior art methods for data synchronization that typically

1    required either the physical replication of files and data across devices through "locally installed

2    software" or through "online backup/storage based file replication across devices." *Id.* at 1:27–30.

3    Such methods utilized large amounts of storage, kept data across devices in separate locations, and

4    demanded "high-degree of user involvement for their operation." *Id.* at 1:50–2:2.

5    Unlike the prior art, Entangled Media's invention does not require "physical data

6    replication across multiple devices." '338 Patent at 2:18–20. Instead, it "creates a virtual

7    representation of data on all of the devices using metadata indexing" that "allows for otherwise

8    impossible amounts of data to be virtually stored on each device" without requiring that the files

9    themselves be stored on all devices. *Id.* at 2:20–28. The solution "does not require data to be

10   stored on a provider server, but instead stores only light-weight metadata … online." *Id.* at 2:29–

11   32. It "establishes the ability for user devices to be aware of one another and communicate directly

12   when data is requested," *id.* at 2:32–34, and "can also incorporate files stored in an online service

13   account, such as a photo account or video account (exemplary—YouTube.com or Picasa.com),"

14   *id.* at 2:35–37. The invention "requires no configuration or interaction with the user to virtualize

15   any and all data across all devices" after installation. *Id.* at 2:38–40.

16   While the claims of the '338 Patent disclose a "process for establishing a singular file

17   system across multiple devices," '338 Patent at 11:22–23, the claims of the '260 Patent

18   additionally disclose a method for improving computer functionality by allowing for the transfer

19   of physical files located on different devices using a peer-to-peer connection, '260 Patent at

20   11:25–52.

21                                    **LEGAL STANDARD**

22   Section 112 of the Patent Act directs that a patent specification "shall contain a written

23   description of the invention, and of the manner and process of making and using it, in such full,

24   clear, concise, and exact terms as to enable any person skilled in the art to which it pertains … to

25   make and use the same," and requires that the specification "conclude with one or more claims

26   particularly pointing out and distinctly claiming the subject matter which the inventor or a joint

27   inventor regards as the invention." 35 U.S.C. § 112.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1      "It is a bedrock principle of patent law that the claims of a patent define the invention to

2 which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

3 (Fed. Cir. 2005) (cleaned up). Claim terms "are generally given their ordinary and customary

4 meaning," which is "the meaning that the term would have to a person of ordinary skill in the art

5 in question at the time of the invention." *Id.* at 1312–13. This "person of ordinary skill in the art is

6 deemed to read the claim term not only in the context of the particular claim in which the disputed

7 term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

8      Courts construe the meaning of language used in patent claims as a matter of law.

9 *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). "Because the meaning

10 of a claim term as understood by persons of skill in the art is often not immediately apparent, and

11 because patentees frequently use terms idiosyncratically, the court looks to those sources available

12 to the public that show what a person of skill in the art would have understood disputed claim

13 language to mean. Those sources include the words of the claims themselves, the remainder of the

14 specification, the prosecution history, and extrinsic evidence concerning relevant scientific

15 principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314

16 (cleaned up). In addition to the words, structure, and context of the claims themselves, the patent

17 specification is "highly relevant" and is "the single best guide to the meaning of a disputed term."

18 *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Courts may also look

19 to the patent's prosecution history, especially to "exclude any interpretation that was disclaimed."

20 *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005). Finally, courts have discretion

21 to consider extrinsic evidence like dictionaries, treatises, and expert testimony. *Philips*, 415 F.3d

22 at 1317. But extrinsic evidence is "less significant" and "less reliable" than the intrinsic record and

23 should only be "considered in the context of the intrinsic evidence." *Id.* at 1317–19.

24      Under Section 112, "a patent is invalid for indefiniteness if its claims, read in light of the

25 specification delineating the patent, and the prosecution history, fail to inform, with reasonable

26 certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig*

27 *Instruments, Inc.*, 572 U.S. 898, 901 (2014). Determining whether a claim is indefinite requires "a

28 delicate balance." *Id.* at 909 (cleaned up). This inquiry focuses on whole claims rather than

particular terms. *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016). And it must account for "the inherent limitations of language" and the fact that "patents are not addressed to lawyers, or even to the public generally, but rather to those skilled in the relevant art." *Nautilus*, 572 U.S. at 909 (cleaned up). Still, "a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* (cleaned up). "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## CONSTRUCTION OF DISPUTED TERMS

Entangled Media and Dropbox propose ten terms for construction pursuant to the local patent rules. The first eight terms are jointly identified by Entangled Media and Dropbox. The ninth term is proposed by Entangled Media and the final term is proposed by Dropbox. The Court adopts the parties' practice and refers to the '338 patent unless noted. The terms are construed as follows.

**Term 1 ('338 Patent, Claim 1)**

| | |
|---|---|
| **Claim Language** | "Providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients" |
| **Entangled Media Proposal** | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>"The at least one server provides to each of the multiple devices via the individual software clients the single master meta-index with each of the meta-indices of each of the other devices" |
| **Dropbox Proposal** | "The at least one server provides to each of the multiple devices via the individual software clients both (1) the single master meta- index and (2) each of the separate, individual meta-indices of each of the other devices" |
| **Court's Construction** | **"The at least one server provides to each of the multiple devices via the individual software clients the single master meta-index with each of the meta-indices of each of the other devices"** |

United States District Court
Northern District of California

1    The first disputed term appears in the first claim of Entangled Media's '338 patent.

2    Entangled Media argues that the term "Providing by the at least one server the single

3    master meta-index and meta-indices for each of the other multiple devices to each of the multiple

4    devices via the individual software clients" should be given its plain and ordinary meaning.

