John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DROPBOX, INC.,<br><br>Defendant. | C.A. No. 5:23-cv-03264-PCP-VKD<br><br>**PLAINTIFF ENTANGLED MEDIA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE UNDER *DAUBERT* AND STRIKE THE OPINIONS OF DR. MCDANIEL**<br><br>Judge: Hon. P. Casey Pitts<br>Courtroom: 8 – 4th Floor<br>Hearing Date: May 8, 2025<br>Hearing Time: 10:00 a.m. |

████████████████

# TABLE OF CONTENTS

I.      INTRODUCTION AND STATEMENT OF ISSUES..................................................... 2

II.     RELEVANT FACTS ................................................................................................ 2

        A.      Background .................................................................................................. 2

        B.      Claim Construction ..................................................................................... 3

        C.      Dr. McDaniel's Expert Report Relies on Faulty Claim Construction Positions............ 4

        D.      Dropbox's Undisclosed Non-Infringement Theories.................................. 7

        E.      Dropbox's Undisclosed Non-Infringing Alternative Implementation Details............. 10

III.    LEGAL STANDARD ............................................................................................ 11

        A.      Claim Construction ................................................................................... 11

        B.      Undisclosed Expert Theories ................................................................... 12

IV.     THE COURT SHOULD EXCLUDE DR. McDANIEL'S OPINIONS BASED ON IMPROPER CLAIM CONSTRUCTIONS.................................................................. 12

        A.      Dr. McDaniel's Opinions Regarding the "Singular File System" Term Is Based on Improper Claim Construction and Should Be Excluded........................................ 13

        B.      Dr. McDaniel's Opinions Regarding the "Brokering" Term Is Based on Improper Claim Construction and Should Be Excluded................................................ 14

V.      THE COURT SHOULD EXCLUDE DR. McDANIEL'S NON-INFRINGEMENT AND NIA OPINIONS NOT DISCLOSED IN DROPBOX'S DISCOVERY RESPONSES. ......................................................................................................... 15

        A.      Dr. McDaniel's Non-Infringement Opinions Were Not Disclosed During Discovery ................................................................................................... 15

        B.      Dr. McDaniel's Opinions Regarding the Implementation Details for the "Distinguishability" and "Peer-to-Peer Related" NIAs Were Not Disclosed During Discovery ...................................................................................... 18

VI.     CONCLUSION..................................................................................................... 20

██████████

# TABLE OF AUTHORITIES

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 11- cv-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) .................................... 12, 15

*Asia Vital Components Co. v. Asetek Danmark A/S,*
377 F. Supp. 3d 990 (N.D. Cal. 2019)..................................................................................... 15

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ................................................................................................. 11

*Cordis Corp. v. Boston Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009) ................................................................................... 12, 14, 15

*CytoLogix Corp. v. Ventana Med. Sys.*, Inc.,
424 F.3d 1168 (Fed. Cir. 2005) ............................................................................................. 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........................................................................................................... 1, 11

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
No. 12-cv-04967-WHO, 2014 WL 4272771 (N.D. Cal. Aug. 28, 2014)................................. 11, 15

*Goodman v. Staples The Office Superstore, LLC,*
644 F.3d 817 (9th Cir. 2011) ................................................................................................. 12

*Huawei Tech., Co, Ltd v. Samsung Elec. Co*, Ltd.,
340 F. Supp. 3d 934 (N.D. Cal. Sept. 25, 2018)..................................................................... 11

*Impinj, Inc. v. NXP USA, Inc.*,
Case No. 19-cv-03161-YGR, 2023 WL 5174286 (May 22, 2023) ......................................... 14

*Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*,
No. 14-cv-00876-JSC (N.D. Cal. Mar. 30, 2018) ................................................................. 17

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ................................................................................................................ 1

*Liquid Dynamics Corp. v. Vaughan Co.*,
449 F.3d 1209 (Fed. Cir. 2006) ......................................................................................... 11, 15

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
No. 11-cv-05341-YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) ..................................... 11

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
No. 14-cv-03657-SI, 2018 WL 6046465 (N.D. Cal. Nov. 19, 2018)..................................... 17

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,*
523 F.3d 1051 (9th Cir. 2008) ............................................................................................... 12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) ............................................................................................. 17

*Ollier v. Sweetwater Union High Sch. Dist.*,
768 F.3d 843 (9th Cir. 2014) ....................................................................................... 19

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*,
No. 03-cv-05669-JW, 2007 WL 2429412 (N.D. Cal. Aug. 23, 2007) ................................ 11, 14, 15

*Torres v. City of Los Angeles*,
548 F.3d 1197 (9th Cir. 2008) ...................................................................................... 12

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) ....................................................................................... 14

*Wong v. Regents of Univ. of California*,
410 F.3d 1052 (9th Cir. 2005) ...................................................................................... 17

