UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>DROPBOX INC.,<br><br>　　　　　　Defendant. | Case No. 23-cv-03264-PCP (VKD)<br><br>**REDACTED**<br><br>**ORDER RE DEFENDANT'S MOTION TO COMPEL LITIGATION FUNDING DOCUMENTS**<br><br>Re: Dkt. No. 202 |

　　　　Defendant Dropbox, Inc. ("Dropbox") moves for an order compelling plaintiff Entangled Media, LLC ("Entangled Media") to produce certain materials related to Entangled Media's litigation funding. Dkt. No. 202. Entangled Media opposes the motion. Dkt. No. 219. Having considered the parties' written submissions and the oral arguments presented at the hearing on this matter, the Court grants in part Dropbox's motion to compel.[1]

**I.　BACKGROUND**

　　　　Entangled Media has received and continues to receive litigation funding from non-party LIT-US Chisum 22-B LLC ("Chisum") with respect to this litigation. Dkt. No. 219 at 2. Entangled Media has produced a Patent Security Agreement ("PSA") between it and Chisum, but objects to Dropbox's efforts to obtain additional information about a related "Security Agreement",[2] its negotiations and communications with Chisum, the nature of its relationship with

---

[1] The Court will issue a separate order on the associated sealing motions (Dkt. Nos. 201, 218). Information publicly disclosed in this order reflects information for which the Court has determined sealing is not warranted.

[2] Entangled Media refers to the Security Agreement as the "Funding Agreement." Dkt. No. 219 at 3 fn.2.

Chisum, and any valuations prepared in connection with the funding. *Id.* at 1.

Entangled Media's Second Corrected Amended Privilege Log includes 585 entries corresponding to documents Entangled Media has withheld from production, in whole or in part. Dkt. No. 201-4. Of these, Dropbox identifies 162 documents, including the Security Agreement, that are likely responsive to its discovery requests and should be produced. Dkt. No. 202 at 4, 6. Entangled Media responds that the documents are not relevant, and even if they were relevant, the work product doctrine and the common-interest doctrine shield them from disclosure.

At the Court's direction, on August 26, 2024, Entangled Media submitted an unredacted copy of the Security Agreement for *in camera* review. *See* Dkt. Nos. 125, 132. Upon review of the *in camera* submission, the Court issued an order, which included the following observations:

> . . . Chisum does not merely have a passive security interest in the asserted patents. As may be expected, Chisum has a financial interest in, among other things, the outcome of this litigation, and the Security Agreement affords Chisum some contractual rights in connection with that interest. . . . [T]he Security Agreement includes provisions that could be construed as providing some indication of how the parties to the agreement valued this and other potential litigation relating to the asserted patents; however, consistent with Entangled Media's representations, the Security Agreement does not include a valuation of the asserted patents *per se*.

Dkt. No. 132 at 1-2.

The Court directed the parties to brief their dispute regarding the documents in question as a regularly noticed motion. *See* Dkt. Nos. 125, 132. Fact discovery closed on November 22, 2024. Dropbox filed this motion to compel on November 29, 2024.

## II. LEGAL STANDARD

### A. Scope of Discovery

A party may obtain discovery of any matter that is relevant to a claim or defense and that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### B. Work Product Doctrine

The attorney work product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citation omitted). "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotes omitted). A document is considered prepared "in anticipation of litigation" if it can be fairly said to have been prepared or obtained "because of the prospect of litigation." *ACLU of N. California v. United States DOJ*, 880 F.3d 473, 485 (9th Cir. 2018); *see also id.* at 486-87 ("We have never held . . . that attorney work product must be prepared in anticipation of specific litigation to be privileged, and we decline to do so here.").

The doctrine protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself," *Sanmina Corp.*, 968 F.3d at 1119, and its primary purpose is to "prevent exploitation of a party's efforts in preparing for litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989). *See United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). Typically, work product protection extends to interview notes, memoranda, summaries, and analyses, as well as to verbatim witness statements. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Hatamian v. Advanced Micro Devices, Inc.,* No. 14-cv-00226-YGR (JSC), 2016 WL 2606830, at *3 (N.D. Cal. May 6, 2016).

A party asserting work product protection bears the burden of demonstrating that the protection applies. *See, e.g., Visa U.S.A., Inc. v. First Data Corp.*, No. 02-cv-1786 JSW (EMC), 2004 WL 1878209, at *5 (N.D. Cal. Aug. 23, 2004).

