John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DROPBOX, INC.,<br><br>    Defendant. | C.A. No. 5:23-cv-03264-PCP-VKD<br><br>**PLAINTIFF ENTANGLED MEDIA, LLC'S OPPOSITION TO DEFENDANT DROPBOX, INC.'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO EXCLUDE TESTIMONY OF DR. EDWARDS**<br><br>Judge: Hon. P. Casey Pitts<br>Courtroom: 8 – 4th Floor<br>Hearing Date: May 8, 2025<br>Hearing Time: 10 a.m. |

██████████████

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................ 1

I.    INTRODUCTION AND STATEMENT OF ISSUES............................................................. 1

II.   LEGAL STANDARD ........................................................................................................ 2

III.  LEGAL ARGUMENT ...................................................................................................... 2

    A.    Entangled Media's Infringement Theories were Timely and Fairly Disclosed to Dropbox ....................................................................................................................... 2

        1.    Dropbox had full and fair notice that its "Business Plus" and "Essentials" Products were Accused of Infringement via Entangled Media's Infringement Contentions, which Incorporated Dropbox's Response to Interrogatory No. 1............................................................................................ 2

        2.    Entangled Media's Infringement Contentions Provided Notice to Dropbox that Screenshots of its Accused Products Omitting "Cloud" and/or "Green Checkmark" Supported Entangled Media's "Indistinguishable" Infringement Theory. ............................................................................................ 6

        3.    Entangled Media Provided Notice to Dropbox that It May Pursue a Divided or Joint Infringement Theory ......................................................................... 13

    B.    Dr. Edwards' Opinions regarding Screenshots showing Dropbox Files Without Check Marks or Cloud Icons and his Opinions on Non-Infringing Alternatives are Reliable ................................................................................................................ 14

        1.    There are Multiple Scenarios Acknowledged by Dropbox Wherein Dropbox Files Show Brown Boxes or No Sync Icons, Without Disabling or Turning Off Dropbox. ....................................................................................... 14

        2.    Dr. Edwards' Screenshots, together with his Deposition Testimony and Infringement Contentions Disclosed Sufficient Information and were Reliably Obtained By Simply Capturing Dropbox's Operation, Without Disabling Dropbox. ................................................................................................ 18

    C.    Dr. Edwards' Opinion on The Next Best Alternative is Reliable and Should not be Stricken Merely because Dropbox Disagrees with it. ............................................ 24

IV.   CONCLUSION ............................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................. 2, 17, 18, 24

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ................................................................................. 2

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co.*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) ................................................................ 12

*Illumina, Inc. v. BGI Genomics Co.*,
  559 F. Supp. 3d 1072 (N.D. Cal. 2021) .............................................................. 16

*Network Caching Tech. v. Novell, Inc.*,
  2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) .................................................. 12

*Perfect Surgical Techniques, Inc. v. Olympus America, Inc.*,
  2013 WL 11319414 (N.D. Cal. Oct. 28, 2013) ................................................... 12

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir.2010) ................................................................................... 2

*Snyder v. Bank of Am.*,
  No. 15-CV-04228, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ...................... 25

*Sonos, Inc. v. Google LLC*,
  No. C-20-06754-WHA, 2023 WL 2918751 (N.D. Cal. Apr. 12, 2023) ............. 17

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) .......................................................................... 17

**Rules**

Federal Rule of Evidence 702 ..................................................................................... 18

Federal Rule of Evidence 703 ..................................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND STATEMENT OF ISSUES

Defendant Dropbox Inc.'s Motion to Strike certain theories and testimony of Entangled Media's expert Dr. Edwards (Dkt. No. 244-2 ("Mot.")) is replete with inaccuracies and should be denied.

Entangled Media's infringement theories have been consistent throughout this case. First, Dropbox has been aware that Entangled Media's definition of Accused Products includes all Dropbox products that incorporate the Smart Sync accused functionality, which includes Dropbox Business Plus and Dropbox Essentials. Entangled Media's infringement contentions also incorporated by reference a Dropbox discovery response, which included the deposition testimony of Dropbox's witness Mr. Warner and a Dropbox website, both of which identified Dropbox Business Plus and Dropbox Essentials as Accused Products. Further these two plans are mere "variations" of the other identified plans and Entangled Media incorporated all "variations" of the identified plans into its definition of Accused Products.  Second, regarding the allegedly new "private testing" theory, Dropbox seeks to exclude screenshots of Dropbox folders showing some or no visual icons for local and virtual files, yet Entangled Media's infringement contentions disclosed these exact same and similar screenshots, proving that Dropbox has been on notice of such theories, rendering Dropbox's argument meritless. Further, Dropbox had the full opportunity to depose Dr. Edwards and respond to his opinions through its expert rebuttal report during expert discovery, but chose not to substantively question Dr. Edwards about these "new theories" and instead filed its Motion. Third, Entangled Media's Complaint alleges a theory of joint and divided infringement, so Dropbox cannot claim a lack of notice for these infringement theories.

Lastly, Dr. Edwards' opinions regarding his testing and the "next best alternative" are reliable and admissible. His screenshots from testing Dropbox's Accused Products showed their operation under conditions well-known to Dropbox, and did not involve any undisclosed or "secret" step (such as disabling Dropbox) to achieve the screenshots. Dr. Edwards' additional opinion on "next best alternative" was well-supported and consistent with his opinions on non-infringing alternatives. These remaining arguments go to the weight of Dr. Edwards' testimony, rather than reliability, and are therefore better suited for cross-examination. Accordingly, Dropbox's Motion should be denied.

## II.     LEGAL STANDARD

Expert testimony is admissible under Federal Rule of Evidence 702 if the court finds by a preponderance of the evidence that the expert is qualified, and the testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "If the proposed testimony meets the thresholds of relevance and reliability, its proponent is 'entitled to have the jury decide upon [its] credibility, rather than the judge.'" *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022).

