MORGAN, LEWIS & BOCKIUS LLP
Michael J. Lyons, Bar No. 202284
michael.lyons@morganlewis.com
Austin L. Zuck, Bar No. 318434
austin.zuck@morganlewis.com
Katerina Hora Jacobson, Bar No. 342384
katerina.horajacobson@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Nicholas A. Restauri (*pro hac vice*)
nicholas.restauri@morganlewis.com
Karon N. Fowler, Bar No. 308145
karon.fowler@morganlewis.com
110 North Wacker Drive
Chicago, IL 60606-1511
Tel: +1.312.324.1000
Fax: +1.312.324.1001

Attorneys for Defendant
Dropbox, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>DROPBOX, INC.,<br><br>                    Defendant. | Case No. 5:23-cv-03264-PCP<br><br>**DROPBOX, INC.'S OPPOSITION TO PLAINTIFF ENTANGLED MEDIA, LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:  Hon. P. Casey Pitts<br>Dept.:  Courtroom 8 – 4th Floor<br>Hearing Date:  May 8, 2025<br>Hearing Time:  10:00 A.M. |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   RESPONSE TO "STATEMENT OF UNDISPUTED MATERIAL FACTS"................... 1

III.  THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT AND IMPROPER INVENTORSHIP. .............................. 8

    A.    Inventorship ....................................................................................... 8

        1.    There is a genuine dispute regarding whether Mr. Drew contributed to conception and reduction to practice of the alleged inventions. ............. 8

        2.    There is a genuine dispute whether Mr. Caso had "Already Conceived" of the ideas. ......................................................... 11

        3.    There is sufficient corroborating evidence........................................ 12

        4.    That administrative correction of inventorship is possible is irrelevant. .................................................................................. 14

    B.    Inequitable Conduct ........................................................................ 15

        1.    There is a genuine dispute whether the inventor declarations were false. ......................................................................................... 15

        2.    Messrs. Caso and Abraham's failure to name Mr. Drew as a co-inventor and their submission of false affidavits are material. ................ 15

        3.    There is a genuine dispute of material fact regarding intent to deceive.................................................................................... 17

IV.  THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT OF NO INVALIDITY BASED ON FOLDERSHARE................................................... 19

    A.    Dropbox need not provide a motivation to combine documents that evidence a single prior art system. ................................................... 19

    B.    Dropbox need not evidence a reasonable expectation of success in combining documents that describe a single prior art product. .......................... 22

V.   THE COURT SHOULD DENY PLAINTIFF'S MOTION AS TO DROPBOX'S TENTH, ELEVENTH, AND SIXTEENTH AFFIRMATIVE DEFENSES. ................... 23

    A.    Tenth Affirmative Defense: Limitations on Damages (35 U.S.C. § 286) ........... 24

    B.    Eleventh Affirmative Defense: Failure to Provide Notice (35 U.S.C. § 287) ...... 24

    C.    Sixteenth Affirmative Defense: Lack of Standing ............................................. 24

VI.  THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT OF PATENT ELIGIBILITY UNDER § 101. ................................................................ 25

VII. CONCLUSION ........................................................................................ 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

DROPBOX'S OPP. TO
PLAINTIFF'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ART+COM Innovationpool GmbH v. Google Inc.*,
 155 F. Supp. 3d 489 (D. Del. 2016) ................................................................................ 21

*Astrazeneca Pharms. LP v. Teva Pharmaceuticals USA, Inc.*,
 583 F.3d 766 (Fed. Cir. 2009) ........................................................................................ 19

*Aventis Pharma S.A. v. Hospira, Inc.*,
 675 F.3d 1324 (Fed. Cir. 2012) ...................................................................................... 18

*BLM Prods., Ltd. v. Covves, LLC*,
 2017 WL 8811269 (C.D. Cal. Oct. 26, 2017) ................................................................ 16

*Blue Gentian, LLC v. Tristar Prods., Inc.*,
 70 F.4th 1351 (Fed. Cir. 2023) ................................................................................ 9, 13

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
 2020 WL 3047989, . (D. Del. June 8, 2020) .................................................................. 21

*Care, Ltd. v. Laurain*,
 98 F.4th 1081 (Fed. Cir. 2024) ...................................................................................... 19

*ChriMar Sys. Inc. v. Cisco Sys., Inc.*,
 2019 WL 8333452 (N.D. Cal. Dec. 17, 2019) ................................................................ 16

*Contour IP Holding, LLC v. GoPro, Inc.*,
 No. 3:17-cv-04738, Dkt. 585 (N.D. Cal. Nov. 8, 2021) ................................................ 15

*Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*,
 964 F.3d 1365 (Fed. Cir. 2020) ...................................................................................... 12

*Digit. Envoy, Inc. v. Google, Inc.*,
 370 F. Supp. 2d 1025 (N.D. Cal. 2005) ........................................................................... 6

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
 914 F.3d 1347 (Fed. Cir. 2019) ...................................................................................... 11

*Egenera, Inc. v. Cisco Sys., Inc.*,
 972 F.3d 1367 (Fed. Cir. 2020) ...................................................................................... 14

*Ethicon, Inc. v. U.S. Surgical Corp.*,
 135 F.3d 1456 (Fed. Cir. 1998) ................................................................................ 13, 14

*Fina Oil & Chem. Co. v. Ewen*,
 123 F.3d 1466 (Fed. Cir. 1997) ...................................................................................... 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

*Fujifilm Corp. v. Motorola Mobility LLC*,
2014 WL 2730724 (N.D. Cal. June 16, 2014) ........................................................................ 16

*Golden Hour Data Sys., Inc. v. emsCharts, Inc.*,
614 F.3d 1367 (Fed. Cir. 2010), *overruled on other grounds by Akamai Techs.,*
*Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) ........................................ 19

*Good Tech. Corp. v. Mobileiron, Inc.*,
2015 WL 4197554 (N.D. Cal. July 10, 2015) ........................................................................ 21

*GS Cleantech Corp. v. Adkins Energy LLC*,
951 F.3d 1310 (Fed. Cir. 2020) ............................................................................................. 17

*Hoffmann-La Roche, Inc. v. Promega Corp.*,
323 F.3d 1354 (Fed. Cir. 2003) ............................................................................................. 18

*Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*,
548 F. Supp. 3d 916 (N.D. Cal. 2021) ................................................................................... 18

*Imprenta Servs., Inc. v. Karll*,
2021 WL 4555333 (C.D. Cal. July 13, 2021) ........................................................................ 16

*Intellect Wireless, Inc. v. HTC Corp.*,
732 F.3d 1339 (Fed. Cir. 2013) ............................................................................................. 17

*Interwoven, Inc. v. Vertical Comp. Sys.*,
2013 WL 75770 (N.D. Cal. Jan. 4, 2013) .............................................................................. 18

*Kaseberg v. Conaco, LLC*,
360 F. Supp. 3d 1026 (S.D. Cal. 2018) .................................................................................. 24

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000) ............................................................................................. 21

*Neev v. Alcon LenSx, Inc.*,
2017 WL 6886670 (C.D. Cal. June 30, 2017) ....................................................................... 18

*Nilssen v. Osram Sylvania, Inc.*,
504 F.3d 1223 (Fed. Cir. 2007) ............................................................................................. 17

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
695 F.3d 1285 (Fed. Cir. 2012) ............................................................................................. 16

*Pannnu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998) ............................................................................................. 14

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*,
225 F.3d 1315 (Fed. Cir. 2000) ....................................................................................... 15, 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

*Phigenix, Inc. v. Genentech Inc.*,
2016 WL 7985261 (N.D. Cal. Jan. 12, 2016) ........................................................................ 17

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993) ............................................................................................. 12

*Purdue Pharma L.P. v. Endo Pharms. Inc.*,
438 F.3d 1123 (Fed. Cir. 2006) ............................................................................................. 17

*Radware, Ltd. v. F5 Networks, Inc.*,
2016 WL 861065 (N.D. Cal. Mar. 5, 2016) ........................................................................... 21

*In re Rothery*,
143 F.3d 546 (9th Cir. 1998) ................................................................................................. 25

*S.A.R.L. v. LG Elecs., Inc.*,
2022 WL 22401011 (D. Del. Apr. 8, 2022) ........................................................................... 21

*Sandt Tech., Inc. v. Rosco Metal & Plastics Corp.*,
264 F.3d 1344 (Fed. Cir. 2001) ............................................................................................. 13

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
225 F.3d 1349 (Fed. Cir. 2000) ............................................................................................. 21

*In re Stephen Co.*,
868 F.3d 1342 (Fed. Cir. 2017) ............................................................................................. 21

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ....................................................................................... 15, 16

*U.S. v. Crawford*,
239 F.3d 1086 (9th Cir. 2001) ................................................................................................. 6

