John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>DROPBOX, INC.,<br><br>                    Defendant. | C.A. No. 5:23-cv-03264-PCP-VKD<br><br>**PLAINTIFF ENTANGLED MEDIA, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. P. Casey Pitts<br>Courtroom: 8 – 4th Floor<br>Hearing Date: May 15, 2025<br>Hearing Time: 9:00 a.m. |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN ENTANGLED MEDIA'S FAVOR ON DROPBOX'S INEQUITABLE CONDUCT AND IMPROPER INVENTORSHIP CLAIMS AND DEFENSES .................................................... 2

    A.    Dropbox Incorrectly Argues that Conception is Not Necessary for Inventorship. .............. 2

    B.    Dropbox Does Not Identify Evidence of Inventive Contribution, and Mr. Drew's Testimony Confirms His Alleged Contributions are Limited to Reduction to Practice, and Not Conception .......................................................................................... 3

    C.    Additional Documents Produced by and Originating from Mr. Caso confirm that Mr. Drew Merely Reduced to Practice Ideas That Were Not His. ..................................... 6

    D.    Alleged Corroboration Does Not Assist Dropbox's Co-Inventor Assertions. ..................... 7

    E.    Dropbox Has Offered No Evidence To Create a Genuine Issues of Material Fact Regarding Inequitable Conduct—Particularly Regarding the Intent to Deceive Prong .................................................................................................................................... 8

III.  THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY OVER THE FOLDERSHARE REFERENCE ............................................... 10

IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT OF PATENT ELIGIBILTY UNDER 35 U.S.C. § 101. ............................................................................... 12

V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN ENTANGLED MEDIA'S FAVOR ON DROPBOX'S TENTH, ELEVENTH, AND SIXTEENTH AFFIRMATIVE DEFENSES .......................................................................................... 14

VI.   CONCLUSION ................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Cases**

*Altera Corp. v. PACT XPP Techs., AG*,
No. 14-cv-2868, 2015 WL 3830982 (N.D. Cal. June 19, 2015) ................................................ 12

*Blue Gentian, LLC v. Tristar Prods, Inc.*,
70 F.4th 1351 (Fed. Cir. 2023) ................................................ 2

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ................................................ 13

*Ethicon, Inc. v. United States Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998) ................................................ 2, 3, 4, 8

*Fiers v. Revel*,
984 F.2d 1164 (Fed. Cir. 1993) ................................................ 3

*Fina Oil & Chem. Co. v. Ewen*,
123 F.3d 1466 (Fed. Cir. 1997) ................................................ 2

*Good Technology Corp. v. MobileIron, Inc.*,
5:12–cv–05826–PSG, 2015 WL 4197554 (N.D. Cal. July 10, 2015) ................................................ 11

*Graham Packaging Co. v. Ring Container Techs.*, LLC,
No. 3:23-cv-110-RGJ-RSE, 2025 WL 978220 (W.D. Ky. March 31, 2025) ................................................ 12

*In re VerHoef*,
888 F.3d 1362 (Fed. Cir 2018) ................................................ 2

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
863 F.2d 867 (Fed.Cir.1988) ................................................ 9

*Kove IO, Inc. v. Amazon Web Services*,
Case No. 18 C 8175, 2024 WL 450028  (N.D. Ill. Feb. 6, 2024) ................................................ 13

*LoganTree LP v. Fossil Grp., Inc.*,
No. 1:21-CV-00385-JDW, 2024 WL 5333951 (D. Del. Mar. 20, 2024) ................................................ 13

*Marble Voip Partners LLC v. Zoom Video Comms.*,
Case No. 23-cv-03619-JSW, 2024 WL 86859 (N.D. Cal. Jan. 8, 2024) ................................................ 13

*Pannu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998) ................................................ 2, 3

*Radware, Ltd. v. F5 Networks, Inc.*,
2016 WL 861065 (N.D. Cal. Mar. 5, 2016) ................................................ 12

*S.A.R.L. v. LG Elecs., Inc.*,
2022 WL 22401011 (D. Del. Apr. 8, 2022) ................................................ 11, 12

*Sandt Tech., Inc. v. Rosco Metal & Plastics Corp.*,
264 F.3d 1344 (Fed. Cir. 2001) ................................................ 7

*Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC,*
  No. 3:19-CV-01470, 2022 WL 4349829 (M.D. Pa. Sept. 19, 2022) ............................................. 13

*Therasense, Inc. v. Becton, Dickinson & Co.,*
  649 F.3d 1276 (Fed. Cir. 2011) ......................................................................................... 9, 10

*Wilco Marsh Buggies and Draglines, Inc. v. Weeks Marine, Inc.,*
  No. 20-3135, 2023 WL 4624744 (E.D. La. July 19, 2023)............................................. 12

