John E. Lord (SBN 216111)
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213)788-4545
jlord@skiermontderby.com

Paul J. Skiermont (*pro hac vice*)
(TX Bar No. 24033073)
Jaime K. Olin (SBN 243139)
Ryan A. Hargrave (*pro hac vice*)
(TX Bar No. 24071516)
Alexander E. Gasser (*pro hac vice*)
(WI Bar 1022659)
SKIERMONT DERBY LLP
1601 Elm Street, Suite 5800
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
agasser@skiermontderby.com

*Attorneys for Plaintiff*
ENTANGLED MEDIA, LLC

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DROPBOX, INC.,<br><br>Defendant. | C.A. No. 5:23-cv-03264-PCP-VKD<br><br>**PLAINTIFF ENTANGLED MEDIA, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING STANDING**<br><br>Judge: Hon. P. Casey Pitts |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................................... 2

III.  ENTANGLED MEDIA HAS STANDING WITH RESPECT TO THE ASSERTED
      PATENTS ............................................................................................................................. 2

    A.    Mr. Drew Assigned Any Potential Rights and Therefore Was Never Required to
          Join as a Party, Even If He Were an Inventor (Which He Is Not). ....................... 2

    B.    The Funding Agreement Does Not Divest Entangled Media of Standing........... 6

        1.    Entangled Media Is the Undisputed Title Holder to the Asserted Patents ..................... 6

        2.    Entangled Media Holds All Substantial Rights to the Asserted Patents ....................... 6

IV.  CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Diamedix Corp.*,
  47 F.3d 1128 (Fed. Cir. 1995) ............................................................................................ 2, 6

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
  No. 98 Civ. 7766 (PAC), 2007 WL 1552395 (S.D.N.Y. May 29, 2007) ............................. 5

*Advanced Video Techs, LLC. v. HTC Corp.*,
  879 F.3d 1314 (Fed. Cir. 2018) ............................................................................................. 4

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010) ......................................................................................... 2, 6

*BCI Acrylic, Inc. v. Milestone Bath Products, Inc.*,
  Case No. 23-CV-908-JPS, 2024 WL 490580 (E.D. Wis. Feb. 8, 2024) .............................. 5

*Diamond Coating Techs. v. Hyundai Motor America*,
  823 F.3d 615 (Fed. Cir. 2016) ............................................................................................. 10

*Gellman v. Telular Corp.*,
  449 F.App'x 941 (Fed. Cir. 2011) ........................................................................................ 4

*Intellectual Tech LLC v. Zebra Techs. Corp*,
  101 F.4th 807 (Fed. Cir. 2024) ................................................................................ 2, 8, 9

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019) ............................................................................................ 2

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
  814 F.3d 134 (Fed. Cir. 2016) .............................................................................................. 9

*Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*,
  52 F.3d 1026 (Fed. Cir. 1995) ............................................................................................. 5

*Raffel Systems, LLC v. Man Wah Holdings Ltd, Inc.*,
  Case No. 18-CV-1765, 2020 WL 3211684 (E.D. Wis. June 15, 2020) ............................... 8

*Semcon IP Inc., v. Huawei Device USA, Inc.*,
  Case No. 2:16-cv-00437-JRG-RSP (lead), 2017 WL 1017424 (E.D. Tex. Feb. 20, 2017) .............. 2

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000) ............................................................................................ 9

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
  52 F.4th 1340 (Fed. Cir. 2022) ............................................................................................. 9

*Vericool World LLC v. TemperPack Techs. Inc.*,
  739 F.Supp.3d 322 (E.D. Va. 2024) ............................................................................... 7, 10

*WAG Acquisition, LLC v. Multi Media, LLC*,
  CA No. 14-2340, 2019 WL 3804135 (D. N.J. Aug. 13, 2019) ....................................... 9, 10

