1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

ENTANGLED MEDIA, LLC,

Case No.  23-cv-03264-PCP

Plaintiff,

8

**ORDER GRANTING IN PART BOTH
PARTIES' MOTIONS FOR SUMMARY
JUDGMENT, DROPBOX'S MOTION
TO STRIKE NEW INFRINGEMENT
THEORIES AND EXCLUDE
TESTIMONY OF DR. EDWARDS, AND
DROPBOX'S MOTION TO STRIKE
THE DECLARATION OF ERIK CASO**

9

v.

10

DROPBOX INC.,

Defendant.

11
12

Re: Dkt. Nos. 241, 245, 246, 270, 271, 303

13
14

Plaintiff Entangled Media, LLC brings this action against defendant and cross-claimant

15

Dropbox, Inc. alleging that Dropbox's products infringe Entangled Media's two method patents

16

for a cloud-based file system to virtually unify remote and local files across a range of devices'

17

local file systems. Dropbox seeks summary judgment on all claims, arguing that there is no

18

material factual dispute as to its accused products noninfringement of Entangled Media's patents.

19

Entangled Media seeks partial summary judgment on Dropbox's improper inventorship and

20

inequitable conduct claims and on several affirmative defenses. This order also addresses pending

21

*Daubert*/exclusion motions that bear upon the cross-motions for summary judgment:

22

(1) Dropbox's motion to strike the declaration of Erik Caso; and (2) Dropbox's motion to strike

23

new infringement theories and exclude testimony of Dr. Edwards.[1]

24

For the reasons that follow, the Court grants in part Dropbox's motion for summary

25

judgment, Entangled Media's motion for partial summary judgment, Dropbox's motion to strike

26

the declaration of Erik Caso, and Dropbox's motion to strike new infringement theories and

27
28

---

[1] Dropbox's Rule 56(d) motion is now moot.

1    exclude testimony of Dr. Edwards.

2                                      **BACKGROUND**

3           As explained in the Court's February 13, 2024 order denying Dropbox's motion to dismiss

4    this action, Entangled Media owns U.S. Patent Nos. 8,296,338 ("the '338 Patent") and 8,484,260

5    ("the '260 Patent"). *See Entangled Media, LLC v. Dropbox Inc.*, 716 F. Supp. 3d 819 (N.D. Cal.

6    2024). The '338 Patent was issued on October 23, 2012, and is titled "Method for a Cloud-Based

7    Meta-File System to Virtually Unify Remote and Local Files Across a Range of Devices' Local

8    File Systems." Dkt. No. 19-1, '338 Patent, at 2. The '260 Patent is a divisional application of the

9    '338 Patent. Dkt. No. 19-2, '260 Patent, at 2. The '260 Patent was issued on July 9, 2013, and is

10   titled "Method for Cloud-Based Meta-File System to Virtually Unify Remote and Local Files

11   Across a Range of Devices' Local File System." *Id.* The patents share substantially the same

12   specification.

13          The claims generally relate to "a system and method for using data virtualization coupled

14   with a cloud-based file system that is shared among devices and integrated into the device

15   operating system so as to unify the representation of files across devices for availability of and

16   access to data across multiple devices a user might own." '338 Patent at 1:20–25.1 The claims of

17   the '260 Patent disclose a method for improving computer functionality by allowing for the

18   transfer of physical files located on different devices using a peer-to-peer connection. *See* '260

19   Patent, at 11:25–52. While the claims of the '338 Patent disclose a "process for establishing a

20   singular file system across multiple devices," '338 Patent at 11:22–23, the '260 Patent discloses a

21   "process for operating on files located on multiple devices using a singular file system" to

22   facilitate the transfer of a file from the first device to the second device through a brokered peer-

23   to-peer connection, '260 Patent at 11:54–52. The latter process "allows the devices to

24   communicate and share their data and resources directly and negates the need for a server, which

25   eliminates additional costs and complex set-ups" and "is typically faster than transferring over

26   other types of network connections." Second Amended Complaint (SAC) ¶ 31.

27          Claim 1 of the '338 Patent recites:

28                A  process  for  establishing  a  singular  file  system  across  multiple

                                                    2

devices comprising: receiving user information to open an account for establishing a singular file system across multiple devices via a web-based system that includes at least one server; installing an individual software client on each of the multiple devices via the web based system; accepting registration of multiple devices via the web based system; Scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data; providing by the individual software clients via the multiple devices individual meta-indices of the inventoried data for each of the multiple devices to the at least one server; integrating by the at least one server the individual meta indices to create a single master meta index; providing by the at least one server the single master meta index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients; integrating metadata from the meta-indices of each of the other multiple devices into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, the virtual files indistinguishable from the local files by the local file system at each of the multiple devices; and continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon, wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the single meta-data index by modifying file systems of each of the multiple devices to include virtual files for data from the single metadata index that is not local to a multiple device.

Claim 1 of the '260 Patent recites:

A process for operating on files located on multiple devices using a singular file system comprising: accepting a request to operate on a file at a first device, wherein the file is selected from the singular file system on the first device: modifying the singular file system on the first device to make local files and virtual files appear indistinguishable to the singular file system, the local files and virtual files sharing a same location on the first device; intercepting the request by a software client on the first device; determining by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata, wherein a visual representation of the singular file system on the first device is identical to a visual representation of the singular file system on the second device; and if the file is the virtual file of the corresponding file physically located on the second device, requesting by the software client on the first device that a peer-to-peer connection be brokered by a server-based web service between the first device and the second device; if the peer-to-peer connection is brokered, transferring the corresponding physical file from the second device to

the first device; and performing the operation on the transferred corresponding physical file at the first device.

On September 4, 2024, the Court issued a claim construction order construing several terms in these claims. *See Entangled Media, LLC v. Dropbox Inc.*, 747 F. Supp. 3d 1290 (N.D. Cal. 2024). The following constructions are relevant to this order:

**The "indistinguishable" element ('338 Patent, Claim 1)**

| Claim Language | "The virtual files indistinguishable from the local files" / **The virtual files indistinguishable from the local files** by the local file system at each of the multiple devices" |
|---|---|
| Court's Construction | **"The virtual files indistinguishable from the local files to the user and the local file system"** |

The Court held, in part, that "[a] straightforward reading of 'indistinguishability' in light of both the claim language and specification plausibly covers not only how the virtual and local files are acted upon, operated upon, or treated by the local file system, but also how they 'appear,' which goes to presentation." *Id.* at 1313.

**The "requesting" element ('260 Patent, Claim 1)**

| Claim Language | "Requesting by a software client on the first device that a peer-to-peer connection be brokered by server-based web service between the first and second device" |
|---|---|
| Court's Construction | **no additional construction necessary** |

As the Court noted:

> The specification explains that "In the case of a virtual file, the software client on Device A determines from the file's metadata the remote device on which it is stored (Device B) and asks the web service to broker a connection between Device A and Device B S125." '338 Patent at 8:38–42. Immediately following that language, the specification teaches that "The web service determines what type of connection is possible between Device A and Device B and instructs both devices of the communication protocol and parameters to be used for the transfer." *Id.* at 8:42–45. A straightforward reading of the claim language in light of the specification indicates that "brokering" involves "determining what type of connection is possible" and "instruct[ing] both devices of the communication protocol and parameters to be used for the transfer."

*Id.* at 1309–10.

The Court held "that a plain and ordinary meaning in light of the claim language and specification do[es] not *require* the web service in the disputed language to 'establish a connection.' … A plain and ordinary reading of 'brokered' is broad enough to encompass both 'provid[ing] communication parameters for a peer-to-peer connection' and 'establish[ing] a peer-to-peer connection.'" *Id.* at 1310 (emphasis in original).

The parties did not ask the Court to construct the element of claim 1 that recites "determining by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata," but in analyzing a separate element the Court noted that "[a] straightforward reading of the ["determining"] step … makes clear that any distinguishing by means of 'reviewing file metadata' is performed 'by the software client' and not the 'singular file system.'" *Id.* at 1306.

On October 31, 2024, the Court granted from the bench Dropbox's motion to amend its answer/counterclaims to add affirmative defenses and counterclaims based on (i) invalidity under 35 U.S.C. § 102(f) due to improper inventorship; and (ii) inequitable conduct and violation of 37 C.F.R. § 1.56 for intentional nonjoinder of an inventor.[2]

Dropbox filed a motion to compel Entangled Media to supplement its privilege log and produce litigation funding documents for which privilege or protection was waived. This motion was granted in part by Judge DeMarchi on April 8, 2025. The Court ordered and received supplemental briefing regarding Dropbox's lack of standing defense in light of the information disclosed following Judge DeMarchi's order.

## STANDARDS

### I.    Summary Judgment

Courts may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] The Court subsequently issued a written order explaining its reasoning. *See Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649 (N.D. Cal. 2025).

United States District Court
Northern District of California

56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden to demonstrate a lack of genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). The burden then shifts to the nonmoving party to "provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 1076 (quoting Fed. R. Civ. P. 56(e)). Courts "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## II.   Patent Infringement at Summary Judgment

"To infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent Techs. v. Gateway, Inc.,* 580 F.3d 1301, 1317 (Fed. Cir. 2009). "[A] determination of infringement, both literal and under the doctrine of equivalents, is a question of fact." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). "Because the ultimate burden of proving infringement rests with the patentee, however, an accused infringer may show that summary judgment of non-infringement is proper either by producing evidence that would preclude a finding of infringement, or by showing that the evidence in the record fails to create a material factual dispute as to any essential element of the patentee's case." *Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, No. 17-CV-05806-RS, 2022 WL 137727, at *6 (N.D. Cal. Jan. 14, 2022) (citing *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)).

Direct infringement may be proven either by literal infringement or under the doctrine of equivalents. "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241,

United States District Court
Northern District of California

1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.* Under the doctrine of equivalents, "a product or process that does not literally infringe [ ] the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Werner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). "[A]n element in the accused [product] is equivalent to a claim limitation if it performs substantially the same *function* in substantially the same *way* to obtain substantially the same *result.*" *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (emphases added).