5    Should the Court determine that a specific construction is warranted, Entangled Media argues in

6    the alternative that the disputed term should be construed to mean "The at least one server

7    provides to each of the multiple devices via the individual software clients the single master meta-

8    index with each of the meta-indices of each of the other devices." Dropbox by contrast argues that

9    this term should be construed to mean "The at least one server provides to each of the multiple

10   devices via the individual software clients both (1) the single master meta-index and (2) each of

11   the separate, individual meta-indices of each of the other devices."

12   The parties agreed at the *Markman* hearing that the claim language supported by the

13   specification clarifies that the disputed term requires that both the single master meta-index and

14   individual meta-indices are provided. The Court agrees with Entangled Media that "and" within

15   the disputed term confirms that interpretation. Dropbox's proposed construction to include the

16   word "both" consequently introduces unnecessary redundancy. *See Apple, Inc. v. Ameranth, Inc.*,

17   842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Construing a claim term to include features of that term

18   already recited in the claims would make those expressly recited features redundant.").

19   Here, the primary dispute is over the form in which information is provided. Under

20   Dropbox's proposed construction, the at least one server must provide the meta-indices of each of

21   the other devices in "separate, individual" form. Two words in Dropbox's proposal then form the

22   crux of this dispute: "separate" and "individual."

23   Claim 1 of the '338 Patent describes a process comprising three steps relevant to "the at

24   least one server." First, the individual software clients provide "via the multiple devices individual

25   meta-indices of the inventoried data for each of the multiple devices to the at least one server."

26   '338 Patent at 11:35–38. That is, the at least one server receives the individual meta-indices for

27   each of the multiple devices. Second, the at least one server integrates "the individual meta-indices

28   to create a single master meta-index." *Id.* at 11:39–40. Third, the at least one server provides "the

5

single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients." *Id.* at 11:41–44.

Dropbox argues that limitations in Claim 1 confirm its interpretation. Specifically, Dropbox cites to the steps by which the individual software client "scan[s] each of the multiple devices … to inventory data on each of the multiple devices and create a meta-index of the files for each inventoried data," '338 Patent at 11:31–34 and "provid[es] … via the multiple devices individual meta-indices of the inventoried data for each of the multiple devices to the at least one server," *id.* at 11:35–38. "[B]ecause these individual meta-indices originate from each individual device," Dropbox contends, a "person of ordinary skill in the art" ("POSITA") "would understand that they remain separate, individual meta-indices when the server provides them to each of the multiple devices." Dkt. No. 105, at 7. In further support, Dropbox cites to two paragraphs in the specification that discuss "providing by the at least one server the single master meta-index to each of the multiple devices via the individual software clients," '338 Patent at 3:4–6, and how "[t]he web service then sends the meta-indices for each of the registered devices to each of the other individual registered user devices S**20**," *id.* at 6:17–20.

Entangled Media responds that the disputed claim language does not use the term "individual meta-indices," whereas the claim language Dropbox cites does. Ignoring that difference, Entangled Media contends, would incorrectly import limitations into the disputed term and disregard the different meanings of these terms. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("In the absence of any evidence to the contrary, we must presume that the use of ... different terms in the claims connotes different meanings. In other words, the use of two terms in a claim requires that they connote different *meanings*." (cleaned up)). Further, Entangled Media responds that Dropbox not only fails to cite to claim language or paragraphs in the specification using the term "separate." Importing that term, Entangled Media, contends would only serve to introduce confusion.

The Court agrees with Entangled Media that Dropbox seeks to import a technical limitation into the disputed term that is simply not supported. The claims and the specification do not teach that information must be transmitted in a particular form. "The words of a claim are

1  generally given their ordinary and customary meaning as understood by a person of ordinary skill

2  in the art when read in the context of the specification and prosecution history." *Thorner v. Sony*

3  *Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1313).

4  Two exceptions apply: "1) when a patentee sets out a definition and acts as his own lexicographer,

5  or 2) when the patentee disavows the full scope of a claim term either in the specification or

6  during prosecution." *Id.* Neither applies here.

7          Dropbox next argues that Entangled Media limited the construction of the disputed term

8  through its prosecution history. Dropbox cites to Entangled Media's amendment to Claim 1,

9  adding the underlined language: "providing by the at least one server the single master meta-index

10 and meta-indices for each of the other multiple devices to each of the multiple devices via the

11 individual software clients." Dkt. No. 105-2, '338 Patent File History at 3. According to Dropbox,

12 "[t]his confirms that the server provides not only the single master meta-index, but also separately,

13 provides meta-indices for each of the other multiple devices." Dkt. No. 105 at 7. Entangled

14 Media's amendment, Dropbox contends, was necessary in order to overcome the rejection of prior

15 art. *See Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372–73 (Fed. Cir. 2005) ("Where

16 an applicant argues that a claim possesses a feature that the prior art does not possess in order to

17 overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad

18 claim language."). Again, however, the parties agree that both the master meta-index and each of

19 the meta-indices of each of the devices are provided. The prosecution history does not provide

20 support for Dropbox's introduction of a "separate" and "individual" requirement.

21         Here, in the prosecution history, Entangled Media distinguishes its invention from prior art

22 by explaining how only its invention contains and transmits information from other devices. *See*

23 '338 Patent File History at 10–11. Contrary to Dropbox's assertion, that difference does not

24 depend on the specific form in which the information is transmitted. Entangled Media has not

25 disavowed the construction of this term in the prosecution history.

26         Accordingly, the Court construes the disputed term as meaning: "The at least one server

27 provides to each of the multiple devices via the individual software clients the single master meta-

28 index with each of the meta-indices of each of the other devices."

United States District Court
Northern District of California

**Term 2 ('338 Patent, Claim 1)**

| | |
|---|---|
| **Claim Language** | "Continually updating the single master meta-index on the at least one server and each of the multiple devices in response to change" |
| **Entangled Media Proposal** | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>"While the software client is running, updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon" |
| **Dropbox Proposal** | "Running update software without interruption to immediately update in response to changes to the data indexed on each of the multiple devices (1) the single master meta-index on the at least one server, and (2) the single master meta-index on each of the multiple devices" |
| **Court's Construction** | **"While the software client is running, immediately updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon"** |

The second disputed term appears in the first claim of Entangled Media's '338 patent.