**Rules**

Fed. R. Civ. P. 26 ................................................................................................... 2, 17

Fed. R. Civ. P. 26(e)(1) ........................................................................................... 12, 15

Fed. R. Civ. P. 37(c)(1) ......................................................................................... 2, 12, 16

Fed. R. Civ. R. 26(e)(1) ............................................................................................... 12

Fed. R. Evid. 702 ................................................................................................... 1, 11

Patent L.R. 4 ............................................................................................................... 3

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS:

NOTICE IS HEREBY GIVEN that on May 8, 2025, at 10:00 AM, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable P. Casey Pitts, located at 280 South 1st Street, Courtroom 8, Fourth Floor San Jose, California, 95113, Plaintiff Entangled Media LLC will and hereby does move the Court for an Order to strike and exclude the expert opinions of Defendant Dropbox Inc.'s expert Dr. McDaniel under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Local Rules of this District, and related authorities. Specifically, Entangled Media moves to exclude: (1) Dr. McDaniel's opinions regarding "singular file system" and "brokering" as being inconsistent with the Court's claim construction order; and (2) Dr. McDaniel's opinions regarding new non-infringement theories and implementation details regarding non-infringing alternatives that were not disclosed in Dropbox's responses to Entangled Media interrogatories asking Dropbox to disclose its non-infringement and non-infringing alternatives positions and bases thereof.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of John E. Lord, filed herewith, the pleadings and papers on file herein, and any other evidence and argument presented to the Court at or before the hearing.

## I.    INTRODUCTION AND STATEMENT OF ISSUES

The Court should exclude Dropbox's expert, Dr. McDaniel, from offering opinions that fail to apply the governing claim constructions ordered by the Court. Specifically, Dr. McDaniel fails to adhere to the Court's construction of the claim terms "singular file system" and "requesting by a software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first and second device." Dr. McDaniel usurps the Court's role as the sole arbiter of claim construction when he ignores and rewrites the construction of these two key claim terms. His testimony is improper, would confuse the jury, and should be stricken from his reports.

Further, the Court should exclude Dr. McDaniel's non-infringement and non-infringing alternative opinions where Dropbox did not disclose these positions in its discovery responses. Dr. McDaniel's noninfringement opinions for the "scanning" and "providing" steps of Claim 1 of the '338 patent, and the "intercepting" step of Claim 1 of the '260 patent, rely on non-infringement theories that Dropbox never disclosed during discovery. Dropbox had ample time and notice to develop its non-infringement theories, and its failure to disclose these theories to Entangled Media until service of expert reports is untimely and unfairly prejudices Entangled Media as it had no opportunity to test these theories during discovery, or offer an expert opinion to rebut these theories. The prejudice to Entangled Media is substantial and not harmless, and cannot be cured without significant delay in the schedule, including a redo of significant portions of fact and expert discovery. The same holds true for Dr. McDaniel's "distinguishability" and "peer-to-peer related" non-infringing alternative implementation details—Dropbox never disclosed these implementation details during discovery. Entangled Media moves under Rules 26 and 37(c)(1) to strike these non-infringement and non-infringing alternative opinions.

## II.    RELEVANT FACTS

### A.    Background

Entangled Media alleges that Dropbox infringes U.S. Patent No. 8,296,338 ("the '338 Patent") and U.S. Patent No. 8,484,260 ("the '260 Patent") (collectively, "the Asserted Patents"). Dkt. No. 102. The Asserted Patents relate generally to a cloud-based file system that unifies virtual and local files

across the file systems of multiple devices. '338 patent, 1:19-25; Abstract.[1] Virtually representing the data means the files can be stored in one physical location, or at least less than all physical locations, and not stored on all devices, instead using a meta-index to store the lightweight metadata. *Id.*, 2:12-51; Figs 2, 3 and 6.

### B.    Claim Construction

In accordance with Patent L.R. 4, the parties sought to construe ten terms of the Asserted Patents. Dkt. No. 86. Two of the disputed terms were "singular file system" (Claim 1 of both Asserted Patents) and "requesting by a software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first and second device" (Claim 1 of the '260 patent). *Id.,* 1-2.

Entangled Media proposed that the term "singular file system" means a "system wherein local and virtual fields are shown in the same directories/folders," while Dropbox advocated for a broader construction with a "single native file system containing all of the user's files across all devices." Dkt. No. 133, 15. Dropbox's technical expert, Dr. McDaniel, also submitted a declaration in support of Dropbox's proposed claim construction advocating the same positions. Dkt. No. 101-7, ¶¶ 66-72. The crux of the parties' dispute was whether the singular file system required the local files in the singular file system to contain all of the user's files across all devices, rather than just those in the same directories/folders. *Id.* In the Claim Construction Order, the Court held that that Dropbox's proposed construction for "singular file system" "is not correct because it is too broad" and found that all of the user's files across all devices need not be contained within the singular file system. Dkt. No. 133, 16. The Court then largely adopted Entangled Media's proposed construction and ruled that "singular file system" means a "system wherein local and virtual files are shown in the same directories/folders." *Id.*