The protections afforded by the work product doctrine are not absolute and may be waived. *Nobles*, 422 U.S. at 239. An express or voluntary disclosure of work product waives the protection where such disclosure is made to an adversary in litigation or where the disclosure is

3

made in a manner that substantially increases the opportunities for potential adversaries to obtain the work product. *Sanmina*, 968 F.3d at 1121 (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024 (3d ed. 2020)); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("[T]he work-product privilege may be waived by disclosure to third parties which results in disclosure to an adversary party."). Work product protection may also be waived implicitly by putting the protected work product at issue, such as by asserting claims that the opposing party cannot adequately dispute unless it has access to that protected work product. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *see also Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162-63 (9th Cir. 1992); *Sanmina Corp.*, 968 F.3d at 1124 ("While we are generally guided by the same fairness principle underlying waivers by implication in the attorney-client privilege context, the overriding concern in the work-product context is not the confidentiality of a communication, but the protection of the adversary process."). Moreover, even if the protection is not waived, work product may be discoverable if the materials meet the requirements of Rule 26(b)(1) and if the party seeking production shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Upon such a showing, a court must nevertheless "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B).

### C. Common Interest Doctrine

The "common interest" doctrine is an exception to ordinary waiver rules that applies when parties represented by separate counsel communicate in confidence about a matter of common legal interest, in furtherance of that common legal interest. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). The doctrine does not create a privilege or protection but comes into play only if a privilege or protection already covers the material disclosed to the third party. *Id.*; *see also Nidec Corp.*, 249 F.R.D. at 578-79 (describing boundaries and application of common interest doctrine).

4

## III. DISCUSSION

The Court first considers whether the discovery Dropbox seeks is relevant to any claim or defense and proportional to the needs of the case, and then considers whether those materials are protected from disclosure.

### A. Whether the Litigation Funding Materials Are Relevant

There is no firm consensus among the district courts regarding whether and to what extent a patent holder's litigation funding agreements and related documents should be considered relevant and discoverable. Each party cites cases in support of its position and distinguishes the cases on which the other relies.

Here, Entangled Media has already disclosed that it is receiving litigation funding, and it has identified Chisum as the funder. Drobox contends that discovery of the Security Agreement itself and other documents related to funding are likely to be relevant to issues of standing and/or damages.

Entangled Media responds that it is not withholding any relevant documents. First, it notes that the PSA, which is a public document, is sufficient to show Chisum's security interest, and that there is no need to disclose the related Security Agreement. Entangled Media observes that the Court concluded, upon review of the Security Agreement *in camera*, that while Chisum has a security interest in the asserted patents, it does not appear to have any present right, title, or interest in the asserted patents that would implicate or undermine Entangled Media's standing to sue, or a "springing" or automatic interest in the asserted patents upon the occurrence of a contractual breach or default. Dkt. No. 219 at 3 (citing Dkt. No. 132 at 1). It argues that it should not be required to produce the Security Agreement, except perhaps for the portion at section 5.3 that further describes the "security interest" Chisum holds. *Id.* at 11 fn.7.

Second, Entangled Media represents that it is not withholding any documents that include a valuation of the asserted patents, whether separately or as part of a portfolio. It acknowledges that there is a single document that Entangled Media's log describes as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dkt. No. 201-4 (Entry

29). During the hearing, Entangled Media's counsel stated that this document reflects an ███████████████████████████████████████████████████. It is unclear from Entangled Media's log who prepared the analysis and with whom it was shared, although the log entry states that it was "regarding litigation funding." In any event, Entangled Media advised during the hearing that it is prepared to produce the analysis to Dropbox, so long as this disclosure is not used as the basis to find a waiver of work product beyond the analysis itself. *See* Dkt. No. 233.