## III.     LEGAL ARGUMENT

### A.     Entangled Media's Infringement Theories were Timely and Fairly Disclosed to Dropbox

#### 1.     Dropbox had full and fair notice that its "Business Plus" and "Essentials" Products were Accused of Infringement via Entangled Media's Infringement Contentions, which Incorporated Dropbox's Response to Interrogatory No. 1.

Dropbox asserts that Entangled Media's infringement contentions make no reference to two accused products included in Entangled Media's expert reports—namely, Dropbox Business Plus and Dropbox Essentials (the "Two Accused Products"). Mot. at 9-10. Yet, as detailed below, these Two Accused Products are not newly-accused products as they were disclosed numerous times through different sources, including within Entangled Media's infringement contentions, and were treated as such by both parties throughout discovery.

Specifically, the cover letter to Entangled Media's infringement contentions directly included in the definition of "Accused Products" those products identified by Dropbox in response to Entangled Media's Interrogatory No. 1, as indicated in the highlighted and copied section therefrom below:

> The "Accused Products and Services" means Dropbox Plus, Family, Professional, Business (Standard, Advanced, Enterprise), and all versions and variations thereof and any process/software identified in Plaintiff's accompanying Third Supplemental Preliminary Infringement Contention charts (including any amendments or supplements thereto). This definition also includes any products or services identified by Dropbox in response to Plaintiff's Interrogatory No. 1 (including any supplements or amendments thereto).

PLAINTIFF'S OPPOSITION TO DROPBOX'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO EXCLUDE TESTIMONY OF DR. EDWARDS
5:23-CV-03264-PCP-VKD

2

Ex. A,[1] Entangled Media's Third Supplemental Infringement Contentions at 2.

Entangled Media served Interrogatory No. 1 on Dropbox, which requested that Dropbox identify all of its products that incorporate the Accused Functionality, which was defined to include Smart Sync:

> 5.    The "Accused Products and Services" means any product, system or service that You have imported, made, used (whether used internally within Dropbox or outside of Dropbox), sold and/or offered for sale in the United States or worldwide, from October 2012 to the present, that includes, by way of example and without limitation, Dropbox Plus, Family, Professional, Business (Standard, Advanced, Enterprise), and all versions and variations thereof, that contain the Accused Functionality.  This definition also includes any products or services identified by You in response to Plaintiff's Interrogatory No. 1 (including any supplements or amendments thereto).
>
> 6.    "Accused Functionality" means Dropbox's Smart Sync feature (also known as "online only") and/or Dropbox's Local Area Network (LAN) Sync feature and/or Dropbox's Backup feature.
>
> **INTERROGATORY NO. 1**
>
> Identify all Accused Products and Services, including each code name, internal name, project name, trade name, marketing name, part number and any other designation that includes the Accused Functionality.

Ex. B, Entangled Media's First Set of Interrogatories, at 2, 4.

Rather than identify any products in addition to those already included in Entangled Media's definition of Accused Products, Dropbox instead chose to repeat the products identified in Entangled Media's definition of Accused Products, and then immediately incorporated its own webpage at:

---

[1] Lettered Exhibits are filed herewith and attached to the accompanying Declaration of Alexander E. Gasser.

PLAINTIFF'S OPPOSITION TO DROPBOX'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO EXCLUDE TESTIMONY OF DR. EDWARDS                                                                                                    3
5:23-CV-03264-PCP-VKD

www.dropbox.com/plans:

> Subject to, as limited by, and without waiving any of the foregoing objections and General Objections, Dropbox responds as follows:
>
> Dropbox Plus, Dropbox Family, Dropbox Professional, and Dropbox Business (Standard, Advanced, Enterprise). Dropbox also refers Plaintiff to https://www.dropbox.com/plans (comparing the various subscription plans for Dropbox) and https://www.dropbox.com/business/plans-comparison (comparing Dropbox's various business plans/bundles/packages).

Ex. C, Dropbox's Fourth Supplemental Responses and Objections to Entangled Media's First Set of Interrogatories (Nos. 1-9) at 8, 9.

Further, Dropbox's website at www.dropbox.com/plans, which Dropbox directly incorporated into its response to Interrogatory No. 1, specifically recites the accused Dropbox Essentials and Dropbox Business Plus products:



Ex. D, Web-captured excerpt of www.dropbox.com/plans.[2]

Dropbox additionally supplemented its response to Interrogatory No. 1 by incorporating the deposition testimony of its 30(b)(6) technical witness, Mr. Joshua Warner. Ex. C, Dropbox's Fourth Supplemental Responses and Objections to Entangled Media's First Set of Interrogatories (Nos. 1-9)

---

[2] While the illustration above is from a March 25, 2025 capture of the www.dropbox.com/plans website, earlier captures of the same website, via the Wayback machine site, indicate that the Essentials and Business Plus products were included on the same website during the operative period of Dropbox's responses to Plaintiff's Interrogatory No. 1. (*See e.g.*, Ex. E, from November 7, 2023).

PLAINTIFF'S OPPOSITION TO DROPBOX'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO EXCLUDE TESTIMONY OF DR. EDWARDS                                                                            4
5:23-CV-03264-PCP-VKD

at 10. ███████████████████████████████████████████████████████████ ███████████████████████████████████ Ex. F, Warner Tr. at 162:6-164:21.