*Unwired Planet, LLC v. Apple Inc.*,
2017 WL 1175379 (N.D. Cal. Feb. 14, 2017) ........................................................................ 18

*In re VerHoef*,
888 F.3d 1362 (Fed. Cir. 2018) ............................................................................... 6, 9, 11, 16

*In re Warsaw Orthopedic, Inc.*,
832 F.3d 1327 (Fed. Cir. 2016) ............................................................................................. 21

*Zenith Elecs. Corp. v. PDICommc'n Sys., Inc.*,
522 F.3d 1348 (Fed. Cir. 2008) ............................................................................................. 21

**Statutes**

35 U.S.C. § 101 ........................................................................................................................... 25

35 U.S.C. § 102(f) ....................................................................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

35 U.S.C. § 103 ................................................................................................................. 20

35 U.S.C. § 119(a) ............................................................................................................. 12

35 U.S.C. § 256 ................................................................................................................. 14

35 U.S.C. § 286 ............................................................................................................ 24, 25

35 U.S.C. § 287 ............................................................................................................ 24, 25

**Other Authorities**

37 C.F.R. § 1.56(a) ............................................................................................................ 17

Fed. R. Civ. P. 56(c)(1)(B)(2) ................................................................................... 1, 2, 3, 6

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 25

Fed. R. Civ. P. 56(d) ..................................................................................................... 24, 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

## I.   INTRODUCTION

Each of the seven issues that Plaintiff Entangled Media, LLC seeks summary judgment for are meritless and its Motion should be denied.  As to each issue, Plaintiff fails to demonstrate the absence of a genuine issue of fact, ignores relevant evidence, or raises mooted arguments.  Moreover, as discussed in Dropbox's Motion to Strike filed contemporaneously herewith, Plaintiff improperly attempts to rely on information withheld during fact discovery that is inadmissible and thus should not be considered at summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(B)(2).

## II.   RESPONSE TO "STATEMENT OF UNDISPUTED MATERIAL FACTS"

Dropbox responds as follows to the "Statement of Undisputed Material Facts" ("SUMF").  Dkt. 241 ("Mot.") at 3-9.

1.   First, this is not material to any claim or defense.  Second, the cited evidence does not establish the lack of a factual dispute.  Plaintiff has alleged that Mr. Caso founded Entangled Media Corp. in 2010.  Dkt. 19 ¶ 19.  ███████████████████████. Ex. 1, EM_00019282; Ex. 2, EM_00029518.  An Entangled Media LLC entity was first formed in 2023 at the advice of counsel.  Ex. 3, Caso Tr., 38:20-39:9.  Mr. Caso testified ███████ ████████████████████████ *Id.* 166:15-167:22.

2.   Drobox does not dispute that Ex. 19 to the Motion includes the quoted language.

3.   The cited evidence does not establish a lack of factual dispute.  Assuming Plaintiff intends to reference the entity allegedly "formed around May 2009" per SUMF ¶ 1, the cited evidence does not support the conclusion that Mr. Caso began collaborating with Mr. Abraham "[p]rior to forming Entangled Media LLC."  For example, in Ex. 20 (Dkt. No. 241-22), 52:15-53:8, Mr. Abraham testified that he began working with Mr. Caso "either late – late 2008 or early 2009" to the best of his recollection.  Evidence illustrating that this is a disputed fact also includes: Dkt. No. 241-23, 17:2-11, 24:13-25:11.

4.   The cited evidence does not establish a lack of factual dispute.  Mr. Abraham only testified that, before working for Entangled Media, he worked for J2 Interactive, which was "a software consulting company that works primarily in the healthcare space," and he made "just a guess" that his job title was "director of the applications product group."  Dkt. No. 241-22, 55:2-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**REDACTED**

10. Assuming "at the time" in SUMF ¶ 4 refers to "March 2009" from SUMF ¶ 3, the cited evidence does not establish that timeline or confirm Mr. Abraham was "an experienced software designer."

5. Dropbox does not dispute that Ex. 19 to the Motion includes the quoted language.

6. The cited evidence does not establish a lack of factual dispute. Ex. 1 is purportedly an email from Mr. Caso that purports to attach an NDA. Dkt. 241-1 ¶ 3. Ex. 2 is purportedly the NDA attached to Ex. 1. *Id.* None of this establishes that, "[o]n March 3, 2009, Erik Caso began discussions with Matt Drew regarding potential consulting work."

7. The cited evidence does not establish a lack of factual dispute. First, Mr. Caso's declaration ¶ 7 is identical to SUMF ¶ 7 and cites nothing else in support. Second, Plaintiff searched for, but did not locate, an executed version of any NDA. Ex. 4, 2024-08-06 Email from A. Gasser. Third, there is no admissible evidence of Messrs. Drew and Caso having "met later that day on March 3, 2009, and had a more detailed conversation regarding his potential consulting work."

8. The cited evidence does not establish a lack of factual dispute. Mr. Caso's declaration ¶ 8 is nearly identical to Plaintiff's SUMF ¶ 8 and cites no other evidence in support.

9. The cited evidence does not establish a lack of factual dispute. First, there is no evidence that "Matt Drew began working for Entangled Media *after* March 4, 2009." Second, even if "Mr. Caso forwarded to Matt Drew an initial consulting agreement on March 4, 2009, and then a replacement agreement on March 6" (SUMF ¶ 9), Plaintiff never found any executed consulting agreement. Ex. 4, 2024-08-06 Email from A. Gasser. Third, Dropbox objects to Exs. 3-5 in SUMF ¶ 9 as not produced during fact discovery and, thus, inadmissible. Fed. R. Civ. P. 56(c)(1)(B)(2). Fourth, even if Exs. 3-5 were admissible, they do not establish the lack of a dispute. For example, Mr. Drew testified that Entangled Media brought him on around February or March 2009. Dkt. No. 241-23, Drew Tr., 17:5-15, 20:17-21:3, 21:18-22, 24:13-24, 24:13-16, 25:19-26:3.

10. Dropbox objects to Ex. 7 as not produced during fact discovery and, thus, inadmissible. *See* Fed. R. Civ. P. 56(c)(1)(B)(2).

11. The cited evidence does not establish the lack of a factual dispute. First, Plaintiff has not shown that Ex. 9 is the "Concept_Diagram.pdf" allegedly attached to Ex. 8. Second, Plaintiff does not cite any admissible evidence for the statements that "[t]he contents of this email

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**REDACTED**

and its attachment were created by Erik Caso." *See* SUMF ¶ 11. If Plaintiff seeks to rely on metadata, Dropbox objects to the versions of Exs. 8-9 with metadata as cited in SUMF ¶ 11 and Mr. Caso's declaration ¶ 8 because the metadata was not produced during fact discovery and, thus, inadmissible. Fed. R. Civ. P. 56(c)(1)(B)(2). Third, even if Exs. 8-9 were considered, they do not show SUMF ¶ 11 is undisputed. *See infra* at pp. 11-12. Fourth, only Mr. Caso's declaration is cited for the statement that Mr. Drew "had not seen this email and attachment prior to Mr. Caso transmitting it to him, and Matt Drew did not contribute in any way to the substance of the information reflected in the email and its attachment." There is no admissible evidence in support.

12. The cited evidence does not establish the lack of a factual dispute. Dropbox disputes that the left-most "Concept Diagram" and right-most "Concept Diagram" in SUMF ¶ 12 are "substantially similar, if not identical," as Plaintiff alleges. *See infra* at pp. 11-12.

13. The cited evidence does not establish the lack of a factual dispute. First, Plaintiff has not shown that Ex. 12 is the "Specification_&_Architecture_030909.doc" allegedly attached to Ex. 11. Second, Plaintiff does not cite any admissible evidence in support of the statements. If Plaintiff seeks to rely on metadata, Dropbox objects to the versions of Exs. 11-12 with metadata as cited in SUMF ¶ 13 and Mr. Caso's declaration ¶ 10 because it was not produced during fact discovery and, thus, inadmissible. Fed. R. Civ. P. 56(c)(1)(B)(2). Third, even if Exs. 11-12 were admissible, they do not establish the lack of a dispute. *See infra* at pp. 11-12. Fourth, only Mr. Caso's declaration is cited for the statement that Mr. Drew "had not seen this email and attachment prior to Mr. Caso transmitting it to him, and Matt Drew did not contribute in any way to the substance of the information reflected in the email and its attachment at Exs. 11 and 12 prior to Mr. Caso forwarding this information to Matt Drew." There is no admissible evidence in support.

14. First, this is not material to any claim or defense. Second, Dropbox does not dispute that the "Use-Case Scenario" in Ex. 12 includes the language cited in SUMF ¶ 14.