*Zenith Elecs. Corp. v. PDICommc'n Sys., Inc.,*
  522 F.3d 1348 (Fed. Cir. 2008) ......................................................................................... 11

**Statutes**

35 U.S.C. § 101 ............................................................................................................ 12, 13, 14

35 U.S.C. § 286............................................................................................................................. 14

35 U.S.C. § 287............................................................................................................................. 14

## I.    INTRODUCTION

Dropbox's opposition to Entangled Media's motion for summary judgment of no improper inventorship and no inequitable conduct first argues incorrectly that conception is not necessary for inventorship. Dkt. No. 265-3 ("Opp.") at 9, 11. It is. Dropbox then works hard to create the appearance of factual disputes. But, as discussed in Entangled Media's Motion (Dkt. No. 241, "Mot.") and further below, the March 7 and March 9 technical documents sent by Mr. Caso contains drawings that corroborate the inventions were conceived by Mr. Caso, not Mr. Drew, as Mr. Caso sent these documents to Mr. Drew around the same time Mr. Drew began working at the company and before any alleged contribution by Mr. Drew. This negates Dropbox's inventorship and inequitable conduct counterclaims. Further, Dropbox's efforts to identify alleged corroboration of Mr. Drew's alleged conception ring hollow, since there is no conception by Mr. Drew to corroborate.

Dropbox also tells a tale of conspiracy between the inventors, Entangled Media's prosecution counsel, and its litigation counsel to take Mr. Drew's ideas, conceal his alleged contribution, deceive the Patent Office, and otherwise engaged in "egregious misconduct." But Dropbox presents no evidence to support such a tale. It presents just attorney argument to create a "genuine dispute" of material fact when none exists.  All the evidence points to no intent to deceive by the true inventors, and puts Dropbox's conspiracy theories to rest. As such, there is no genuine issue of material fact and the Court should grant summary judgment in Entangled Media's favor on the inventorship and inequitable conduct claims and defenses.

Regarding the other bases that Entangled Media moves on, the parties disagree on the law with respect to the FolderShare reference and there are no facts in dispute. Further, this Court has already ruled that the Asserted Patents are not directed to an abstract idea as a matter of law under *Alice* Step One, and, therefore, the law of the case doctrine applies and should bar this Court from reconsidering the subject matter eligibility of the patents. Dropbox does not offer any evidence preventing summary judgment for the other raised defenses.

## II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN ENTANGLED MEDIA'S FAVOR ON DROPBOX'S INEQUITABLE CONDUCT AND IMPROPER INVENTORSHIP CLAIMS AND DEFENSES

### A.    Dropbox Incorrectly Argues that Conception is Not Necessary for Inventorship.

As a preliminary matter, the parties have relied on differing and seemingly conflicting Federal Circuit authority to define the requirements of a joint inventor. Entangled Media relies on Federal Circuit authority that requires a potential joint inventor to contribute to the conception of the claimed invention. *See, e.g., Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("Because '[c]onception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention . . . Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue.")

Dropbox muddies this otherwise simple requirement by suggesting that conception is not necessary for joint inventorship, and that instead, merely reducing to practice can be sufficient. Opp. at 8-9. For example, Dropbox cites to *In re VerHoef*, 888 F.3d 1362 (Fed. Cir 2018), stating that one of the factors determining joint inventorship is whether the potential inventor did "contribute in some significant manner to the conception <u>or</u> reduction to practice of the invention …." Opp. at 8 (emphasis added). In *VerHoef*, the Federal Circuit affirmed the Patent Board's ruling that VerHoef did not solely invent the claimed subject matter. *VerHoef*, 888 F.3d at 1363. The Federal Circuit ultimately decided inventorship, however, based on the joint inventor's contribution to the conception of the asserted invention. *Id.* at 1366-67 ("Because these facts establish that Lamb shared in the *conception* of the claimed invention, we conclude that she is a joint inventor with VerHoef.") (emphasis added).