*Wireless Alliance, LLC v. AT&T Mobility LLC*,
   Civil Action No. 2:23-CV-00095-RWS-RSP, 2024 WL 5037561 (E.D. Tex. Oct. 21, 2024) ......... 7

## I. INTRODUCTION

Plaintiff Entangled Media owns the Asserted Patents and has standing to assert these claims. Regarding Mr. Drew, setting aside the fact that the Court has not yet decided whether Mr. Drew is an inventor, Dropbox wholly omits from its briefing the signed Stock Purchase Agreement where Mr. Drew assigned any rights, title and interest in the Asserted Patents to Entangled Media. This controls, separate and apart from any determination by this Court regarding inventorship. This alone renders Dropbox's standing argument regarding Mr. Drew futile.

Regarding LIT-US Chisum 22 ("Chisum" or "Funder"), before filing its Complaint, Entangled Media entered into a Funding Agreement with the Funder. Consistent with industry practice, the Funder executed a Funding Agreement (also called the Security Agreement) and a separate Patent Security Agreement to secure the Funder's rights due to its financial interest in the litigation. *See* Dkt. Nos. 313-2; 219-2. But these agreements do not meaningfully restrict Entangled Media's rights in the Asserted Patents, including ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ which prevents any risk of multiple litigations under the identical patents. These aspects of the Funding Agreement demonstrate that Entangled Media is the current "patentee," with all substantial rights in the Asserted Patents and standing to sue.

To argue otherwise, Dropbox leans heavily on certain "consultation" and "cooperation" provisions in the Funding Agreement, sometimes to the point of mischaracterization, and other related provisions, which have no bearing on standing and merely exist to protect the Funder's security interest in the Asserted Patents. Alternatively, Dropbox points to various triggering events due to breach that are entirely speculative or impossible and, as a matter of law, cannot affect standing.

The Court should grant Entangled Media's motion for partial summary judgment.

## II. LEGAL STANDARD

To meet the requirement for constitutional standing, a party filing a patent infringement suit must have legal title to the patent in suit. *See Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1130 (Fed. Cir. 1995). If the patent plaintiff holds an exclusionary right in the patents when the complaint is filed, it has constitutional standing. *Intellectual Tech LLC v. Zebra Techs. Corp,* 101 F.4th 807, 814 (Fed. Cir. 2024).

For statutory standing (also called prudential standing), the patentee must possess "all substantial rights" to the patents, such that it "may be deemed the effective 'patentee' under 35 U.S.C. § 281" and the owner of the patents. *Semcon IP Inc., v. Huawei Device USA, Inc.*, Case No. 2:16-cv-00437-JRG-RSP (lead), 2017 WL 1017424 at *2 (E.D. Tex. Feb. 20, 2017). Because a patent is in effect a bundle of rights that may be divided and assigned, courts evaluating patent ownership typically determine whether a sufficiently large portion of the bundle of rights is held by one individual. *See Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.,* 604 F.3d 1354, 1360 (Fed. Cir. 2010). That individual is usually designated the patentee or owner of the patent, able to bring suit in their own name. *Id.* The Federal Circuit often focuses more on what rights the transferor retained than on the rights that the transferee obtained. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019).

As set forth below, Entangled Media has standing to assert its claims, and Dropbox's Opposition ("Opp." at Dkt. No. 313-1) fails to raise a genuine issue of material fact.[1]

## III. ENTANGLED MEDIA HAS STANDING WITH RESPECT TO THE ASSERTED PATENTS

### A. Mr. Drew Assigned Any Potential Rights and Therefore Was Never Required to Join as a Party, Even If He Were an Inventor (Which He Is Not).

Setting aside the inventorship issue, which the Court has not yet decided,[2] Dropbox ignores and/or overlooks a fully executed Stock Purchase Agreement produced in this litigation that assigned any intellectual property rights from Mr. Drew to Entangled Media.