To defeat a defendant's motion for summary judgment of noninfringement under the doctrine of equivalents, the plaintiff must provide "particularized testimony and linking argument on a limitation-by-limitation basis that create[s] a genuine issue of material fact as to equivalents." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328–29 (Fed. Cir. 2007). "Whether a claim is infringed under the doctrine of equivalents may be decided on summary judgment if no reasonable jury could determine that the limitation and the element at issue are equivalent." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999).

**ANALYSIS**

## I.    Dropbox's motion for summary judgment is granted in part.

Dropbox moves for summary judgment on the ground that Entangled Media fails to provide any basis for a reasonable jury to find that Dropbox infringed Entangled Media's patents.

### A.    There is a genuine dispute of material fact as to whether Dropbox infringes the '338 Patent.

Dropbox's motion for summary judgment on the '338 Patent focuses on the patent's requirement that the invention at issue "generate virtual files stored in the same locations as local files of the local file system, the virtual files *indistinguishable from the local files by the local file system at each of the multiple devices*." In its claim construction order, this Court interpreted this "indistinguishable" limitation to mean "[t]he virtual files [are] indistinguishable from the local files to the user and the local file system."

Dropbox argues that no reasonable jury could find its products infringe the '338 Patent

1  because files in the accused Dropbox products are distinguishable to both (1) the user and (2) the

2  local file system.

> **1.    There is a genuine dispute of material fact as to whether the accused products' files are indistinguishable to the user.**

4        Dropbox argues that its virtual files are not indistinguishable to the user due to the

5  presence of icons (a green checkmark/cloud image superimposed over the file icon) that tell a user

6  whether the file is local or virtual.

> **a.    The presence of the visual icons in Dropbox's accused products precludes a finding of literal infringement.**

9        "Literal infringement requires the patentee to prove that the accused device contains each

10  limitation of the asserted claim(s). If any claim limitation is absent from the accused device, there

11  is no literal infringement as a matter of law." *Bayer AG*, 212 F.3d at 1247 (internal citation

12  omitted). Dropbox argues that because its files have a green checkmark or cloud icon placed over

13  the file icon to indicate whether the file is virtual or local, its files are distinguishable to the user.

14        Entangled Media responds that requiring complete indistinguishability is "a new

15  construction." It cites the patent specification, which teaches that the "virtual files appear in

16  *essentially* all ways the same as a local file." '338 Patent at 6:34–36 (emphasis added). But this

17  argument is contrary to the plain text of this Court's claim construction order, which held that

18  indistinguishability to the user includes visual indistinguishability. *See Entangled Media, LLC*,

19  747 F. Supp. 3d at 1313 (holding that "[a] straightforward reading of 'indistinguishability' in light

20  of both the claim language and specification plausibly covers not only how the virtual and local

21  files are acted upon, operated upon, or treated by the local file system, but also how they 'appear,'

22  which goes to presentation"). Because Dropbox's products visually differentiate virtual files from

23  local files, Dropbox does not literally infringe Entangled Media's '338 Patent.

24        Entangled Media separately argues that a genuine dispute of material fact exists as to

25  whether Dropbox's products are visually indistinguishable to the user, citing an undisclosed

26  infringement theory explored in Dr. Edwards's export report suggesting that Dropbox's visual

27  icons may not always appear on its virtual files. For the reasons explained below, this

28  infringement theory must be excluded as both undisclosed and not a proper subject of expert

United States District Court
Northern District of California

testimony. Accordingly, Entangled Media cannot rely upon that theory to create a genuine

material dispute as to whether Dropbox's accused products satisfy the "indistinguishable to the

user" element of the '338 Patent. *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-

5341-YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014) (Undisclosed theories "are barred

[ ] from presentation at trial (whether through expert opinion testimony or otherwise)."); *Cellspin*

*Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-05928-YGR, 2022 WL 2784467, at *11 (N.D. Cal. June 15,

2022) (granting summary judgment because evidence about an undisclosed infringement theory

cannot create a genuine issue of material fact at trial).

### b.    There is a genuine dispute of material fact as to whether the accused products' files are indistinguishable to the user under the doctrine of equivalents.

Entangled Media argues that even if Dropbox's products do not literally infringe the

"indistinguishable to the user" requirement of the '338 Patent, they do so through the doctrine of

equivalents. Under the doctrine of equivalents, "a product or process that does not literally infringe

[ ] the express terms of a patent claim may nonetheless be found to infringe if there is

'equivalence' between the elements of the accused product or process and the claimed elements of

the patented invention." *Werner–Jenkinson Co.*, 520 U.S. at 21. "[A]n element in the accused

[product] is equivalent to a claim limitation if it performs substantially the same *function* in

substantially the same *way* to obtain substantially the same *result*." *Voda*, 536 F.3d at 1326

(emphases added). The inquiry is a factual one, and summary judgment can only be granted if no

reasonable factfinder could find equivalence. *Werner–Jenkinson*, 520 U.S. at 38–39.

Entangled Media's expert Edwards applied the function-way-result test to the accused

products and concluded that the "indistinguishable to the user" element is infringed under the

doctrine of equivalents. Specifically, he opined that:

> [T]he Accused Products infringe this claim element under the
> doctrine of equivalents. As explained above, for example, the virtual
> files appear as if they were local files—when a "placeholder" is
> accessed via the local file system, Dropbox automatically hydrates the
> file (i.e., downloads the file data) so it can be accessed as if it were a
> local file. It constitutes the claimed "the virtual files indistinguishable
> from the local files by the local file system at each of the multiple
> devices" under the doctrine of equivalents because the local file

United States District Court
Northern District of California

system performs substantially the same function in substantially the same way to achieve the same result, i.e., not distinguishing the virtual files from the local files at each of the multiple devices. This remains true regardless of the presence of an additional icon (e.g., a cloud or check mark).

…

The virtual files are indistinguishable from the local files to the user … because both virtual and local files can be operated on in the same way regardless of whether they are virtual or local. This is true of both the way the user views and interacts with files and the way the local file system views and interacts with files. The Asserted Patents give the following example: "moving a file on one device results in the file moving on all other devices, even if it was moved on a device where that file is virtual." In other words, a "move file" operation is the same from the perspective of both the user…, regardless of whether the file is local or virtual

Dkt. No. 259-30 ¶¶ 197–98. Entangled Media additionally offers evidence showing how, except for the presence of a small graphic overlay on virtual files, the local and virtual files appear and act the same to the user. *See* Dkt. No. 259-29, at 19 (citing, *e.g.*, Ex. 6, Warner Tr., at 145:19-146:7).

Dropbox argues that this evidence is insufficient to create a material dispute of fact as to infringement under the doctrine of equivalents because Entangled Media fails to "provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test." *AquaTex Indus.*, 479 F.3d at 1328. As the Federal Circuit has held:

[T]he evidence of equivalents must be from the perspective of someone skilled in the art, for example "through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art." But, while many different forms of evidence may be pertinent, when the patent holder relies on the doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.

*Id.* at 1329.

United States District Court
Northern District of California

United States District Court
Northern District of California

Dropbox argues that Edwards's paragraph is conclusory and does not provide the particularized testimony and linking argument required under *AquaTex*. But the evidence at issue there was meaningfully different from the testimony Entangled Media offers here. The patentee in *AquaTex* provided *no* testimony from an expert or person skilled in the art that specifically addressed equivalents, and the only arguably relevant testimony merely "explained how the defendant's product operated [and] did not specifically address equivalents or compare [the] product to the patented method on a limitation-by-limitation basis as required." *Id.* By contrast, Edwards's report explains that "[t]he claimed invention and the Dropbox equivalent perform substantially the same function (the virtual and local files appear in the same singular file system allowing a user to view all virtual and local files in the same folder) in substantially the same way (viewing the virtual and local files in a single folder rather than a separate mounting folder) to obtain the same result (the user can assess the virtual and local files in a single folder on multiple devices), regardless of the presence of an additional icon (e.g., a cloud or check mark)." Dkt. No. 259-29, at 18–19. While concise, this expert evidence provides the "particularized testimony and linking argument" necessary to create a disputed question of fact as to infringement under the doctrine of equivalents, especially given the relatively non-technical nature of the indistinguishability element.

Dropbox alternatively argues that Entangled Media's application of the function-way-results test would vitiate the "indistinguishable to the user" element. Vitiation is "a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Werner-Jenkinson*, 520 U.S. at 39 n.8). As the Federal Circuit has explained:

> It is the role of the court [ ] to ensure that the doctrine of equivalents is not permitted to overtake the statutory function of the claims in defining the scope of the patentee's exclusive rights. Thus, for example, courts properly refuse to apply the doctrine of equivalents "where the accused device contain[s] the antithesis of the claimed structure." *Planet Bingo, LLC v. GameTech Intern., Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006). In such a case, application of the doctrine of equivalents would "vitiate" a claim element. *Warner–Jenkinson*, 520 U.S. at 39 n. 8.

11

United States District Court
Northern District of California

1

2

3

4

5

6

> "Vitiation" is not an exception to the doctrine of equivalents, but instead a legal determination that "the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id.* The proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the substitute element matches the function, way, and result of the claimed element." *Id.* at 40. If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents. *Id.* at 39 n. 8.

7

8

9

10

11

12

13

14

15

> Courts should be cautious not to shortcut this inquiry by identifying a "binary" choice in which an element is either present or "not present." Stated otherwise, the vitiation test cannot be satisfied by simply noting that an element is missing from the claimed structure or process because the doctrine of equivalents, by definition, recognizes that an element is missing that must be supplied by the equivalent substitute. If mere observation of a missing element could satisfy the vitiation requirement, this "exception" would swallow the rule. And, the Supreme Court declined to let numerous contentions bury the doctrine. *Id.* at 21, 40. Thus, preserving the doctrine in its proper narrowed context requires a court to examine the fundamental question of whether there is a genuine factual issue that the accused device, while literally omitting a claim element, nonetheless incorporates an equivalent structure.