Entangled Media argues that the term "Continually updating the single master meta-index on the at least one server and each of the multiple devices in response to change" should be given its plain and ordinary meaning. Should the Court determine that a specific construction is warranted, Entangled Media argues in the alternative that the disputed term should be construed to mean "While the software client is running, updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon." Dropbox by contrast argues that this term should be construed to mean "Running update software without interruption to immediately update in response to changes to the data indexed on each of the multiple devices (1) the single master meta-index on the at least one server, and (2) the single master meta-index on each of the multiple devices."

The parties agree that the disputed term requires updating both (1) the single master meta-index on the at least one server and (2) the single master meta-index on each of the multiple devices in response to changes to the data indexed on each of the multiple devices. The parties dispute the meaning of "continually updating," including when and under what conditions the updates must occur.

Under Entangled Media's proposed construction, "continually updating" would require the single master meta-index to update in response to changes to the indexed data without user input under the assumption that the software client is running. Entangled Media points to language in the specification explaining the "totally transparent" nature of the system, which does "not require[e] the user to interact with the software,' " '338 Patent at 5:24–35, and emphasizes the specification's prior use of "continually" in this context, explaining that the solution "account[s for] files on all other devices the user may own … without the user having to **continually** designate files for inclusion or exclusion," *id.* at 2:45–49 (emphasis added). Entangled Media also points to an example of the "continually updating" process in the specification. It describes:

> By way of example, if the physical file of File.DOC$_{PHY}$ is located on the hard drive of Device A, a virtual file of File.DOC$_{VIR}$ will be located in the same corresponding file directory of the hard drive on registered Device B and Device C. When the user moves File.DOC$_{PHY}$ from its stored directory (e.g. . . ./My Documents/Proposals) on the hard drive of Device A to the desktop directory of Device A, this move will be indexed by the software client of Device A, provided to the web service, the user meta-index database at the web service will be updated to reflect the move, the software clients of Devices B and C will be notified of the move and the software clients of Devices B and C will updated Devices B and C, respectively, to show File.DOC$_{VIR}$ on the desktops (or equivalent locations) thereof.

*Id.* at 8:2–17. According to Entangled Media, this example provides further support for its interpretation that "continually update" is initiated by and thus dependent on the software client running.

Dropbox responds that the use of "continually" in the claim is a limitation that Entangled Media's proposed construction "effectively reads … entirely out" by allowing for "occasional or intermittently updates … so long as the software client is only running occasionally or intermittently." Dkt. No. 105, at 14. Under Dropbox's proposed construction, "continually

9

updating" requires "running update software without interruption to immediately update."
Dropbox argues that the plain and ordinary meaning of "continually" in the claim language is
unambiguous and cannot be reconciled with any interruption of the software—even if due to an
external factor causing an interruption to the software. "If the update software is interrupted,"
Dropbox explains, "then the updating will be delayed and will occur intermittently, whenever the
software happens to be running, and not 'continually.'" Dkt. No. 105, at 12. Dropbox points to the
specification where it explains that updates are performed "[u]pon completion of any modification
to the file." '338 Patent at 6:62–64. Dropbox reads "[u]pon completion" to mean "as soon as a file
is modified." Dkt. No. 105, at 12. Dropbox also points to the use of temporal language in the
specification teaching that it is "[a]t this point" that "the local device removes the aforementioned
file from memory, so that it is stored only in the single location/device on which it was originally
kept." '338 Patent at 6:65–67. In light of the specification then, Dropbox proposes a construction
that interprets "continually update" to require that the software client run continuously under all
circumstances such that the updates would thus occur "immediately" and "without interruption."

   Entangled Media responds that the specification does not denote these temporal or
procedural limitations, as it never uses the words "immediately" and does not "provide any signal
as to *when* such updates must occur with respect to the modifications, other than they must happen
at some point after the files are modified." Dkt. No. 108, at 8. Entangled Media interprets "upon"
in Dropbox's cited language to mean "without *unnecessary* delay." *Id.* at 9.

   The Court agrees with Dropbox that the use of "upon" expresses immediacy or close
temporal proximately thereafter. Entangled Media's interpretation of "upon" to mean "without
*unnecessary* delay" is certainly consistent with "immediacy." The claim language is not as broad,
however, as Entangled Media's proposed construction would allow. Neither the claim language
nor specification allow for or designate some broader timeframe under which updates are
completed in response to changes, for example, within an hour. Absent that, the Court finds that a
POSITA would understand "upon" in this context to properly convey immediacy. On the other
hand, the Court agrees with Entangled Media that a POSITA would understand that this is a
system that is entirely dependent upon a software client running. The specification defines

Software Client to mean "a piece of software that is installed and runs continuously on the device," '338 Patent at 4:41–42. Consequently, it is implied that the disputed term depends on the software client running. Dropbox's introduction of "without interruption" overlooks this necessary condition and reads in a technical limitation not supported by the claim language or specification. The invention is not claiming to solve a problem in the prior art where the software client was sometimes running and sometimes not. The invention is simply not focused on complete absence of interruption in all circumstances. For these reasons, the Court declines to limit the construction of the disputed term in that way.

Accordingly, the Court construes the disputed term as meaning: "While the software client is running, immediately updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon."

**Term 3 ('338 Patent , Claim 5)**

| | |
|---|---|
| **Claim Language** | "visual representation of virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one of the multiple devices" |
| **Entangled Media Proposal** | "The same list of files is shown on multiple devices regardless whether those files include both virtual and actual files" |
| **Dropbox Proposal** | Plain and ordinary meaning |
| **Court's Construction** | **"visual representation on the local device of virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation on the local device of an actual file that is located on the local one of the multiple devices"** |

The third disputed term appears in the fifth claim of Entangled Media's '338 Patent.