For the "peer-to-peer connection be brokered" term, Entangled Media proposed the term's plain and ordinary meaning, while Dropbox advocated for: "a software client on the first device requests that a server-based web service *establish* a peer-to-peer connection between the first and second device." Dkt. No. 133, 22 (emphasis added). Dr. McDaniel submitted a declaration in support of Dropbox's

---

[1] Because the Asserted Patents share a common specification, references will be made to the '338 Patent for brevity.

construction for this term, as well. Dkt. No. 101-7, ¶¶ 96-102. The Court stated that the dispute centered on the meaning of "brokered" and whether it requires that the server-based web service actively establish the peer-to-peer connection. *Id.*, 22-23. While the Court acknowledged that the "specification anticipates that the web service may actually establish a connection," "a plain and ordinary meaning in light of the claim language and specification does not *require* the web service in the disputed language to 'establish a connection.'" *Id.*, 24 (original emphasis). The Court thus rejected Dropbox's proposed construction and agreed with Entangled Media that additional construction for the term was not necessary. *Id.*

### C.    Dr. McDaniel's Expert Report Relies on Faulty Claim Construction Positions

Entangled Media served its opening expert report regarding infringement of the Asserted Patents on November 26, 2024. On January 14, 2025, Dr. McDaniel, the same expert used by Dropbox for claim construction, served a rebuttal expert report regarding non-infringement of the Asserted Patents. Ex. A ("McDaniel Rebuttal Report"). The McDaniel Rebuttal Report presented numerous non-infringement positions for nearly every asserted claim term across both Asserted Patents.

In the McDaniel Rebuttal Report at paragraphs 155-168, Dr. McDaniel addressed the meaning of "local files" since that term had not been construed. *Id.*, ¶ 157.

*Id.*

During his deposition, Dr. McDaniel acknowledged that his construction of "local files" may conflict with the Court's claim construction of "singular file system." He testified as follows:



Ex. B., 137:21-139:18

Dr. McDaniel then later in his deposition on re-direct retracted this testimony and testified that his opinions about local files and singular file system at paragraph 184 were correct, or would be correct under a different construction by the Court. *Id.*, 249:16-251:15. He further testified:

…

Ex. B, 265:13-266:15.

Further, Dr. McDaniel opined on the meaning of the claim term "brokering" as it appears in the '260 patent. Ex. C, ¶ 1088.[2] In particular, Dr. McDaniel opined that the claim term "brokered" required both "the active establishing of a connection and providing communications parameters for a peer-to-peer connection." *Id.* In his deposition, Dr. McDaniel confirmed this meaning:

Ex. B, 208:12-23.

As made clear below, these opinions expressed by Dr. McDaniel depend on faulty claim construction positions. Dr. McDaniel advocates constructions for these two claim terms that conflict with the Court's constructions. Moreover, claim construction is an issue of law for the Court to decide,

___

[2] Dr. McDaniel also submitted an Opening Report re: Invalidity and offered a construction for the term "brokering." Dr. McDaniel testified that he applied the same claim constructions for both his invalidity and infringement analysis. Ex. B, 33:3-34:1.

and experts may not present such arguments to a jury. Thus, the Court should strike these opinions (i.e. non-infringement opinions based on "singular file system" and "brokering" at paragraphs 120-133, 175-191, 332-337, 340, 345-346, 360, 368-377) from the McDaniel Rebuttal Report, and preclude Dr. McDaniel or Dropbox from presenting them at trial.

### D.   Dropbox's Undisclosed Non-Infringement Theories

Entangled Media served its First Set of Interrogatories on May 26, 2023. Interrogatory No. 3 requested:

> For each Accused Product and Service You contend does not infringe the Patents-in-Suit, whether directly or indirectly and whether literally or under the doctrine of equivalents, describe the basis for Your contention, including Identifying the specific evidence which You assert proves that a particular claim limitation is not satisfied by any of the Accused Products and Services.

Ex. D, 5.

On November 22, 2024, the last day of fact discovery, Dropbox supplemented its response to Interrogatory No. 3, which incorporate all prior responses. Ex. E, 12-45. For certain claim elements, Dropbox provided no specific theories and simply reiterated the claim language and then stated that the Dropbox system did not perform the claimed steps. For the "scanning each of the multiple devices by each of the . . . for the inventoried data" step for the '338 patent, Dropbox responded to Interrogatory No. 3 as follows:

> None of the Accused Products or Services perform the step of "**scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data**" in connection with the Accused Functionality. The patent defines "Software Client (or the Client)" as "a piece of software that is installed and runs continuously on the device." As one, non-limiting example, none of the Accused Products, Services, or Functionalities scan each of multiple devices, let alone to inventory data on each or the multiple devices or create a meta-index of the files for the inventoried data. In addition, nothing identified by Entangled Media in any of its contentions constitutes a meta-index of the files for the inventoried data as claimed.