### 1.     Security Agreement

The publicly-filed PSA includes several references to the Security Agreement. As pertinent to this dispute, section 1 of the PSA provides: "Capitalized terms used in this Agreement [i.e. the PSA] *and not otherwise defined herein* have the meanings specified in the Security Agreement, as applicable, as in effect on the date hereof." Dkt. 219-2 at ECF 4 (emphasis added). The term "Collateral" is used in the PSA, but is not defined there; it is only defined in the Security Agreement. In addition, section 3 of the PSA provides:

> The security interests granted to the Security Holder [i.e. Chisum] herein are granted in furtherance, and not in limitation of, the security interests granted to the Security Holder pursuant to the Security Agreement. Grantor [i.e. Entangled Media, LLC] hereby acknowledges and affirms that the rights and remedies of the Security Holder with respect to the Collateral are more fully set forth in the Security Agreement, *the terms and provisions of which are hereby incorporated herein by reference as if fully set forth herein*. In the event of any conflict between the terms of this Agreement and the Security Agreement, the terms of the Security Agreement shall govern.

*Id.* (emphasis added). Finally, section 5 of the PSA provides that the agreement is to be construed in accordance with Delaware law. *Id.*

There can be no serious dispute that under Delaware law, section 3 of the PSA incorporates the entirety of the Security Agreement. In *Town of Cheswold v. Cent. Delaware Bus. Park*, 188 A.3d 810 (Del. 2018), the Delaware Supreme Court concisely summarized the applicable law regarding incorporation-by-reference as follows:

> Other documents or agreements can be incorporated by reference "[w]here a contract is executed which refers to another instrument and makes the conditions of such other instrument a part of it."

6

> When that occurs, "the two will be interpreted together as the agreement of the parties." But, "[a] mere reference in one agreement to another agreement, without more, does not incorporate the latter agreement into the former by reference." Rather, "[t]o incorporate one document into another, an explicit manifestation of intent is required." In addition, "when incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for that purpose only, and should be treated as irrelevant for all other purposes."

*Town of Cheswold*, 188 A.3d at 818-19 (footnotes omitted). The PSA does not merely "reference" the Security Agreement, as Entangled Media argues; it explicitly incorporates all "terms and provisions" of the Security Agreement "as if fully set forth" in the PSA. *See Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del. 2017) (observing that "Delaware adheres to an objective theory of contracts" such that the "contract's construction should be that which would be understood by an objective, reasonable third party"). Nor does the PSA incorporate only portions of the Security Agreement for a specific purpose; the PSA incorporates the Security Agreement, in its entirety, "as if fully set forth therein," without limitation. To the extent Entangled Media insists that the express language of the PSA does not reflect the contracting parties' intent, the Court finds this argument unpersuasive. *See* Dkt. No. 219 at 10.

Dropbox has shown that the PSA, incorporating the Security Agreement, is likely to contain information relevant to a claim or defense—specifically, information regarding the nature of the security interest itself—but there are other aspects of the Security Agreement that are unlikely to be relevant to any claim or defense, such as an attachment that sets out the terms of outside counsel's retention. With respect to proportionality, apart from Entangled Media's work product objections, which the Court addresses below, the record does not suggest requiring Entangled Media to produce the Security Agreement would be burdensome or otherwise disproportionate to the needs of the case.

### 2. Other Litigation Funding Materials

The Court is not persuaded that the other disputed documents related to litigation funding or reflecting Entangled Media's communications with Chisum, its funder, are relevant to any claim or defense. While documents that address the value of the asserted *patents* (or a license to them) could well be relevant to a reasonable royalty calculation, the Court is skeptical that the

7

value an interested third party aligned with the patent holder places on the outcome of *litigation* could inform any of the relevant *Georgia-Pacific* factors[3] or any other damages considerations. The Court agrees generally with the sentiments expressed by several courts that, with respect to damages, litigation funding materials typically are "so far removed from the hypothetical negotiation" that they have little or no relevance. *AVM Techs., LLC v. Intel Corp.*, No. 15-cv-33-RGA, 2017 WL 1787562, at *3 (D. Del. May 1, 2017); *see also GoTV Streaming, LLC v. Netflix, Inc.*, No. 22-cv-07556-RGK-SHK, 2023 WL 4237609, at *13 (C.D. Cal. May 24, 2023) (declining to compel production of documents reflecting funder's valuation of asserted patents); *Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, 21-cv-00365-JRG, 2022 WL 2805132, at *1-3 (E.D. Tex. June 29, 2022) (permitting discovery of license and settlement agreements, but barring discovery of litigation funding agreements, including for the purpose of showing a "realistic appraisal" of the case) (cleaned up). *But see Taction Tech. v. Apple Inc.*, No. 21-cv-00812-TWR-JLB, 2022 WL 18781396, at *5 (S.D. Cal. Mar. 16, 2022) (finding litigation funding documents relevant, "but only to the extent that they seek litigation funding agreements and related documents that contain or reflect valuations of the Asserted Patents").