Additionally, Entangled Media's infringement contentions also defined Accused Products to include not only the specifically identified "Dropbox Plus, Family, Professional, Business (Standard, Advanced, Enterprise)"—but also *"all versions and variations thereof…."* Ex. A, Entangled Media's Third Supplemental Infringement Contentions dated October 4, 2024 at 2. Dropbox Business Plus and Dropbox Essentials are "versions" and/or "variations" of one or more of the identified Accused Products. For example, Dropbox's own documents indicate that Dropbox Essentials is a version or variation of at least Dropbox Professional by indicating that Essentials contains everything in Professional; and Dropbox similarly indicates Business Plus is a version or variation of Dropbox Business Advanced by indicating that Plus contains everything in Advanced. *See, e.g.,* the following excerpts:

| Professional | Essentials | Advanced | Business Plus |
|---|---|---|---|
| $19.99 / month<br>$198.96 / year | $22.00 / month<br>$216.00 / year | $30.00 / user / month<br>$288.00 / user / year<br>3 users minimum | $32.00 / user / month<br>$312.00 / user / year<br>3 users minimum |
| **Everything in Plus** | **Everything in Pro** | **Everything in Standard** | **Everything in Advanced** |
| Auto OCR & Image search<br>Shared link controls<br>Branded sharing<br>Adv. Dropbox Transfer[1]<br>180-day version history<br>Premium previews<br>Time-based comments<br>Document watermarking<br>Viewer history<br>Traffic and insights<br>Adv. Dropbox Capture[1]<br>Live chat support | Unlimited Sign eSignatures<br>5 templates for commonly signed documents<br>Tamper-proofing<br>Audit trail that tracks and time-stamps actions<br>Built in data validation<br>Sharing tracking analytics powered by DocSend<br>Transfer size 100GB | Ransomware detection & recovery<br>Adv. Dropbox Transfer[1]<br>1-year Extended version history<br>Premium previews<br>Time-based comments<br>Viewer history<br>Single sign-on integration (SSO)<br>Audit logs<br>Device approvals<br>Tiered admin roles<br>Business hours phone support | Unlimited Sign eSignatures<br>Unlimited eSign templates<br>Transfer size 250GB<br>Tamper-proofing<br>Audit trail that tracks and time-stamps actions |
| 3TB storage | 3TB storage | 5TB storage/user | 15TB storage (pooled) |

Ex. G, HOLZEN_00001016, 1048 (excerpts).

Dropbox had additionally treated Dropbox Essentials and Business Plus as Accused Products throughout fact discovery. For example, when providing financial information for sales regarding

PLAINTIFF'S OPPOSITION TO DROPBOX'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO EXCLUDE TESTIMONY OF DR. EDWARDS
5:23-CV-03264-PCP-VKD

5



Dropbox accused products, it included the financial information for Dropbox Essentials and Dropbox Business Plus.

Ex. H, DRBX_EM_00527256 (excerpt). Dropbox has not cited any evidence suggesting that "Business Plus" and/or "Essentials" represent some new, unique software products that are fundamentally distinct from the other Accused Products.

For all the above reasons, Dropbox had full and fair notice that its "Essentials" and "Business Plus" products are Accused Products.

### 2. Entangled Media's Infringement Contentions Provided Notice to Dropbox that Screenshots of its Accused Products Omitting "Cloud" and/or "Green Checkmark" Supported Entangled Media's "Indistinguishable" Infringement Theory.

Dropbox asserts that Entangled Media's infringement theories regarding omitted cloud or green checkmark icons in connection with the "indistinguishable" limitation were "presented for the first time in connection with [Dr. Edwards] expert report," and "were never disclosed in Plaintiff's infringement contentions." Mot. at 11, 12. Dropbox further asserts more broadly: "No screenshots appear in Plaintiff's infringement contentions that show screens with file names that lack these cloud or check mark icons." Mot. at 12. Dropbox even alleges that Entangled Media's initial infringement contentions "provided no images or facts related to any testing," and subsequent versions of contentions "did not include any images of alleged 'testing' of the Accused Products." Mot. at 3. Dropbox could not be more mistaken as to all the above points, because (as set forth below) (1) several images that

Dropbox complains about as disclosing the infringement theory for the first time in the Expert Report are identical to images included in Entangled Media's most recent infringement contentions; and (2) Entangled Media's infringement contentions, including the sections addressing the "indistinguishable" limitation, are replete with screenshots containing folders and/or files without any associated cloud or green check mark icons on devices running Dropbox's Accused Products.

That is, Entangled Media's contentions provided notice that it was pursuing infringement theories that (i) hold the "indistinguishable" limitation is met when sync icons are present;[3] and (ii) in the event that sync icons are deemed to distinguish virtual and local files, Entangled Media provided evidence and a theory for infringement for platforms and/or instances when the sync icons are not present.

     **a.**    **Images Identical to those Complained of in the Expert Reports showing the "Brown Box" or No Icons, rather than "Cloud" and/or "Green Checkmark" Icons were included in Entangled Media's Infringement Contentions.**

Dropbox complains that Dr. Edwards' Expert Report relies on captured images that do not show the checkmark and cloud icons allegedly typically present to indicate whether a file is stored on a local device or online, and Dropbox particularly references Figure 29, at paragraph 140 of Dr. Edwards' Expert Report (Mot. at 5), which is duplicated further below. Dropbox then states that relying on images without check marks and which instead show a brown box icon constitutes a "new infringement theory" not disclosed in Entangled Media's contentions. Mot. at 11-12.

However, not only were such images included in the contentions (as shown further below)—Dropbox appears to have overlooked that images *identical to* the lower two images from Figure 29 below, with the referenced "brown box" and file names without check marks or cloud icons, were included in Entangled Media's October 4, 2024 contentions—not once, not twice—but on three separate instances. More specifically, the pair of two images below and to the right, which duplicate the two lower screenshots from Figure 29 of Dr. Edwards' Expert Report, were included twice in the most recent '260 Patent Infringement Contention Claim Charts. *Compare*, Ex. I, Edwards Rpt. at ¶ 140

---

[3] Dropbox's Motion focuses only on lack of alleged notice regarding Plaintiff's infringement theory that the "indistinguishable" limitation is met when no check mark or cloud sync icons are present (rather than when sync icons are present), and Plaintiff's opposition brief herein similarly focuses only on this aspect of its infringement theory.