15. Dropbox does not dispute that Ex. 12 includes the cited language.

16. First, this is not material to any claim or defense. Second, Plaintiff's cited evidence does not establish the lack of a factual dispute. There is a genuine dispute about whether the so-called "March 9, 2009 Technical Specification overlaps with portions of the provisional Patent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**REDACTED**

Application." *See infra* at pp. 11-12.

17.    The cited evidence does not establish the lack of a factual dispute.  The citation to Ex. 18, 169:14-23 is to partial testimony from Mr. Caso, which states only the following: "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" It says nothing about what "primarily originated as Erik Caso's idea" or how "when he began working with Mike Abraham, Mr. Abraham became Mr. Caso's collaborator to, among other things, work through what they wanted Younity to do…."

18.    First, this is not material to any claim or defense.  Second, the cited evidence does not establish the lack of factual dispute and mischaracterizes Mr. Caso's testimony.  Plaintiff only cites Mr. Caso's testimony ███████████████████████████████████████████████████████████████████████████████████████. *Cf.* SUMF ¶ 18 (citing Ex. 18, 164:19-165:19, 169:14-23).

19.    This is not material to any claim or defense.

20.    This is not material to any claim or defense.

21.    First, this is not material to any claim or defense.  Second, Plaintiff's cited evidence does not establish the lack of a factual dispute.  For example, Plaintiff cites no evidence that, "[b]ecause of Entangled Media's lack of funding at the time, Erik Caso received only general legal advice on procedural aspects of filing the Provisional Application, rather than substantive legal advice on the content of the Provisional Application."  SUMF ¶ 21.

22.    First, this is not material to any claim or defense.  Second, the cited evidence does not establish the lack of a factual dispute.  For example, only Mr. Caso's declaration is cited for the proposition that "Mr. Caso terminated Matt Drew because the company was not using his code, and Mr. Drew had other obligations that prevented him from meaningfully contributing to the company's success."  There is no other evidence cited in support.  To the contrary, Mr. Drew testified that he was terminated because Mr. Caso said "the direction that he wanted to go with the product was different than the direction [Mr. Drew] was taking it" such that Mr. Caso was

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

REDACTED

"proceeding with other people." Dkt. No. 241-23, Drew Tr, 47:5-11. It was only after Mr. Drew stopped working with Entangled Media that he found another job with a company called Juju. *Id.*, 47:21-48:5. For the SUMF's reference to a "termination agreement," Plaintiff never located any executed version of any termination agreement. Ex. 4, 2024-08-06 Email from A. Gasser.

23. First, this is not material to any claim or defense. Second, the cited evidence does not establish the lack of a factual dispute. For example, Plaintiff cites no evidence that, "[b]etween the filing of the Provisional Application on May 5, 2009 and the filing of the non-provisional patent application on May 5, 2010 (leading to the '338 Patent), Entangled Media obtained capital funding and was able to retain patent counsel to advise on the preparation and prosecution of [the] Asserted Patents." Otherwise, Dropbox does not dispute that Messrs. Caso and Abraham filed a declaration with the USPTO stating their belief that they were the original, first and sole inventors.

24. The cited evidence does not establish the lack of a factual dispute about whether "Matt Drew's contributions were not used by Entangled Media, and similarly were not used or reflected in the subject-matter claimed in the Asserted Patents." For example, the only evidence that Plaintiff cites beyond Mr. Caso's declaration is Ex. 17, which is an email that states: "Please note that after termination him, we realized his work was useless and literally threw it all out and rewrote 100% of our code. There is not a single line of code, nor research, by Matt in anything we have now." Dkt. No. 241-18, EM_00238399. It says nothing about whether Mr. Drew's contributions "were not used or reflected in the subject-matter claimed in the Asserted Patents."

25. First, this is not material to any claim or defense. Second, the cited evidence does not establish the lack of a factual dispute. For example, Ex. 16 to Plaintiff's Motion is a document titled "Stock Purchase Agreement" and dated **July 14, 2010** by and between Entangled Media Corp. and Mr. Drew. Dkt. 241-17 (emphasis added). And, in that agreement, Mr. Drew agreed to transfer and assign to Entangled Media Corp. "all of his] right, title and interest in and to any Intellectual Property related to the LLC that [Mr. Drew] solely or jointly conceived or developed or reduced to practice, or caused to be conceived or developed or reduced to practice, during the period of time that Purchaser was a member of the LLC." *Id.*, EM_00114515. But there is no evidence that establishes when—if ever—Mr. Drew was "a member of the LLC." And given that this is the first

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

time Plaintiff has relied on this agreement for any theory of ownership in Mr. Drew's IP rights, no discovery on the factual issues related to contract interpretation has occurred. *See, e.g., Digit. Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1031 (N.D. Cal. 2005) ("When two equally plausible interpretations of the language of a contract may be made…parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory.").

26.    First, this is not material to any claim or defense.  Second, Plaintiff's cited evidence does not establish the lack of a factual dispute.  Rather, at the portion of Mr. Drew's testimony cited by Plaintiff, he merely testified that he does not "have an opinion sitting here today as to whether or not you meet the legal requirements to be a named inventor on any of the – on either of the two patents that we looked at today, the '260 and the '338 patent" or the provisional application.  Dkt. 241-23, 162:24-163:14 (objections omitted).  Third, the testimony is inadmissible at least because the question sought a legal conclusion. Fed. R. Civ. P. 56(c)(1)(B)(2); *U.S. v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) ("The lay witness may not…testify as to a legal conclusion").

27.    The first sentence in SUMF ¶ 27 is not supported by any evidence and, thus, does not establish the lack of a factual dispute.  For example, Plaintiff tells the Court to "*See generally* Ex. 21*,*" which is Mr. Drew's entire deposition.  Also the cited testimony does not support the proposition that "anytime Mr. Drew attributed ownership of an idea, such ownership was attributed to Erik Caso."  None of that testimony refers to "ownership of an idea" or to whom Mr. Drew "attributed" ownership.  But still, whether Mr. Drew "attributed ownership of an idea" to himself or others is not the standard for inventorship.  *See In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018). And Mr. Drew explained how he contributed to the idea in various ways.  Dkt. No. 241-23, 107:24-108:1, 108:8-12, 110:14-18, 112:6-11, 113:15-19, 114:4-7, 124:15-125:3, 127:18-128:3.

28.    The cited evidence does not establish the lack of a factual dispute.  Although Dropbox does not dispute that Mr. Drew confirmed he contributed to the idea of the claimed invention, Dropbox disputes whether Mr. Drew simply "confirmed this involved participate in discussions or working on coding for such topics," as Plaintiff alleges. SUMF ¶ 28.  For example, in the testimony cited by Plaintiff, Mr. Drew explained that the idea of creating the meta index of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

all data files was one of the first pieces of the software on which he worked. Dkt. 241-23, 108:14-21. Also in the cited testimony, Mr. Drew explained that "[d]iscussions and code" were his contributions to the idea of the client receiving the remote data indices and integrating the data into the local device's file system. *Id.*, 114:12-18.

29.     Dropbox does not dispute the factual proposition stated in SUMF ¶ 29.

30.     This is disputed for reasons stated for SUMF ¶¶ 11-13, which are incorporated here.

31.     The cited evidence does not establish the lack of a factual dispute. The cited testimony from Mr. Drew says nothing about he being "specifically directed or assigned by Mike Abraham and/or Erik Caso as to what code he should write." Dkt. 241-23, 62:3-11. Likewise, Mr. Caso's testimony pertained to employees generally rather than Mr. Drew. *Id.* Dkt. 241-20, 164:19-165:19. And Mr. Abraham's testimony, which is only part of an answer, suggests at best that "most[]" of Mr. Drew's work consisted of "work that was assigned to him" by Mr. Abraham. *Id.* (citing Dkt. 241-22, 126:10-12). Again, it says nothing about (and certainly does not preclude) Mr. Drew from contributing to the conception of the alleged invention.

32.     First, this is not material to any claim or defense. For example, it is cited nowhere in the Motion. Second, Plaintiff's cited evidence does not establish the lack of a factual dispute. Specifically, none of Exs. 25-26 support the proposition that there were "several discussions (including in person meetings, phone calls, and emails)" over which "Mr. Caso disclosed the Asserted Patents to Morgan Kyauk."

33.     First, this is not material to any claim or defense. For example, it is cited nowhere in the Motion. Second, Plaintiff's cited evidence does not establish the lack of a factual dispute. Specifically, there is no evidence to corroborate Mr. Caso's self-serving testimony that he "communicated with Mr. Kyauk during these conversations that Entangled Media is seeking a license from Dropbox to practice its technology." And Plaintiff cites no evidence in support of the proposition that "[t]he technical documents, as well as Mr. Caso's communications, identified that Dropbox's Smart Sync functionality would infringe Dropbox's patents." Moreover, Mr. Kyauk testified to the contrary. Ex. 5, Kyauk Tr., 117:3-12.