Dropbox further relies on *Blue Gentian, LLC v. Tristar Prods, Inc.*, 70 F.4th 1351, 1358 (Fed. Cir. 2023), another Federal Circuit decision that similarly used the "or" condition, even though its own decision again turned solely on conception. *Id.* at 1359 ("The district court properly determined that the three key elements were a significant contribution to the *conception* of at least one claim of each asserted patent") (emphasis added). *Blue Gentian* ultimately relied upon language originating from *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1349 (Fed. Cir. 1998), the same Federal Circuit panel decision upon which the *VerHoef* court relied on. The *Pannu* court cited two cases in support of its inventorship requirements: *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) and

*Ethicon,* 135 F.3d at 1460. Neither of these cases supports the proposition that "reduction to practice" alone is sufficient to be considered an inventor. In *Fina*, the Federal Circuit confirmed that "[c]onception is the touchstone to determining inventorship." *Fina*, 123 F.3d at 1473. Likewise in *Ethicon*, the court held that conception is the key issue and "one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Ethicon*, 135 F.3d at 1460. Thus, one "who simply reduced the inventor's idea to practice is not necessarily a joint inventor." *Id.*[1]

The proper legal standard for joint inventorship, therefore, as set forth in Entangled Media's Motion, is whether Dropbox can show that Mr. Drew conceived, not reduced to practice, at least one significant claimed portion of the Asserted Patents. *See Ethicon,* 135 F.3d at 1460.

**B.      Dropbox Does Not Identify Evidence of Inventive Contribution, and Mr. Drew's Testimony Confirms His Alleged Contributions are Limited to Reduction to Practice, and Not Conception**

Dropbox's Opposition focuses on certain identified work that Mr. Drew testified he performed while working at Entangled Media. *See generally* Opp. at 9-10. Even if accepted as true, however, his testimony does not reasonably support an inference that Mr. Drew *conceived* anything relevant to the subject-matter of the Asserted Patents. In other words, even if the Court believes that Mr. Drew performed the work he says he did, his testimony is completely silent as to whether any of this work was based on his own ideas.

More specifically, as to any alleged conception, Dropbox's opposition relies on the following specific description of Mr. Drew's work, across roughly six pages of his deposition transcript and summarized in the following two paragraphs as follows:

> When working for Entangled Media in or around February 2009, Mr. Drew began building "a file directory that was remotely stored on Amazon that was accessible … from other places and then working on, you know, putting essentially shortcuts on your desktop

---

[1] The U.S. Patent Office has noted the conflict caused by the *Pannu* factors and has indicated why the Federal Circuit's *Pannu* factors should not change the requirement for conception of the invention: "While these [*Pannu*] factors do refer to reduction to practice, applicants are reminded that the main inquiry is who conceived of the invention. Reduction to practice, *per se*, is generally irrelevant to this inquiry. MPEP 2109 II (*citing Fiers v. Revel*, 984 F.2d 1164, 1168 (Fed. Cir. 1993)) . . . The *Pannu* factors are not a basis to conclude that reduction to practice, alone, is sufficient to demonstrate inventorship." Ex. 34, Inventorship Guidance for AI-assisted Inventions, 89 Fed. Reg. 10043, 10047 (note 32) (February 13, 2024).

that would launch that file from Amazon" or "AWS." Dkt. No. 241-23, Drew Tr., 25:19-26:17. The "file directory" allowed a user to "register" a file that it wants to "make available to all…devices" with the user's account in Amazon. *Id.*, 26:22-28:2. The idea was to make files locally stored on a first device also available on a second device. *Id.*, 28:3-6.

Mr. Drew also developed shortcuts for the desktop during that time. *Id.*, 29:6-9. He was working to make "an icon on your desktop act like an actual file" so that when a user double-clicks on it, the "actual file from wherever it's really stored" is fetched and then opened on the computer. *Id.*, 29:10-30:22. He also worked on using HTTP protocols to "essentially treat[] everything as a web client or web server to transfer the data" from another device. *Id.*, 31:13-33:9.

Opp. at 9.

Plain and simply, there is no testimony, either in the above-identified transcript, or anywhere else, that the work described above implemented Mr. Drew's own idea. This is fatal in this instance to any possibility for Mr. Drew to be named a potential co-inventor, because absent evidence that Mr. Drew implemented his own ideas, a jury could only reasonably infer that he was implementing someone else's ideas, which is insufficient as a matter of law. *See, e.g.*, *Ethicon*, 135 F.3d at 1460 ("[O]ne does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention," and "one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor.") *Id*. Additionally, when Mr. Drew did attribute ideas, he attributed such ideas to Mr. Caso, and not himself. Ex. 21, Drew Tr. at 62:3-11; 111:23-112:4.

Further, it is uncontroverted that Mr. Drew was not implementing his own ideas: (1) it was Mr. Caso in collaboration with Mike Abraham who determined the relevant product architecture, feature sets, and intellectual property (*see* Ex. 18, Caso Tr. at 164:19-165:19; 169:14-23); (2) Mike Abraham worked with software programmers such as Mr. Drew "to direct and implement what it was that we [Mike Abraham and Mr. Caso] were collaborating around in order to turn it into a software product" (*see id.* at 165:9-16); and (3) the named inventors were not working with Mr. Drew with respect to "drafting the idea, the application." *Id.* at 183:19-24.