---

[1] Dropbox's Opposition argues that Entangled Media has failed to join Mr. Drew and Chisum in this litigation, stating that Dropbox's standing defense is based on lack of statutory standing, and not constitutional standing. Opp. at 1. Nonetheless, Entangled Media satisfies both.

[2] If the Court grants Entangled Media's summary judgment motion on inventorship, or otherwise decides that Mr. Drew is not an omitted inventor, this portion of Dropbox's Opposition is mooted.

More specifically, in 2010, Entangled Media's business, as a Colorado limited liability company (Entangled Media LLC), was succeeded by its Delaware corporate form, Entangled Media Corp. *See, e.g.,* Dkt. No. 241-17 at EM_00114515. To acquire equity interests in the succeeding Delaware corporation, Mr. Drew, who held equity interests in the LLC, executed a "Stock Purchase Agreement" dated July 14, 2010. *See* Ex. 16 (Dkt. No. 241-17) to Mr. Caso's declaration (Dkt. No. 241-1) in support of Entangled Media's Summary Judgment Motion.

Importantly, as consideration for the executed transaction, Mr. Drew (as the "Purchaser") transferred and assigned to Entangled Media: "Purchaser's right, title and interest in and to any Intellectual Property related to the LLC that Purchaser solely or jointly conceived or developed or reduced to practice, or caused to be conceived or developed or reduced to practice, during the period of time that Purchaser was a member of the LLC."

> 1. **Purchase and Sale of the Shares.** Subject to the terms and conditions of this Agreement, the Company hereby agrees to sell to Purchaser and Purchaser agrees to purchase from the Company on the Closing (as defined below) five thousand (5,000) shares of the Company's Common Stock (the "**Shares**") at a price of $0.0001 per share (the "**Purchase Price**"), for an aggregate purchase price of fifty cents ($0.50). As additional consideration for the Company's agreement to sell the Shares, the Purchaser hereby transfers and assigns to the Company all of Purchaser's interests in the LLC and all of Purchaser's rights to receive or acquire any other interest in the LLC. ==As additional consideration for the Company's agreement to sell the Shares, the Purchaser hereby transfers and assigns to the Company (i) the business plan of the Company (the "**Business Plan**") and (ii) any and all right, title and interest the Purchaser has in the Company's business and any Intellectual Property (as defined below) related to the Company's business, as currently conducted and as contemplated to be conducted pursuant to the Business Plan or otherwise, including but not limited to all of Purchaser's right, title and interest in and to any Intellectual Property related to the LLC that Purchaser solely or jointly conceived or developed or reduced to practice, or caused to be conceived or developed or reduced to practice, during the period of time that Purchaser was a member of the LLC.== For purposes hereof,

*See* Dkt. No. 241-17 at EM_00114515.[3] As shown below, both Entangled Media Corp. and Mr. Drew (the two contracting parties) executed this agreement:

> The parties represent that they have read this Agreement in its entirety, have had an opportunity to obtain the advice of counsel prior to executing this Agreement and fully understand this Agreement. The Purchaser agrees to notify the Company of any change in his or her address below.
>
> **Matthew Drew**                                **ENTANGLED MEDIA CORP.**
>
> [signature]                                     By: [signature]
>
> Address: 4919 10th Street                       Name: Erik M. Caso
>
> Boulder, CO 80304                               Title: President and Chief Executive Officer

---

[3] The above highlighting is for purposes of emphasis and not intended to indicate that the information above is confidential.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING STANDING
5:23-cv-03264-PCP-VKD                                                                      3

*Id.* at EM_00114523. *See also*, Caso Decl. (Dkt. No. 241-1) at ¶14.

Unlike the employment agreement in *Advanced Video* that was determined insufficient to confer standing because it only contained "the mere promise to assign rights to the patent at some future date," (*see* Opp. at 6), the above Stock Purchase Agreement signed by Mr. Drew actually "hereby transfers and assigns" to Entangled Media any intellectual property rights, including rights related to the Asserted Patents. *Compare* Dkt. No. 241-17 at EM_00114515 above, *with Advanced Video Techs, LLC. v. HTC Corp.*, 879 F.3d 1314, 1319 (Fed. Cir. 2018).