16

*Id.*

17

18

19

20

21

22

23

        The facts of *Deere* are instructive. The district court in that case construed a "contact" limitation in the patent to require "*direct* contact."[3] It then found that applying the doctrine of equivalents to find infringement where there was "no direct contact" would vitiate the court's construction. The Federal Circuit disagreed and found that the district court erred by invoking the vitiation exclusion because "a reasonable jury could find that a small spacer connecting the upper and lower deck walls represents an *insubstantial difference* from direct contact." *Deere*, 703 F.3d at 1356–57 (emphasis in original).

24

25

26

27

28

---

[3] As Dropbox notes, the *Deere* court separately found that this claim construction was erroneous. Nonetheless, *Deere*'s reasoning on vitiation has been repeatedly endorsed by the Federal Circuit. *See, e.g., Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1367 (Fed. Cir. 2020) ("[Defendant] criticizes the district court's reliance on *Deere* as 'invok[ing] only dicta' [and] also argues that *Deere* did not override our prior cases discussing 'opposites' but instead dealt with a scenario where the claim element did not present a binary choice. [Defendant], however, ignores the fact that we have repeatedly emphasized the principle outlined in *Deere* in subsequent cases.").

A reasonable juror could conclude that the visual icons in Dropbox's accused products present an insubstantial difference from the "indistinguishable to the user" requirement where, as here, the file is indistinguishable in all other ways to the user both visually and functionally. Take for example, *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020), where the patent at issue required a non-fluorinated microchannel. Having the microchannel non-fluorinated prevented an undesirable reaction. *Id.* at 1365. An accused infringer added a "negligible" amount of fluorination ("0.02% Kynar") that had no reactive effect or function. *Id.* at 1368. On appeal, the accused infringer argued that vitiation applied, but the Federal Circuit rejected that argument as an improper "attempt to limit the inquiry to a binary choice between 'fluorinated' and 'non-fluorinated' microchannels." *Id.* The court held:

> The appropriate inquiry is whether a reasonable juror could have found that a negligibly-fluorinated microchannel performs the same function, in the same way, and achieves the same result, as a non-fluorinated microchannel. Here, based on the evidence presented at trial—including the testimony of [the patent owner's] expert …—the district court concluded that a reasonable juror could find that a 0.02% Kynar-containing microchannel is insubstantially different from a non-fluorinated microchannel. … The non-fluorinated microchannel claim limitation is not stripped of meaning, or 'effectively eliminate[d],' by [the patent owner's] theory and the jury's finding that the accused microchannel, having too little fluorine to alter its reactive properties, is an equivalent.

*Id.*

The instant case is much closer to *Deere* and *Bio-Rad Laboratories* than to the older pre-*Deere* cases cited by Dropbox. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1347 (Fed. Cir. 2001) (refusing to extend the doctrine of equivalents where the patent specifically recognized and disclaimed an element, and noting that "if a patent states that the claimed device must be 'non-metallic,' the patentee cannot assert the patent against a metallic device on the ground that a metallic device is equivalent to a non-metallic device"); *Wleklinski v. Targus, Inc.*, 258 F. App'x 325, 330 (Fed. Cir. 2007) ("Claim 1 requires separate center and end sections that are made of different materials; finding equivalence with a single strap lacking separate sections and different materials would impermissibly vitiate this limitation."). Contrary to Dropbox's arguments, a finding of equivalency as to indistinguishability based on the icon overlay

United States District Court
Northern District of California

1    would not render meaningless the "indistinguishable" requirement because there are several other

2    important ways in which the files are otherwise materially indistinguishable to the user, such as by

3    appearing in the same places in the same file formats and operating identically. Because

4    "indistinguishable" should not be construed as a binary element, there is a genuine and triable

5    dispute of material fact as to whether Dropbox infringes the '338 Patent's "indistinguishable to the

6    user" requirement under the doctrine of equivalents.

7              **2.    There is a genuine dispute of material fact as to whether the accused
                       products' files are indistinguishable to the local file system.**

8

9         Dropbox argues that its products do not meet the "indistinguishable to the local file

10   system" requirement because the local file system detects which files are virtual when the software

11   seeks to "hydrate" the files by looking to the files' "nodes," which it argues are necessarily

12   distinguishable to the local file system.[4] But Entangled Media has provided evidence that would

13   permit a jury to conclude that nodes exist on each file, such that having a node does not

14   automatically tell the local file system whether a file is local or virtual. *See* Dkt. No. 259-29, at

15   17–18. Entangled Media also offers evidence that it is the Dropbox software, not the local system,

16   that can and does distinguish files based on their nodes. *See, e.g.*, Dkt. No. 259-30 ¶ 118; *see also*

17   Ex. 12, DROPBOX-EM_SC000725; DROPBOX-EM_SC000711, line 5. Citing Dropbox's code,

18   its expert reports, and other witness testimony, Entangled Media further provides evidence

19   suggesting that when a virtual file is accessed via the local file system, the virtual file is

20   automatically "hydrated" by the Dropbox software, causing it to be automatically downloaded and

21   opened as if it were a local file. *See* Dkt. No. 259-30 ¶ 196; Ex. 12, DROPBOX-EM_SC000743,

22   lines 356-369; DROPBOX-EM_SC000392-393, lines 1706-33; and DROPBOX-EM_SC000795-

23   809; Ex. 6, Warner Tr. at 141:2-142:3; 23:7-18; 145:19-146:17. On the basis of this evidence,

24   there is a genuine dispute of material fact as to whether there is literal infringement of

25   "indistinguishable to the local file system" element.

26        Entangled Media also provides evidence sufficient to create a triable issue of fact as to

27   _____

28   [4] Entangled Media argues in a footnote that this "nodes" theory was undisclosed in Dropbox's
     interrogatory responses. Because the Court denies Dropbox's motion for summary judgment on
     other grounds, it need not address the issue at this time.

1    whether this element is infringed via the doctrine of equivalents. As Edwards explains in his

2    expert report, in part:

3              [T]he virtual files appear as if they were local files—when a
4              "placeholder" is accessed via the local file system, Dropbox
               automatically hydrates the file (*i.e.*, downloads the file data) so it can
5              be accessed as if it were a local file. It constitutes the claimed "the
               virtual files indistinguishable from the local files by the local file
6              system at each of the multiple devices" under the doctrine of
               equivalents because the local file system performs substantially the
7              same function in substantially the same way to achieve the same
               result, *i.e.*, not distinguishing the virtual files from the local files at
8              each of the multiple devices.

9    Dkt. No. 259-30 ¶ 198. Dropbox again argues that Edwards's testimony is insufficient to create a

10   triable issue of fact because it fails to provide the necessary "particularized testimony and linking

11   argument." Its argument fails for the same reasons discussed above. Based on Edwards's report,

12   he will be prepared to testify at trial that the hydration of the virtual file by the Dropbox software

13   (i.e., downloading the file data) allows the file to be accessed by the local file system as if it were

14   a local file and that, despite any reading of nodes, the local file system generally performs the

15   same function (not distinguishing virtual files from local files) in substantially the same way to

16   achieve the same result. This testimony is sufficient to create a genuine dispute of material fact as

17   to whether the "indistinguishable to the file system" requirement is infringed via the doctrine of

18   equivalents.

19       A.    **There is no genuine dispute of material fact as to whether Dropbox infringes
20             the '260 Patent.**

21             1.    **There is no genuine dispute of material fact that the "requesting" step
                     is not literally infringed or infringed under the doctrine of equivalents.**
22

23   Dropbox seeks summary judgment with respect to Entangled Media's claim for

24   infringement of the '260 Patent, arguing that the Dropbox software does not practice the element

25   of claim 1 reciting that the invention must "request[ ] by the software client on the first device that

26   a peer-to-peer connection be brokered by a server-based web service between the first device and

27   the second device" (the "requesting" step).

28             The parties agree that the Dropbox software's "Local Area Network Sync" feature enables

United States District Court
Northern District of California

peer-to-peer connections between different devices belonging to the same client and connected to the same local area network or LAN. Whether that feature infringes the '260 Patent's "requesting" element turns on the manner in which that feature operates. Viewing the evidence in the light most favorable to nonmoving party Entangled Media, Dropbox's accused products distribute authentication keys to each of a client's devices when that device is registered in order to enable Local Area Network Sync. If the Dropbox client software on a particular device learns that the device's user is attempting to access a placeholder file—i.e., one not located on that particular device—the client will automatically broadcast to devices on the same LAN a request for the block needed to hydrate that virtual file. If a peer device on the LAN responds that it has the requested block, the devices on the LAN use the peer-to-peer connection established by the authentication keys at the time of registration to transfer the block.

Dropbox argues that its products do not infringe the '260 Patent's requesting element because (1) there is no request from the software client on the first device for these keys; and (2) even if the keys are requested, this request is for authentication keys—not a request that a server-based web service broker a peer-to-peer connection enabling the transfer of a specific file.

In response, Entangled Media argues that the Dropbox products' distribution of the authentication keys needed to establish a LAN Sync connection satisfies the "requesting" element, and that because this element contains no temporal requirements the receipt of the keys at the time of device registration is sufficient. There are two problems with Entangled Media's argument.

First, the plain language of the claim suggests that the request for brokering must have some temporal proximity to a specific file request. The claim provides that the request for brokering will be made only "if the file is the virtual file of the corresponding file [is] physically located on the second device." '260 Pat., at 11:43-47; Dkt. No. 259-59, at 23. The authentication keys that enable LAN Sync are not distributed at or near the time that a client identifies a request for a virtual file, but at the time a device is registered.

Second, even if Entangled Media were correct with respect to the timing, the evidence does not suggest that the initial request for the keys is made *by the software client on the first device*. Entangled Media instead presents evidence that *the Dropbox server* distributes authentication keys

to the devices automatically upon registration. Entangled Media presents no evidence that there is any *request* by the software client *on the first device* that authentication keys be provided to enable brokering of a connection with a second device. To the extent the first device does make any request that a peer-to-peer connection be established, it does so by broadcasting a query over the LAN asking if other client devices are present and have the requested file. This request does not practice the elements of the '260 Patent because it is not directed to a "server-based web service."