Entangled Media argues that the term "visual representation of virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on the local one of the multiple devices" should be construed to mean "The

United States District Court
Northern District of California

same list of files is shown on multiple devices regardless whether those files include both virtual and actual files." Dropbox by contrast argues that the term should be given its plain and ordinary meaning.

Claim 5 describes the "process according to claim 1, wherein the individual software clients facilitate creation of a visual representation of the virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one of the multiple devices." '338 Patent, at 12:1–6.

The parties dispute centers on what it means for a "visual representation" to be "indistinguishable."

First, the parties dispute whether the term is comparing the visual representation across different devices, that is, comparing a visual representation on a local device to a visual representation on a separate remote device, or whether comparison of the visual representations at issue in Claim 5 is between visual representations on the same device. Many of Entangled Media's arguments rely on the assumption that Claim 5 compares the visual representation of a virtual file on a remote device to a visual representation of an actual file on a local device, thereby involving a comparison across at least two different devices. For example, in support of its proposed construction, Entangled Media points to paragraphs in the specification acknowledging and accommodating for differences in file structure and nomenclature across devices, such as a Mac system and Windows system. *See, e.g.*, '338 Patent at 9:5–10. From this acknowledgment, Entangled Media argues that "a POSITA would readily understand that visual representations of files on remote computers could differ somewhat from visual representations on a local device, depending on different screen sizes, color settings, other user interface customizations, and computers running different operating systems with different user interfaces that present files to users somewhat differently." Dkt. No. 101, at 16. By contrast, Dropbox interprets the disputed language to compare visual representations on the same device. "The claim's plain language requires that the **visual representation** of the virtual files displayed on remote devices must be indistinguishable from the **visual representation** of an actual file displayed on the device where it is stored locally." Dkt. No. 105, at 15.

United States District Court
Northern District of California

1    The Court agrees with Dropbox that the disputed term is concerned only with the

2    indistinguishability of a local file and a virtual file on the *same* device. Claim 5 is concerned with

3    the visual representation on a local device. That is supported by the specification emphasizing the

4    "transparent" nature of the invention. '338 Patent at 5:25. "All file metadata is integrated into the

5    local device so that the view of data is common across all devices as if the files were actually

6    stored locally across all devices, even though they are not." *Id.* at 5:27–30. The view, or visual

7    representation of a virtual file that is actually stored on a remote device should appear on a local

8    device "indistinguishable" from the view, or visual representation, of a local file that is actually

9    stored on such device. The specification's express acknowledgment of differences across devices,

10   which Entangled Media notes, would be incompatible with the use of the word

11   "indistinguishable," stretching it too far beyond its meaning were Claim 5 comparing the visual

12   representation of a file across different devices.

13   Next, the parties dispute the relevance of the specific components comprising the visual

14   representation being compared. Entangled Media argues that the scope of visual representation is

15   limited to the "list of files," such that the claim language requires merely that the "list of files" be

16   "indistinguishable." That is because, Entangled Media contends, the specification and prosecution

17   history distinguish the invention from the "mounting" systems characteristic of the prior art that

18   contained different lists of files. Entangled Media finds further support for its construction in

19   Figure 6 of the patent, which shows:

20

21

22

23

24

25

26

27

28

13

1
2
3
4
5
6
7
8
9
10
11



Figure 6

12   According to Entangled Media, Figure 6 shows "how, after a file structure on each device has

13   been modified, a visual representation of the singular file system on each device shows the same

14   list of files, namely the list of files labeled 20 FS." Dkt. No. 101 at 16.

15          Dropbox responds that Entangled Media's proposed construction fails to ascribe any

16   meaning to the word "indistinguishable" as used in this context. Claim 5, Dropbox argues, is

17   "concerned with the indistinguishability of the visual representations, the creation of which were

18   facilitated by the *individual software clients*." Dkt. No. 105, at 17. Here, Dropbox argues, "when

19   the same icon is displayed for virtual and local files, they do not become 'distinguishable' simply

20   because a user's display renders one of those icons using different display settings, whereas a

21   visual representation of a virtual file identified with a 'vf' extension will be distinguishable from

22   a local file:" *Id.*

23          The Court agrees with Dropbox that Entangled Media's proposed construction limiting the

24   term to require only the same list of files is not supported by the claim language and specification

25   and cannot be squared with any reading of "indistinguishable." The natural reading of the

26   language would suggest more than that it requires just the same list of files. It would need to

27   provide a visual representation of those files that is the same. A POSITA would readily understand

28   this. The Court thus finds that the word "indistinguishable" in this context should be understood

according to its plain and ordinary meaning and requires no separate construction.

Accordingly, the Court construes the disputed term as meaning: "visual representation on the local device of virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation on the local device of an actual file that is located on the local one of the multiple devices."

**Term 4 ('338 Patent, Claims 1, 7; '260 Patent, Claims 1, 4, 5, 7, 8)**

| Claim Language | "Singular file system" |
|---|---|
| **Entangled Media Proposal** | "System wherein local and virtual files are shown in the same directories/folders" |
| **Dropbox Proposal** | "A system with a common, unified view of all data across more than one device so that all of a user's devices appear to share one single native file system containing all of the user's files across all devices" |
| **Court's Construction** | **"System wherein local and virtual files located across more than one device appear in the same directories/folders"** |

The fourth disputed term appears in the first and seventh claims of Entangled Media's '338 Patent and first, fourth, fifth, seventh, and eighth claims of Entangled Media's '260 Patent.

Entangled Media argues that the term "singular file system" should be construed to mean "System wherein local and virtual files are shown in the same directories/folders." Dropbox by contrast argues that this term should be construed to mean "A system with a common, unified view of all data across more than one device so that all of a user's devices appear to share one single native file system containing all of the user's files across all devices."