Ex. E, 25 (original emphasis).

Similarly, for the "providing by the at least one server . . . software clients" step of the '338 patent, Dropbox responded to Interrogatory No. 3 as follows:

> None of the Accused Products or Services perform the step of "**providing by the at least one server the single master meta-index and meta-indices for each of**

**the other multiple devices to each of the multiple devices via the individual software clients**" in connection with the Accused Functionality. The Court construed the term "providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients" as "the at least one server provides to each of the multiple devices via the individual software clients the single master meta-index with each of the meta-indices of each of the other devices." Dkt. 133 at 4. The Court further determined that the "providing" step does not require that the meta-indices for each of the multiple devices remain separate, individual meta-indices when the server provides them to each of the multiple devices. *Id.* at 6. The Court explained that "[t]he claims and the specification do not teach that information must be transmitted in a particular form." *Id.* As one, non-limiting example, in connection with the Accused Products, Services, and Functionalities, no server provides to each of the multiple devices via the individual software clients the single master meta-index with each of the meta-indices of each of the other devices. In addition, nothing identified by Entangled Media in any of its contentions constitutes individual meta-indices or a single master meta-index as claimed.

*Id.*, 26 (original emphasis).

And for the "intercepting the request by a software client on the first device" step of the '260 patent, Dropbox responded to Interrogatory No. 3 as follows:

None of the Accused Products or Services perform the step of "**intercepting the request by a software client on the first device**" in connection with the Accused Functionality. The patent defines "software client (or the client)" as "a piece of software that is installed and runs continuously on the device." The patent further defines "Devices" as "Internet-enabled devices that may be used for a variety of communications and data purposes, including document creation, media players, Internet browsing, etc. These devices include desktop computers, laptop computers, netbooks, mobile Internet Devices (MIDs), smartphone mobile handsets, "nettop" computers, gaming consoles, cable set-top boxes, televisions and other computing devices and telecommunications devices that are able to communicate using any form of data communications protocols such as TCP/IP, 30, CDMA, GSM, OSM, WiFi, WiMax, etc." In addition, "the request" in this limitation refers back to "accepting **a request** to operate on a file at a first device, wherein the file is selected from the singular file system on the first device.

As one, non-limiting example, none of the Accused Products, Services, or Functionality performs the step of "intercepting the request by a software client on the first device" because none perform the step of "accepting a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device" for the reasons discussed above. As another non-limiting example, if "a software client" is any Accused Product, Service, or Functionality, then there is no request by any Accused Product, Service, or Functionality that is intercepted on a first device. As another, non-limiting example, none of the File Provider or Cloud File implementations of the Accused Functionality intercept the request by any alleged software client.

*Id.*, 35-36 (original emphasis).

Pursuant to the Case Schedule, after fact discovery closed, Dropbox served Dr. McDaniel's Rebuttal Report purportedly showing how the Accused Products do not infringe and do not meet every element of the Asserted Claims. *See generally* Ex. A. In the Rebuttal Report, Dropbox introduced several new theories of non-infringement as they relate to each of the following "scanning," "providing by the at least one server," and "intercepting" steps that were not disclosed in its discovery responses:

- For "scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data" ('338 patent – Claim 1), Dropbox introduced for the first time:



Ex. A, ¶¶ 204-222.

  o Numerous non-infringement theories for this element regarding the absence of a "meta-index of files for the inventoried data." *Id.*, ¶¶ 134-143

- For "providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients" ('338 patent – Claim 1), Dropbox introduced for the first time:



*Id.*, ¶¶ 237–252

- For "intercepting the request by a software client on the first device" ('260 patent – Claim 1), Dropbox introduced for the first time:



*Id.*, ¶¶ 352-358

Further, Dr. McDaniel confirmed at his deposition that his opinions were not merely offered to respond to Entangled Media's expert, Dr. Edwards, or to opine on any alleged failure of proof. Dr.

███████████████████

McDaniel testified as follows: "Q. Is your opinion on non-infringement based upon failure of proof or you -- you -- A. No, I have -- I affirmatively believe that the product does not practice that, for all of the reasons that are laid out in this report." Ex. B, 126:5-9.

**E.    Dropbox's Undisclosed Non-Infringing Alternative Implementation Details**

Entangled Media served its First Set of Interrogatories on May 26, 2023. Interrogatory No. 4 requested:

> If you contend that You have or had an acceptable non-infringing alternative to any of the Accused Products and Services, then describe each fact upon which You base any such contention, and state all costs associated with the implementation thereof, including development costs, time to market, technical advantages and disadvantages compared to each of the Patents-in- Suit, comparative performance of the proposed non-infringing alternatives, and commercial acceptability, and the name of any individual knowledgeable about this non-infringing alternative.