Nevertheless, as Dropbox observes it is difficult to accurately assess whether there exist any documents among the 162 litigation-funding related documents that include relevant valuations of the asserted patents without reviewing each of the documents *in camera*—particularly, for those log entries where Entangled Media has provided an incomplete description of the document withheld. As the Court explained at the hearing, it is impractical for the Court to review all 162 documents *in camera*. Instead, the Court provides this guidance: if the withheld documents include some that comment on the value of the asserted patents and/or the merits of the claims and defenses asserted in the case, such documents should be considered relevant.[4] With

---

[3] *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

[4] Dropbox suggests in its reply that discovery of litigation funding materials is also relevant to witness credibility. Dkt. No. 227 at 2. The Court disagrees for the reasons explained in *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019).

1  respect to proportionality, apart from Entangled Media's work product objections, which the Court
2  addresses below, the record does not suggest requiring Entangled Media to produce such
3  documents from among the 162 documents in question would be burdensome or otherwise
4  disproportionate to the needs of the case.

**B.    Whether Any Relevant Materials Are Protected from Disclosure**

Entangled Media argues that all of the 162 documents at issue are protected from disclosure by the attorney work product doctrine, and to the extent these documents were disclosed to others, they did not lose that protection because such disclosures were made in confidence. Dkt. No. 219 at 4-6. Dropbox argues that these documents are not entitled to work product protection because Entangled Media's log fails to adequately support its work product claims. Dkt. No. 202 at 18.

As an initial matter, and as discussed at the hearing, the Court agrees that many of Entangled Media's privilege log entries are insufficient because they omit important information, such as the date of the document or the names of the people who sent, received, or were shown the document. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989)). However, the Court does not find that Entangled Media has forfeited its ability to claim work product protection solely because it failed to provide sufficiently complete log entries. A party may substantiate a claim of privilege or protection by other means. *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("Briefs, declarations or other proof may establish the purpose of the communication or the specific role of the sender and each individual recipient."). Here, Entangled Media asserts that the relevant litigation funding materials were prepared by it and/or its attorneys in anticipation of this (and possibly other) litigations, citing the testimony of Mr. Caso. Dkt. No. 219-1, Ex. 2. Dropbox does not contend otherwise, although it does suggest that the Security Agreement may have had a "dual purpose"—i.e. to fund Entangled Media's business operations as well as its enforcement of the asserted patents. Dkt. No. 227 at 9. In these circumstances, the Court finds that Entangled Media has made a *prima facie* showing that, absent a waiver, the documents in question are protected from disclosure by the work product doctrine.

9

### C.  Whether Work Product Protection Has Been Waived

#### 1.  Application of Common Interest Doctrine

As an initial matter, and as discussed at the hearing, the Court agrees with Dropbox that the "common interest" doctrine does not apply to the work product protection claims asserted here. Entangled Media has not shown that Chisum or any other third party to whom it disclosed the litigation funding materials has a common legal interest in this litigation. Entangled Media insists that it is the sole owner of the asserted patents and Chisum has only a financial interest in the outcome of this litigation. *See In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2016 WL 861019, at *4 (N.D. Cal. Mar. 7, 2016) ("[T]he common interest privilege protects documents shared between parties who have a common *legal* interest; it does not extend to and cannot protect disclosure of communications regarding a common *business* interest. . . . [W]hile Endo and Teikoku shared a 'common interest' in wanting to see the FDA adhere to its regulations, those interests were commercial, not legal."); *cf. RJ v. Cigna Health & Life Ins. Co.,* No. 20-cv-02255-EJD (VKD), 2023 WL 187565, at *1 (N.D. Cal. Jan. 13, 2023) (defendants and non-parties shared a common legal interest in defending against the same claims by plaintiffs in separate actions involving use of the same pricing methodology for insurance claims and engaged in privileged communications regarding a common legal strategy).

For this reason, the Court considers whether Entangled Media has waived work product protection that might otherwise protect the litigation funding materials at issue.