(Fig. 29) with Ex. J (Ex. 2 to Entangled Media's October 4, 2024, Third Supplemental Preliminary Infringement Contentions) at 15, 33. Additionally, the top-most of the two images below and at the upper right that includes the brown box was additionally included in the most recent '338 Patent Infringement Contention Claim Charts. *See* Ex. K (Ex. 1 to Entangled Media's October 4, 2024, Third Supplemental Preliminary Infringement Contentions) at 10.





Figure 29. (Top two) Screenshots of a Dropbox account showing the same list of files on a Windows device and a macOS device. (Bottom two) Screenshots of a Dropbox account showing the same list of files on a Windows device and a macOS device.[144]

Screenshots taken directly from Plaintiff's Oct. 4, 2024 Infringement Contentions.

Dropbox's position that the images in Figure 29 of Dr. Edwards' Expert Report constitute a "new infringement" theory is thus undermined by two of these same images appearing in Entangled Media's infringement contentions. Furthermore, although the top image of Figure 29 at ¶140 from Dr. Edwards' Expert Report was not directly included in Entangled Media's contentions, it is substantially similar to the top images on the right side of the images above from the contentions. Both images (i) constitute a Windows platform wherein a brown box is displayed on a file, (ii) neither image contains a check mark or cloud sync icon overlay, and (iii) as set forth further below, both images are used for the same purpose to show that the "indistinguishable" limitation is being met via images without any

check mark or cloud sync icons. Accordingly, the first image in Figure 29 is merely another example showing the same concept regarding "indistinguishable" that was disclosed in the infringement contentions.

**b.    Images Showing Folders or Files Without a "Cloud" and/or "Green Checkmark" Icons were Specifically included Throughout Entangled Media's Infringement Contentions, Including in Sections Addressing the "Indistinguishable" Limitation.**

Contrary to Dropbox's statements, numerous additional screenshots in the Infringement Contentions show one or more files without a cloud or green check mark. For example, while discussing the "indistinguishable" limitation, Entangled Media's most recent contentions included the following image that showed at least one file (*i.e.*, test_attachment left of the red-framed file) without any check mark or cloud icon:



A screenshot of an iOS file system with a virtual file (*i.e.*, the "test_virtual file" file)
next to a local file (*i.e.*, the "test_attachment" file) in the Dropbox folder.

Ex. K (Ex. 1 to Entangled Media's October 4, 2024, Third Supplemental Preliminary Infringement Contentions) at 64. The same infringement contentions included the following images, the lower left image captured from a Windows laptop with a "Professional" version of Dropbox, showing three files with check mark icons, however, an image of an associated iPhone device containing versions of the same files showed no check mark or cloud icons of any sort:

 

Ex. K (Ex. 1 to Entangled Media's October 4, 2024, Third Supplemental Preliminary Infringement Contentions) at 7-8. The same contentions then showed images captured from a different Windows laptop (on the left),[4] and a mobile device (on the right) with versions of the same three files, none of which contain any check mark or cloud icons.

 

---

[4] These images at pp. 10-11 of Ex. K were inadvertently labelled as being from a "Professional" Dropbox account (which was the proper attribution for the former set of images at pp. 7-8), rather than the correct attribution, namely, a "Essential" Dropbox account—consistent with the bottom two images in Fig 29 from the Expert Report, which were correctly attributed to an "Essential" account in the report. Since the above Windows image at p. 10 of Ex. K includes the same image that is third from the bottom in Fig. 29 from the Expert Report, clearly both came from an "Essential" Dropbox account.

PLAINTIFF'S OPPOSITION TO DROPBOX'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO
EXCLUDE TESTIMONY OF DR. EDWARDS                                                    10
5:23-CV-03264-PCP-VKD

*See* Ex. K (Ex. 1 to Entangled Media's October 4, 2024, Third Supplemental Preliminary Infringement Contentions) at 10-11.

The above contention images in this section were all included within the October 4, 2024 claim charts regarding the '338 Patent. Furthermore, the October 4, 2024 claim charts regarding the '260 Patent also contained screenshots of images of files without any check mark or cloud icons. Those include, for example, the following images, which, as discussed above, are included in Figure 29 at ¶140 of Dr. Edwards' Expert report. The claim charts regarding the '260 Patent presented the images twice—namely once in connection with the '260 Patent's Claim 1 limitation of "make the local files and virtual files appear indistinguishable to the singular file system" and again in connection with the limitation of "a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device." The contentions state that these screenshots were taken from two laptop devices using Dropbox and show the same list of files, wherein the test_word.docx file is rendered "online-only" within one laptop folder, and available offline in the other laptop folder:



Ex. J (Ex. 2 to Entangled Media's October 4, 2024, Third Supplemental Preliminary Infringement Contentions) at 14-15, 32-33.