34.     First, this is not material to any claim or defense. For example, it is cited nowhere

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

in the Motion. Second, Plaintiff's cited evidence does not establish the lack of a factual dispute. Specifically, Dropbox disputes that "Entangled Media disclosed the Asserted Patents to Mr. Kyauk." There is evidence to the contrary. Ex. 5, Kyauk Tr., 110:11-16.

Further, as set forth below, there are several other facts that preclude summary judgment.

## III. THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT AND IMPROPER INVENTORSHIP.

The Court should deny Plaintiff's motion as to inequitable conduct and inventorship in view of Matthew Drew's contributions to the claimed subject matter. Several genuine factual disputes preclude resolving this highly factual inquiry in Plaintiff's favor as a matter of law.

### A. Inventorship

Plaintiff also seeks summary judgment on the inventorship issue—which, unlike inequitable conduct discussed *infra* at 15-19, does not require specific intent to deceive or materiality. According to Plaintiff, Mr. Drew was not a co-inventor of the Asserted Patents because (i) Mr. Drew's contributed to the "Implementations/Reductions to Practice of Certain Ideas Rather than Conception of Those Ideas," Mot. at 11, (ii) his contributions "Relate to Reducing to Practice Ideas Already Conceived by Erik Caso," *id.*, 13, (iii) his testimony lacks sufficient corroboration, *id.*, and (iv) Plaintiff can "Administratively Correct[]" any incorrect inventorship issue, *id.*, 14.

None warrant summary judgment in Plaintiff's favor on the inventorship issue. There are significant disputes of material facts—many of which require credibility determinations inappropriate for resolution at the summary judgment stage. And Plaintiff's remaining arguments stem from its misinterpretation of the law.

#### 1. There is a genuine dispute regarding whether Mr. Drew contributed to conception and reduction to practice of the alleged inventions.

Plaintiff asks the Court to conclude that, as a matter of law, Mr. Drew contributed to "Implementations/Reductions to Practice of Certain Ideas Rather than Conception of Those Ideas." Mot. at 11. On this record, the Court cannot do so.

A joint inventor must: (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art. *VerHoef*, 888 F.3d at 1366. That is, "[a]n alleged joint inventor must show that he contributed significantly to the conception—the definite and permanent idea of the invention—or reduction to practice of at least one claim." *Blue Gentian, LLC v. Tristar Prods., Inc.*, 70 F.4th 1351, 1358 (Fed. Cir. 2023).

Here, Plaintiff appears to admit that Mr. Drew significantly contributed to the claimed inventions' reduction to practice. Mot. at 11, 13. Thus, the only question is whether he also contributed to conception, and the evidence shows a genuine dispute on this front.

When working for Entangled Media in or around February 2009, Mr. Drew began building "a file directory that was remotely stored on Amazon that was accessible … from other places and then working on, you know, putting essentially shortcuts on your desktop that would launch that file from Amazon" or "AWS." Dkt. No. 241-23, Drew Tr., 25:19-26:17. The "file directory" allowed a user to "register" a file that it wants to "make available to all…devices" with the user's account in Amazon. *Id.*, 26:22-28:2. The idea was to make files locally stored on a first device also available on a second device. *Id.*, 28:3-6.

Mr. Drew also developed shortcuts for the desktop during that time. *Id.*, 29:6-9. He was working to make "an icon on your desktop act like an actual file" so that when a user double-clicks on it, the "actual file from wherever it's really stored" is fetched and then opened on the computer. *Id.*, 29:10-30:22. He also worked on using HTTP protocols to "essentially treat[] everything as a web client or web server to transfer the data" from another device. *Id.*, 31:13-33:9.

Then, on May 5, 2009, after Mr. Drew had started working with Mr. Caso, provisional application no. 61/175,489 (hereinafter, "the provisional") was filed. The provisional was titled "Method for Virtual Synchronization of Data Across Heterogenous Devices and Performing On-Demand Transfer of Remote Data Between Devices," and it identifies the applicants as Messrs. Caso, Abraham, and Drew. The provisional also identifies Messrs. Caso, Abraham, and Drew as the "Inventors." Dkt. No. 247-4, EM_00000700.

The provisional that identifies Mr. Drew as a co-inventor describes "a system consisting of web service and a software client so that data, such as documents and media files, can be

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

REDACTED

synchronized across a range of devices and be transferred on-demand between devices when requested." *Id.* According to the provisional, "[t]he client creates the virtual representation of all remote files using the same 'path' or storage location on the remote device, resulting in a common, single view of all data across all devices that is consistent with the formatting and structure of the local file system." *Id.* And the provisional describes "usage of the system" in steps, including but not limited to: "A user goes to a web site and creates a user account"; "The software client then installs itself and registers the local device's data with the web service"; "Creates a 'meta-index' of all the data files"; "Send the local device meta-index to the web service"; "Web service integrates all meta-indices into a database," and "[o]rganizes the indices by device"; "Web service then sends the meta-indices of other registered (remote) devices to the local device"; "The client then receives the remote device indices and integrates the data into the local device's file system"; and "Creates a visual representation of the remote files on the local device, as if the files were indeed local, allowing the user to operate on them as if they were local to the device." Dkt. No. 247-4, *701.

It did not surprise Mr. Drew that he was listed as an inventor on the provisional. Dkt. No. 241-23, Drew Tr., 60:9-19. He testified that he contributed to the idea of creating a meta index of all data files, which was one of the first pieces of software on which he worked. *Id.*, 107:24-108:21. Mr. Drew also contributed to the ideas of the local device meta index being sent to the web service (*id.*, 110:14-18), the web service integrating all meta indices into a database (*id.*, 112:6-11), the web service sending the meta indices of other registered remote devices to the local device (*id.*, 113:15-19), and the client receiving the remote device indices and integrating the data into the local device's file system (*id.*, 114:4-18). These contributions were not insignificant in quality when measured against at least claim 1 of each Asserted Patent, and he did more than explain well-known concepts or the current state of the art. Ex. 6, McDaniel Rpt. ¶¶ 1173-85; Dkt. No. 242-2, ¶¶ 119-35.

Mr. Drew added that he collaborated with Mr. Caso from at least February to May 2009 on the system described in the provisional. Dkt. No. 241-23, Drew Tr., 62:13-16. Indeed, although each of the Asserted Patents claims priority to the provisional, neither identifies Mr. Drew as an inventor, and he had not seen either before his deposition. *Id.*, 121:19-123:15, 125:23-127:8. Mr. Drew did not even know that the applications had been filed. *Id.*, 126:21-23. And he did not know

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

why he was not a named inventor. *Id.*, 122:21-25, 128:23-129:1.

At bottom, this inventorship determination is "fact specific." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997); *see Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347 (Fed. Cir. 2019). Indeed, joint inventorship is "one of the muddiest concepts in the muddy metaphysics of patent law." *VerHoef*, 888 F.3d at 1365. Thus, taking the evidence in the light most favorable to Dropbox, there is a genuine dispute, and summary judgment should not be granted. *Checkpoint Sys.*, 412 F.3d at 1334; *Fina Oil*, 123 F.3d at 1474.

### 2.      There is a genuine dispute whether Mr. Caso had "Already Conceived" of the ideas.

Plaintiff next contends that Mr. Caso "shared documents with Matt Drew detailing technical details of the invention that would ultimately be included within the [provisional]," and such documents confirm "Mr. Drew's activities relate to relate to ideas that were not even his—rather the ideas belonged to Mr. Caso." Mot. at 13.

But this is disputed, too. Although Mr. Caso now avers that "he created" documents sent to Mr. Drew and "that Mr. Drew provided no input into the creation of these documents," there is nothing but Mr. Caso's self-serving declaration in support. Indeed, Mr. Slifer—Plaintiff's expert on inventorship and inequitable conduct—admitted nothing in the "Concept_diagram.PDF" document permits concluding that Mr. Caso alone prepared it or that Mr. Drew did not contribute to the ideas therein. Ex. 7, Slifer Tr., 195:21-196:6, 197:15-198:3. He testified that nothing "exclude[s] Matt" as a contributor or "explain[s] where the concept originated." *Id.*, 198:1-5.

Similarly, for the "Acme Concept Diagram" document, Mr. Slifer admitted he has no basis for concluding it was attached to the email from Mr. Caso in March 2009 other than a representation from counsel. *Id.*, 200:1-17. He further admitted that nothing allows him to conclude that Mr. Caso alone prepared it or that Mr. Drew did not contribute to any ideas therein. *Id.*, 200:19-201:8. Likewise, for the document titled "Entangled Media Corp. MetaSync Technical Specification and Architectural Overview," Mr. Slifer admitted he has no basis to conclude that it was emailed from Mr. Caso to Mr. Drew in March 2009 other than a representation from counsel. *Id.*, 206:2-9. And there is nothing from which he could conclude that Mr. Caso alone prepared its contents or that Mr.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

REDACTED

Drew did not contribute to the ideas therein. *Id.*, 206:11-25.