Finally, and importantly, on March 7 and March 9, 2009, during Mr. Drew's first business day of employment, Mr. Caso disclosed to Mr. Drew key aspects of the invention's specification and architecture, which is the very subject matter that Dropbox alleges Drew implemented himself. *See, e.g.*, Ex. 8-9, 11-12, and Caso Declaration, Ex. 8-12. Essentially, Dropbox's description at page 9 of its opposition (cited above) regarding work allegedly evidences conception of the invention—but such work cannot evidence conception (or implementation) by Mr. Drew because such work was conceived prior to Mr. Drew commencing employment at the company. More specifically, the following three images below from Ex. 9 disclose at least the following elements: (i) Building a file directory on a web-connected server, (ii) where the file directory allows a user to register a file it wants to make available to all devices, (iii) wherein files can be made available to all registered devices corresponding to a user, (iv) where the idea is to make files locally stored on a first device also available on a second device, and (v) which essentially treats everything as a web client or web server to transfer the data from another device. Compare with Opp. at 9.



Ex. 9, conception diagram attached to Mr. Caso's email at Ex. 8.

Mr. Caso's disclosure to Mr. Drew also included "the use of icons" for both local and remote files, which in turn can be selected for transfer, and wherein a persistent connection with a

web application was contemplated for at least file transfers. Exs. 11, 12 at EM_00238406. In sum, Dropbox's recitation of Mr. Drew's ideas on page 9 of its Opposition recite the ideas found within Exhibits 9 and 11, which preceded Mr. Drew's work, and cannot include any ideas by Mr. Drew. Exs. 8-9, 11-2, Caso Decl., Dkt. 241-1 at ¶¶ 8,10.

**C.    Additional Documents Produced by and Originating from Mr. Caso confirm that Mr. Drew Merely Reduced to Practice Ideas That Were Not His.**

Dropbox oversimplifies and misstates the substance of the emails and attached documents that Mr. Caso sent to Mr. Drew on March 7, and March 9, 2009. Ex. 8-9, 11-12; Opp. at 11-12.

First, Dropbox argues that Entangled Media's Inequitable Conduct/Inventorship expert, Russ Slifer "admitted nothing in the 'Concept_diagram.PDF' document permits concluding that Mr. Caso alone prepared it." Opp. at 11; Opp. Ex. 7 at 196. The reason for this is that Mr. Slifer did not have independent knowledge or the benefit of additional declaration testimony from Mr. Caso that confirmed the relationship between cover emails and attachments, and any author information regarding the attachments. *See* Exs. 7-8; 11-12; Caso Decl. Dkt. 241-1.

With this additional information, Dropbox's rank speculation and attempts to debunk whether the emails and attachments are related, when the emails were sent, and who authored the emails and attachments—all such attorney speculation should fail, and confirm there is no genuine dispute that Mr. Drew did not conceive any of the ideas that Dropbox attempts to attribute to Mr. Drew. In sum, with the benefit of additional declaration evidence, it is clear that Mr. Caso sent documents to Mr. Drew on March 7, 2009 and March 9, 2009, right around Mr. Drew's first business day of employment, and Mr. Caso's declaration clarifies and confirms, consistent with the email and attachment documents themselves, that Mr. Drew did not contribute to anything therein, as set forth above in the prior section. Dkt 241-1, Caso Decl. ¶¶ 6-10. This is not simply naked testimony by Mr. Caso—rather, it is corroborated both by the contemporaneous cover emails of the documents and metadata of the documents that separately indicate the attachments were authored by Mr. Caso. *See* Exs. 5-8; 11-12; Caso Decl. Dkt. 241-1; Ex. 22, and Gasser Decl. ¶¶ 6, 7. With such direct testimony from Mr. Caso and corroborating evidence, no reasonable jury would find that the activities Dropbox

attributed to Mr. Drew constitute anything other than reduction to practice of ideas that were not his own.

Finally, Dropbox argues that the documents provided by Mr. Caso to Mr. Drew on March 7, 2009 and March 9, 2009, are not co-extensive with the full scope of the provisional application—but this is a red herring. Opp. at 12. That is of no consequence, even if true. What is relevant is that the activities that Dropbox relies upon and attributes to Mr. Drew are encompassed by these March 7 and March 9, 2009 documents. This means that all such activities by Mr. Drew cannot be evidence of conception—rather, they are evidence that that he merely reduced to practice another person's idea, and therefore cannot be a named inventor based on such activities.