Further, in Mr. Caso's declaration (Dkt. No. 241-1), he authenticated the Stock Purchase Agreement signed by Mr. Drew nearly fifteen years ago and further confirmed that the Stock Purchase Agreement was one of many documents maintained in the ordinary course of Entangled Media's business. *Id.* at ¶¶ 14, 16. Dropbox has not questioned or challenged the authenticity or admissibility of the Stock Purchase Agreement, nor could it.

Even without the executed Stock Purchase Agreement, the mere allegation that Mr. Drew is an omitted joint inventor does not and should not alter the otherwise undisputed fact that Entangled Media, as the assignee of the Asserted Patents, holds title in those patents, and therefore has the necessary standing to file and maintain this litigation. Dropbox's cited authorities involve instances where a non-joined third-party is already established as a joint inventor. *See, e.g.,* Dropbox's reliance on *Advanced Video Techs, LLC.*, 879 F.3d at 1316-17 (centered on whether the interests of a co-inventor listed on face of asserted patent were sufficiently transferred to the plaintiff); *Gellman v. Telular Corp.*, 449 F.App'x 941 (Fed. Cir. 2011) (same). Here, by contrast, the only established inventors are Messrs. Caso and Abraham. Yet, in framing its argument, Dropbox assumes it will prevail on its theory that Mr. Drew is an omitted inventor. Opp. at 6-7. But Dropbox has not won this argument and, for all the reasons expressed in Entangled Media's briefing on this issue, it should not. Dropbox's cited cases are therefore inapposite.

Dropbox then concludes, without citing any cases, that if the Court denies Entangled Media's summary judgment motion regarding inventorship and inequitable conduct, then the Court must also deny Entangled Media's motion regarding Dropbox's standing defense. *Id.* at 7. This is contrary to authority. A summary judgment motion on standing can be granted even when

a motion seeking to eliminate defenses based on inventorship or unclean hands/inequitable conduct is denied. For example, one court faced a scenario in which a patent plaintiff faced incorrect inventorship, unclean hands, and lack of standing defenses, wherein defendants alleged that the named inventor committed fraud on the Patent Office by keeping the actual unnamed inventor hidden to avoid the unnamed inventor from gaining rights to the asserted patent. *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, No. 98 Civ. 7766 (PAC), 2007 WL 1552395 at *5-*7 (S.D.N.Y. May 29, 2007). The plaintiff/patentee moved for summary judgment on defendants' inventorship, unclean hands, and lack of standing defenses. *Id.* Based at least in part on patent drawings, as well as additional evidence that the named inventor indeed was not the proper inventor, the court denied plaintiff's summary judgment motion regarding the defendants' incorrect inventor and unclean hands defenses. *Id.* However, despite denying the motion as to the inventorship and unclean hands defenses, the court nonetheless granted plaintiff's motion to dismiss defendants' improper standing defense that depended on the improper inventorship:

> When the plaintiff is the patentee, however, "it is no defense that the [plaintiff] obtained or retains title in breach of a contractual or other obligation to another …." As it is undisputed that [plaintiff] is the patentee, [defendant] may not assert the rights of third parties to the [asserted] patent as a defense to [plaintiff's] infringement claim. [Defendant's] affirmative defense of lack of standing, based on the putative rights to the patent of [the unnamed alleged inventor or his employer], must therefore be dismissed.

*Id.* at *7.

This ruling comports with other courts that have held that the case law "does not authorize a searching inquiry into inventorship in the form of a standing challenge when the plaintiff's claim to title is not otherwise in dispute." *BCI Acrylic, Inc. v. Milestone Bath Products, Inc.*, Case No. 23-CV-908-JPS, 2024 WL 490580 at *7 (E.D. Wis. Feb. 8, 2024) (collecting cases wherein defendants challenged standing based on improper inventorship)*; see also Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995) ("Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective 'patentee' under the statute and has standing to bring a suit in its own name for infringement.").