Accordingly, the undisputed evidence shows that Entangled Media cannot establish literal infringement of the '260 Patent's "requesting" step. Nor can Entangled Media establish that the "requesting" element is infringed under the doctrine of equivalents. Edwards's report provides no explanation for how Dropbox's accused products perform substantially the same function in substantially the same way to obtain substantially the same result by the software itself distributing the keys to all registered devices at the time of registration, rather than the software client on the first device requesting that a server-based web service broker a connection with the second device. *See, e.g.*, Dkt. No. 259-30 ¶ 255. Unlike his testimony regarding the "indistinguishable to the user" requirement of the '338 Patent, Edwards's testimony regarding the "requesting" element fails to provide the "particularized testimony and linking argument" required to establish infringement under the doctrine of equivalents.

As such, the Court grants Dropbox's motion for summary judgment as to Entangled Media's claim for infringement of the '260 Patent's "requesting" element.

### 2. There is no genuine dispute of material fact that the "determining" step is not literally infringed or infringed under the doctrine of equivalents.

Dropbox also seeks summary judgment with respect to the '260 Patent on the ground that its products do not practice the element of claim 1 that recites "determining by the software client if the file is physically located on the first device or if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata" (the "determining" step). Dropbox argues that the undisputed evidence establishes that the software client on the first device cannot determine whether a virtual file is stored on a second device "by reviewing file metadata," as required by this limitation. Rather, the first device can only learn whether a virtual file is stored

physically on a second device by broadcasting a request on its LAN and waiting to see whether a second device responds confirming that it has a physical copy of the file.

Entangled Media does not present evidence that the software client itself is capable of determining whether a virtual file is stored on a second device "by reviewing file metadata." Instead, Entangled Media presents evidence that the software client on the first device can review metadata to determine if a file is a placeholder that is not physically located on the device and requires hydration. *See* Dkt. No. 259-29, at 20–21 (citing Dkt. No. 259-30 ¶¶ 241–45; Ex. 6, Warner Tr. at 23:3; Ex. 11, Carp Tr. at 148:23-150:1; Ex. 4, Baier Tr. at 107:6-19 (emphasis added); Ex. 5, DRBX_EM_00015726; and Ex. 12, DROPBOX-EM_SC0000727 (lines 70–72), and 729 (lines 187–211)). If every virtual file necessarily corresponded to a file physically located on another device, then the client's review of metadata might be sufficient to satisfy the "determining" element: In learning that a file is virtual, the client would implicitly learn that it is physically located elsewhere. The evidence demonstrates, however, that some virtual files may exist only in the cloud and be physically located on no other device, and that the client on the first device cannot determine from metadata alone whether a particular virtual file falls within this category. Entangled Media cites evidence that the Sync Feature is generally designed to enable access to data across devices, but neither of its citations creates any genuine dispute as to whether files may exist only in the cloud. *See* Ex. 4, Baier Tr. at 107:6-19 (emphasis added); Ex. 5, DRBX_EM_00015726.

Entangled Media argues that, because claim 1 of '260 Patent begins by reciting "comprising," that the software client performs additional operations beyond reviewing file metadata to determine that a virtual file is on a second device does not conflict with the requirements of the claim. The Federal Circuit has explained that a "comprising" qualifier means that an accused product may perform additional unclaimed elements while still infringing. *Lucent Tech. v. Gateway*, 525 F.3d 1200, 1214 (Fed. Cir. 2008). But "the listed elements (i.e., method steps) are essential." *Id.* Those listed elements include the software client determining "by reviewing file metadata" "if the file is a virtual file of a corresponding file *physically stored on a second device*." The unrebutted evidence demonstrates that the software client is unable to

United States District Court
Northern District of California

1  determine from the metadata that a file is physically stored on another device. Entangled Media's

2  interpretation of the claim language would read this listed element out of the claim entirely by

3  requiring that the software client determine by reviewing metadata only "if the file is physically

4  located on the first device." Because the undisputed evidence establishes that the accused products

5  do not infringe this listed element of the claim, summary judgment as to literal infringement of the

6  "determining" element is appropriate.

7       Entangled Media also fails to present evidence sufficient to create a dispute of fact as to

8  whether the "determining" element is infringed under the doctrine of equivalents. Entangled

9  Media again relies upon Edwards's expert report, which states in relevant part:

> Dropbox stores file data in file "blocks." When the Dropbox desktop client checks on which second device a file is physically stored, it checks whether the second device physically stores the block(s) of the file. These block(s) of the file together represent the data of the file, which collectively constitutes the claimed "if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata" under the doctrine of equivalents because the Dropbox performs substantially the same function in substantially the same way to achieve the same result, i.e., determining if the file is a virtual file of a corresponding file physically stored on a second device by reviewing file metadata.

Dkt. No. 259-30 ¶ 247. As with his discussion of the "requesting" element, Edwards provides no

explanation, let alone particularized testimony and linking argument, demonstrating how

Dropbox's accused products, in which some files are not stored on a second physical device at all

and the software client is unable to determine from reviewing metadata that a virtual file is located

on a second physical device at all, achieves substantially the same function, way, and result as the

claimed invention. No other cited evidence fills that gap.

       Accordingly, summary judgment is granted in Dropbox's favor on Entangled Media's

claim that the accused products infringe the "determining" element of the '260 Patent.

## II.    Entangled Media's motion for partial summary judgment is granted in part.

### 1.    There is a genuine issue of material fact as to whether Drew is a co-inventor.

Entangled Media asks the Court to grant summary judgment against Dropbox on

Dropbox's improper inventorship claim and defense.

"Under 35 U.S.C. § 102(f) (2006), one cannot obtain a valid patent if 'he did not himself invent the subject matter sought to be patented.'" *In re VerHoef*, 888 F.3d 1362, 1365 (Fed. Cir. 2018). "This provision requires that a patent accurately name the correct inventors of a claimed invention." *Id.* (citing *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998)). "'When a number of persons make an invention jointly, a valid patent cannot be taken out in the name of one of them.'" *Id.* (cleaned up). "The failure to join[/name] an inventor of any claim invalidates the entire patent." *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. Cir. 2022). "Conception and inventorship are ultimately questions of law … but they are premised on underlying factual findings." *VerHoef*, 888 F.3d at 1365. "[A]pplying the summary judgment standard, [the question is if] a reasonable factfinder could … find that [the unnamed person] was a co-inventor of the [patented product/process]." *Plastipak Packaging, Inc.*, 55 F.4th at 1340.

To be a co-inventor, one must:

> (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*Id. (*quoting *Pannu*, 155 F.3d at 1351). "[T]he joint inventors need not contribute equally to its conception." *VerHoef*, 888 F.3d at 1366. (citing 35 U.S.C. § 116 and *Pannu*, 155 F.3d at 1351). But "[a]n alleged joint inventor must show that he contributed significantly to the conception—the definite and permanent idea of the invention—or reduction to practice of at least one claim." *Blue Gentian, LLC v. Tristar Prods., Inc.*, 70 F.4th 1351, 1358 (Fed. Cir. 2023).

"Conception is the touchstone to determining inventorship." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (*See Sewall v. Walters,* 21 F.3d 411, 415 (Fed. Cir. 1994)). Participation in reduction to practice alone is insufficient to qualify as an inventor; some evidence of conception of the invention is required. *See* 1A Chisum on Patents § 2.02 (2025). Conception is the "formation, in the mind of the inventor[,] of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice." *Coleman v. Dines*,

United States District Court
Northern District of California

754 F.2d 353, 359 (Fed. Cir. 1985). "Thus, to have conceived of an invention, an inventor must have a sense of how the full invention will be constructed and how it will function. … [Conception] require[s] much more than just an initial idea." Jonathan S. Masur & Lisa Larrimore Ouellette, *Patent Law: Cases, Problems, and Materials* 107 (4th ed. 2025).

Dropbox's improper inventorship claim and defense are premised on its claim that Matt Drew, an individual who was listed as an inventor on the provisional patent applications, was improperly excluded as a named inventor on the final patents, which listed only Erik Caso and Michael Abraham as inventors. Entangled Media contends that there is no dispute of material fact as to whether Drew contributed to the conception of the patent. Specifically, it argues that "even if the Court believes that Mr. Drew performed the work he says he did, his testimony is completely silent as to whether any of this work was based on his own ideas." But in Drew's deposition testimony, he squarely answered "yes" when asked if he "contributed to the idea of creating a meta index of all data files as stated in the '489 patent." Dkt. No. 241-23 at 107:24-108:21. Drew also stated that he contributed to the ideas of the local device meta index being sent to the web service (*id.* at 110:14-18), the web service integrating all meta indices into a database (*id.* at 112:6-11), the web service sending the meta indices of other registered remote devices to the local device (*id.* at 113:15- 19), and the client receiving the remote device indices and integrating the data into the local device's file system (*id.* at 114:4-18). Drew also discussed the work he did, and that deposition testimony, when viewed in the light most favorable to nonmoving party Dropbox, would allow a jury to conclude that he participated in conceiving the definite and permanent idea of the complete and operative invention. *See* Dkt. 152-4 at 25:23-26:17; 26:22-28:2.

Based on documents and testimony from listed co-inventor Caso, Entangled Media argues that the evidence demonstrates that Caso had fully conceived the idea prior to Drew's reduction of his idea to practice. Specifically, Entangled Media argues that "on March 7 and March 9, 2009, during Drew's first business day of employment, Caso disclosed to Mr. Drew key aspects of the invention's specification and architecture, which is the very subject matter that Dropbox alleges Drew implemented himself." But the Caso-created documents would not preclude a reasonable factfinder from concluding that Drew also contributed to conception. Dropbox has provided expert

testimony that the documents in those emails are not co-extensive with the provisional patents' subject matter or the inventions claimed in the asserted patents. The evidence would thus permit a jury to conclude that the "idea" Caso first shared with Drew did not reflect the full subject matter disclosed in the provisional patents and claimed in the Asserted Patents, and that Drew was not merely following Caso's instructions and exercising "the normal skill expected of an ordinary [software] designer" based on a definite and complete conception of the subject matter "dictated explicitly by [Caso's] specifications." *Sewall*, 21 F.3d at 416.