Here, the specification defines "File System" as "the component within an operating system responsible for managing all manner of files, as well as presenting them within a graphical user interface." '338 Patent at 4:25–27. The parties' dispute, therefore, boils down to what it means for a file system to be "singular" as opposed to non-singular. Entangled Media contends

that "singular" means "'same'–as in, sharing the same location (a directory or folder) on a device."
Dkt. No. 101, at 10. Dropbox counters that "'singular file system' is the '**one single native file
system** containing all the user's files' that is shared by all the user's devices and provides a
common, unified view for all the user's files across the user's devices." Dkt. No. 105, at 14.

Dropbox's proposed construction requiring "singular file system" to be strictly limited to a
unified view of "*all* data," relating to "*all* of a user's devices," containing "*all* of the user's files"
and "across *all* devices" is not correct because it is too broad. As Entangled Media argues,
Dropbox's expansive proposed construction "purports to define the entire invention, not just the
'singular file system'" that is only one part of the invention. Dkt. No. 103, at 5. The Court agrees
that Dropbox "takes this straightforward language and attempts to expand it to encompass the
entire invention, which does more than manage files." *Id.* While the "singular file system" is
central to the invention, construing "singular file system" to incorporate each improvement the
invention has over prior art—as Dropbox seeks to do here—would ignore the "comprising" part
and the subsequent steps set forth below in Claim 1. Entangled Media's construction, however,
fails to capture that the singular file system integrates data and files from across multiple devices
and does not simply involve data or files on the same device. That is relevant to the purpose of a
"singular" file system as distinct from non-singular file systems characteristic of the prior art that
required "file replication or cloning."

Accordingly, the Court construes the disputed term as meaning: "System wherein local and
virtual files located across more than one device appear in the same directories/folders."

**Term 5 ('260, Claim 1)**

| | |
|---|---|
| **Claim Language** | "Appear indistinguishable to the singular file system" / "Modifying the singular file system on the first device to make local files and virtual files **appear indistinguishable to the singular file system"** |
| **Entangled Media Proposal** | "Manageable by the singular file system as if they are stored in the same location" |
| | In light of Plaintiff's proffered constructions for "singular file system" and "appear indistinguishable to the singular file system," no additional construction is needed; plain and ordinary meaning for the remainder of this phrase |
| **Dropbox Proposal** | Indefinite |
| **Court's Construction** | **not indefinite, no additional construction necessary** |

The fifth disputed term appears in the first claim of Entangled Media's '260 Patent.

Dropbox argues that this claim is indefinite because "the claim language contains the conflicting requirements that the singular file system must both (1) not know whether a file is local or virtual, and (2) have access to metadata that indicates whether the file is local or virtual." Dkt. No. 105, at 17. Claim 1's requirement, "determining by the software client if the file is physically located on the first device or if the file is a virtual file on a corresponding file physically stored on a second device by **reviewing file metadata,**" Dropbox emphasizes, is incompatible with the local and virtual files "appear[ing] indistinguishable to the singular file system." *Id.* at 17–18. That is because "Claim 1 requires the 'software client' of the singular file system to review metadata to determine whether a file is virtual or local and the specification confirms that the singular file has access to this metadata, thereby enabling the singular file system to be able to distinguish between a virtual or local (*i.e.*, physical file) via that metadata." *Id.* at 18. Dropbox finds further support for its indefinite argument in the specification, where it teaches that the metadata indicates whether the file is local or virtual, and in the prosecution history wherein the applicant argued that prior art "distinguishes and discriminates" between local and shared objects

United States District Court
Northern District of California

1    or files. *Id.* at 19.

2          This claim is not indefinite in light of the language of the claim and the patent's

3    specification. The language of Claim 1 of the '260 patent involves separate steps that delegate

4    functionality to different entities. One of those steps involves "modifying the singular file system

5    on the first device to make local files and virtual files appear indistinguishable to the singular file

6    system." '260 Patent at 11:30–32. A subsequent step in Claim 1 comprises "determining by the

7    software client if the file is physically located on the first device or if the file is a virtual file of a

8    corresponding file physically stored on a second device by reviewing file metadata." *Id.* at 11:36–

9    39. A straightforward reading of the latter step as compared to the former makes clear that any

10   distinguishing by means of "reviewing file metadata" is performed "by the software client" and

11   not the "singular file system." It does not follow logically from the claim language then that the

12   ability of *the software client* to distinguish local files from virtual files by reviewing metadata

13   necessarily means that the *singular file system* knows or can distinguish between local and virtual

14   files. The specification confirms the distinction drawn here between the knowledge and

15   discernment performed by the software client versus the singular file system. For example, the

16   specification explains,

17            The software client provides user device data in the form of a meta-
              index. For each identified data file, the meta-index includes metadata
18            such as file name, file type, file size, local path the file is stored in,
              date created, date modified, etc. Once all of the user's devices and on-
19            line service accounts are registered and meta-indexed by the software
              client … the web service integrates all of the individual meta indices
20            for all of the user's registered devices into a database S18. This master
              index of metadata thus becomes the singular file system that all
21            devices use; integrated locally into a device's operating system via
              the software client. The web service then sends the meta-indices for
22            each of the registered devices to each of the other individual
              registered user devices S20.
23

24   '338 Patent at 6:4–20. As the above language clarifies, it is the software client that knows and can

25   distinguish files based on the relevant metadata. It is after the software client distinguishes the

26   files in that way that then the web service *integrates* the meta-indices into a database that then

27   becomes the singular files system. As Entangled Media argues, there is nothing in the claim

28   language nor specification that states that the singular file itself *knows* this information or can

United States District Court
Northern District of California

otherwise distinguish between the local and virtual files via the metadata that was integrated prior to its coming into existence.