Ex. D, 5.

On November 22, 2024, the last day of fact discovery, Dropbox supplemented its response to Interrogatory No. 4, which incorporated all prior responses. Ex. E, 45-50. Though the request sought "all costs associated with the implementation thereof" including "commercial acceptability," Dropbox's interrogatory responses provided no estimated implementation costs or commercial acceptability details of any kind. *Id.* Yet, Dr. McDaniel's Rebuttal Report provided opinions regarding the implementation costs for two NIAs: "Distinguishability" (███████████████████ ██████████████████████████████████████████ ████████████████████████████) and "Peer to Peer Related" (This NIA ████████████████████████ ████████████████████████████████████████ ███████. Ex. A, ¶¶ 426, 435. He also provided details regarding commercial acceptability as it relates to the "Distinguishability" NIA. *Id.*, ¶¶ 427, 429.

During Dr. McDaniel's deposition, he confirmed that he had a "long discussion" with Joshua Warner, a Dropbox engineer, to determine the number of hours to implement the "Distinguishability" NIA. He testified as follows: ██████████████████

███████████████████████████████████████

███████████████████████████████████████

■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Ex. B, 210:5-12. Dr. McDaniel also testified that his implementation cost opinions regarding the "Peer-to-Peer Related" NIA were made in "consultation with" Mr. Warner. *Id.*, 220:9-23. Lastly, he opined that his commercial acceptability opinions were confirmed with this conversations with Mr. Warner. Ex. A, ¶ 429.

## III.   LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to provide opinion testimony where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. Under *Daubert,* expert testimony is admissible under Rule 702 "if it is both relevant and reliable." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

### A.   Claim Construction

Expert opinions "based on an impermissible claim construction" are improper and should be excluded by the Court. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming district court's decision to "exclud[e] ... expert opinion evidence as irrelevant because it was based on an impermissible claim construction"); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2014 WL 4272771, at *4 (N.D. Cal. Aug. 28, 2014) (excluding testimony of plaintiff's expert because it was "based on [plaintiffs] rejected construction of 'systematic convolutional coding'"); *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.,* No. 03-cv-05669-JW, 2007 WL 2429412, at *3 (N.D. Cal. Aug. 23, 2007) (striking portion of expert report that "does not comply with the Court's construction of the phrase 'predetermined time period'"). "Because claim construction is a matter of law to be decided by the court, expert witnesses are not permitted to argue claim constructions to the jury." *Huawei Tech., Co, Ltd v. Samsung Elec. Co*, Ltd., 340 F. Supp. 3d 934, 949 (N.D. Cal. 2018) (citations omitted); *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-05341-YGR, 2014 WL 971765, at *4 (N.D. Cal. Mar. 5, 2014) ("Arguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that a jury will render a verdict not supported by substantial evidence.") (citations omitted); *Cordis Corp. v. Boston*

*Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("We have held that it is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'") (*citing CytoLogix Corp. v. Ventana Med. Sys.*, Inc., 424 F.3d 1168, 1172-73 (Fed. Cir. 2005)).

## B.    Undisclosed Expert Theories

Information contained in an expert report that is responsive to discovery requests must be disclosed in a timely manner to be used at trial. Rule 26(e)(1) imposes an obligation on a party "who has responded to an interrogatory" to "supplement or correct its disclosure or response (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Rule 37 "forbid[s] the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 827 (9th Cir. 2011). Rule 37(c)(1) thus requires exclusion unless the offending party carries its burden "to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008). For instance, where an expert fails to provide a theory in the report, a court may "preclud[e] him from testifying on this issue." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1062 (9th Cir. 2008); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. 11- cv-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (striking portions of Samsung's expert reports that included invalidity and non-infringement theories that were not timely provided to Apple in response to contention interrogatories).

## IV.    THE COURT SHOULD EXCLUDE DR. McDANIEL'S OPINIONS BASED ON IMPROPER CLAIM CONSTRUCTIONS

The Court should exclude Dr. McDaniel's non-infringement opinions at paragraphs 120-133, 175-191, 332-337, 340, 345-346, 360, and 368-377 of the Rebuttal Report because Dr. McDaniel does not apply the governing claim construction in rendering his opinions.