#### 2.  Security Agreement

Dropbox argues that Entangled Media has waived any privilege or protection that might attach to the Security Agreement by incorporating it by reference, in its entirety, in the PSA, which has been publicly filed and produced to Dropbox. The Court agrees that incorporating a first agreement (i.e. the Security Agreement) into a second agreement (i.e. the PSA), and then disclosing the second agreement to the public, is inconsistent with maintaining the first agreement in confidence. If the Security Agreement is work product, then Entangled Media has not treated

this agreement in a manner that limits opportunities for potential adversaries to obtain it.[5]  *See, e.g., In re Gallo, et al.*, 231 U.S.P.Q. 496, 1986 WL 83717 (Comm'r Pat. & Trademarks May 9, 1986) (concluding that a patent's incorporation by reference of an otherwise confidential co-pending application waived confidentiality as to the specific application incorporated by reference).

Nevertheless, Entangled Media has not, in fact, disclosed any portion of the Security Agreement publicly or in a manner that increases the likelihood potential adversaries could obtain it.  Nor has Entangled Media put the contents of the Security Agreement at issue in any respect, except to the extent the agreement concerns the nature of the security interest in the asserted patents.  Dropbox has not demonstrated a substantial need for discovery of aspects of the Security Agreement that are unrelated to the security interest.  In these circumstances, the Court is not persuaded that the entirety of the Security Agreement must be disclosed to Dropbox.  While a party generally may not redact or withhold from production irrelevant portions of a document that also contains relevant and responsive information, *see Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-04467-BLF (VKD), 2020 WL 4192285, at *3 (N.D. Cal. July 21, 2020), portions of the Security Agreement and its attachments that have nothing to do with the security interest itself, can be easily segregated from the relevant portions.  Accordingly, the Court will require Entangled Media to produce the Security Agreement and its attachment to Dropbox, except for the following portions, which may be redacted:  sections 2, 3, 4, 5.1, 5.2, 5.4, 5.5, 5.6, 5.7, 5.8, and appendices D, E, G, H.

### 3. Other Litigation Funding Materials

As explained above, any withheld documents reflecting an assessment of the value of the asserted patents and/or the merits of the claims and defenses asserted in this action may be considered relevant.  In part because of the deficiencies in Entangled Media's privilege log but also because the parties did not adequately brief the issue, it is not clear whether any such relevant

---

[5] Certainly, Entangled Media could have incorporated only some of the Security Agreement's terms by reference in the PSA, had it wished to do so, or it could have made the PSA entirely separate from the Security Agreement.

11

documents exist and, if they do, whether they have been disclosed to others in circumstances where they were not required to be maintained in confidence. *See* Dkt. No. 202 at 18 (abbreviated discussion of work product waiver); Dkt. No. 219 at 16-18, 20-22 (citing confidentiality agreements among people not identified). No one suggests that Entangled Media has placed any of these documents at issue in any respect and so there has been no implied waiver. *Cf. Nobles*, 422 U.S. at 239 (finding waiver of work product protection for investigator's work where party elected to use investigator's testimony at trial). Dropbox has not demonstrated a substantial need for these materials.

As noted above, in an effort to resolve this dispute, Entangled Media offered to produce the analysis logged as Entry 29 in Exhibit A (Dkt. No. 201-4), on the condition that this act of production is not construed as a broader waiver of work product protection. If Entangled Media elects to produce this analysis, the condition it proposes shall apply. Otherwise, the Court will require Entangled Media to amend its privilege log to include the information identified as sufficient in *In re Grand Jury Investigation*, 974 F.2d at 1071, to the extent that information is available, for any of the 162 entries that remain in dispute. Entangled Media may not redact names from its amended privilege log.

## IV. CONCLUSION

For the reasons explained above, the Court grants, in part, Dropbox's motion to compel. Entangled Media must produce a copy of the Security Agreement to Dropbox by **April 11, 2025**. That copy may be redacted as permitted in this order. In addition, Entangled Media may produce by **April 11, 2025** the analysis logged as Entry 29 without thereby effectuating a broader waiver of work product protection. The Court expects that these productions may resolve the parties' dispute regarding Entangled Media's litigation funding materials. If they do not, the Court will require Entangled Media to amend its privilege log. The amended privilege log must be served no

///

///

///

///s

later than **April 28, 2025**.

      **IT IS SO ORDERED.**

Dated: April 8, 2025

      Virginia K. DeMarchi
      United States Magistrate Judge