PLAINTIFF'S OPPOSITION TO DROPBOX'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO EXCLUDE TESTIMONY OF DR. EDWARDS                                                                                      11
5:23-CV-03264-PCP-VKD

It is therefore undeniable that (1) Entangled Media's infringement contentions were replete with captured screenshots showing that files of the Accused Products were portrayed without a check mark or cloud sync icon; (2) the infringement contentions specifically relied upon such screenshots without check marks or cloud icons to directly support the "indistinguishable" limitations in the Asserted Patents; and, (3) several images that Dropbox objects to from Dr. Edwards' Expert Report, which Dropbox characterizes as a "new theory" were identical to images in the infringement contentions. Under these circumstances, Dropbox's allegations that the screenshots constitute a new infringement theory must fail, because the infringement contentions, with the same and similar screenshots, provided adequate notice that such screenshots support Entangled Media's infringement theories as to the "indistinguishable" limitation. *See, e.g., Perfect Surgical Techniques, Inc. v. Olympus America, Inc.,* 2013 WL 11319414 at *1 (N.D. Cal. Oct. 28, 2013) ("Infringement contentions are not intended to provide proof to defendants," rather, "they are intended to provide notice…of its theories of infringement.") *citing Network Caching Tech. v. Novell, Inc.*, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003).[5]

Even if the Court finds Dr. Edward's infringement theories "new" (they are not), it should deny this motion because Dropbox will suffer no prejudice since it has already provided a rebuttal expert report on these theories and deposed Dr. Edwards about them. *Huawei Techs., Co, Ltd v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 998-99 (N.D. Cal. 2018) (denying motion to strike where court was "extremely reluctant" to dispose of substantive arguments based on procedural defects where no "unfair surprise" to moving party). Indeed, Dropbox has not articulated any steps it would have taken differently if it had the chance, nor could it. And if Dropbox thought the contentions were unclear it could have asked Entangled Media for supplementation, but instead chose to lie in wait and then seek to strike Dr. Edwards' opinions until after submitting rebuttal opinions and deposing him on the very theories it contends are new. In any event, because Dr. Edwards did not provide new infringement

---

[5] Dropbox's recitation of caselaw at pp. 10 and 12 of its Motion stands for the general proposition that new infringement theories should not be presented for the first time in an expert report—which is inapposite given that the screenshots from testing do not constitute a new infringement theory on the "indistinguishable" limitations, and the same or similar screenshots were disclosed in Plaintiff's infringement contentions in connection with those limitations.

theories, the Court should not strike his "new testing" opinions regarding the "indistinguishable" limitation.

### 3. Entangled Media Provided Notice to Dropbox that It May Pursue a Divided or Joint Infringement Theory

Entangled Media provided full and fair notice to Dropbox that Entangled Media may pursue a joint and/or divided infringement theory as to each of the '338 and '260 Patents (the "Asserted Patents"). Entangled Media plainly and directly said so within paragraphs 73 and 90, respectively, of its Second Amended Complaint, set forth immediately below:

> 73. In the event Dropbox itself does not perform the entire process, the infringement of the '338 Patent is attributable to Dropbox, because Dropbox directs and controls the users of the Accused Products to perform acts that result in infringement of claim 1, and Dropbox receives benefit from its infringement.

> 90. In the event Dropbox itself does not perform the entire process, the infringement of the '260 Patent is attributable to Dropbox, because Dropbox directs and controls the users of the Accused Products to perform acts that result in infringement of claim 1, and Dropbox receives benefit from its infringement.

Dkt. No. 102 at 23, 35.

The standards that Entangled Media pled directly copy the standard for joint infringement. *See, e.g., Sentius Int'l v. Apple*, 2020 WL 6081775 at *3 (N.D. Cal. October 15, 2020), citing *Akamai Techs. v. Limelight Networks*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) ("Sentius argues that Apple directs and controls users' actions because Apple conditions the benefits of spell check on user performance of the claimed methods and establishes the manner and timing of that performance. This is the standard for joint infringement.") (emphasis added). As Entangled Media pled the exact standard for joint infringement, and Dropbox did not move to dismiss this claim or seek any discovery on this claim, Dropbox cannot now claim surprise, prejudice, or ignorance of this plainly and directly disclosed infringement theory, particularly when Dropbox specifically responded to (and denied) these allegations in not one—but two sets of responsive pleadings. *See* Dkt. No. 150 at 18, 20, and Dropbox's October 31, 2024 First Amended Answer to Second Amended Complaint at 18, 20.

███████████████

**B.    Dr. Edwards' Opinions regarding Screenshots showing Dropbox Files Without Check Marks or Cloud Icons and his Opinions on Non-Infringing Alternatives are Reliable**

With respect to the screenshots, Dropbox misrepresents the circumstances under which a brown box or no icons can appear within Dropbox folder files. ████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████ In its Motion, however, Dropbox overstates this method as the "only" way to achieve these icon scenarios. Mot. at 23 ("As Dr. McDaniel explained, these green check marks and grey cloud icons only disappear when the Dropbox software is explicitly turned off."). In effect, as shown below, Dropbox ignores (1) its own expert's testimony and its own documents showing that other scenarios short of disabling Dropbox explain the icon scenarios, including default Dropbox installation conditions that cause conflicts with Microsoft's OneDrive system, which is on by default, (2) multiple other scenarios involving the macOS platform that Dropbox's documents acknowledge, and (3) most importantly, Dr. Edwards' deposition testimony that he did not turn off/disable Dropbox to remove various sync icons in the screenshots. By improperly narrowing the possible causes behind absent sync icons to only those involving disabling the Dropbox product, Dropbox creates a false narrative that Dr. Edwards did not disclose any such "disabling" step(s). In effect, Dropbox is faulting Dr. Edwards for *failing to disclose a step that did not occur*. This is non-sensical, particularly when, as discussed further below, various default Dropbox installation conditions automatically cause the complained-of missing sync icons. Additionally, Entangled Media, through its infringement contentions, expert report, and Dr. Edwards' deposition, disclosed more than sufficient information to render Dr. Edwards' opinions involving the screenshots reliable.

**1.    There are Multiple Scenarios Acknowledged by Dropbox Wherein Dropbox Files Show Brown Boxes or No Sync Icons, Without Disabling or Turning Off Dropbox.**

**a.    Various Default Conditions in a Windows Device Environment Can Conflict with Dropbox Defaults, Causing Brown Box and/or Absent Sync Icons**

████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████



Ex. L, McDaniel Rebuttal Rpt. at ¶271.