And even if Mr. Caso created the documents, it does not preclude a reasonable factfinder from concluding that Mr. Drew *also* contributed to conception. Indeed, "joint inventors need not contribute to all aspects of a conception." *Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365, 1371 (Fed. Cir. 2020); 35 U.S.C. § 119(a) ("Inventors may apply for a patent jointly even though … (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.").

Here, the documents that Mr. Caso allegedly "shared" with Mr. Drew are not co-extensive with the provisional's subject matter or the inventions claimed in the Asserted Patents. Mot. at 13. Instead, Mr. Slifer testified that he did not compare the documents allegedly sent from Mr. Caso and the provisional to determine whether all concepts in the provisional were present in those documents. Ex. 7, Slifer Tr., 242:6-243:1, 243:6-244:5. Mr. Slifer also admitted that he is unaware of any inventor notebooks, reports, or source code showing that Messrs. Caso or Abraham alone contributed to the conception of the alleged inventions. *Id.*, 249:14-251:15.

Indeed, as Dropbox's expert on inventorship and inequitable conduct issues—Dr. Gonsalves—explained, the "concept diagram" allegedly provided by Mr. Caso "is just a small portion of, for example, what's in the provisional application." Ex. 8, Gonsalves Tr., 78:20-80:14. In reviewing other documents that Mr. Caso allegedly provided (and that Plaintiff cites), Dr. Gonsalves added that they could have been "written based on information that Mr. Drew communicated to Mr. Caso, or at least had worked on," and there is nothing therein to "indicate…that was exclusively the work of Mr. Caso and no other person." *Id.*, 93:21-94:10.

At bottom, there is a genuine dispute over whether "Mr. Drew's activities relate to ideas that were not even his—rather, the ideas belonged to Mr. Caso." Mot. at 13.

### 3.    There is sufficient corroborating evidence.

Faced with this evidence, Plaintiff suggests that Mr. Drew's testimony is not sufficiently corroborated. But, in so arguing, Plaintiff ignores the evidence and the legal standard to be applied.

Whether a co-inventor's testimony is sufficiently corroborated depends on a "rule of reason analysis," which requires an "evaluation of all pertinent evidence." *Price v. Symsek*, 988 F.2d 1187,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

1195 (Fed. Cir. 1993). "Corroborating evidence may take many forms." *Blue*, 70 F.4th at 1364. For example, "[d]ocumentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." *Sandt Tech., Inc. v. Rosco Metal & Plastics Corp.*, 264 F.3d 1344, 1350–51 (Fed. Cir. 2001). And "[c]ircumstantial evidence about the inventive process, alone, may also corroborate." *Id.* at 1351.

Viewing the evidence in the light most favorable to Dropbox, Mr. Drew's testimony is sufficiently corroborated. For example, the claims themselves—when compared against the subject matter of the provisional on which Mr. Drew is an inventor—sufficiently corroborates Mr. Drew's contributions to at least claim 1 of the Asserted Patents. Indeed, patent applications may be sufficient corroborating, documentary evidence. *Sandt Tech.*, 264 F.3d at 1351-52.

Here, the specific overlap in subject matter between the provisional (on which Mr. Drew is a named inventor) and the '338 Patent confirms Mr. Drew also should have been a named inventor for at least claim 1. Dkt. 242-2, ¶ 121. Likewise, the provisional confirms Mr. Drew should have been a named inventor for at least claim 1 of the '260 Patent, too. *Id.* ¶ 122. And consistent with this analysis, Mr. Drew testified that (i) the '338 Patent reflects the idea on which collaborated with Mr. Caso, and he contributed to claim 1 of the '338 Patent, Dkt. No. 241-23, Drew Tr. 124:7-125:3, and (ii) the '260 Patent reflects the idea on which he collaborated with Mr. Caso, and he contributed to claim 1 of the '260 Patent, *id.*, 127:12-128:3.

*Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), is illustrative. There, Mr. Choi claimed to be an omitted co-inventor, and the issue turned (at least in part) on sketches Dr. Yoon possessed. *Id.* at 1464. Yoon alleged that he "disclosed the invention to Choi, who then made the sketches to illustrate what he learned from Yoon." *Id.* The district court found sufficient corroboration, and the Federal Circuit affirmed. *Id.* at 1464-65. Specifically:

> The district count noted many circumstantial factors further corroborating Choi's conception claim: (1) Yoon's need for a person with expertise in electronics; (2) Choi's background in electronics, (3) Yoon's proposal that he and Choi should work together to develop new products, including safety trocars, (4) their informal business relationship, (5) the length of time they worked together, (6) the absence of any pay to Choi for his work, (7) the similarity between Choi's sketches and the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

patent figures, and (8) the letter in which Choi stated that he could no longer be a "member" of Yoon's business. Additionally, [defendant] introduced expert testimony that some of the sketches dealt with sophisticated concepts that only an electrical engineer or technician would understand. Consequently, the district court found that Choi was presenting ideas to Yoon as the sketches were drawn, rather than the other way around.

*Id.* at 1464.

Many of the *Ethicon* circumstantial factors exist here.  As to (1) need for a person with expertise and (2) the putative inventor's background, Mr. Caso hired Mr. Drew based on Mr. Drew's experience in software engineering because Mr. Caso had none.  Dkt. No. 241-23, Drew Tr. at 17:7-18:22, 24:13-24:24, 45:17-49:13; Ex. 3, Caso Tr. at 94:24-95:15, 96:3-5; Dkt. 241-22, Abraham Tr. at 62:23-63:10, 64:20-22.  Mr. Drew filled that experience gap.  Ex. 241-23, Drew Tr. at 135:14-137:10, 140:19-142:11; Ex. 9, Drew Ex. 2; Ex. 10, Drew Ex. 3.  As to (4) the informal nature of the business relationship and (6) the absence of any pay for the work, there is no evidence of any executed NDA, employment agreement, consulting agreement, or termination agreement, *Ethicon*, 135 F.3d at 1464, Mr. Drew was never paid any money for his work; instead, he received only "shares" in Entangled Media.  Dkt. No. 241-23 at 36:20-40:11.  Further still, the "idea" that Mr. Caso first shared was bare and did not reflect the full subject matter disclosed in the provisional or claimed in Asserted Patents.  *Id.* at 23:25-24:6 ("In essence it was the ability to have a document be 'live,' with air quotes, on any of your devices or computers that are connected to the internet.").

Thus, and summary judgment in Plaintiff's favor is improper.

### 4.    That administrative correction of inventorship is possible is irrelevant.

Finally, Plaintiff contends that summary judgment is proper because, even if Mr. Drew is an omitted inventor, "correction of an inventorship error in a patent application is freely allowed by statute."  Mot. at 14.  True, Plaintiff could attempt to invoke 35 U.S.C. § 256 and correct inventorship.  *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350-51 (Fed. Cir. 1998).  But it has not.  Thus, inventorship remains incorrect, and Plaintiff cites no authority suggesting that an available-but-not-exploited remedy justifies summary judgment on this issue in Plaintiff's favor.[1]

---

[1] Even if Plaintiff sought to correct inventorship under 35 U.S.C. § 256 and did so, Plaintiff would not be insulated from the inequitable conduct claim.  *See, e.g.*, *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1377 (Fed. Cir. 2020) (explaining that "§ 256 is a savings provision, functioning to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

## B.    Inequitable Conduct

Plaintiff seeks summary judgment on inequitable conduct because (i) the inventor declarations are not false, (ii) the inventor declarations were not material, and (iii) Dropbox fails to show specific intent to deceive.  Mot. at 16.  But each argument either misconstrues the inequitable conduct defense or overlooks key factual disputes that warrant denial.

### 1.    There is a genuine dispute whether the inventor declarations were false.

Plaintiff argues that summary judgment is proper because Mr. Drew "is correctly not named as an inventor in the Asserted Patents" where he merely "reduced to practice Mr. Caso and Mr. Abraham's ideas."  Mot. at 16.  But, for the reasons discussed *supra* at 8-11, Mr. Drew did more than simply reduce to practice someone else's ideas, particularly when viewed in the light most favorable to nonmovant Dropbox.  With inventorship genuinely disputed, summary judgment of no inequitable conduct is improper, and Plaintiff's motion should be denied.

### 2.    Messrs. Caso and Abraham's failure to name Mr. Drew as a co-inventor and their submission of false affidavits are material.

Plaintiff next argues that Dropbox cannot establish "but-for materiality" for inequitable conduct as a matter of law.  Mot. at 17.  According to Plaintiff, there is no evidence that the USPTO would not have allowed a claim but for the false inventor declarations, and there is no basis to conclude that the declarations are "per se material."  *Id.*  But Plaintiff misses the mark yet again.