**D.    Alleged Corroboration Does Not Assist Dropbox's Co-Inventor Assertions.**

Dropbox's corroboration assertions do not assist Dropbox, because the underlying testimony relied upon by Dropbox with respect to Mr. Drew fails to even support inventorship in the first instance. Opp. at 12-14. Accordingly, alleged corroboration evidence is of no legal effect, because it is not corroborating inventorship. However, in the unlikely event that Dropbox's inventorship testimony were deemed to have merit, they would still suffer from lack of sufficient corroboration.

Dropbox argues that the overlap between the subject matter of the provisional and non-provisional application, and the provisional application naming Mr. Drew corroborates his inventive contribution with respect to at least claim 1 of each Asserted Patent. Opp. at 13. In so arguing, Dropbox relies on *Sandt Tech., Inc. v. Rosco Metal & Plastics Corp.*, 264 F.3d 1344, 1350–51 (Fed. Cir. 2001). *Sandt*, however, offers different facts wherein a party was attempting to antedate an asserted patent with its own 35 U.S.C. 102(g)(2) prior art activities, and the relevant proof required corroboration of the date of the prior art activities, which in *Sandt* was provided by the Defendant's own patent application, as one of four other contemporaneously generated documents. *Id.* at 1350-52. This differs markedly from our instant circumstances, where just the provisional application itself is being relied upon as the only contemporaneously generated document, and there is ample countervailing information as to how Mr. Drew was erroneously added to the provisional application by Mr. Caso who was operating without the benefit of patent counsel to provide legal advice regarding inventorship. *See, e.g.,* Ex. 18, 172:11-173:11, 175:22-177:12. Furthermore, given that a

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT            7
5:23-cv-03264-PCP-VKD

non-provisional application will invariably have at least some overlapping subject matter with a provisional application to which it is claiming priority, pointing to overlap between the two patent applications is of minimal relevance.

Dropbox additionally relies heavily on *Ethicon*, 135 F.3d at 1464, for a laundry list of potential corroboration sources that have minimal, if any relevance to our litigation. Opp. at 13-14. Importantly, in *Ethicon*, the most relevant source of corroboration constituted drawings that the alleged co-inventor had prepared, which undisputably showed the invention. This is the opposite from the facts here, wherein the contemporaneous documents (i.e., Ex. 8-9, 11-12) confirm that the activities allegedly attributed to Mr. Drew's conception were effectively antedated by documents and diagrams originating from Mr. Caso, whose testimony and evidence stands uncontroverted.

Dropbox's reliance on additional issues, such as Mr. Drew's expertise in coding, does nothing to corroborate in our instance, given that there is no coding necessary for conception—as evidenced by the fact that the provisional application contains no code. Indeed, coding skills support the opposite conclusion that Mr. Caso required someone with skills to implement/reduce to practice his own idea. The remaining items, such as payment terms, etc. are too remote and irrelevant to be applicable to a start-up venture company such as Entangled Media where payment was in stock options, rather than salary.

Finally, Dropbox's reference to an allegedly "bare" overview of the general idea behind the Asserted Patents ignores the much more substantial communications regarding the technical subject-matter shared with Mr. Drew that pre-empts any alleged conception surrounding work that Mr. Drew performed that is relied upon by Dropbox (see above discussion and Ex. 8, 9, 11, 12). Thus, Dropbox has failed to show that Mr. Drew's testimony, together with any so-called "corroborating evidence" rises to the necessary "clear and convincing evidence standard." *Ethicon*, 135 F.3d at 1464.

**E.     Dropbox Has Offered No Evidence To Create a Genuine Issues of Material Fact Regarding Inequitable Conduct—Particularly Regarding the Intent to Deceive Prong**

Dropbox initially asserts, citing no authority, that summary judgment as to inequitable conduct should be denied, merely because inventorship is being disputed. Opp at 15. This is illogical. First, aspects of the inventorship dispute inform the inequitable conduct issue. For example, Dropbox

asserts that "joint inventorship is 'one of the muddiest concepts in the muddy metaphysics of patent law.'" Opp. at 11. This admission is relevant at least to the intent to deceive prong, because if joint inventorship is admittedly so complex, it will admittedly be easier to be incorrect regarding a joint inventorship issue, particularly in Mr. Caso's case where he did not have the benefit of patent counsel to obtain substantive inventorship information. Ex. 18, 172:11-173:11, 175:22-177:12.

In this instance, it is even more reasonable not to infer an intent to deceive the U.S. Patent Office. At any rate, Dropbox did not address the simple point that the named inventor's declarations are not false, for the additional reason that they state their "belief" that they are the appropriate joint inventors.