For all the above reasons, Dropbox's standing defense based on Mr. Drew fails.

### B. The Funding Agreement Does Not Divest Entangled Media of Standing

#### 1. Entangled Media Is the Undisputed Title Holder to the Asserted Patents

The first step in the standing inquiry is to determine who holds legal title to the Asserted Patents, because standing "is ordinarily an incident of legal title to the patent." *Abbott Labs.*, 47 F.3d at 1131. Here, it is undisputed that Entangled Media is the sole and exclusive owner of the Asserted Patents. In fact, the Funding Agreement that forms the basis of Dropbox's standing arguments states that Entangled Media, as the Owner, "is the sole and exclusive owner of all the Patents." *See* Dkt. No. 313-2 at 14. Dropbox does not disagree.

#### 2. Entangled Media Holds All Substantial Rights to the Asserted Patents

Most disputes relating to standing involve a license agreement between the patent owner and a licensee, where some right to practice the patents, or to assign or license the patents, is transferred to the licensee. *See, e.g., Alfred E. Mann*, 604 F.3d at 1357 ("AMF licenses its patents to for-profit companies that build medical devices."). The Funding Agreement, by contrast, is not a license agreement. *See generally* Dkt. No. 313-2. As a litigation funder, Chisum is not afforded any independent rights under the patents at all. In line with industry practice, Entangled Media granted Chisum a security interest and related rights. *Id.* This grant does not even meaningfully restrict Entangled Media's rights, let alone deprive Entangled Media of standing.

Entangled Media retains all substantial rights, including "the most important" right of a patentee: the right to bring suit in its own name. *Alfred E. Mann*, 604 F.3d at 1361. ████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████. Such broad rights "to decide whether to bring suit and to control the litigation is thoroughly inconsistent with an assignment" and confirms Entangled Media's "ownership of the patents-in-suit" as the holder of "all substantial rights" in the Asserted Patents. *Alfred E. Mann*, 604 F.3d at 1362. These rights held by Entangled Media also ensure the

1  avoidance of "multiple lawsuits" by different patentees. *See, e.g., Wireless Alliance, LLC v. AT&T Mobility LLC*, Civil Action No. 2:23-CV-00095-RWS-RSP, 2024 WL 5037561 at *2 (E.D. Tex. Oct. 21, 2024). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt No. 313-2 at 16, 18, 19, 20.

Dropbox argues that Entangled Media lacks standing because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 4. These are merely rights to protect the Funder's security interest, not to own the Asserted Patents. As discussed below, courts have consistently held that an entity that holds a security interest in a patent is not a co-owner of the patent, and therefore need not to be joined in an infringement suit.

For example, in *Vericool World LLC v. TemperPack Techs. Inc.*, 739 F.Supp.3d 322 (E.D. Va. 2024), the Court denied defendant's motion to dismiss for lack of standing holding that plaintiff had constitutional and statutory standing to bring suit in its own name. In *Vericool*, the plaintiff conveyed a security interest in the patents to non-party Storopack before filing suit. *Id.* at 328. The defendant argued that Storopack's security interests and rights in the patents deprived plaintiff of standing. The court disagreed, stating that "ownership of a security interest is not synonymous with ownership of the underlying property. The former guarantees a debt; the latter vests only if the agreement specifies an assignment of the incumbered collateral." *Id.* at 339-340. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The court stated that "Storopack cannot exercise dominion over the underlying collateral unless and until Vericool defaults on its obligations," and found that no such default had occurred. *Id*. The court then held that the plaintiff's right to sue "is not encumbered in a way that would deprive it of substantial rights in the Asserted Patents." The same holds true here given Entangled Media's unfettered right to sue, where no default has occurred. *See* Dkt. No. 313-2 at 20.