Entangled Media also argues that Drew's alleged inventorship is not sufficiently corroborated by Dropbox's evidence. "The alleged co-inventor's testimony and the corroborating evidence must show inventorship 'by clear and convincing evidence.'" *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1464 (Fed. Cir. 1998). Whether a co-inventor's testimony is sufficiently corroborated depends on a "rule of reason analysis," which requires an "evaluation of all pertinent evidence." *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993). "[T]he trial court must consider corroborating evidence in context, make necessary credibility determinations, and assign appropriate probative weight to the evidence to determine whether clear and convincing evidence supports a claim of co-inventorship" *Ethicon*, 135 F.3d at 1464. "Corroborating evidence may take many forms." *Blue Gentian*, 70 F.4th at 1364. For example, "[d]ocumentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." *Sandt Tech., Inc. v. Rosco Metal & Plastics Corp.*, 264 F.3d 1344, 1350–51 (Fed. Cir. 2001). And "[c]ircumstantial evidence about the inventive process, alone, may also corroborate." *Id.* at 1351.

In support of its improper inventorship claims, Dropbox relies on the provisional patent application that listed Drew as a co-inventor, noting that *Sandt* considered a patent application to be corroborating contemporaneous evidence. Notably, however, *Sandt* involved the claimed prior inventor's own separate patent application predating the patent at issue. Here, the provisional patent application is less probative because it does not specifically identify Drew's contributions.

But Dropbox does not rely on the patent application alone. Instead, it presents additional circumstantial corroborating evidence. Such evidence can include:

22

> (1) the need for a person with specific expertise,
>
> (2) the person's background in that specific area,
>
> (3) any proposal that the individuals should work together to develop new products,
>
> (4) the informal nature of the business relationship,
>
> (5) the length of time they worked together,
>
> (6) the absence of any pay to the inventor for his work,
>
> (7) the similarity between the inventor's sketches and the patent figures,
>
> and (8) referring to the inventor as a "member" of the business.

*See Ethicon*, 135 F.3d at 1464. Entangled Media protests that these factors are irrelevant because there is less concrete contemporaneous documentary evidence in this case than in *Ethicon*. But the Federal Circuit has stated that circumstantial evidence alone can corroborate inventorship, so the Court must consider the factors regardless of the strength of the contemporaneous document evidence.

The factual record here includes several forms of circumstantial corroborating evidence that Dropbox could use to establish its improper inventorship claims. As Dropbox explains:

> As to (1) need for a person with expertise and (2) the putative inventor's background, Mr. Caso hired Mr. Drew based on Mr. Drew's experience in software engineering because Mr. Caso had none. Dkt. No. 241-23, Drew Tr. at 17:7- 18:22, 24:13-24:24, 45:17-49:13; Ex. 3, Caso Tr. at 94:24-95:15, 96:3-5; Dkt. 241-22, Abraham Tr. at 62:23-63:10, 64:20-22. Mr. Drew filled that experience gap. Ex. 241-23, Drew Tr. at 135:14- 137:10, 140:19-142:11; Ex. 9, Drew Ex. 2; Ex. 10, Drew Ex. 3. As to (4) the informal nature of the business relationship and (6) the absence of any pay for the work, there is no evidence of any executed NDA, employment agreement, consulting agreement, or termination agreement, Mr. Drew was never paid any money for his work; instead, he received only "shares" in Entangled Media. Dkt. No. 241-23 at 36:20-40:11.

Alongside the provisional patent application listing Drew as a co-inventor, the *Ethicon* factors provide corroboration sufficient to preclude summary judgment in Entangled Media's favor on the

1   issue of improper inventorship.[5]

2       **2.    There is a genuine issue of material fact as to Dropbox's inequitable
            conduct claim and defense.**

3

4       Entangled Media also asks the Court to grant summary judgment against Dropbox on

5   Dropbox's inequitable conduct claim and defense.

6       "An applicant for a patent is under a duty of candor in dealing with the Patent and

7   Trademark Office A breach of that duty constitutes 'inequitable conduct'" that can result in

8   invalidity or unenforceability of the patent. 6A Chisum on Patents § 19.03 (2025). A party must

9   prove the following elements to find inequitable conduct: "(1) an individual associated with the

10  filing and prosecution of a patent application made an affirmative misrepresentation of a material

11  fact, failed to disclose material information, or submitted false material information; and (2) the

12  individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores,*

13  *Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). "The accused infringer must prove both

14  elements—intent and materiality—by clear and convincing evidence. If the accused infringer

15  meets its burden, then the district court must weigh the equities to determine whether the

16  applicant's conduct before the PTO warrants rendering the entire patent unenforceable."

17  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).

18      Dropbox's inequitable conduct claim and defense are based on its contention that, by

19  omitting Drew as a co-inventor, listed inventors Caso and Abraham intentionally and knowingly

20  submitted false declarations to the PTO in the process of obtaining the patents. Entangled Media

21  argues that Dropbox's inequitable conduct claim and defense fail because (i) the inventor

22  declarations are not false, (ii) the inventor declarations were not material, and (iii) Dropbox fails to

23

24  _____

[5] Entangled Media contends that it may be entitled to amend the patent to correct inventorship. As
25  Dropbox correctly notes, however, whether Entangled Media will do so is entirely speculative at
    this time. *See Pannu*, 155 F.3d at 1350–51 ("[A] patent with improper inventorship does not avoid
26  invalidation simply because it *might* be corrected under section 256. Rather, the patentee must
    claim entitlement to relief under the statute and the court must give the patentee an opportunity to
27  correct the inventorship. If the inventorship is successfully corrected, section 102(f) will not
    render the patent invalid. On the other hand, if the patentee does not claim relief under the statute
28  and a party asserting invalidity proves incorrect inventorship, the court should hold the patent
    invalid for failure to comply with section 102(f).").

United States District Court
Northern District of California

1  show that Caso and Abraham had a specific intent to deceive.

**a.  There is a genuine issue of material fact as to whether the declarations were false.**

Entangled Media argues that the inventor declarations are not false because Drew merely "reduced to practice" Caso and Abraham's ideas and was therefore "correctly not named as an inventor in the Asserted Patents." This argument fails because there is a disputed question of fact as to whether Drew is a co-inventor. Because Caso and Abraham listed Drew as a co-inventor on the provisional patent application, Dropbox has met its burden to establish by clear and convincing evidence that Caso and Abraham had a basis to believe that Drew should have been a listed co-inventor on the final patent as well. Entangled Media presents evidence that Caso and Abraham subsequently realized that Drew did not qualify as a co-inventor, but this simply creates a dispute of fact. A credibility determination is required to decide whether Caso and Abraham believed they were the original, first, and joint inventors at the time the declarations were submitted.

**b.  There is a genuine issue of material fact as to whether the declarations were material.**

"[T]he materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291. "When an applicant fails to disclose [information] to the PTO, that [failure to disclose] is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed [information]." *Id.* "A party also may satisfy the materiality element with clear and convincing evidence that a patentee 'engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit,' which the Federal Circuit deems material *per se.*" *ChriMar Sys. Inc. v. Cisco Sys., Inc.*, No. 13-CV-01300-JSW, 2019 WL 8333452, at *9 (N.D. Cal. Dec. 17, 2019) (quoting *Therasense*, 649 F.3d at 1292).

Dropbox has provided evidence that would permit a jury applying the clear and convincing evidence standard to conclude that, when Caso and Abraham applied for the patents, their failure to disclose Drew as an inventor rendered their affidavits "unmistakably false," such that their purported misrepresentations were *per se* material. *See Therasense*, 649 F.3d at 1292; *BLM Prods., Ltd. v. Covves, LLC*, 2017 WL 8811269, at *4 (C.D. Cal. Oct. 26, 2017) ("Because

25

inventorship is a 'critical requirement for obtaining a patent,' false statements about the inventorship of a patent are material.").

### c. There is a genuine issue of material fact as to whether Caso and Abraham acted with the intent to deceive

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense*, 649 F.3d at 1290. "[T]he accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it. … [Merely] [p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.*

> Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found. *See Scanner Techs. Corp. v. ICOS Vision Sys. Corp.,* 528 F.3d 1365, 1376 (Fed. Cir. 2008) ("Whenever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference.").

*Id.* Entangled Media argues that "[i]f the Court finds reasonable any explanation as to why Matt Drew was not disclosed as an inventor, and that explanation does not involve deceptive intent, then as a matter of law, specific intent to deceive (and by extension, inequitable conduct) cannot be found."

The burden on Dropbox is high but not quite as a high at this stage as Entangled Media argues. "[F]or the purpose of getting past a motion for summary judgment against the defense, the test is necessarily somewhat less demanding. The question is not whether [Dropbox's] circumstantial evidence requires an inference of deceptive intent, but whether [Entangled Media's]

1    presentation is sufficient to preclude a reasonable trier of fact from reaching that conclusion."

2    *Unwired Planet, LLC v. Apple Inc.*, No. 13-CV-04134-VC, 2017 WL 1175379, at *3 (N.D. Cal.