This claim is not indefinite in light of the language of the claim and the patent's specification. In context, the language in this claim is clear enough to provide sufficient notice of what is claimed. *See Nautilus*, 572 U.S. at 909. For the same reasons stated above, the word "indistinguishable" in this context should be understood according to its plain and ordinary meaning. Additionally, with the separate construction of the term "singular file system," the disputed term requires no further construction.


**Term 6 ('260, Claims 1, 7)**

| Claim Language | "Is identical to" / "A visual representation of the singular file system on the first device **is identical to** a visual representation of the singular file system on the second device" |
|---|---|
| **Entangled Media Proposal** | "Shows the same list of files as" |
| | In light of Plaintiff's proffered constructions for "singular file system" and "is identical to," no additional construction is needed; plain and ordinary meaning for the remainder of this phrase. |
| **Dropbox Proposal** | With respect to "is identical to": "exactly the same as and does not differ in any way from" |
| **Court's Construction** | "Shows the exact same list of files, directories, and folders as" |


The sixth disputed term appears in the first and seventh claims of Entangled Media's '260 Patent.

Here the dispute is limited to the phrase "is identical to" within the broader term. Entangled Media argues that the term "is identical to" should be construed to mean "Shows the same list of files as." Dropbox by contrast argues that the phrase "is identical to" should be construed to mean "exactly the same as and does not differ in any way from." The parties' positions here closely mirror those related to the disputed phrase "visual representation of virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual

United States District Court
Northern District of California

representation of an actual file that is located on a local one" at Claim 5 of the '338 Patent.

The relevant step in Claim 1 of the '260 Patent describes a process comprising "determining by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device." '260 Patent at 11:36–42. The disputed term compares a visual representation of the singular file system on at least two different devices.

In support of its construction, Entangled Media again points to the invention's focus on the singular file system showing the same list of files across devices and the specification's acknowledgment that "due to different devices and operating systems being used, the visual representations of the singular file systems on difference devices can contain some differences." Dkt. No. 101, at 19–20. Dropbox responds that "'identical'" is an exacting standard. As such, the visual representation refers to more than simply files," as "File System" is defined as "the component within an operating system responsible for managing all manner of files, *as well as presenting them within a graphical user interface*." Dkt. No. 105, at 21. Dropbox finds further support in paragraphs of the specification teaching that the singular file system maintains "a common, single view of all data across all devices," '338 Patent at 5:19–23, and, for example, that the virtual files "appear to the user exactly as local files" and contain "all that the physical file has" including "a thumb nail with an icon … the file name, the file size, the file type, the date it was created, [and] the date it was modified." *Id.* at 7:62–65. Dropbox argues that Entangled Media's proposed construction cannot be reconciled with the plain and ordinary meaning or any other dictionary definition of the word "identical."

Entangled Media again raises the issue that the claims and specification acknowledge that "differences between operating systems, devices, user interface customizations, phone sizes, among other issues would cause the visual representation of the singular file system on one device to not be exactly the same as the visual representation of the singular file system on a different device." Dkt. No. 108, at 12. These concerns were misplaced with respect to the disputed phrase

United States District Court
Northern District of California

"visual representation of virtual files on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one" at Claim 5 of the '338 Patent because that phrase involved only one device. These concerns *are* relevant, however, to the construction of Term 6, which involves comparisons across devices. The claims and specification anticipate this, and a POSITA would understand that different operating systems use different visuals for representing files. In light of that, a reading of "identical" that ignores such differences is not correct and Dropbox's interpretation is a more aggressive reading than the claim and specification would support. It requires too much and cannot be reconciled with the specification's acknowledgment of differences across devices.

The Court agrees with Dropbox, however, that the visual representation at issue here is concerned with more than simply the "list of files," for the reasons addressed above. Here too, Entangled Media's proposed construction limiting the term to require only the same list of files is not supported by the claim language and specification and cannot be squared with any reading of "indistinguishable." The natural reading of the language would suggest more than that it requires just the same list of files. Consistent with the Court's separate construction of the term "singular file system," it would need to show the exact same list of files, directories, and folders.

Accordingly, the Court construes the disputed term as meaning: "Shows the exact same list of files, directories, and folders as."

**Term 7 ('260 Patent, Claim 1)**

| | |
|---|---|
| **Claim Language** | "Requesting by a software client on the first device that a peer-to-peer connection be brokered by server-based web service between the first and second device" |
| **Entangled Media Proposal** | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>"a software client on the first device requests that a server-based web service provide communication parameters for a peer-to-peer connection between the first and second device" |
| **Dropbox Proposal** | "a software client on the first device requests that a server-based web service establish a peer- to-peer connection between the first and second device" |
| **Court's Construction** | **no additional construction necessary** |

The seventh disputed term appears in the first claim of Entangled Media's '260 Patent. Entangled Media argues that the term "Requesting by a software client on the first device that a peer-to-peer connection be brokered by server-based web service between the first and second device" should be given its plain and ordinary meaning. Should the Court determine that a specific construction is warranted, Entangled Media argues in the alternative that the disputed term should be construed to mean "a software client on the first device requests that a server-based web service provide communication parameters for a peer-to-peer connection between the first and second device." Dropbox by contrast argues that this term should be construed to mean "a software client on the first device requests that a server-based web service establish a peer- to-peer connection between the first and second device."

Here the dispute centers on the meaning of "brokered." Does "brokered" in this context require simply facilitating the peer-to-peer transfer by providing the communication protocol and

parameters to the respective devices or does it require that the server-based web service actively establish the peer-to-peer connection? In other words, does broker mean that the server-based web service establish a protocol or establish a connection itself?

In relevant part, Claim 1 of the '260 Patent describes a process by which, after the software client determines the location of the file, "if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device." '260 Patent at 11:43–50.