███████████

**A.    Dr. McDaniel's Opinions Regarding the "Singular File System" Term Is Based on Improper Claim Construction and Should Be Excluded.**

As discussed above, the Court construed "singular file system" to mean "system wherein local and virtual files located across more than one device appear in the same directories/folders." Dkt. No. 133, 15. For this term, the Court rejected Dropbox's proposed construction requiring that "all of a user's devices appear to share one single native file system containing all of the user's files across all devices." *Id.* The Court noted that Dropbox's proposed construction requiring the single file system to contain "*all* of the user's files" "across *all* devices" was "too broad." *Id.*, 16 (original emphasis). Yet, Dr. McDaniel seeks to revive the construction that Dropbox argued and lost by repackaging it to construe "local files" within the singular file system to contain all files across all devices. Particularly, at para 184 of his Rebuttal Report, he criticizes Dr. Edwards' application of "singular file system" and states that "for each device that has the Dropbox desktop client installed, there are local files that do not appear in the same directories/folders as another device on which Dropbox is installed." Ex. A, 184. He opines that ████████████████████████████████ ████████████████████████████████████████████ *Id.* Dr. McDaniel then relies on this faulty construction to opine that the Dropbox system does not meet the claimed "singular file system" limitation. *Id.*, 184, 190, 191. This testimony directly contradicts the Court's construction of "singular file" system that does not require the system to contain all files across all devices. Dkt. No. 133, 15.

At deposition, Dr. McDaniel first confirmed that he believed his construction did contradict the Court's construction, and then later in the deposition, he retracted this testimony, and even later, he admitted that he was offering two constructions. Ex. B, 137:21-139:18; 265:13-266:15. Indeed, Dr. McDaniel testified that ████████████████████████████████ ████████████████████████████████████████████ ████████████████████ *Id.*, 264:11-15. Again, the Court has already resolved this dispute during claim construction and held that the singular file system does not include *all* files on *all* devices; instead, it is limited to those files that appear in the "same directories/folders." Dkt. No. 133, 15. Dr. McDaniel may not present to the jury alternate constructions that have been rejected by the Court.

In *Regents of Univ. of Cal.,* the Court struck paragraphs of an expert's report based on an expert's improper claim construction. *Regents of Univ. of Cal.,* 2007 WL 2429412, *at 3 (N.D. Cal. Aug. 23, 2007). There, the expert opined that the accused products practice the "predetermined time period" limitation. *Id.*, at *2. In his opinion, the expert was describing a "predetermination," and equating that with "a predetermined time period." *Id.* The Court held that this opinion did not comply with the Court's construction of the phrase "predetermined time period." *Id.; see also Impinj, Inc. v. NXP USA, Inc.*, Case No. 19-cv-03161-YGR, 2023 WL 5174286, at *6 (May 22, 2023) ("[T[he Court excludes Dr. Subramanian's opinions regarding the '302 as an attempt to relitigate claim construction.").

Dr. McDaniel is presenting testimony to re-argue claim construction, which is indisputably impermissible, as such testimony would lead to substantial juror confusion. *See Cordis Corp.*, 561 F.3d at 1337 ("[I]t is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'"). The Court should act as gatekeeper to exclude Dr. McDaniel's non-infringement opinion because his failure to apply the governing construction of "singular file system" renders his opinion inadmissible. *See, e.g., Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) (affirming exclusion of expert testimony that "did not rely on the claim construction agreed to by the parties").

**B.    Dr. McDaniel's Opinions Regarding the "Brokering" Term Is Based on Improper Claim Construction and Should Be Excluded**

Similarly, the Court should exclude Dr. McDaniel's opinions regarding the claim term "requesting by a software client on the first device that a peer-to-peer connection be *brokered* by server-based web service between the first and second device."

As discussed above, the Court held that no additional construction of this term was necessary. Dkt. No. 133, 22. Here, the Court rejected Dropbox's proposed construction requiring "brokering" to actually establish a connection. "The Court agrees with Entangled Media, however, that a plain and ordinary meaning in light of the claim language and specification do not *require* the web service in the disputed language to 'establish a connection.'" *Id.*, 24. Yet, Dr. McDaniel seeks to revive the construction that Dropbox argued and lost by opining that "brokering" does in fact require both "the

██████████████

active establishing of a connection and providing communications parameters for a peer-to-peer connection." Ex. C, ¶ 1088. Dr. McDaniel confirmed the same in his deposition. Ex. B, 208:12-23 ████████████████████████████████████████████████████████████████ This testimony directly contradicts the Court's construction of the "brokering" term that does not require establishing a connection. Dkt. No. 133, 22-24.

The Court should act as gatekeeper to exclude Dr. McDaniel's non-infringement opinion because his failure to apply the governing construction of the "brokering" term renders his opinion inadmissible. *See Liquid Dynamics Corp.,* 449 F.3d at 1224 n.2 (affirming district court's decision to "exclud[e] ... expert opinion evidence as irrelevant because it was based on an impermissible claim construction"); *France Telecom S.A.,* 2014 WL 4272771, at *4 (excluding testimony of plaintiff's expert because it was "based on [plaintiffs] rejected construction of 'systematic convolutional coding'"); *Regents of Univ. of Cal.,* 2007 WL 2429412, at *3 (striking portion of expert report that "does not comply with the Court's construction of the phrase 'predetermined time period'"); *Cordis Corp.,* 561 F.3d at 1337 ("[I]t is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'").