*Id.*,

¶ 273. Importantly, OneDrive is enabled by default,[6] and so the default settings of both Dropbox and Microsoft's OneDrive can cause the conflicts that create brown boxes and/or absent icon scenarios.

Importantly, in order to avoid the conflict between OneDrive and Dropbox, Dr. McDaniel did not identify that any process by Dropbox or Microsoft, in connection with the Dropbox installation warned, instructed, prompted Dr. McDaniel, or automatically configured the installation process to avoid the conflict with OneDrive.

*Id.*, ¶¶ 273-274.[7]

It also appears that the instructions associated with downloading the Dropbox application make no mention of the Dropbox/OneDrive conflict and do not provide guidance to avoid the conflict.[8] Accordingly, it would appear that a new Dropbox user would be unaware of the above-mentioned Dropbox/OneDrive conflict when installing Dropbox in a Windows environment and would have no reason or basis to know that additional procedures (such as disabling OneDrive) are necessary to avoid conflicts that could affect the appearance of check mark and cloud sync icons. It is therefore expected and reasonable for Dr. Edwards to follow the installation procedures that an ordinary new user would follow when first installing a Dropbox product on a Windows machine, at least in part because the

---

[6] *See, e.g.*, Ex. M, "Files save to OneDrive by default in Windows" at https://support.microsoft.com/en-us/office/files-save-to-onedrive-by-default-in-windows-33da0077-770c-4bda-b61e-8c8e8ca70ac7; see also, Ex. N, "OneDrive can and should start when your computer turns on." https://kb.uconn.edu/space/IKB/26237304931/OneDrive+AutoStart+with+Computer.

[7] To the extent Dr. McDaniel did not actively disengage OneDrive prior to Dropbox's installation, this would appear to be an artifact solely due to his installing a "fresh" new version of Windows just prior to installing the Dropbox application, such that Dr. McDaniel had not yet (ever) signed in to this Window's version of OneDrive and thus, OneDrive was not running by default, as set forth in the footnote immediately above.

[8] *See, e.g.*, Ex. O, https://help.dropbox.com/installs/download-dropbox.

installation conditions are designed and controlled (or at least described) in whatever manner Dropbox sees fit so that the product is implemented in its intended fashion. At any rate, in this specific instance there is no indication in Dr. Edwards's screenshots themselves that his Dropbox folders were created in a OneDrive folder. The screenshots nowhere include any OneDrive icon or name in the displayed folder path.

Dropbox is additionally aware of other reasons the check mark or cloud icons may not properly show in a Windows environment, none of which are caused by a user disabling or turning off Dropbox. *See, e.g.,* Ex. Q, DRBX_EM_00002727. Accordingly, issues with conflicts between different overlay systems, such as between OneDrive and Dropbox, can regularly cause the sorts of overlay issues captured by Dr. Edwards' screenshots without Dr. Edwards disabling the Dropbox application, and/or Dr. Edwards engaging in some other "secret step" that was not performed at any rate.

Further, Dropbox had an opportunity to depose Dr. Edwards on the details of the testing on Accused Devices and chose not to explore it in earnest. Ex. R, Edwards Tr. at 235:10-236:4. Dropbox has not stated why deposing Dr. Edwards on this theory and serving a rebuttal report challenging this theory was not enough. *See Illumina, Inc. v. BGI Genomics Co.,* 559 F. Supp. 3d 1072, 1084 (N.D. Cal. 2021) (no prejudice in declining to strike newly disclosed infringement theory where moving party had "full opportunity depose [expert] and respond to his opinions through its expert [] rebuttal report during expert discovery."); *see also Sonos, Inc. v. Google LLC,* No. C-20-06754-WHA, 2023 WL 2918751,

████████████

at *6 (N.D. Cal. Apr. 12, 2023) (declining to strike infringement theory where "both sides' experts spoke to the [allegedly new theory of infringement]").

Ultimately, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### b. Various Conditions in a macOS Device Environment can Also Cause Overlay Icons Not to Show That Do Not Involve Turning Off or Disabling Dropbox.

In addition to the multiple conditions that trigger an absence of cloud and check mark icons in the Windows environment discussed above, Dropbox is aware of several causes behind similar issues in the macOS environment (both the pre- and post- File Provider) that arise in scenarios that do not involve disabling Dropbox.

For example, with respect to post-File Provider macOS systems, Dropbox publishes on its Help Center Website, "if your sync icons are missing," close all non-Dropbox applications and relaunch the Dropbox desktop:

Dropbox Help Center - How to use Dropbox > Sync > Sync icons on Dropbox on File Provider

## What to do if your sync icons are missing

If your sync icons are missing, close all non-Dropbox applications then quit and relaunch the Dropbox desktop app.

Ex. S, https://help.dropbox.com/sync/macos-sync-icons.

While the above scenario involves macOS clients <u>with</u> File Provider, ████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████

Ex. T, DRBX_EM_00057386 at 57390.

Accordingly, the absence of check mark and cloud icons is endemic and well-recognized throughout the various Windows and macOS versions of Dropbox.[9] Further, this occurs on its own and with Dropbox's knowledge within these Windows and macOS environments, and in the instance of Dr. Edwards' screenshots is *not* a product of artificial manipulation, such as turning off or disabling the Dropbox application prior to taking any such snapshots.