Failing to disclose an inventor's contributions to the conception of the alleged invention and submitting false affidavits about inventorship are material.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) ("When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material."); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) ("[T]he intentional 'misrepresentations, omissions and half-truths to the PTO,' made as a 'persistent course' of conduct, are highly material."); *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738, Dkt. 585 at 8 (N.D. Cal. Nov. 8, 2021) ("[D]rawing all reasonable inferences in GoPro's favor, it is plausible that a reasonable examiner would consider the [inventorship] omission

prevent invalidation when correction is available," and "[i]t is the inequitable-conduct rules that provide a safety valve in the event of deceit").

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

15

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**REDACTED**

important to patentability."). Indeed, "[e]xaminers are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship" when the facts require. *In re VerHoef*, 888 F.3d 1362, 1368 (Fed. Cir. 2018); 35 U.S.C. §§ 102(f) ("A person shall be entitled to a patent unless ... he himself did not invent the subject matter sought to be patented."), 116 ("When an invention is made by two or more persons jointly, they shall apply for a patent jointly.").

Plaintiff attempts to cast aside *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000), because it "pre-dated *Therasense*, and was therefore grounded in a much broader definition of materiality, which only required that a 'reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" Mot. at 17. But Plaintiff overlooks that the *Therasense* court itself stated: "When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." 649 F.3d at 1292. And courts within this district have consistently recognized the materiality of inventorship post-*Therasense*.[2]

Plaintiff next cites a concurrence-in-part in *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1307 (Fed. Cir. 2012), for the proposition that Messrs. Caso and Abraham's declarations are "not the type of evidence held 'per se' material because they were not the basis for the grant of the Asserted Patents or essentially material to a basis for their grant." Mot. at 17. But Judge Newman did not address inventorship; she addressed the majority's ruling that filing a small entity statement "by affidavit renders the incorrect statement 'per se material'" when "[i]mmateriality of an affidavit that is not the basis of the patent grant was long ago established." 695 F.3d at 1306-1307.

---

[2] *See, e.g.*, *Imprenta Servs., Inc. v. Karll*, 2021 WL 4555333, at *3 (C.D. Cal. July 13, 2021) ("Inventorship, then, is but-for material."); *ChriMar Sys. Inc. v. Cisco Sys., Inc.*, 2019 WL 8333452, at *10 (N.D. Cal. Dec. 17, 2019) ("ChriMar argues that the failure to include a co-inventor is not material. The Court is not persuaded. 'As a critical requirement for obtaining a patent, inventorship is material.'" (citation omitted)); *BLM Prods., Ltd. v. Covves, LLC*, 2017 WL 8811269, at *4 (C.D. Cal. Oct. 26, 2017) ("Because inventorship is a 'critical requirement for obtaining a patent,' false statements about the inventorship of a patent are material."); *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 2730724, at *3 (N.D. Cal. June 16, 2014) (citing *PerSeptive*: "Inventorship is material. Examiners are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship. Accordingly, the Federal Circuit has found that 'falsehoods and omissions ... calculated to obfuscate the threshold issue of inventorship' are material and support a finding of inequitable conduct.").

Morgan, Lewis & Bockius LLP
Attorneys at Law
Silicon Valley

16

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**REDACTED**

And, even so, cases after that concurrence-in-part have consistently held that submitting false affidavits is material regardless of whether the Examiner expressly relied upon it.[3]  Indeed, Plaintiff overlooks the reason why: the duty of candor requires that an applicant be truthful in the representations it makes to the Patent Office.  37 C.F.R. § 1.56(a); *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006).  "A breach of this duty—including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information—coupled with an intent to deceive, constitutes inequitable conduct." *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1229 (Fed. Cir. 2007).

**3.      There is a genuine dispute of material fact regarding intent to deceive.**

Plaintiff also contends "Messrs. Caso and Abraham did not disclose Matt Drew as a co-inventor because they believed he was not a coinventor and not because there was any intent to deceive." Mot. at 17.  And Plaintiff cites Mr. Caso's declaration in support.  *Id.*  But the intent issue is genuinely disputed, and at least the following evidence shows the dispute:

1.      Messrs. Caso and Abraham knew of Mr. Drew's contributions to the alleged inventions.  For example, Mr. Abraham admitted that Mr. Drew "worked on the co – some of the code that we were developing." Dkt. 241-22, Abraham Tr. at 62:19-22.  Mr. Abraham also testified that, in May 2009 (the provisional's filing date), he and Mr. Drew were "[t]he only two people writing code at that time." *Id.* at 128:15-22. Even so, Mr. Abraham testified that he "wasn't party to th[e] decision" to name Mr. Drew as an inventor on the provisional. *Id.* at 127:13-23.

2.      Mr. Caso also would have been aware of Mr. Drew's contributions at least because (i) Mr. Drew was the first person that Mr. Caso hired (Dkt. No. 241-23 at 17:12-15, 24:13-24, 25:4-16); (ii) Mr. Drew collaborated with Mr. Caso beginning in February 2009 on the subject matter disclosed in the provisional (*id.* at 62:13-16); and (iii) Mr. Caso did not have the technical skills to develop software alone, thereby requiring Mr. Drew's help (*id.* at 17:7-18:22, 45:17-49:13; Ex. 3,

---

[3] *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1331 (Fed. Cir. 2020) (district court "did not abuse its discretion in concluding that the 'patently false' statement in the [declaration] was material and supported its intent to deceive determination"); *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1342 (Fed. Cir. 2013) ("It is undisputed that [the] original declaration was unmistakably false. Absent curing, this alone establishes materiality."); *Phigenix, Inc. v. Genentech Inc.*, 2016 WL 7985261, at *4 (N.D. Cal. Jan. 12, 2016) ("Defendant's allegations, describing the filing of an unmistakably false affidavit, describe material misconduct.").

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

17

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

REDACTED

Caso Tr. 94:24-95:15, 96:3-5; Dkt. 241-22 at 62:23-63:10, 64:20-22).

3.    Nevertheless, Mr. Caso testified that Mr. Drew was merely "█████████ ████████████████████████████████████████████████." Ex. 3, Caso Tr. at 164:20-22.  And, although Mr. Caso knowingly named Mr. Drew as an inventor on the provisional in May 2009, Mr. Caso dubiously testified in the context of this litigation that ████████ ████████████ *Id.* at 177:9-17.

4.    Plaintiff's actions to thwart additional discovery related to Mr. Drew's contributions further evidence intent to deceive. Plaintiff destroyed Mr. Drew's emails from the period when he collaborated with Mr. Caso. Ex. 11, Resp. to Second ESI Reqs.  And, as discussed Dropbox's motion to strike, Plaintiff withheld information during fact discovery that it now seeks to rely on. Meanwhile, Plaintiff only provided a bare response to the request for information on conception and reduction to practice.  Ex. 12, Resp. to Second Set of Interrogs.  And Plaintiff has not identified evidence of Messrs. Caso and Abraham alone conceiving of and reducing to practice the claimed inventions.  *See* Ex. 3, Caso Tr. at 170:25-182:22, 316:18-320:7, 320:9-321:17.

Moreover, Mr. Caso's declaration about what he allegedly believed does not resolve the dispute. *Unwired Planet, LLC v. Apple Inc.*, 2017 WL 1175379, at *3 (N.D. Cal. Feb. 14, 2017). Indeed, "if the inventors' self-reported state of mind were, as a rule, enough for summary judgment of no inequitable conduct, there would be little reason to allow factfinders to draw inferences from indirect evidence in the first place." *Id.*; *see Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1367 (Fed. Cir. 2003) ("[T]he district court's finding that the inventors had a good faith belief in the novelty of their invention is not incompatible with a finding of deceptive intent."). And, even if the Court were "skeptical" on the intent issue, that question is to be resolved at trial.[4]

---

[4] *See, e.g.*, *Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, 548 F. Supp. 3d 916, 933–34 (N.D. Cal. 2021) ("The problem with UCL's position is that it essentially says that the Court must credit Dr. Gong with being honest in his assessment that [Redacted] As reasonable inferences must be drawn in the nonmoving party's favor, the Court cannot, for purposes of this motion, so credit Dr. Gong."); *see Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334-37 (Fed. Cir. 2012) (affirming inequitable conduct based in part on credibility of patentee's good faith belief); *Neev v. Alcon LenSx, Inc.*, 2017 WL 6886670, at *26 (C.D. Cal. June 30, 2017) (finding genuine dispute of material fact regarding deceptive intent precluded summary judgment of no inequitable conduct, where, *inter alia*, the factfinder "is best suited to hear testimony and make the requisite credibility determinations"); *Interwoven, Inc. v. Vertical Comp. Sys.*, 2013 WL 75770, at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

Plaintiff cites *Astrazeneca Pharms. LP v. Teva Pharmaceuticals USA, Inc.*, 583 F.3d 766, 776 (Fed. Cir. 2009), for the proposition that it is "legally impossible to find specific intent to deceive" where "making a drafting mistake" is "not sufficient to meet the intent requirement." Mot. at 18. But this again asks the Court to assume the decision to name Mr. Drew as an inventor on the provisional but remove him from the Asserted Patents was "a drafting mistake." *Id.* And it asks the Court to do so when there is evidence showing otherwise. *See supra* at 17-18. Indeed, Messrs. Caso and Abraham made a conscious choice to include Mr. Drew as an inventor on the provisional and a conscious choice to remove him for the Asserted Patents—a choice that cannot be discounted as mere gross negligence. *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1099 (Fed. Cir. 2024).