As to materiality, Dropbox appears to incorrectly double-down and assert twice that not only are the filed declarations false, but they constitute "affirmative acts of egregious misconduct" due to the filing of an "unmistakably false affidavit," such that this alleged misconduct is itself "material." Opp. at 15, 16. Any such allegation of "egregious misconduct" is grossly misplaced here, since this is reserved to cover prior "unclean hands" types of misconduct such as: "deliberately planned and carefully executed scheme[s]" to defraud the PTO and the courts," even if the misconduct would not have affected an examiner's decision to issue a patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011). Clearly, this is not the case in our instance, and so Dropbox remains obliged to show how the allegedly withheld disclosure of Matt Drew as an inventor meets "but-for" materiality.

Finally, with respect to the intent to deceive prong, this is the most likely element for which summary judgment is proper, because the clear and convincing burden of proof standard requires that the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances. Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91(citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 873 (Fed.Cir.1988) (emphasis in original)). In other words, if any reasonable inference explains the non-disclosure of Matt Drew that does not involve a specific intent to deceive, then intent to deceive cannot be found as a matter of law.

Of particular note is Plaintiff's contemporaneous email at Exhibit 17 (Dkt. 241-18), dated April 7, 2010, one month before the filing of the non-provisional application that matures into the '338 Patent (which will not include Matt Drew as an inventor), wherein Mr. Caso is forwarding the provisional application (which lists Mr. Drew as an inventor): "Please note that after termination[sic.] him, we realized his work was useless and literally threw it all out and rewrote 100% of our code. There is not a single line of code, nor research, by Matt [Drew] in anything we have now." *Id.* In context, this explains why Mr. Caso did not disclose Mr. Drew as an inventor in the '338 Patent— namely, because at the time, Mr. Caso thought Mr. Drew was not an inventor. A jury would find this a reasonable inference as to why Mr. Drew was not disclosed that does not involve deceptive intent— and accordingly, under *Therasense*, summary judgment as to no intent to deceive (and therefore no inequitable conduct) is proper.[2] Further, Entangled Media's expert testified that "It is likewise common for the named inventors to change (both adding inventor(s) and removing inventor(s)) between the filing of a provisional application and the filing of a subsequent non-provisional application. Ex. 36, Slifer Rpt. at ¶ 73.[3]

## III.   THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY OVER THE FOLDERSHARE REFERENCE

In its Motion, Entangled Media argued that it "is undisputed that that the FolderShare reference asserted by Dropbox consists of eighteen separate URLs spanning from 2003-2007." Dkt.

---

[2] Dropbox's remaining arguments unjustly impugn Entangled Media and accuses it of intentionally destroying Matt Drew's emails—even though (i) Matt Drew left Entangled Media in 2009 (over 15 years ago), (ii) Entangled Media is no longer an operating company, (iii) Matt Drew testified that the only persons with whom he communicated at Entangled Media are Erik Caso and Mike Abraham, and the entirety of Erik Caso's and Mike Abraham's emails have been maintained and made available for keyword searching by Dropbox, and (iv) Dropbox itself no longer maintains emails of any person who departed Dropbox five or more years ago. *See* Ex. 35 at 17.

[3] Mr. Slifer additionally conducted an analysis on how common it can be for named inventors to change (both adding inventor(s) and removing inventor(s)) between the filing of a provisional application and a subsequent non-provisional application. For example, Mr. Slifer determined that Dropbox has about 432 issued patents that claim priority to one or more provisional application(s). Of these 432 patents, about 175 have different inventors named in the provisional and issued patents. Ex. 36, Slifer Rpt. at ¶ 73, Ex. 37. *That is, approximately 40% of the time Dropbox itself changes inventorship between the provisional and non-provisional applications. Id.* For example, U.S. Patent 10,037,339 assigned to Dropbox, Inc. has seven (7) named inventors yet claims priority to provisional application 62/611,473 which names thirty-four (34) inventors. Ex. 36, Slifer Rpt. at ¶ 73, Exs. 38, 39. These many recited instances presumably do not constitute inequitable conduct based on false inventorship.

No. 241, Mot. at 18. Dropbox's Opposition does not dispute this. *See generally* Opp. at 19-22. That is, Dropbox's Opposition did not identify any single FolderShare version or single system. Indeed, Dropbox acknowledges that though FolderShare consists of eighteen separate URL's spanning four years, "it is appropriate to use multiple documents in this manner." Opp. at 21. Dropbox is wrong.