Additionally, regarding a potential default, Dropbox's reliance on speculative,

1 hypothetical future events that have not occurred, and may never occur, are improper
2 considerations to determine standing. Standing rights are examined based on the current, present,
3 "actual state of rights instead of their hypothetical redistribution at some unspecified point in the
4 future." *Intellectual Tech.*, 101 F.4th at 817. And here, section 5.3(d)(ii) of the Security Agreement
5 cited by Dropbox does not automatically provide for the assignment/transfer of titles to the
6 patent—instead, ██████████████████████████████████████████
7 ████████████████████████████████ Opp. at 4.

       Beyond these hypothetical and speculative default/breach events that may never occur,
Dropbox also relies on events that cannot possibly occur. For example, Dropbox cites several times
to Entangled Media's obligation to pay maintenance fees, failure of which would constitute a
material breach. Opp. at 4, 9. Entangled Media, however, has already paid all maintenance fees
for the Asserted Patents.[4] Any such hypothetical breach is therefore no longer possible.

       In sum, these alleged triggers for potential default are improper considerations and do not
detract from Entangled Media's clear and undisputed title to the Asserted Patents and its standing
to file and maintain this lawsuit against Dropbox.

       Similarly, in *Raffel Systems, LLC v. Man Wah Holdings Ltd, Inc.*, Case No. 18-CV-1765,
2020 WL 3211684, *3-*4 (E.D. Wis. June 15, 2020), the court denied the defendant's motion on
standing, rejecting the argument that the patentee's grant of a security interest in the patent to a
bank to secure a loan, and the bank's recording of such interest to perfect its security interest,
operated as transfer of the title in the patent to the bank. *Id.* at *3-4. The court held that "because
the Patent Act does not address perfection of security interests, the mere act of the banks recording
their security interests in Raffel's patents at the USPTO did not transfer title of the patents to the
banks"—"Courts that have addressed this issue have consistently found that the Patent Act does
not address perfection of security interests—it addresses assignments of title." *Id.*

       Dropbox also cannot point to Chisum's financial interest, which has become commonplace

---

[4] See Ex. 1 attached to the accompanying declaration of John E. Lord. See also https://fees.uspto.gov/MaintenanceFees/fees/details?patentNumber=8484260&applicationNumber=13424366&caresActSelected= and https://fees.uspto.gov/MaintenanceFees/fees/details?patentNumber=8296338&applicationNumber=12774231&caresActSelected=

1  in the age of litigation funding, as a substantial right in the Asserted Patents such that standing can
2  only be satisfied by the Funder's participation in the litigation. *See, e.g., Luminara Worldwide,*
3  *LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1351 (Fed. Cir. 2016) (holding that a financial interest
4  in litigation and licensing is not a substantial right) (collecting cases); *WAG Acquisition, LLC v.*
5  *Multi Media, LLC*, CA No. 14-2340, 2019 WL 3804135, at *2 (D. N.J. Aug. 13, 2019) (denying
6  motion to dismiss for lack of standing and rejecting the defendants' argument that a litigation
7  funder possessed substantial rights due to plaintiff's inability to pursue litigation without funding).
8  Thus, the Funder's non-exclusionary security rights are insufficient to transform the Funder into a
9  necessary party in this case.

10        Further, here, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
11 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
12 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
13 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
14 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
15 ▬▬▬▬▬▬▬▬▬▬▬▬ *See, e.g., Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1252 (Fed.
16  Cir. 2000) ("[T]he consent requirement does not significantly restrict the scope of Speedplay's
17  rights in the '778 patent."). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
18 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. For example, in *Intellectual Tech*, 101 F.4th
19  807, the Federal Circuit reversed a lower court's dismissal of an action for lack of standing,
20  concluding that the plaintiff "retained exclusionary rights even though Main Street had the non-
21  exclusive ability to license the [patent].") *Id.* at 815; *see also Uniloc USA, Inc. v. Motorola*
22  *Mobility LLC*, 52 F.4th 1340, 1345 (Fed. Cir. 2022) (observing but not holding that "[p]atent
23  owners and licensees do not have identical patent rights, and patent owners arguably do not lack
24  standing simply because they granted a license that gave another party the right to sublicense the
25  patent to an alleged infringer").
26        Further, because Entangled Media LLC was formed solely to own the patents, there is
27  nothing untoward in the provision of the Funding Agreement that states ▬▬▬▬▬▬▬▬
28 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