3    Feb. 14, 2017).

4          In contending that the evidence would not preclude a reasonable trier of fact from

5    concluding that an inference of deceptive intent is required, Dropbox relies upon evidence, as it

6    explains, that:

> 1. Caso and Abraham knew of Drew's contributions to the alleged inventions. For example, Abraham admitted that Mr. Drew "worked on the co – some of the code that we were developing." Dkt. 241-22, Abraham Tr. at 62:19-22. Abraham also testified that, in May 2009 (the provisional's filing date), he and Drew were "[t]he only two people writing code at that time." *Id.* at 128:15-22. Even so, Abraham testified that he "wasn't party to th[e] decision" to name Drew as an inventor on the provisional. *Id.* at 127:13-23.
>
> 2. Caso also would have been aware of Drew's contributions at least because (i) Drew was the first person that Caso hired (Dkt. No. 241-23 at 17:12-15, 24:13-24, 25:4- 16); (ii) Drew collaborated with Mr. Caso beginning in February 2009 on the subject matter disclosed in the provisional (id. at 62:13-16); and (iii) Caso did not have the technical skills to develop software alone, thereby requiring Mr. Drew's help (id. at 17:7-18:22, 45:17-49:13; Ex. 3 Caso Tr. 94:24-95:15, 96:3-5; Dkt. 241-22 at 62:23-63:10, 64:20-22).
>
> 3. Nevertheless, Caso testified that Drew was merely "someone that we were hoping to bring on to the company as a developer to assist Mike [Abraham]." Ex. 3, Caso Tr. at 164:20-22. And, although Caso knowingly named Drew as an inventor on the provisional in May 2009, Caso dubiously testified in the context of this litigation that he did so even though Drew's contribution was "none." *Id.* at 177:9-17.

22          Though Entangled Media presents competing evidence and theories for Drew's omission

23    from the issued patents, nothing that Entangled Media presents would preclude a reasonable trier

24    of fact from finding deceptive intent under the applicable standard. For example, the April 7, 2010

25    email from Caso—in which he states, "Please note that after termination[sic.] him, we realized his

26    work was useless and literally threw it all out and rewrote 100% of our code. There is not a single

27    line of code, nor research, by Matt [Drew] in anything we have now"—is called into question by

28    Dropbox's indirect evidence. "[I]f the inventors' self-reported state of mind were, as a rule,

27

1    enough for summary judgment of no inequitable conduct, there would be little reason to allow

2    fact-finders to draw inferences from indirect evidence in the first place." *Unwired Planet, LLC*,

3    2017 WL 1175379, at *3.

4        Because the Court must view the evidence in the light most favorable to Dropbox on this

5    motion, there is a genuine dispute of material fact on the issue of specific intent. A credibility

6    determination is needed to resolve this claim. *See, e.g.*, *Neev v. Alcon LenSx, Inc.*, No.

7    SACV1500624JVSJCGX, 2017 WL 6886670, at *26 (C.D. Cal. June 30, 2017), *aff'd sub nom.*

8    *Neev v. Alcon Lensx Inc*, 774 F. App'x 680 (Fed. Cir. 2019) (denying summary judgment on

9    inequitable conduct claim because "[a] jury is best suited to hear testimony and make the requisite

10   credibility determinations"). Accordingly, Dropbox's motion for summary judgment on

11   Dropbox's inequitable conduct claim and defense is denied.

### d.    Drobox's related motion to exclude the Caso declaration and exhibits attached to Entangled Media's motion for summary judgment is granted in part.

14       One final issue must be addressed in relation to Entangled Media's motion for summary

15   judgment on Dropbox's inventorship and inequitable conduct claims and defenses: Dropbox's

16   request for exclusionary discovery sanctions as to a subset of the evidence attached to Entangled

17   Media's motion and a portion of a witness declaration based thereon.[6]

18       Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. "Compliance with

19   Rule 26's disclosure requirements is 'mandatory.'" *Ollier v. Sweetwater Union High Sch. Dist.*,

20   768 F.3d 843, 863 (9th Cir. 2014) (quoting *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865

21   (9th Cir. 2014)). "Without awaiting a discovery request, parties are mandated to provide each

22   other 'the name and, if known, the address and telephone number of each individual likely to have

23   discoverable information—along with the subjects of that information' and 'a copy—or a

24   description by category and location—of all documents, electronically stored information, and

25   tangible things that the disclosing party may use to support its claims or defenses, unless the use

26

27   _____

28   [6] The disputed evidence does not affect the Court's ruling on Entangled Media's motion for summary judgment because the genuine issues of material fact identified above exist whether or not this evidence is considered.

United States District Court
Northern District of California

would be solely for impeachment.'" *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 20-CV-06846-EJD (NC), 2021 WL 4808597, at *1 (N.D. Cal. Mar. 17, 2021) (quoting Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii)). "Rule 26(e)(1)(A) requires parties to supplement their prior disclosures 'in a timely manner' when 'the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Id.* (quoting *Brown v. Wal-Mart Store, Inc.*, No. 09-CV-03339-EJD, 2018 WL 2011935, at *2 (N.D. Cal. Apr. 27, 2018)). Rule 26(e) establishes an "ongoing duty to supplement or correct prior disclosures or discovery responses" without the need for a request from another party. 8A Charles Alan Wright et al., Federal Practice and Procedure § 2048 (3d ed. 2017).

"Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples the Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (*Yeti by Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (2001) (citing Fed. R. Civ. P. 37(c)(1)). "Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure." *Id.* (quoting *Yeti by Molly Ltd.,* 259 F.3d at 1106, and Fed. R. Civ. P. 37 advisory committee's note (1993)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Id.*

Entangled Media does not dispute that it failed to disclose the evidence that Dropbox seeks to exclude, which it contends relates to the authenticity of certain documents previously produced by Entangled Media in discovery. Instead, Entangled Media argues that its failure to disclose that evidence was justified because the issues it addresses were not at issue before the close of fact discovery. Specifically, Entangled Media contends that it did not learn that Dropbox would question the authenticity of the documents it had previously produced until the deposition of one of its experts on January 24, 2025.

Entangled Media is correct in part. As to exhibits 6, 8, 9, and 15, the Court denies Dropbox's motion because copies of these documents were disclosed either during fact discovery or in a timely manner thereafter. In its briefing on summary judgment, Entangled Media merely

reproduced those documents with their metadata to address the authenticity concerns raised during the January 24, 2025 deposition. Entangled Media's production of these metadata-containing documents was substantially justified and a harmless supplement to the existing disclosed copies of the documents. *See, e.g., Woods v. Google, Inc.*, No. C11-01263-EJD (HRL), 2014 WL 1321007, at \*4 (N.D. Cal. Mar. 28, 2014) (noting that the "Rule 26(e) duty to supplement or correct incomplete or incorrect responses does, in fact, extend beyond the discovery cutoff date").

Conversely, the Court grants Dropbox's motion to exclude exhibits 3, 4, 5, 7, 13, and 14. These documents were newly produced as attachments to Entangled Media's summary judgment motion. They were not disclosed to Dropbox at any time beforehand. A cursory review of the new documents reveals that they are plainly *not* harmless to Dropbox, and Entangled Media has not demonstrated that its failure to disclose them was substantially justified. It was on notice for over six weeks prior to filing its motion that these documents were important to fend off what it characterizes as a new defense raised in the January 24, 2025 deposition, and Entangled Media provides no explanation for why it neither disclosed the documents prior to filing its motion nor sought to reopen discovery (as the Court had suggested when granting Dropbox's motion to amend its claims and defenses).

Correspondingly, the Court also grants Dropbox's motion to strike the portions of Caso's declaration discussing excluded exhibits 3, 4, 5, 7, 13, and 14.

### 3. Entangled Media's motion for summary judgment on the Foldershare Reference is denied.

Dropbox asserts as a defense under 35 U.S.C. § 103 that the prior art "Foldershare reference" renders the patented invention obvious and therefore invalid. Entangled Media moves for summary judgment as to this asserted defense.

To establish that a claimed invention is unpatentable as obvious under 35 U.S.C. § 103, the challenger must demonstrate by clear and convincing evidence that a person of ordinary skill in the art, at the time of the invention, "would have been motivated to combine the teachings of the prior art references and would have had a reasonable expectation of success in doing so." *Novartis Pharms. Corp. v. W.-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1059 (Fed. Cir. 2019).

United States District Court
Northern District of California

1          Entangled Media seeks summary judgment on circumscribed grounds. As it characterizes

2   its position: "The question here is whether Dropbox's combination of multiple FolderShare

3   documents and URL's, spanning over four years, without any motivation to combine analysis, is

4   legally sufficient to qualify as a single [prior art] reference." Dropbox responds that multiple

5   references can be used to demonstrate how one single prior art system functioned, citing numerous

6   examples in which courts have adopted this approach. *See S.A.R.L. v. LG Elecs., Inc.*, No. CV 12-

7   1595-LPS, 2022 WL 22401011, at *9 (D. Del. Apr. 8, 2022). ("Multiple references can be used 'to

8   demonstrate and support how [a prior art system] functioned at the time, not as distinct

9   references.'" (quoting *Finjan, Inc. v. Symantec Corp.*, 2013 WL 5302560, at *17 (D. Del. Sept.

10  19, 2013)); *see also Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 861065, at *2 (N.D. Cal. Mar.

11  5, 2016) (denying motion for summary judgment of no anticipation because defendant is "simply

12  trying to use the [multiple] proffered product manuals to describe a single prior art system"); *Good*

13  *Tech Corp. v. Mobileiron, Inc.*, 2015 WL 4197554, at *5 (N.D. Cal. July 10, 2015) ("[S]imply

14  because a system can be employed in various ways and on various platforms or devices does not

15  mean that all of those devices and platforms are being combined. Rather, these documents are

16  illustrative of the system itself and how it functions."); *IP Innovation L.L.C. v. Red Hat, Inc.*, 2010

17  WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010) ("This court sees no error in using multiple

18  references to describe a single prior art system for the purpose of showing anticipation."). *Cf.*

19  *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008). As the cited

20  cases make clear, there is no per se rule against combining references in the manner Dropbox has

21  done with respect to FolderShare.

22          The parties also disagree about who should decide if multiple references qualify as and

23  describe a single prior art system. Dropbox argues this is a question of fact for the jury, while

24  Entangled Media argues it is a question of law for this Court. While this question has not been

25  directly addressed by the Federal Circuit, that court has held that "the scope and content of prior

26  art" is a question of fact. *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1193 (Fed. Cir.

27  2014). Entangled Media's position effectively asks the Court to define the scope and content of

28  the prior art FolderShare reference in contravention of the Federal Circuit's instruction that this

presents a question of fact.[7] Because Dropbox has produced sufficient evidence, including expert testimony, to support a jury's finding that the several references describe one prior art system, there is a genuine dispute of material fact as to this question that must be left to the jury.