The specification explains that "In the case of a virtual file, the software client on Device A determines from the file's metadata the remote device on which it is stored (Device B) and asks the web service to broker a connection between Device A and Device B S125." '338 Patent at 8:38–42. Immediately following that language, the specification teaches that "The web service determines what type of connection is possible between Device A and Device B and instructs both devices of the communication protocol and parameters to be used for the transfer." *Id.* at 8:42–45. A straightforward reading of the claim language in light of the specification indicates that "brokering" involves "determining what type of connection is possible" and "instruct[ing] both devices of the communication protocol and parameters to be used for the transfer." Entangled Media's proposed construction of "brokered" to involve "provid[ing] communication parameters" is certainly consistent with that.

Dropbox responds by arguing that "broker" requires more—it requires the web service actually "*establish* a peer-to-peer connection" after it determines what type of connection is possible. First, Dropbox finds support for its proposed construction in dependent claim 2 of the '260 Patent, which describes the process "wherein if the peer-to-peer connection cannot be brokered between the first device and the second device, an alternative connection is established by the server-based web service." '260 Patent at 11:53–56. Dropbox reads the server-based web service's capacity to "establish" an alternative connection—described in dependent claim 2—as a limitation expressed by the term "brokered" in Claim 1. Dropbox also points to the specification's

definition of "Web Service." The specification defines "Web Service" as "a part of the system that operates on the Internet and is made up of several types of web technologies including web servers, databases, peer-to-peer services (e.g., jingle, BitTorrent, Skype, JXTA), an HTTP Relay and other systems that interact with the clients. The web service acts as an information manager that coordinates information, communication and activities with the clients. It also coordinates the transfer of files between devices by establishing a transfer protocol, such as peer-to-peer or HTTP relay, or other such method, depending on the type of connection that is available for a given network or Internet connection." '338 Patent at 4:43–53. The Court agrees that the specification anticipates that the web service may actually establish a connection and that the plain and ordinary meaning of the term "brokered" encompasses the active establishing of a connection.

The Court agrees with Entangled Media, however, that a plain and ordinary meaning in light of the claim language and specification do not *require* the web service in the disputed language to "establish a connection." By so requiring, Dropbox again seeks to read in a limitation that is not supported here. A plain and ordinary reading of "brokered" is broad enough to encompass both "provid[ing] communication parameters for a peer-to-peer connection" and "establish[ing] a peer-to-peer connection."

Because the disputed term does not require further construction, the Court will not additionally construe this claim.

24

**Term 8 ('260 Patent, Claim 1)**

| | |
|---|---|
| **Claim Language** | "Transferring the corresponding physical file from the second device to the first device" |
| **Entangled Media Proposal** | No construction needed; plain and ordinary meaning<br><br>However, to the extent the Court determines that a specific construction is warranted:<br><br>"transmitting the data of the corresponding physical file from the second device to the first device" |
| **Dropbox Proposal** | "relocating the content of the corresponding file off of the second device and to the first device" |
| **Court's Construction** | **no additional construction necessary** |

The eighth disputed term appears in the first claim of Entangled Media's '260 Patent. Entangled Media argues that the term "Transferring the corresponding physical file from the second device to the first device" should be given its plain and ordinary meaning. Should the Court determine that a specific construction is warranted, Entangled Media argues in the alternative that the disputed term should be construed to mean "Transmitting the data of the corresponding physical file from the second device to the first device." Dropbox by contrast argues that this term should be construed to mean "relocating the content of the corresponding file off of the second device and to the first device."

The parties dispute whether "transferring" requires "relocation," that is, the deletion of the physical file on the original device.

At this step, Claim 1 of the '260 patent explains, "if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to the first device." '260 Patent at 11:48–50. Dropbox's primary argument is that its proposed construction reflects the "purported[ly] novel aspect of the patent," namely that the invention is distinguished from prior art because it does not require the physical replication of data across devices. Dkt. No. 105, at 24–25.

In order to overcome the limitation of prior art then, Dropbox contends, "transfer" must be understood as requiring "relocation" or deletion of data from the second device to the first device. This argument lacks merit.

First, avoiding the need to replicate *all* data on *all* devices does not justify narrowly construing this term to provide that data cannot simultaneously exist on two devices. The Court agrees with Entangled Media that Dropbox here seeks to read limitations from the specification into the claims. The "claims must be read in view of the specification, but limitations from the specification are not to be read into the claims." *See Teleflax, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002).

Second, such a narrow reading is not supported by the claim language in light of the specification, which elsewhere teaches that "the entirety of the physical file need not be downloaded in order to be responsive to most actions." '338 Patent, 8:61–63. While a transfer may involve deletion, common sense also provides that—as in the example of the "file transfer protocol" sometimes identified as ftp://—a transfer may involve copying data from one location to another even if the data remains in the original location upon transfer. The plain and ordinary meaning conveys that much.

Because the disputed term does not require further construction, the Court will not additionally construe this claim.

**Term 9 ('338, Claim 1)**

| | |
|---|---|
| **Claim Language** | "The virtual files indistinguishable from the local files" / **The virtual files indistinguishable from the local files** by the local file system at each of the multiple devices" |
| **Entangled Media Proposal** | "The virtual files manageable as if they were local files"<br><br>In light of Plaintiff's proffered construction for "the virtual files indistinguishable from the local files," no additional construction is needed; plain and ordinary meaning for the remainder of this phrase |
| **Dropbox Proposal** | Plain and ordinary meaning |
| **Court's Construction** | **"The virtual files indistinguishable from the local files to the user and the local file system"** |

The ninth term appears in Claim 1 of Entangled Media's '338 Patent. Only Entangled Media seeks construction of this term, arguing that the term "The virtual files indistinguishable from the local files" should be construed to mean "The virtual files manageable as if they were local files." Dropbox responds that the term should be given its plain and ordinary meaning.