## V.    THE COURT SHOULD EXCLUDE DR. McDANIEL'S NON-INFRINGEMENT AND NIA OPINIONS NOT DISCLOSED IN DROPBOX'S DISCOVERY RESPONSES.

### A.    Dr. McDaniel's Non-Infringement Opinions Were Not Disclosed During Discovery

Dropbox was obligated to inform Entangled Media of Dropbox 's non-infringement positions prior to the close of fact discovery in its responses to Entangled Media's interrogatories. Dropbox's disclosure of new noninfringement theories in its expert reports does not satisfy Rule 26(e)(1)'s requirement for supplementation. *See Asia Vital Components Co. v. Asetek Danmark A/S,* 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019) ("A rule that an accused infringer may wait until its expert rebuttal report to set forth theories of non-infringement for the first time would forfeit the benefits of contention interrogatories."); *Apple,* 2012 WL 3155574, at *5 (amendment of contention interrogatories after the close of fact discovery but before the close of expert discovery nevertheless violated Rule 26(e)(1) because it deprived Apple "the opportunity to conduct additional fact discovery regarding Samsung's new theories"). Dr. McDaniel's Rebuttal Report improperly introduces numerous new non-

infringement theories that were not disclosed during fact discovery. Accordingly, under Rule 37(c)(1), the portions of Dropbox's expert reports containing newly disclosed noninfringement theories must be stricken.

First, regarding the "scanning each of the multiple devices . . . inventoried data" step from Claim 1 of the '338 patent, Dr. McDaniel offers for the first time eight Dropbox non-infringement theories, consisting of the following theories: ███████████████████████████████████████████ Ex. A, ¶¶ 204 -222. During discovery, Entangled Media asked Dropbox for its non-infringement theories and the bases thereof. But Dropbox's responses – even those served on the last day of discovery on November 22, 2024 – never disclosed these theories for this claim element. *See generally* Ex. E, 14, 25.

Second, regarding the "providing by the at least one server the single master meta-index . . . individual software clients" step from Claim 1 of the '338 patent, Dr. McDaniel offers for the first time six Dropbox non-infringement theories, consisting of the following theories: ███████████████████████████████████████ Ex. A, ¶¶ 237 – 252. During discovery, Entangled Media asked Dropbox for its non-infringement theories and the bases thereof. But Dropbox's responses – even those served on the last day of discovery on November 22, 2024 – never disclosed these theories for this claim element, either. *See generally* Ex. E, 15, 26.

Third, regarding the "intercepting the request by a software client on the first device" step from Claim 1 of the '260 patent, Dr. McDaniel offers for the first time four Dropbox non-infringement theories, consisting of the following theories: ███████████████████████████████████████ Ex. A, ¶¶ 352 – 358. During discovery, Entangled Media asked Dropbox for its non-infringement theories and the bases thereof. But Dropbox's responses – even those served on the last day of discovery on November 22, 2024 – never disclosed these theories for this claim element, either. *See generally* Ex. E, 19, 35-36.

The prejudice to Entangled Media due to Dropbox's late disclosure is considerable and irreparable. Because none of these non-infringement theories were disclosed by Dropbox during

discovery, Entangled Media had no opportunity to ask Dropbox witnesses about them or inquire about the underlying facts in depositions or email discovery requests. This is a fundamental violation of the rules governing fair discovery. Entangled Media conducted its depositions and fact discovery based on the information and theories Dropbox disclosed. Further, because Dropbox disclosed these theories after Entangled Media served its expert reports, the jury will hear Dr. McDaniel's opinions on these theories, but not Entangled Media's expert Dr. Edwards' response to these theories.

The scope of Dropbox's deviation from its Interrogatory responses is extraordinary. To allow such a shift at this point, contrary to every rule, would place Entangled Media in an untenable position. Either Entangled Media must try this case without having an opportunity to explore Dropbox's positions during discovery, or the case must rewind, followed by a redo of significant portions of fact and expert discovery, imposing a significant burden on Entangled Media and the Court. Rule 26 was "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed"—not defer the disclosure of those theories. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2018 WL 6046465, at *2 (N.D. Cal. Nov. 19, 2018) (*quoting O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006).

Further, a second deposition of Dropbox on these new noninfringement theories will not cure the prejudice given the proximity to trial, and regardless, "[d]isruption to the schedule of the court and other parties . . . is not harmless." *Wong v. Regents of Univ. of California,* 410 F.3d 1052, 1062 (9th Cir. 2005); *see also Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 14-cv-00876-JSC, at *4 (N.D. Cal. Mar. 30, 2018) ("To conclude that a deposition can substitute for the reasoning and analysis in an expert report would render Rule 26(a)(2)(B)(i) meaningless").