**2. Dr. Edwards' Screenshots, together with his Deposition Testimony and Infringement Contentions Disclosed Sufficient Information and were Reliably Obtained By Simply Capturing Dropbox's Operation, Without Disabling Dropbox.**

The screenshots themselves, the descriptions of the screenshots in Dr. Edwards' Expert Report, the infringement contentions that contain several of the same screenshots, and the deposition testimony of Dr. Edwards all disclose a set of facts sufficient to show that the brown box and missing sync icons were not the result of any improper manipulation such as disabling or turning off Dropbox, and that Dr. Edwards' reliance on the screenshots are proper under Federal Rules of Evidence 702/703 and *Daubert.*

For purposes of this discussion, Entangled Media focuses upon the screenshots within Figure 29 (at ¶140) of Dr. Edwards' Expert Report (duplicated below), which, as previously discussed, is an amalgam of four separate screenshots that are duplicated, in part, throughout his report, and in which the top two screenshots are associated with one another, and the bottom two screenshots are associated with one another:

---

[9] Indeed, the endemic nature of absent sync icons across multiple platforms was reflected even in the earliest, initial infringement contentions served by Entangled Media on May 31, 2023, which contained multiple screenshots from mobile devices showing Dropbox folders containing one or more file names with no check mark or cloud icons. Ex. U [May 31, 2023 '338 Contentions] at pp. 6, 9, 28, 37, and 46.

**Figure 29. (Top two) Screenshots of a Dropbox account showing the same list of files on a Windows device and a macOS device. (Bottom two) Screenshots of a Dropbox account showing the same list of files on a Windows device and a macOS device.[144]**

With respect to the top two screenshots, Dr. Edwards states that these top two screenshots are taken from a laptop and a desktop device, both of which had a Dropbox Plus account installed onto them, and files added to their respective accounts. Ex. I, Edwards Rpt. at ¶ 140. From the formatting alone and the caption accompanying Figure 29, it is clear that the top screenshot is of a Windows device and the second screenshot is a macOS device. The caption also confirms that the first and second screenshots contain the same list of files, meaning each of the files on each device corresponds to the similarly named file on the other device. The same two screenshots are also copied at Figure 48 of Dr. Edwards' Report, adding that the top [Windows] screenshot is a laptop "wherein the file

test_attachment.txt is rendered online-only in the [Windows] laptop, and in the [MacOS] desktop device, the same file is made available offline." *Id.* at ¶ 186. The caption at Figure 48 states, in part: "Online-only (virtual) and available offline (local) files are located in the same folder." *Id*. From this, it is clear that in the first screenshot, the file named "test_attachment.txt" is set for online-only, and the remaining two files in the screenshot are local files. Similarly, the flip situation attaches to the second screenshot, wherein the file "test_attachment.txt" is a local file, and the remaining two files in the screenshot are virtual files.

Dr. Edwards additionally provides information regarding the specific devices from which the screenshots were taken. For example, Dr. Edwards describes that the six devices identified in Figure 30 of his report (copied below) were all registered and linked on the same Dropbox Plus account discussed in paragraph 140 and prior Figure 29, which included the first two screenshots therein. *Id.* at ¶ 141. Accordingly, this Figure 30 includes the specific devices from which the first two screenshots were taken. For example, the macOS desktop device from the second screenshot is indicated as a "Mac-mini-M1."



**Figure 30. A screenshot from the Dropbox website where it shows there are six devices linked on the same Dropbox account.**[145]

Dropbox complains, inexplicably, regarding the possible range of dates during which the screenshots were taken. Mot. at 24. This misplaced concern has little, if any, relevance to the present

motion, but, with respect to the first two screenshots in Figure 29, there should be little concern regarding the dates these were taken. This first screenshot contains date modified information containing a single date, namely Nov. 20, 2024, which is six days prior to the date of the November 26, 2024 report. *Id.* at ¶ 140 (Fig. 29). Accordingly, the first screenshot was taken within a week of the report. The second screenshot is of an associated macOS device on the same Dropbox Plus account, containing the same list of files as in the first screenshot, and is meant to show the relationship between the first and second screenshots. Accordingly, this second screenshot was logically taken within the same general period as the first screenshot. *Id.*

In a further effort to create issues where none exist, Dropbox alleges that Dr. Edwards does not explain how a "Photos" folder came to exist in the first screenshot. Mot. at 20. Dr. Edwards, however, precisely explained the creation and sharing of this folder across paragraph 213, and Figures 59-62 of his report.

Dr. Edwards' deposition testimony provided additional substantive details regarding the formation of the screenshots generally, and specifically regarding the second screenshot in Fig. 29.





*Id.* at 226:2-21 (emphasis added); *see also Id.* at 231:19-23 ████████████████

████████████████████████████████████████████

████████████████████████████

Dr. Edwards' Report and other provided information made similar detailed disclosures regarding the devices, files, and versions of Dropbox installed on the devices whose screenshots are the third and fourth images in Figure 29 (those third and fourth images duplicated below):

**Figure 29. (Top two) Screenshots of a Dropbox account showing the same list of files on a Windows device and a macOS device. (Bottom two) Screenshots of a Dropbox account showing the same list of files on a Windows device and a macOS device.**[144]

The caption to Figure 29 and the description at paragraph 140 confirm that the screenshots are from a Windows laptop and a macOS laptop, onto which a desktop client for a Dropbox Essentials account was installed. The caption further confirms that each device contains the same list of files. These two screenshots were originally obtained in connection with and incorporated in Entangled Media's most recent infringement contentions, served October 4, 2024. These infringement contentions provided additional information regarding the above files—namely, that "the test_word.docx file is rendered 'online-only' within one laptop folder, and in the other laptop folder, the test_word.docx file is made available offline," indicating that the "test_word.docx" file in the Windows laptop was "online-only" and on the macOS laptop was rendered as a local copy. *See* Ex. J (Ex. 2 of Oct. 3, 2024

Infringement Contentions at pp. 14-15). Since the corresponding limitation in the infringement chart required that local and virtual files were located within the same folder, this further indicates that the remaining files had an "opposite" local/virtual status from the one just discussed.