The reason Messrs. Caso and Abraham made that choice—whether intentionally to deceive the PTO or negligently, as Plaintiff contends—is a credibility determination for the fact finder. *See Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1379 (Fed. Cir. 2010), *overruled on other grounds by Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) ("As findings of intent so often turn on a district court's credibility determinations, it is essential that the court provide detailed factual findings with respect to crucial facts—such as whether Fuller and/or Hutton read the entire brochure; whether, knowing the information to be material, they deliberately withheld it; or whether they deliberately refused to read the entire brochure in order to avoid learning damaging information." (internal citation omitted)).

For these reasons, Plaintiff's motion for summary judgment should be denied.

## IV. THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT OF NO INVALIDITY BASED ON FOLDERSHARE.

Plaintiff moves for summary judgment of no invalidity over the FolderShare reference because: (1) Dropbox allegedly fails to show a motivation to combine FolderShare documents; and (2) Dropbox allegedly fails to provide evidence of a reasonable expectation of success. Mot. at 18-21. Neither argument warrants granting summary judgment in Plaintiff's favor on this issue.

### A. Dropbox need not provide a motivation to combine documents that evidence a single prior art system.

Dropbox's technical expert, Dr. McDaniel, identifies FolderShare as a system that, when

---

\*4 (N.D. Cal. Jan. 4, 2013) ("[Inventor] intent remains a fact that must be found by the trier of fact. It is enough to defeat summary judgment that a question remains as to the inventor's credibility.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

REDACTED

combined with certain, other references, renders the asserted claims obvious under 35 U.S.C. § 103. Ex. 6, McDaniel at p. 46 ((i) FolderShare plus Havewala, and (ii) FolderShare plus Havewala and Sekar for the '260 Patent, and (i) Shapell plus FolderShare and Yeo, (ii) Shapell plus FolderShare, Yeo, and Havewala, (iii) FolderShare plus Yeo, and (iv) FolderShare plus Yeo and Havewala for the '338 Patent). Each ground was timely disclosed. Dkt. 183-1, at 9, 24.

As Dr. McDaniel explains, FolderShare was a file synchronization and remote access product for accessing information across multiple devices. Ex. 6, McDaniel ¶ 167. Dr. McDaniel acknowledged having relied on "different publications that demonstrate the capabilities and features of the FolderShare product as it existed before the priority date," and he explained that the publications "are consistent with respect to their descriptions of FolderShare and the way in which it operates." *Id.* ¶ 172. He also relied upon publications about the system's functionality. *Id.*

As Dr. McDaniel explains, a PHOSITA would have recognized that the documents describe the FolderShare system and describe different aspects of the system that a PHOSITA would have been motivated to seek out, rely on, and combine. *Id.* In Dr. McDaniel's view, "because these describe the same system, a PHOSITA would have had a reasonable expectation of success in combining the disclosures," and "the implementation of the FolderShare system would be within the skill of a PHOSITA and the existence of the viable and publicly available product." *Id.*

Plaintiff's expert, Dr. Edwards, does not dispute that the FolderShare system is prior art. Ex. 13, Edwards Rebuttal Rpt. at ¶¶ 82, 186. Nor does he dispute that the documents on which Dr. McDaniel relies accurately describe the system's features and functionality at the relevant time. *Id.* Instead, Dr. Edwards only contends that FolderShare—as represented by the documents at issue—do not disclose certain elements of the Asserted Claims and that a PHOSITA would not be motivated to combine the system with other prior art. *Id.* at ¶¶ 133, 241, 377, 383, 458, 462.

Nevertheless, Plaintiff argues that summary judgment of no invalidity is appropriate because Dropbox relies on "eighteen separate URLs" as "one single unifying reference" without showing "any modification to combine any of the different embodiments and disclosures across those eighteen publications from the four years FolderShare existed." Mot. at 18-19. However, this argument misses the mark. The so-called "eighteen separate URLs" show the features and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

functionality of a single system. And it is appropriate to use multiple documents in this manner.[5]

Also contrary to Plaintiff's suggestion (at 18-19), documents with different dates can describe the same system. For example, in *Good Technology Corp. v. MobileIron, Inc.*, the defendant's expert relied on "technical documents and marketing materials that describe Microsoft SMS 2003 and its add-on [pack]" to conclude that a system was anticipating prior art. 2015 WL 4197554, at *6. The plaintiff argued "the documents contain different copyright and publication dates…making it impossible for them to describe a single system." *Id.* But the court disagreed, holding this was "a question of fact to be resolved by the jury." *Id.; Sonoscan*, 936 F.2d at 1264.

Plaintiff's cited cases are inapplicable. Mot. at 19. None of *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327 (Fed. Cir. 2016), *In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000), or *In re Stephen Co.*, 868 F.3d 1342, 1346 n.1 (Fed. Cir. 2017), involved a defendant relying on various documents describing a single system's features and functionality. Instead, *Warsaw* addressed the of the PTAB's conclusion that a PHOSITA would have been motivated to combine various independent references. And *Kotzab* and *Stephen* involved a single-reference obviousness theory.[6]

Regardless, if there is any question whether the documents describe a single system, it is a fact question for the jury, *Good Tech.*, 2015 WL 4197554, at *6, and the motion should be denied.

---

[5] *See Zenith Elecs. Corp. v. PDICommc'n Sys., Inc.*, 522 F.3d 1348, 1358 (Fed. Cir. 2008) (affirming summary judgment of invalidity based on prior art system proven using multiple documents); *S.A.R.L. v. LG Elecs., Inc.*, 2022 WL 22401011, at *9 (D. Del. Apr. 8, 2022) ("Multiple references can be used 'to demonstrate and support how [a prior art system] functioned at the time, not as distinct references.'" (citation omitted)); *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 2020 WL 3047989, at *6. (D. Del. June 8, 2020) ("It was permissible for IAC to use several documents as evidence about how a single prior art system worked."); *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 509 (D. Del. 2016) ("experts are routinely permitted to rely on documentary evidence which purports to describe systems that were placed in public use"); *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 861065, at *2 (N.D. Cal. Mar. 5, 2016) (defendant is "simply trying to use the [multiple] proffered product manuals to describe a single prior art system"); *Good Tech. Corp. v. Mobileiron, Inc.*, 2015 WL 4197554, at *5 (N.D. Cal. July 10, 2015) ("Gray and Sacerdoti offer the collection of documents not as 'printed publications' but rather as systems that were previously used, which can be established with multiple pieces of evidence. And as to each system, the court agrees that *Kyocera* does not apply.").

[6] Under that theory, "a single prior art reference can render a claim obvious." *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000). And if a defendant relies on that theory and one or more aspects of the reference must be modified to arrive at the claimed invention, then "there must be a showing of a suggestion or motivation to modify the teachings of that reference." *In re Kotzab*, 217 F.3d at 1370. But Dropbox does not contend that FolderShare *alone* renders the Asserted Claims obvious. Instead, it is a combination of FolderShare with certain, other prior art. *See* Dkt. 183-1, Invalidity Contentions at 9, 24; Ex. 6, McDaniel at p. 46.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**B.      Dropbox need not evidence a reasonable expectation of success in combining documents that describe a single prior art product.**

Plaintiff argues that "Dropbox provides no evidence of 'reasonable expectation of success' to support the FolderShare combinations."  Mot. at 20 (capitalization altered).  But there is ample evidence from which a reasonable factfinder could conclude that a POSITA would have been motivated to combine the references with a reasonable expectation of success.

*FolderShare with Sekar and/or Havewala* (Ex. 6, McDaniel ¶¶ 602-605).  Dr. McDaniel incorporates by reference his opinions on removal of file extensions as discussed for other proposed combinations.  *Id.* ¶ 602.  As he explained, "a PHOSITA would have understood that changing file extensions, including removing special file extensions, could be performed using simple and well-known techniques employed in file system naming implementations and that this change would have resulted in a working system."  *Id.* ¶ 788.  This is important to the motivation to combine FolderShare with Sekar/Havewala because a PHOSITA would have been motivated to combine FolderShare with Havewala to remove the .p2p file extensions.  *Id.* ¶ 602.