Plaintiff's reliance on *Good Technology Corp. v. MobileIron, Inc.*, 5:12–cv–05826–PSG, 2015 WL 4197554 (N.D. Cal. July 10, 2015) is misplaced. There, however, the issue before the court concerned a motion to exclude an expert's testimony, and the Court analyzed the reliability and methodology of the expert's opinions. *Id.* at * 6. The Court held that "this is not a *question of methodology* by [sic] rather a question of fact to be resolved by the jury." *Id.* (emphasis) Here, Entangled Media has not raised this issue in the context of *Daubert* to attack the expert's methodology. Further, the expert in *Good Tech.* based his opinion on "various technical documents and marketing materials that describe Microsoft SMS 2003." *Id.* Thus, the expert identified a single system (*i.e.*, the Microsoft SMS 2003) described in multiple references to which they all correspond. Dropbox has offered no such evidence here to support its "FolderShare" reference. Opp. at 19-21.

Dropbox also cites a multitude of cases in FN 5 of its Brief, none of which address the issue at hand. Opp. at 21. For example, in *Zenith*, the Federal Circuit considered issues of anticipation, infringement, and inequitable conduct. *Zenith Elecs. Corp. v. PDICommc'n Sys., Inc.*, 522 F.3d 1348, 1354 (Fed. Cir. 2008). Specifically, as it relates to invalidity, the Federal Circuit affirmed the district court's granting of summary judgment of invalidity of claim 1 of the '301 patent, and vacated the district court's granting of summary judgment of invalidity of claim 1 of the '513 patent. *Id.* With respect to the '301 patent, plaintiff argued on appeal that the district court erred in granting summary judgment of invalidity based on "the public use of the RCA J20525 television in combination with the Curbell 205–E digital pillow speaker prior to the patent's critical date." *Id.* at 1355. In finding public use, the Federal Circuit considered defendant's expert statements that were "corroborated by testimony from other witnesses, documentary evidence, and Zenith's own admissions." *Id.* at 1357. Neither the district court nor Federal Circuit considered any issues of combining multiple publications across a multi-year span to have applicability to the present case; *see also S.A.R.L. v. LG Elecs., Inc.*, 2022 WL 22401011, at *9 (D. Del. Apr. 8, 2022).

Similarly, Dropbox's reliance on *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 861065, at *2 (N.D. Cal. Mar. 5, 2016) fails because there the district court held that, with respect to *anticipation* that the defendant F5 "does not appear to be improperly trying to use multiple references to show anticipation" but rather was using product manuals to describe a single prior art system. *Id.* Again, there the district court did not consider any issues of combining multiple publications over a multi-year span, without any identification of the specific reference, to have applicability to the present case. In *S.A.R.L.*, 2022 WL 22401011, at *9, Dropbox also argues that even if the FolderShare documents describe a single system, "it is a fact question for the jury." Opp. at 21. It is not. Numerous courts have held that whether multiple documents constitute a single device or single system is a question of law. *See, e.g., Altera Corp. v. PACT XPP Techs., AG,* No. 14-cv-2868, 2015 WL 3830982, at *3 (N.D. Cal. June 19, 2015) (Court determines whether device is a "single prior art reference" in the context of a motion to compel); *Wilco Marsh Buggies and Draglines, Inc. v. Weeks Marine, Inc.*, No. 20-3135, 2023 WL 4624744, at *3 (E.D. La. July 19, 2023) (Court determines whether device is a "single prior art reference" in the context of a motion for reconsideration of a summary judgment order); *Graham Packaging Co. v. Ring Container Techs.*, LLC, No. 3:23-cv-110-RGJ-RSE, 2025 WL 978220, at *5 (W.D. Ky. March 31, 2025) (Court determines whether device is a "single prior art reference" in the context of a motion to dismiss).

The question here is whether Dropbox's combination of multiple FolderShare documents and URL's, spanning over four years, without any motivation to combine analysis, is legally sufficient to qualify as a single reference. The Court should resolve this issue on summary judgment in Entangled Media's favor.

## IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT OF PATENT ELIGIBILTY UNDER 35 U.S.C. § 101.

Dropbox argues, without any case citation, that there "is no basis at all" to grant summary judgment of patent eligibility under 35 U.S.C. § 101. Opp. at 25.

The Court has held as a matter of law that "the patents' claims are patent eligible;" that under *Alice* Step One, "the claims of the asserted patents are not directed to an abstract idea;" and that under *Alice* Step Two, "the claims recited an inventive concept." Dkt. No. 87 at 7, 8, 11. Despite the Court's

Order, Dropbox argues that because the Court decided this issue at the Rule 12 stage, "there was no final decision in Plaintiff's favor on the issue." Opp. at 25. Dropbox is wrong.