1   [REDACTED]
2   [REDACTED] *See Vericool World*, 739
3   F.Supp.3d at 336 ("First, a contract that 'does not include the right to make, and the right to use,
4   and the right to sell' does not confer 'the whole patent-right.'").
5       Dropbox's reliance on *Diamond Coating* is misplaced. In *Diamond Coating*, the Federal
6   Circuit found that the licensor Sanyo retained "a right and license to make, use, and sell products
7   covered by the patents-in-suit" and "retained significant control over Diamond's enforcement and
8   litigation activities." *Diamond Coating Techs. v. Hyundai Motor America*, 823 F.3d 615, 620 (Fed.
9   Cir. 2016). [REDACTED]
10  [REDACTED]
11  [REDACTED]
12  [REDACTED]
13  [REDACTED]
14  [REDACTED]
15  [REDACTED]
16      In sum, the Funder's interest is purely financial – if the infringement litigation yields an
17  award to Entangled Media, the Funder is remunerated. *WAG Acquisition*, 2019 WL 3804135 at
18  *5. The rights transferred to the Funder here "reflect an intention to allow [Funder] to protect its
19  investment" in the litigation, which "is fundamentally different than an intention to confer on
20  [Funder] substantial rights in the patents themselves." *Id*.

21  **IV.    CONCLUSION**

22      The evidence shows that neither Mr. Drew nor the Funder is a co-owner of the Asserted
23  Patents or a necessary party. Mr. Drew assigned any rights in the Asserted Patents to Entangled Media
24  nearly fifteen years ago. Dropbox, as the accused infringer, faces no risk of multiple lawsuits from
25  Mr. Drew and/or the Funder pursuing independent actions. For the foregoing reasons, the Court
26  should grant Entangled Media's motion for partial summary judgment as to standing.

| | | |
|---|---|---|
| 1 | Dated: June 5, 2025 | */s/ John E. Lord* |
| 2 | | John E. Lord (SBN 216111) |
| | | SKIERMONT DERBY LLP |
| 3 | | 633 W. Fifth Street, Suite 5800 |
| | | Los Angeles, CA 90071 |
| 4 | | Phone: (213) 788-4500 |
| | | Fax: (213)788-4545 |
| 5 | | jlord@skiermontderby.com |
| 6 | | Paul J. Skiermont (*pro hac vice*) |
| 7 | | (TX Bar No. 24033073) |
| | | Jaime K. Olin (SBN 243139) |
| 8 | | Ryan A. Hargrave (*pro hac vice*) |
| | | (TX Bar No. 24071516) |
| 9 | | Alexander E. Gasser (*pro hac vice*) |
| | | (WI Bar 1022659) |
| 10 | | SKIERMONT DERBY LLP |
| | | 1601 Elm Street, Suite 5800 |
| 11 | | Dallas, TX 75201 |
| 12 | | Phone: (214) 978-6600 |
| | | Fax: (214) 978-6601 |
| 13 | | pskiermont@skiermontderby.com |
| | | jolin@skiermontderby.com |
| 14 | | rhargrave@skiermontderby.com |
| 15 | | agasser@skiermontderby.com |
| 16 | | *Attorneys for Plaintiff* |
| | | ENTANGLED MEDIA, LLC |

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING STANDING
5:23-CV-03264-PCP-VKD

11