Entangled Media also argues that summary judgment should issue because Dropbox provides no evidence of a "reasonable expectation of success" that would support combining the FolderShare reference with other prior art. But Dropbox provides ample nonconclusory evidence in the McDaniel Expert Report suggesting both motivation to combine and a reasonable expectation of success. *See* Ex. 6, McDaniel ¶¶ 602–05; ¶¶ 1015–23; ¶¶ 1024–26. Accordingly, Entangled Media's motion for summary judgment on this claim is denied.

### 4. Entangled Media's motion for summary judgment on Dropbox's limitations on damages affirmative defense is granted.

Entangled Media's motion for summary judgment on Dropbox's limitations on damages affirmative defense is unopposed. The Court therefore grants summary judgment on this defense.

### 5. Entangled Media's motion for summary judgment on Dropbox's failure to provide notice affirmative defense is granted.

Entangled Media's motion for summary judgment on the Dropbox's failure to provide notice affirmative defense is unopposed. The Court therefore grants summary judgment on this defense.

### 6. Entangled Media's motion for summary judgment on Dropbox's lack of standing defense is granted.

Entangled Media also moves for summary judgment on Dropbox's affirmative defense based on lack of standing.

#### a. Drew is not a co-owner of the patents.

In arguing that it should be allowed to proceed with its lack of standing defense, Dropbox first argues that if it is successful in its inventorship defense, Entangled Media will lack statutory

---

[7] The cases that Entangled Media cites in support of its argument do not so clearly speak to the issue and do not bind this Court. *See Wilco Marsh Buggies & Draglines, Inc. v. Weeks Marine, Inc.*, No. CV 20-3135, 2023 WL 4624744, at *3 (E.D. La. July 19, 2023); *Altera Corp. v. PACT XPP Techs.*, AG, No. 14-CV-02868-JD, 2015 WL 3830982, at *3 (N.D. Cal. June 19, 2015) (motion to compel order); *Graham Packaging Co. v. Ring Container Techs.*, LLC, No. 3:23-cv-110-RGJ-RSE, 2025 WL 978220, at *5 (W.D. Ky. March 31, 2025) (motion to dismiss order).

United States District Court
Northern District of California

standing because co-inventor Drew has not consented to or joined this lawsuit. But "[a]n action for infringement must join as plaintiffs all *co-owners*." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d at 1467 (emphasis added). "[I]nventorship and ownership are separate issues." *Beech Aircraft Corp. v. Edo Corp.,* 990 F.2d 1237, 1248 (Fed.Cir.1993). "[I]nventorship is a question of who actually invented the subject matter claimed in a patent." *Id.* "Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property." *Id.* (citing 35 U.S.C. § 261). Accordingly, the operative question is whether there is a genuine dispute of material fact over Drew is a co-owner.

Dropbox argues that there is no evidence that Drew, as an alleged co-inventor, forfeited his intellectual property rights. *See id.* at 1248 ("[T]he patent right initially vests in the inventor."). Dropbox specifically takes issue with the fact that Entangled Media was unable to produce an "executed version of any non-disclosure agreement, employment agreement, consulting agreement, or termination agreement signed by [ ] Drew." But Dropbox ignores the July 14, 2010 Stock Purchase Agreement signed by Drew in which Drew transferred to Entangled Media "any and all right, title and interest the Purchaser has in the Company's business and any Intellectual Property … related to the Company's business," including any patents which Drew jointly conceived or developed. *See* Dkt. No. 241-17, at 2. Dropbox does not mention the Stock Purchase Agreement at all, let alone argue that the Stock Purchase Agreement does not assign any rights Drew might have had to Entangled Media, such that he is not a co-owner whose participation in this litigation is required.[8]

The plain terms of the Stock Purchase Agreement show that Drew transferred his ownership rights. Thus, even if Drew is found to be a co-*inventor*, he is not a co-*owner* of the patents. Accordingly, Drew's failure to consent to or join this suit poses no bar to Entangled Media's statutory standing.

---

[8] This case is unlike *Advanced Video Techs. LLC v. HTC Corp.*, 879 F.3d 1314, 1317 (Fed. Cir. 2018), in which the Federal Circuit held that contract language promising that an inventor "*will* assign" her right, title, and interest in any inventions did not create an immediate assignment. Here, the executed agreement between Drew and Entangled Media expressly "transfer[red] and assign[ed]" Drew's patent rights, titles, and interests to Entangled Media such that the assignment was immediately executed.

**b.    Chisum does not possess substantial rights to the patents.**

Dropbox argues that Chisum and Entangled Media entered into a security agreement that transferred away Entangled Media's substantial rights to the patents, divesting Entangled Media of its right to bring suit without Chisum's presence as a party.

"[T]he critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019). The court examines the "'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent." *Id.*

In support of its argument that Chisum's presence is required, Dropbox points to the fact that security agreement (1) requires Chisum's written consent for Entangled Media to sell, transfer, or assign the patents; (2) contains a warranty from Entangled Media that it "has not engaged, and will not engage, in any business or activities other than the ownership of the [p]atents" and enforcing the patents through litigation; and (3) grants Chisum possession of the patents if Entangled Media defaults on the security agreement. Dropbox also cites the recitals of the security agreement which state that Entangled Media "will fully cooperate with" Chisum in litigation related to the patents, Dkt. No. 313-2, at 1; and a definition in the security agreement which suggests that Chisum may consult on settlement negotiations, *id.* at 6.

Notwithstanding these provisions, the specific covenants of the security agreement make clear that Chisum "has no right to bring any action or proceeding with respect to the Patents. At all times, [Entangled Media] maintains the exclusive right to bring suit to enforce the Patents." *See* Dkt. No. 313-2 at 21. "Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee." *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010). The express terms of the agreement also make clear that Entangled Media retains control of any litigation to enforce the patents and the right to license the patents. *See* Dkt No. 313-2 at 16, 18, 19, 20. "Such a broad right to decide whether to bring suit and to control litigation is thoroughly inconsistent with an assignment of the patents-in-suit." *Id.* at 1362.

34

United States District Court
Northern District of California

In considering whether substantial rights in the patent have been transferred via agreement, the "two salient substantial rights are enforcement and alienation." *Lone Star Silicon Innovations LLC*, 925 F.3d at 1231. Enforcement—or the right to sue infringers—"stands at the top of the hierarchy of rights." *Vericool World LLC v. TemperPack Techs., Inc.*, 739 F. Supp. 3d 322, 336 (E.D. Va. 2024). As discussed above, the agreement contains no meaningful restrictions upon Entangled Media's enforcement rights and leaves Entangled Media with full control of its litigation. Chisum will only take possession of the patents in the speculative event that Entangled Media defaults on the security agreement.

"[A] restriction on alienation—a limitation on a transferee's ability to assign or license the patent—cuts strongly against a finding of substantial rights." *Vericool World LLC*, 739 F. Supp. 3d at 336 (citing *Lone Star*, 925 F.3d at 1231). While the agreement restricts Entangled Media's ability to sell, transfer, or assign the patents without Chisum's consent, Entangled Media retains control over licensing the patents. Accordingly, while Entangled Media's alienation rights are not absolute under the Security Agreement, they are not entirely foreclosed.

Lastly, a contract that "does not include the right to make, and the right to use, and the right to sell" does not confer "the whole patent-right." *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891). Here, neither Entangled Media nor Chisum possess the right to make, use, or sell the patented inventions. Accordingly, this factor is neutral. Because Entangled Media possesses the right to grant licenses, however, it ultimately retains the power over who may practice the patent.

In considering the totality of the Security Agreement, Entangled Media retains substantial rights under the patents. Accordingly, Chisum not being a party to this suit poses no bar to Entangled Media's statutory standing.

Because Dropbox has identified no ground other than the two already decided on which Entangled Media might be found to lack standing, Entangled Media's motion for summary judgment on Dropbox's standing defense is granted.

### 7. Entangled Media's motion for summary judgment on patent eligibility under 35 U.S.C. § 101 is denied.

Finally, Entangled Media asks the Court to grant summary judgment on patent eligibility

1    under 35 U.S.C. § 101, citing this Court's prior order denying Dropbox's motion to dismiss.

2    Entangled Media, however, has not properly presented that issue for resolution.

3        A party seeking summary judgment bears the initial burden of informing the court of the

4    basis for its motion and identifying those portions of the pleadings and discovery responses that

5    demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S.

6    317, 323 (1986). Here, Entangled Media did not identify any undisputed facts regarding patent

7    eligibility under 35 U.S.C. § 101. As Dropbox points out, the Court's order denying Dropbox's

8    motion to dismiss was not a final judgment. The Court merely held that "Entangled Media's

9    arguments are sufficient to preclude a finding of Section 101 ineligibility *at this time.*" *Entangled*

10   *Media, LLC,* 716 F. Supp. 3d at 828 (emphasis added). Because Entangled Media has not met its

11   initial burden to identify the absence of a genuine issue of material fact and instead rests its motion

12   solely only on the Court's order denying the motion to dismiss, Entangled Media's motion for

13   summary judgment on patent eligibility under 35 U.S.C. § 101 is denied.

**III.    Dropbox's motion to strike new infringement theories and to exclude testimony of Dr.
         Edwards is granted in part.**

16       Dropbox requests that the Court strike Entangled Media's "new theories" related to (1)

17   new accused products and (2) new infringement theories that it argues were not previously

18   disclosed in Entangled Media's infringement contentions. Dropbox also requests that the Court

19   exclude under Fed. R. Evid. 702 and 703 Dr. Edwards's opinions and testimony related to (1) his

20   "undisclosed and unreliable testing of the Accused Products" and (2) his next best non-infringing

21   alternative.