This term appears in Claim 1 of the '338 Patent as part of the integrating step in the claimed process. At that step, the process integrates metadata so that the local files system "at each of the multiple devices" cannot distinguish between the local files and the virtual files stored at the same location. Entangled Media's construction would replace "indistinguishable" with "manageable." It argues that the patent "instructs that the local and remote files are managed as if they are stored in the same location, i.e. the virtual files are managed as if they were local files." Dkt. No. 101, at 17. Entangled Media points to the specification, explaining that "[i]n essence, each device file system then acts as if it is a shared file system; enabling the local operating system to manage remote and local file as if they are all stored in the same location." '338 Patent at 5:30–33.

While a characteristic of "indistinguishability" might be "manageability," as addressed by

the specification there, the Court finds that Entangled Media's proposed construction ignores other relevant parts of the specification that suggest a broader reading. The specification uses the word "indistinguishable" again later, explaining that the "virtual files appear in essentially all ways the same as a local file, making them indistinguishable unless such a distinction is enabled as a separate option." '338 Patent at 6:34–36. The specification then describes that the "virtual files appear to the user exactly as local files" with the only difference being that the virtual file "doesn't take any local space on the local device with the exception of the space required for meta-data storage (less than 1 kilobyte per file)." *Id.* at 7:62–8:1. The "virtual files act as mock files and mock the properties of the physical file," such that "if the same actions were performed on a virtual file, instead of the physical file, the same corresponding routines and results would occur, thus ensuring that regardless of a user interacting with the physical or virtual version of a file, they are treated as if they were the same." *Id.* at 8:1–2, 8:17–22. A straightforward reading of "indistinguishability" in light of both the claim language and specification plausibly covers not only how the virtual and local files are acted upon, operated upon, or treated by the local file system, but also how they "appear," which goes to presentation. Entangled Media's construction ignores the latter quality.

While Dropbox asks this Court to adopt the plain and ordinary meaning of the disputed term, there is a risk that such a construction would be overly broad. In light of the claims and specification, "indistinguishability" must be read to take into account the *perspective* from which the virtual files must be indistinguishable. The specification clarifies that the virtual files must be indistinguishable to the local file system, *see* '338 Patent at 5:30–33, and also indistinguishable to the user, *see id.* at 7:62–8:22. These limits on distinguishability properly limit the scope of this term.[1]

---

[1] Notably, the examples Dropbox provides all involve indistinguishability from these two perspectives. Dropbox contends, for example, that the "specification confirms that the local file system cannot distinguish between virtual and local files, as they appear the same to the system." Dkt. No. 105, at 10. Dropbox also points to the specification's instruction that the "virtual files appear to the user exactly as local files," and "regardless of a user interacting with the physical or virtual version of a file, they are treated as if they were the same." '338 Patent at 7:62–8:22. And Dropbox contends that "if a virtual file has an identifying characteristic that differentiates it from its corresponding local file," like the file name extension relevant to prior art addressed in the

1   Accordingly, the Court construes the disputed term as meaning: "The virtual files

2   indistinguishable from the local files to the user and the local file system."

3

4   **Term 10 ('260 Patent, Claim 6)**

5

| Claim Language | "Pushing the physical file back to the second device" |
|---|---|
| **Entangled Media Proposal** | No construction needed; plain and ordinary meaning |
| | However, to the extent the Court determines that a specific construction is warranted: |
| | "Transmitting the data of the physical file to the second device at the instigation of the first device" |
| **Dropbox Proposal** | "pushing the content of the file off of the first device and back to the second device" |
| **Court's Construction** | **no additional construction necessary** |

The tenth disputed term appears in the sixth claim of Entangled Media's '260 patent. Only Dropbox seeks construction of this term, arguing that "Pushing the physical file back to the second device" should be construed to mean "pushing the content of the file off of the first device and back to the second device." Entangled Media responds that the term should be given its plain and ordinary meaning. Should the Court determine that a specific construction is warranted, Entangled Media argues in the alternative that the disputed term should be construed to mean "Transmitting the data of the physical file to the second device at the instigation of the first device."

Dropbox's argument here closely mirrors its argument regarding "transferring" in disputed term eight discussed above, emphasizing the invention's "purported point of novelty of maintaining a file in only 'a single physical location' without replicating the physical file to multiple devices." Dkt. No. 105, at 27. The Court rejects that argument for the same reason.

prosecution history, "then that virtual file cannot be said to be indistinguishable from the local file by the local file system, regardless how it is managed." Dkt. No. 105, at 10.

United States District Court
Northern District of California

1    Dropbox also contends that the plain meaning of "push back" implies that "the physical

2    file is not already on the second device to which it is being pushed back." Dkt. No. 105, at 27.

3    Entangled Media responds that "push" should be read to stand in contrast with "pull," thereby

4    conveying communication, message, and transmission as opposed to reading "push back" as a

5    unilateral direction requiring deletion. Further, Entangled Media argues that Dropbox's reading of

6    the specification as requiring deletion is undermined by the specification itself. For example, the

7    specification instructs:

> Once the file has been transferred from the remote device to the local
> device, it can be viewed, edited, or modified in any way by the user.
> Upon completion of any modification to the file, all *changes* are
> propagated back to the remote device and the local file is restored to
> its virtual state. At this point the local device removes the
> aforementioned file from memory, so that it is stored only in the
> single location/device on which it was originally kept.

12   '360 Patent, at 6:60–67 (emphasis added). Only after modification to the file is completed and "all

13   changes are propagated back to the remote device," does any deletion occur on the first device, as

14   evidenced by the phrase "[a]t this point." Entangled Media provides a plausible interpretation of

15   the disputed term's plain and ordinary meaning here in light of the specification. While "transmit"

16   conveys this information, in context, the term "push" is also sufficiently clear. It does not require

17   any further construction.

18       Because the disputed term does not require further construction, the Court will not

19   additionally construe this claim.

## CONCLUSION

21       The ten terms identified by the parties are construed as set forth above.

23       **IT IS SO ORDERED.**

24   Dated: September 4, 2024

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California