The outcome required by the rules and case law is to strike each of Dr. McDaniel's opinions that deviate from its discovery responses. These include: Untimely Noninfringement Theories contained in Ex. A, ¶¶ 204 -222 ("scanning" element of Claim 1, '338 patent), ¶¶ 237-252 ("providing by the at least one server the single master meta-index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients" element of Claim 1, '338

patent), and ¶¶ 352-358 ("intercepting the request by a software client on the first device" of Claim 1,'260 patent).

### B. Dr. McDaniel's Opinions Regarding the Implementation Details for the "Distinguishability" and "Peer-to-Peer Related" NIAs Were Not Disclosed During Discovery

Similarly, with respect to the NIAs, the Court should strike paragraphs 426, 427, 429 and 435 of the Rebuttal Report as they include implementation costs and acceptability details for the Distinguishability and "Peer-to-Peer Related" NIAs that were not disclosed in Dropbox's discovery responses.[3]

At the outset of this case, Entangled Media asked Dropbox via interrogatory to disclose any purported non-infringing alternatives, as well as the underlying facts, costs, time to market, and commercial acceptability, as well as individuals with knowledge of such facts. Ex. E, 45-46. Dropbox had nearly 18 months to provide the requested information before discovery closed but never did—not even in its supplemental responses served on the last day of discovery.

Indeed, although Dropbox provided a laundry list of purported alternatives in its August 2024 supplemental response, Dropbox never provided any estimates of costs or hours that would have been required to implement any of them. *Id.*, 46-50. Dropbox did not disclose any technical details regarding how such NIAs could have been implemented in Dropbox's products. *Id.* Dropbox did not provide salary estimates for engineers who could purportedly have implemented its proposed NIAs. *Id.* And Dropbox never disclosed the identities of individuals who would have had knowledge regarding any of the above until the last day of discovery. *Id.*[4]

Nevertheless, Dr. McDaniel provides and relies upon undisclosed facts relating to Dropbox's purported ability to implement two non-infringing alternatives. Specifically, he opines that for "Distinguishability" NIA, this NIA

---

[3] Entangled Media has concurrently filed a motion to strike Dropbox's expert Mr. Martinez from offering similar opinions regarding Dropbox's NIA's that were not disclosed during discovery.
[4] In its Fourth Supplemental Response to Interrogatory No. 4, served on the last day of discovery, Dropbox incorporated by reference the deposition testimony of Joshua Warner and Alexandru Carp in their entirety.

████████████████

████████████████████████████████████████

███████████████████████████████████ Ex. A, ¶ 426. And for the "Peer to Peer Related" NIA,

this NIA ████████████████████████████████████

████████████████████████████████████████████████

*Id.*, ¶ 435. Moreover, Dr. McDaniel confirmed his opinions regarding cost implementation were made in consultation with Mr. Warner, Dropbox's 30(b)(6) witness on this topic; thus, Dropbox could have provided this information in its discovery responses. Ex. B, 210:5-12; 220:9-23. Ex. A, ¶ 429.

The prejudice to Entangled Media due to Dropbox's late disclosure is considerable and irreparable. Because none of these details regarding implementation of Dropbox's NIAs were disclosed by Dropbox during discovery, Entangled Media had no opportunity to ask Dropbox witnesses about them or inquire about the underlying facts in depositions or email discovery requests. This is a fundamental violation of the rules governing fair discovery. Entangled Media conducted its depositions and fact discovery based on the information and theories Dropbox disclosed. The absence of cost estimates, engineering resources, and organizational impact assessments left Entangled Media without the ability to challenge or rebut these assertions at a time when it had the opportunity to do so. Entangled Media also could not have tested the bases of these opinions with Dropbox's 30(b)(6) representative as Dropbox had merely disclosed a laundry list of purported non-infringing alternatives that largely mirrored the claim language, with no context regarding how they would have been implemented in Dropbox's products, how much it would have cost Dropbox to do so, or whether doing so would have been acceptable to Dropbox's customers. Ex. E, 47-50. And similar to above, the prejudice is compounded because the jury will hear Dr. McDaniel's opinions on these theories, but not Entangled Media's expert Dr. Edwards' response to these theories.

Entangled Media could not meaningfully probe the factual bases of these theories with Mr. Warner (or Dropbox's other witnesses) without being aware of them or the facts underlying Mr. Warner's assertions. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861-64 (9th Cir. 2014) (affirming the exclusion of late-disclosed witnesses and noting that "[t]he theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush").

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Entangled Media's Motion to Exclude Under *Daubert* and Strike paragraphs 120-133, 175-191, 204-222, 237-252, 332-337, 340, 345-346, 352-358, 360, 368-377, 426, 427, 429 and 435 of the McDaniel Rebuttal Report.

Dated: March 10, 2025

*/s/ John E. Lord*
John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

PLAINTIFF'S MOTION TO STRIKE THE OPINIONS OF DR. MCDANIELS
5:23-CV-03264-PCP-VKD