With respect to dates, the second screenshot contains dates not earlier than September 3, 2024, meaning this screenshot was taken between September 3, 2024, and the October 4, 2024 date of the Infringement Contentions. Accordingly, the second screenshot was taken within about one month of the Infringement Contentions. The first screenshot is of an associated Windows device on the same Dropbox account, containing the same list of files as in the second screenshot, and is meant to show the relationship between the first and second screenshots. Accordingly, the second screenshot was logically taken within the same general time period as the first screenshot.

With respect to specific models, these infringement contentions identify additional devices from which the screenshots were taken. *See* Ex. K (Ex. 1 of Oct. 4, 2024 Infringement Contentions) at 10-13. For example, it is apparent that the macOS laptop in the bottom screenshot is a MacBook 14. *Id*.

During his deposition, Dr. Edwards similarly provided additional detail regarding the formation of the screenshots generally, and specifically regarding the bottom screenshot in Figure 29. ████ ████████████████████████████████ ████████████████████████████████ Ex. R, Edwards Tr. at 229:6-23.

Finally, Dropbox identifies slight differences between the various files, such as between the two different macOS screenshots in an attempt to call into question the propriety of the screenshots. (*see, e.g.*, Mot. at 21-22). Slight differences between the different macOS screenshots should be expected, however, given that the macOS devices are different (desktop vs. laptop), constitute different accounts (Essential vs Plus), and contain different files.

Accordingly, given the significant volume of provided information with respect to (i) the specifically involved accused Dropbox products, (ii) device types, (iii) model names, (iv) operating systems, (v) versions of Dropbox application utilized (such as pre- or post- file provider API), (vi) file load status (*i.e.*, local vs. virtual), and (vii) the disclosed relationships and connections between the

different devices, the cumulative disclosed information is more than sufficient to be deemed appropriate and reliable under the Federal Rules and *Daubert*.[10]

### C.    Dr. Edwards' Opinion on The Next Best Alternative is Reliable and Should not be Stricken Merely because Dropbox Disagrees with it.

Dropbox also moves to strike Dr. Edwards' opinions on the "next best alternative" by again alleging a conflict where one does not exist. Specifically, Dropbox alleges that a contradiction/inconsistency exists where Dr. Edwards (1) criticized purported non-infringing alternatives (NIA), some of which did not contain virtual files, and (2) Dr. Edwards' own identified "next best alternative," which contemplated not employing virtual files. Mot. at 23-25. Dropbox fails to appreciate that Dr. Edwards has specifically opined that none of the <u>alleged</u> NIAs are true acceptable NIAs, at least because:

- The alleged NIA still infringes the Asserted Claims;

- There is no evidence of how the alleged NIA could be implemented or whether it would be feasible to do so;

- The alleged NIA would not have been available to Dropbox; and/or,

- The alleged NIA would not have been an acceptable alternative to the technology disclosed in the Asserted Patents.

*See, e.g.,* Ex. I, Edwards Rpt. at ¶ 297.

Despite an absence of acceptable NIAs, Entangled Media is nonetheless required, in this case, to identify a "next best alternative" that will serve as a non-infringing alternative against which the benefits of the Asserted Patents can be compared, and a reasonable royalty calculated therefrom. In other words, when there are no commercially acceptable NIAs, Entangled Media is nonetheless required to choose from among those non-commercially acceptable alternatives to choose a next best alternative. By definition, in this scenario, "the next best alternative" *must contain one or more aspects of the non-commercially acceptable alternatives.* Therefore, it is not inconsistent for Dr. Edwards'

---

[10] The volume of information described, provided, and made available to Dropbox via the information above is analogous to the information provided by Dr. McDaniel in his rebuttal report addressing the presence/absence of sync icons.

"next best alternative" to share a characteristic of the NIAs that are not commercially acceptable—rather, under our facts, it is logical that the "next best alternative" do so.

Lastly, Dropbox's Motion confirms that cross-examination is the best way to test Dr. Edwards' opinions regarding the "next best alternative." For example, Dropbox claims that Dr. Edward's opinions on next best alternative are "speculative, unsupported, and misleading." Mot. at 25. But Dr. Edwards explained this very issue in his report. Specifically, Dr. Edwards explained that if all of a user's files are offline, such "a system would be the next best alternative because it still allows a user to synchronize his or her files among multiple devices . . . and access those files from each of the devices." Ex. I, Edwards Rpt. at ¶ 315. Accordingly, Dr. Edwards provides the identification of, and the basis for his next best alternative, and there is no conflict between his positions against Dropbox's NIAs and Dr. Edwards' choice of next best alternative. Under our facts, Mr. Edwards' next best alternative will share one or more characteristics of the non-commercially acceptable alternatives—and in this instance the shared characteristic is not employing virtual files.

Dropbox's reliance on *Snyder v. Bank of Am.,* No. 15-CV-04228, 2020 WL 6462400, at *6 (N.D. Cal. Nov. 3, 2020) is misplaced. There, the Court granted defendant's motion to exclude plaintiff's real property valuation expert because defendant's motion was unopposed and plaintiff's expert "opined that the Subject Property was worth more in 2016 than 2013, despite having deteriorated in condition." The facts and law at issue in *Snyder* have no bearing on the issue at hand.

Ultimately, there is nothing improper regarding Dr. Edwards' opinions regarding NIAs and next best alternative. To the extent Dropbox wishes to challenge such opinions, the appropriate method to do so is via cross-examination, because Dropbox's critiques of Dr. Edwards' opinions on these topics, if anything, go to the weight, rather than admissibility of his opinion.

**IV.    CONCLUSION**

Entangled Media respectfully requests that the Court deny Dropbox's Motion.

███████████

Dated: April 10, 2025

*/s/ Alexander E. Gasser*
John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

PLAINTIFF'S OPPOSITION TO DROPBOX'S MOTION TO STRIKE NEW INFRINGEMENT THEORIES AND TO EXCLUDE TESTIMONY OF DR. EDWARDS
5:23-CV-03264-PCP-VKD