*FolderShare with Yeo* (*id.* ¶¶ 1015-1023). Dr. McDaniel explains that "the FolderShare system already includes at least one server for managing computers, providing web service, receiving user information, and accepting device registration," and "a PHOSITA would have been motivated to further expand the function of such existing server to incorporate functions from Yeo's "Global Index Server" to provide central management of metadata for all shared files."  *Id.* ¶ 1021. In Dr. McDaniel's opinion, to expand that function would "simply require modifying the FolderShare system such that metadata updates are sent to the server first, and subsequently sent to other nodes," which "only involves well-known knowledge and a PHOSITA would have had a reasonable expectation of success."  *Id.* ¶ 1022.  And Dr. McDaniel explained that "a PHOSITA would have been motivated to remove FolderShare's .p2p extensions in view of Yeo's disclosure that it is desirable to maintain transparency between files to users and computers."  *Id.* ¶ 1023.  He also explained that "[a] PHOSITA would have had a reasonable expectation of success at least because the removal of the additional file extension of .p2p as it is shown to the user is not required to the functionality of FolderShare and a PHOSITA would readily recognize that any association

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

REDACTED

that is achieved through the .p2p extension could be achieved through other means, such as metadata and such a modification would be well within the abilities of a PHOSITA." *Id.*

***FolderShare with Yeo and Havewala*** (*id.* ¶¶ 1024-1026).  Dr. McDaniel opines that "[a] PHOSITA would have had a reasonable expectation of success to implement Havewala's disclosures in combination with FolderShare-Yeo at least because such a combination would not require further modification from the combination proposed above such that the removal of the .p2p additional file extension would have been well within the skill of a PHOSITA." *Id.* ¶ 1026. Dr. McDaniel also incorporated by reference his opinions about modifying Aboulhosn in view of Havewala, explaining that "such transparency and identical file extensions would have similarly motivated a PHOSITA to incorporate Havewala's virtual file features, such as removing FolderShare's '.p2p' special virtual file extensions and through making virtual and local files 'transparent' to the local file system, into FolderShare's system." *Id.* ¶ 1025.  As explained for the Aboulhosn-Havewala combination, which Dr. McDaniel incorporated by reference, "a PHOSITA would have understood that changing file extensions, including removing special file extensions, could be performed using simple and well-known techniques employed in file system naming implementations and that this change would have resulted in a working system." *Id.* ¶ 788.

Despite Plaintiff's suggestion, this goes well beyond the "conclusory allegations" in *Asetek Danmark A/S v. CooIT Sys., Inc.*  Mot. at 20.  There, the expert "merely describe[d] the problem each of the prior art attempted to solve and that it was possible to combine them," and the court explained that "knowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references."  Ex. 14, Dkt. 504 at 12 (N.D. Cal. Sept. 11, 2022). The court stated that a "'broad characterization' of the prior art in describing similar issues in the field…is insufficient to support obviousness." *Id.*  Instead, as Dropbox did here, a defendant "must provide a 'meaningful explanation for why [a POSITA] would be motivated to combine [the particular] references at the time of this invention." *Id.* (citation omitted).

For these reasons, the Court should deny Plaintiff's motion for summary judgment.

**V.    THE COURT SHOULD DENY PLAINTIFF'S MOTION AS TO DROPBOX'S TENTH, ELEVENTH, AND SIXTEENTH AFFIRMATIVE DEFENSES.**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**A.      Tenth Affirmative Defense: Limitations on Damages (35 U.S.C. § 286)**

Plaintiff now states that it "is not seeking damages beyond six years of filing suit." Mot. at 21. Based on this representation, to which it should be held, the tenth affirmative defense is mooted, and Dropbox need not pursue that defense further.

**B.      Eleventh Affirmative Defense: Failure to Provide Notice (35 U.S.C. § 287)**

Dropbox does not intend to further pursue this affirmative defense.

**C.      Sixteenth Affirmative Defense: Lack of Standing**

Plaintiff also argues that "Dropbox has provided no facts whatsoever supporting" its affirmative defense based on Plaintiff's lack of standing. Mot. at 22. But, as explained in Dropbox's accompanying motion under Rule 56(d), Plaintiff's motion is premature. The Court should defer ruling on it until these issues can be decided on a full record.

Dropbox has sought certain litigation funding-related documents from Plaintiff for months, without success. And, on April 8, the Court granted in part Dropbox's motion to compel production of those documents. *See* Dkt. 254. The Court ordered Plaintiff to produce the Security Agreement with certain redactions and entry no. 29 from its privilege log by April 11. *Id.* If these productions do not resolve the dispute, Plaintiff must amend its privilege log by April 28. *Id.*

Plaintiff's suggestion that the Court has resolved the issue is a half-truth at best. Plaintiff states that "the Court has already reviewed the funding documents *in camera* and held that 'Chisum does not appear to have any present right, title, or interest in the asserted patents that would implicate or undermine Entangled Media's standing to sue.'" Mot. at 22. But the Court reviewed only one document *in camera*: the Patent Security Agreement ("PSA"). Dkt. 132 at 1. It did not review several other documents that Dropbox has requested but that Plaintiff continues to withhold. *See* Dkt. 125 at 2; Dkt. 202 at 9-22; Dkt. 254. Likewise, the Court did <u>not</u> "hold" anything as to Plaintiff's or Chisum's rights.[7] Instead, after *in camera* review of the PSA, the Court indicated that "Chisum *does not appear to* have any present right, title, or interest in the asserted patents that would implicate or undermine Entangled Media's standing to sue." Dkt. 132 at 1 (emphasis added).

---

[7] Plaintiff overlooks that a "holding" consists of propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment. *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1035 (S.D. Cal. 2018).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

Thus, if the Court does not deny Plaintiff's motion outright, the Court should defer consideration of Plaintiff's motion based on Dropbox's concurrently filed motion under Rule 56(d).

## VI. THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT OF PATENT ELIGIBILITY UNDER § 101.

The sole basis for Plaintiff's motion on patent eligibility under Section 101 is its mistaken belief that "the Court has resolved patent eligibility" by denying Dropbox's 12(b)(6) motion to dismiss. Mot. at 22-23. But that is no basis at all.

For the Rule 12(b)(6) motion, there was no final decision in Plaintiff's favor on the issue.[8] Instead, the Court determined that Plaintiff's arguments on Step One of the analysis were "sufficient to preclude a finding of Section 101 ineligibility at this time." Dkt. 87 at 10. At Step Two, the Court concluded that, "[d]rawing all inferences in favor of [Plaintiff], the claims of both asserted patents plausibly recite a technical solution and improvement upon prior art amounting to an inventive concept." *Id.* at 13. The Court also determined that Plaintiff's complaint contained plausible allegations for Step Two that precluded dismissal. *Id.*

Once stripped of its faulty premise that "the Court has resolved patent eligibility," Mot. at 22-23, Plaintiff has no basis for requesting summary judgment. Tellingly, Plaintiff does not identify any facts that are allegedly undisputed. *Id.* at 3-9, 22-23. Thus, Plaintiff's motion should be denied.

## VII. CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for summary judgment as to the seven total issues raised: (1) inequitable conduct and inventorship; (2) invalidity based on FolderShare; (3) the tenth (§ 286), eleventh (§ 287), and sixteenth (standing) affirmative defenses; and (4) patent eligibility under 35 U.S.C. § 101. At a minimum, the Court should defer consideration of the motion on Dropbox's sixteenth affirmative defense for the reasons stated in the concurrently filed Rule 56(d) motion.

---

[8] Indeed, the Court could have—but did not—convert the Rule 12(b)(6) motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

**REDACTED**

Dated:  April 10, 2025

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By  /s/ *Michael J. Lyons*
Michael J. Lyons, Bar No. 202284
michael.lyons@morganlewis.com
Austin L. Zuck, Bar No. 318434
austin.zuck@morganlewis.com
Katerina Hora Jacobson, Bar No. 342384
katerina.horajacobson@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
Tel:      +1.650.843.4000
Fax:      +1.650.843.4001

Nicholas A. Restauri (*pro hac vice*)
nicholas.restauri@morganlewis.com
Karon N. Fowler, Bar No. 308145
karon.fowler@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606-1511
Tel:      +1.312.324.1000
Fax:      +1.312.324.1001

*Attorneys for Defendant Dropbox, Inc.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP

REDACTED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 10, 2025, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case via electronic mail per the Local Rules.

/s/ *Michael J. Lyons*
Michael J. Lyons

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DROPBOX'S OPP. TO
PL.'S MOT. SUMMARY J.
Case No. 5:23-cv-03264-PCP