The law of the case doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988). Courts have applied the law of the case doctrine to patent eligibility motions. *See, e.g., Marble Voip Partners LLC v. Zoom Video Comms.,* Case No. 23-cv-03619-JSW, 2024 WL 86859 at \*2-\*3 (N.D. Cal. Jan. 8, 2024) (applying "law of the case" to deny judgment on the pleadings that claims were invalid under Section 101 where prior judge denied the defendant's Rule 12(b)(6) motion to dismiss on the same grounds); *Kove IO, Inc. v. Amazon Web Services*, Case No. 18 C 8175, 2024 WL 450028 at \*18 (N.D. Ill. Feb. 6, 2024) (granting summary judgment on Section 101 in the plaintiff's favor after deciding same issue on Rule 12 motion, holding that "there are no changed circumstances or new facts in the record that warrant departing from the law of the case doctrine. The Court therefore grants Kove's motion for summary judgment on § 101 patent eligibility."); *see also Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC,* No. 3:19-CV-01470, 2022 WL 4349829, at \*4–5 (M.D. Pa. Sept. 19, 2022), *aff'd,* No. 2023-1073, 2024 WL 1208980 (Fed. Cir. Mar. 21, 2024).

In *LoganTree LP v. Fossil Grp., Inc.*, No. 1:21-CV-00385-JDW, 2024 WL 5333951, at \*1–2 (D. Del. Mar. 20, 2024), the Court declined to "revisit the issue" of patent eligibility at the summary judgment stage after having already ruled on the issue at the Rule 12 stage. *Id.* The Court held that:

> When Judge Stark resolved Fossil's motion to dismiss, he held that Fossil had failed to meet the high burden necessary to invalidate a claim, determined that Plaintiff LoganTree LP's claims are not patent-ineligible, and denied the motion. Although Fossil contends that the change in procedural posture, from a motion to dismiss to a summary judgment motion, changes the analysis, I disagree. Fossil doesn't point to any evidence that it developed in discovery that might bear on the patentability analysis, such as evidence that might shed light on the patent's subject matter, the method of its claiming, or its eligibility more generally.

*Id.* at \* 2.

The Court concluded that "Because the change in procedural posture doesn't matter, Fossil's motion becomes the functional equivalent of a motion for reconsideration. But Fossil hasn't demonstrated a change intervening law, new evidence, or manifest injustice, so I have no basis to reconsider Judge Stark's decision concerning eligibility under Section 101." *Id.* The same analysis applies here. Dropbox "doesn't point to any evidence that it developed in discovery that might bear on the patentability analysis" or otherwise force the Court to revisit this issue. *Id.* Despite the change in procedural posture, Dropbox's Opposition is the functional equivalent of a motion of reconsideration, without providing any basis for the Court to reconsider its Order.

As such, under the law of the case doctrine, the Court should grant summary judgment of patent eligibility for each Asserted Patent under Section 101.

**V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN ENTANGLED MEDIA'S FAVOR ON DROPBOX'S TENTH, ELEVENTH, AND SIXTEENTH AFFIRMATIVE DEFENSES**

Dropbox's Opposition does not contest that the Court should grant summary judgment in Entangled Media's favor on Dropbox's Tenth Affirmative Defense (limitations on damages and costs under Section 286) and on Dropbox's Eleventh Affirmative Defense (failure to provide notice pursuant to 35 U.S.C. § 287). Opp. at 24.

With respect to Dropbox's Sixteenth Affirmative Defense based on lack of standing, Dropbox argues that Entangled Media's Motion is premature pending Dropbox's Rule 56(d) motion. Opp. at 24. But the Court has resolved his issue not once, but twice. First, after reviewing the Funding Agreement *in camera*, the Court held that "Chisum [the funder] does not appear to have any present right, title, or interest in the asserted patents that would implicate or undermine Entangled Media's standing to sue." Dkt. No. 132, 1. Second, the Court reiterated this statement in a subsequent order: "Entangled Media observes that the Court concluded, upon review of the Security Agreement *in camera*, that while Chisum has a security interest in the asserted patents, it does not appear to have any present right, title, or interest in the asserted patents that would implicate or undermine Entangled Media's standing to sue, or a 'springing' or automatic interest in the asserted patents upon the occurrence of a contractual breach or default." Dkt. No. 254 at 5.

To argue that this issue has not been resolved, Dropbox cites to the Court's Order that potentially leaves open additional review of emails. Opp. at 24. But, any such review would only implicate "Other Litigation Funding Materials" related to the patent valuation, apart from standing. Dkt. No. 254 at 7, 11-12. Dropbox's fishing expedition regarding standing has concluded, and there are no outstanding standing issues. The Court should grant summary judgment in Entangled Media's favor on Dropbox's Sixteenth Affirmative Defense based on lack of standing.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Entangled Media's Motion for Partial Summary Judgment.

Dated: April 17, 2025

*/s/ Alexander E. Gasser*
John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
5:23-CV-03264-PCP-VKD