**A.    Dropbox's motion to strike the "undisclosed" infringement contentions in
        Edwards's report is granted in part.**

24       Patent Local Rule 3-1(b) requires "a party claiming patent infringement" to "serve on all

25   parties a 'Disclosure of Asserted Claims and Infringement Contentions'" that includes,

26   "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method,

27   act, or other instrumentality … of each opposing party of which the party is aware." "The purpose

28   of these disclosures is to require parties to crystallize their theories of the case early in the

United States District Court
Northern District of California

litigation so as to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Finjan, Inc. v Symantec Corp.*, No. 14-cv-02998, 2018 WL 620169, at *2 (N.D. Cal. Jan. 29, 2018). "[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Id.* "The dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *Id.* "If the theory is *new,* prejudice is inherent in the assertion of a new theory after discovery has closed." *Id.* (emphasis is original).

Dropbox argues first that Entangled Media did not disclose in its infringement contentions its theory that the icons distinguishing virtual and local files sometimes fail to appear and that this was sufficient to meet the "indistinguishable" element of the '338 Patent. Indeed, Entangled Media made no express reference to the missing icons theory in its contentions for this element and included only one relevant screenshot—a screenshot that actually *includes* the icons displaying and distinguishing virtual and local files. *See* Dkt. No. 166-3, at 57. Entangled Media relies on a separate screenshot without the icon in place that it argues put Netflix "on notice" of its theory. But this screenshot appears only in the infringement contention chart under the "accepting registration of multiple devices via the web-based system" element. *Id.* at 11. This is an entirely different claim element.

Patent Local Rule 3-1(c) expressly requires the claim infringement chart identify specifically "where and how *each limitation* of each asserted claim is found within each Accused Instrumentality." Because Entangled Media in no way indicated, either via screenshots or otherwise, that it would pursue an infringement theory for the "indistinguishable" element that was based on the icons not appearing in certain use cases, Dropbox was not put on fair notice of this theory. Accordingly, the Court grants Dropbox's motion to strike this undisclosed theory and Edwards's testimony regarding his testing of that theory.

Dropbox also seeks to exclude Entangled Media's joint/divided infringement theory as not disclosed in the infringement contentions. Entangled Media does not deny that it failed to include a joint/divided infringement theory in its infringement contentions, instead pointing to its operative complaint that includes the joint/divided infringement theory. But the standard for sufficient disclosure of an infringement theory is not whether the party states the theory in a pleading. *See, e.g.*, *Regents of Univ. of Cal. v. Affymetrix, Inc.*, No. 17-CV-01394-H-NLS, 2018 WL 4053318, at *2 (S.D. Cal. Aug. 24, 2018) ("In contrast to the more liberal policy for amending pleadings, 'the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction.'") (quoting *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017)); *ASUS Computer Int'l v. Round Rock Rsch.*, LLC, No. 3-12–CV–02099-JST(NC), 2014 WL 1463609, at *4 (N.D. Cal. Apr. 11, 2014) (finding that plaintiff "need[ed] to specifically include the [indirect infringement] theory" in the infringement contentions"). Notably, Entangled Media's final infringement contentions were served after the filing of the operative second amended complaint in which Entangled Media included the joint/divided infringement theory, but Entangled Media nonetheless excluded the joint/divided infringement theory from its final infringement contentions. Dropbox was thus not fairly on notice that Entangled Media was pursuing a joint/divided infringement theory. Dropbox's motion to strike that theory and Edwards's related testimony is therefore granted.

Finally, Dropbox asks the Court to strike Edwards's testimony related to two products that it alleges were not properly disclosed as accused products in the infringement contentions: (1) Dropbox Business Plus, and (2) Dropbox Essentials. Entangled Media's infringement contentions specify as accused products "Dropbox Plus, Family, Professional, Business (Standard, Advanced, Enterprise)" and "all versions and variations thereof…." Patent Local Rule 3-1(b) requires that the accused product "identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known." Although Entangled Media had knowledge of these unlisted products at the time of the operative infringement contentions, Dropbox was adequately on notice of these accused products because of

United States District Court
Northern District of California

1  the limited universe of Dropbox products. Importantly, the *only* two Dropbox products that are

2  "versions and variations" of those listed in the infringement contentions are Dropbox Business

3  Plus and Dropbox Essentials, both of which are advertised as containing all of the features of

4  another accused product (as well as certain additional features). Accordingly, the Court finds that

5  the products were adequately disclosed, and denies Dropbox motion to strike Edwards's testimony

6  on Dropbox Business Plus and Dropbox Essentials.

7       **B.**    **Dropbox's motion to exclude Edwards's opinions is granted in part.**

8       Dropbox asks the Court to exclude Edwards's testimony about his "testing" of the missing

9  visual icons. Although the Court has already struck Edwards's testimony regarding the missing

10  visual icons based on Entangled Media's failure to disclose that theory of infringement, it

11  addresses this separate argument for completeness.

12       Courts act as gatekeepers of expert testimony to ensure that such testimony is reliable and

13  relevant under Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

14  579, 597 (1993). Under Rule 702, expert testimony is permitted as long as "(a) the expert's

15  scientific, technical, or other specialized knowledge will help the trier of fact to understand the

16  evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

17  the testimony is the product of reliable principles and methods; and (d) the expert has reliably

18  applied the principles and methods to the facts of the case." *Id.* The proponent of expert testimony

19  has the burden of proving admissibility. *See In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d

20  892, 931 (N.D. Cal. 2017).

21       Dropbox argues that Edwards's testimony on the visual icon "testing" should be excluded

22  because he failed to disclose the methodology for that testing in his expert report. Entangled

23  Media responds that Edwards provided the required details by stating that he simply opened the

24  software on the device and screenshotted what was displayed. But if this in fact reflects Edwards's

25  methodology, it is not a proper subject of expert testimony. Expert testimony must be based on the

26  witness's "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. It requires no

27  specialized knowledge to open a software program on a device and observe the presence or

28  absence of icons, as Edwards purportedly did. Without more, this "testing" does not involve any

1    scientific, technical, or specialized knowledge that will help the trier of fact to understand the

2    evidence or to determine a fact in issue. Accordingly, the Court excludes Edwards's icon "testing"

3    as not the proper subject of expert testimony.

4          Dropbox also asks the Court to exclude Edwards's opinion about the next best

5    noninfringing alternative (NIA). The thrust of Dropbox's argument is that Edwards's opinion is

6    self-conflicting because it both says no NIA is acceptable and offers a NIA. Dropbox argues that

7    "it is unhelpful and confusing to a fact finder when Entangled Media's expert is alleging that his

8    own proposed NIA is not acceptable, particularly when there are NIAs that at least one party's

9    expert has opined are commercially acceptable." Dropbox also argues that Edwards's opinion is

10   conclusory, largely relying on the fact that Edwards does not explain why his NIA is better than

11   Dropbox's expert's NIAs.

12         The Court concludes that Edwards opinion is sufficiently supported by reasoning and facts

13   to be admissible. His opinion is not like those cited by Dropbox in which specific facts (such as

14   the precise monetary value of a property) are directly contrary to those underlying an expert's

15   opinions. *See, e.g.*, *Snyder v. Bank of Am.*, N.A., No. 15-CV-04228-KAW, 2020 WL 6462400, at

16   *6 (N.D. Cal. Nov. 3, 2020). Dropbox's critiques are more properly directed to cross-examination

17   and bear on the weight, rather than admissibility, of his opinions. Accordingly, Dropbox's motion

18   to exclude Edwards's expert opinion on the NIA is denied.

19   **IV.    The consolidated sealing motion is denied without prejudice.**

20         Finally, the parties have asked the Court to seal materials submitted in support of these

21   motions.

22         The public has a longstanding and well-recognized "right to inspect and copy public

23   records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns,*

24   *Inc.*, 435 U.S. 589, 597 (1978). Public access bolsters "understanding of the judicial process" and

25   "confidence in the administration of justice," and it provides a "measure of accountability" for

26   courts. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). There is

27   thus a "strong presumption in favor of access" to court records. *Kamakana v. City & Cnty. of*

28   *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

To overcome this strong presumption, a party who wishes to seal a court record must generally "articulate compelling reasons supported by specific factual findings ... that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (cleaned up). Sealing may be justified when "court files ... become a vehicle for improper purposes, such as ... to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179. But without more, the "fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation" does not merit sealing. *Id.* "Under this stringent standard," the Court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Auto Safety*, 809 F.3d at 1096–99 (cleaned up). Civil Local Rule 79-5(c)(1) and (f)(3) requires the party seeking to seal to provide "a specific statement" of the reasons for doing so, explaining the interests that warrant sealing and the injury that will otherwise result.

The parties seek to seal an excessive amount of material, including entire exhibits, overbroad portions of expert reports, and parts of the briefs themselves. The parties' omnibus sealing motion is denied without prejudice as overbroad. *See* Civ. L. R. 79-5(f)(6) ("[O]verly broad requests to seal may result in the denial of the motion."). The parties may submit a revised omnibus sealing motion within 10 days of this Order. Failure to limit proposed redactions to genuinely sensitive information will result in denial of the motion and an order requiring that all documents be filed on the public docket. Additionally, in any subsequent sealing motion, the parties are instructed to make "arguments specific to the portions of documents sought to be sealed." *See* Judge P. Casey Pitts Standing Order for Civil Cases 3. Blanket or generic statements are almost never sufficient. *See, e.g.*, *Apple Inc. v. Rivos, Inc.*, 2024 WL 748394 (N.D. Cal. Feb. 23, 2024).

## CONCLUSION

For the reasons explained herein, the Court grants Dropbox's motion for summary judgment of noninfringement of the '260 Patent but denies Dropbox's motion for summary judgment of noninfringement of the '338 Patent. The Court grants in part Entangled Media's motion for partial summary judgment as to Dropbox's standing, limitations on damages, and

failure to provide notice affirmative defenses. The Court grants in part Dropbox's motion to strike the declaration of Erik Caso. The Court grants in part Dropbox's motion to strike new infringement theories and exclude testimony of Dr. Edwards. The Court denies without prejudice the parties' omnibus sealing motion. The parties may submit a revised omnibus sealing motion within 10 days of this Order.

**IT IS SO ORDERED.**

Dated: August 13, 2025

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California