UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DROPBOX INC.,<br><br>    Defendant. | Case No. 23-cv-03264-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' MOTIONS TO EXCLUDE AND STRIKE THE OPINIONS OF EXPERTS**<br><br>Re: Dkt. No. 238, 240, 242, 247, 248, 249 |

This case involves a set of patents related to cloud-based file systems. These patents aim to overcome shortcomings of prior art methods for data synchronization by creating a virtual representation of data across devices through metadata indexing without requiring physical data replication across those devices. Plaintiff Entangled Media claims that defendant Dropbox Inc. infringes two of its patents: Entangled Media's asserted patents are U.S. Patent No. 8,296,338 ("the '338 Patent"), issued on October 23, 2012, and U.S. Patent No. 8,484,260 ("the '260 Patent"), a divisional application of the '338 Patent, issued on July 9, 2013. On August 13, 2025, the Court granted Dropbox's motion for summary judgement on the '260 Patent, finding no genuine dispute of material fact as to infringement.[1]

The parties now move to exclude and strike the opinions of various expert witnesses. For the reasons below, the motions are granted in part and denied in part.

---

[1] Because the Court previously granted Dropbox's motion for summary judgment as to infringement of the '260 patent, the Court will not address those portions of any motion to exclude that relate solely to that patent.

# LEGAL STANDARD

The admissibility of expert testimony in a civil proceeding is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Ninth Circuit has "interpreted Rule 702 to require that expert testimony ... be both relevant and reliable." *Barabin v. AsentJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (internal citations and quote marks omitted). Relevancy requires "the evidence ... logically advance a material aspect of the party's case." *Id.* (citation omitted). Reliability encompasses "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)). When a party challenges the reliability of an expert's methodology, courts apply the Rule's "preponderance standard" to decide whether "it is more likely than not the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. Advisory committee's note to 2023 amendment. *See also Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration.").

The role of the court is not to determine the "correctness of the expert's conclusions but the soundness of his methodology." *Id.* (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)). The court must "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it

would be helpful to a jury." *Id.* at 969–70. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. While testimony on an ultimate issue is not "per se improper[,] ... an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)) (emphasis omitted).

## ANALYSIS

### I. Entangled Media's Motions to Exclude

Entangled Media moves to exclude the opinions of Dropbox experts Dr. McDaniel, Mr. Martinez, and Dr. Gonsalves.

#### A. Dr. McDaniel

Dr. Patrick D. McDaniel is an expert retained by Dropbox to provide an opinion on certain claims of the contested patents and to respond to the opinions and statements in the report of Dr. George Edwards, Entangled Media's retained expert. Entangled Media does not challenge McDaniel's qualifications as an expert generally but argues that his opinions and testimony should be excluded for several other reasons. For the reasons below, Entangled Media's motion is denied.

##### 1. Dr. McDaniel's opinions regarding the "singular file system" term are not based on an improper claim construction.

Entangled Media claims that Dr. McDaniel's opinion is "based on an impermissible claim construction" and should be excluded. Dkt. 239-3, at 15 (citing *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006)). Specifically, Entangled Media argues that his opinion construes "local files"—which is a term used in the patents' definition of "singular file system"—to "contain all files across all devices." *Id.* at 17.

Dr. McDaniel's definition of a "local file" explicitly notes that that a local file on one device may not be "local" on another device. This definition is not inconsistent with the claim construction. A "singular file system" is a "[s]ystem wherein local and virtual files located across

3

more than one device appear in the same directories/folders."

Still, there are moments in Dr. McDaniel's report that stray close to the bounds of what is acceptable under the claim construction order. To the extent Dr. McDaniel offers any opinion at trial that *do* conflict with the Court's prior claims construction, such as by suggesting that no singular file system is present simply because, e.g., a folder that appears on two devices may include a particular file that is local on device one and virtual on device two, Entangled Media may object at that time.

### 2. Dr. McDaniel's non-infringement opinions were disclosed during discovery.

Entangled Media next claims that Dropbox disclosed new noninfringement theories in its expert reports and thus failed to satisfy Rule 26(e)(1)'s requirement for supplementation. Entangled Media claims that because none of these non-infringement theories were disclosed during discovery, the prejudice to them is "considerable and irreparable." Dkt. 239-3, at 20. It claims that Dropbox's Rule 30(b)(6) witness's deposition (which occurred on November 12, 2024) was incorporated into Dropbox's November 22, 2024, interrogatory response, which was served at the close of fact discovery. It argues that Dropbox "fails to explain why incorporating [the expert's] testimony after the close of discovery could somehow put Entangled Media on notice of its theories during discovery." *Id.* at 9–10.

Entangled Media again mischaracterizes the record. Nearly all of the theories at issue were provided in Dropbox's August 9, 2024, interrogatory responses or discussed by Dropbox's Rule 30(b)(6) witness during their deposition. In addition, all of the theories were offered in *response* to Entangle Media's expert opinions. These facts indicate that Entangled Media had sufficient opportunity to ask witnesses about the theories and develop them during discovery.

The purpose of discovery "is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). New legal theories raised shortly before discovery closes may prejudice a party where it lacks time to "formulate the discovery it need[s] on the[ ] new theor[y] and then to serve written discovery requests." *Corus Realty Holdings, Inc. v. Zillow*

4

*Grp., Inc.*, No. C18-0847JLR, 2020 WL 488545, at *9 (W.D. Wash. Jan. 30, 2020), *aff'd*, 860 F. App'x 728 (Fed. Cir. 2021). A party's failure to provide the disclosures required by Rule 26(e), however, may be excused if that failure was either substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

Entangled Media does not address the fact that many of the theories it seeks to exclude were provided in Dropbox's August 9, 2024, interrogatory responses. All of these non-infringement theories meet the requirements of Rule 26.

The theories raised by the Rule 30(b)(6) witness and incorporated into Dropbox's November 22 response were also sufficiently disclosed. Entangled Media claims that these disclosures occurred *after* "fact discovery had closed." This is incorrect. True, the parties stipulated to refrain from serving new discovery requests after September, two months before fact discovery had closed. But this was a limitation to which both parties agreed. *See Barton v. Delfgauw*, No. 3:21-CV-05610-DGE, 2025 WL 1707568, at *2 (W.D. Wash. June 18, 2025) (noting that a party cannot "simply disregard their own unambiguous stipulation by arguing they should be relieved of the consequences of their stipulation because they failed to diligently review it"). Additionally, Entangled fails to show that it was harmed by Dropbox's alleged omissions: It had the opportunity to depose the witness, and did so. *See Masimo Corp. v. Apple Inc.*, No. SACV2000048JVSJDEX, 2023 WL 2347393, at *6 (C.D. Cal. Feb. 9, 2023) (holding that the defendant's failure to disclose new expert theories after the close of fact discovery, in some cases for the first time in expert reports, was "harmless[]" in part because the plaintiffs "were able to conduct lengthy depositions of the relevant experts").[2]

Still, that leaves three non-infringement theories that were never disclosed: the doctrine of equivalents, the inconsistent single master meta index, and the PTAB arguments. None of these

---

[2] As to Entangled Media's claims regarding Dr. McDaniel's development of his non-infringing alternatives theories in consultation with Dropbox's Rule 30(b)(6) witness, the Court is again unconvinced. Dropbox properly identified their representative as a corporate witness months before the close of discovery and specifically identified them as a witness designated to testify on Dropbox's behalf regarding "all costs associated with the development" of the contested products and services. Dkt. 264-7, at 18. Entangled Media's failure to make specific requests of the witness during that deposition does not mean that Dropbox failed to comply with Rule 26's requirements.

1 theories will be struck.

2 Although several courts in this district have held that disclosure of non-infringement
3 theories during the expert rebuttal stage violates Rule 26(e)(1), *see Asia Vital Components Co. v.*
4 *Asetek Danmark A/S,* 377 F. Supp. 3d 990, 1004 (N.D. Cal. 2019), that is not what happened here.
5 Both the "Inconsistent Single Master Meta Index" and the "Doctrine of Equivalents" theories were
6 offered in *response* to the theories raised in Dr. Edward's expert report. Entangled Media cannot
7 show harm if their expert originally raised the theory and discussed it in depth. *See Sonos, Inc. v.*
8 *Google LLC*, No. C 20-06754 WHA, 2023 WL 2918751, at *6 (N.D. Cal. Apr. 12, 2023)
9 (declining to strike non-infringement theories because both sides' experts spoke to the alleged
10 infringement).

11 Finally, the PTAB proceeding referenced by Dr. McDaniel is not "new" for the purpose of
12 discovery. Instead, it is a piece of intrinsic evidence. *Protective Optics, Inc. v. Panoptx, Inc.*, 458
13 F. Supp. 2d 1053, 1056 (N.D. Cal. 2006) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d
14 1576, 1582 (Fed. Cir. 1996)). Interrogatories "serve an important purpose in helping discover facts
15 supporting the theories of the parties." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272,
16 1280 (Fed. Cir. 2012). A previously-known fact, however, need not be disclosed in response to an
17 interrogatory in order to support an expert's theory.

18 **B.     Martinez Report**

19 Christopher Martinez is a retained expert offered by Dropbox to provide an opinion
20 concerning the economic damages allegedly sustained by Entangled Media and to respond to the
21 opinions of Entangled Media's expert Stephen Holzen. Entangled Media does not challenge Mr.
22 Martinez's qualifications as an expert generally but argues that parts of his report should be struck.
23 Specifically, Entangled Media seeks to strike portions of the report that discuss non-infringing
24 alternatives ("NIA") "that were not adequately disclosed in Dropbox's interrogatory responses";
25 that discuss NIAs "without disclosing how they would be implemented in Dropbox's products or
26 establishing acceptability to Dropbox and its costumers[sic]"; and that rely on patent license and
27 purchase agreements that have not previously been established as "economically comparable."
28 Dkt. 237, at 1. Its motion is denied.

6

1      Much of Entangled Media's motion relies on the same theories in its motion to exclude Dr.
2 McDaniel's opinion. *See supra* I.A. The Court has addressed the contentions involving Dropbox's
3 Rule 30(b)(6) witness at length. *Id*. Entangled Media's argument that, at the time of the deposition
4 of that witness, "Dropbox had merely disclosed a cursory, laundry list of purported NIAs" without
5 providing "context" like the cost of implementation is, again, not convincing. Entangled Media
6 had access to Dropbox's designated expert, and it was Entangled Media's choice not to ask that
7 witness more pointed questions during the deposition. *See Masimo Corp.*, 2023 WL 2347393, at
8 \*6. True, Entangled Media did ask Dropbox to provide "all costs associated with the
9 implementation" of its NIAs. Exh. B, at 5. Dropbox finalized its supplementary response to the
10 interrogatory on August 9, 2024, three and a half months before close of fact discovery. It did not
11 include cost estimates or other details that Entangled had requested, though it did incorporate its
12 Rule30(b)(6) witness's testimony in its response. During those intervening months, Entangled
13 Media never challenged the response as deficient or attempted to clarify its contents.[3]

14      An expert who relies on comparable licenses must account for "the technological and
15 economic differences between them." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609
16 F.3d 1308, 1320 (Fed. Cir. 2010) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873
17 (Fed. Cir. 2010). That is exactly what Mr. Martinez did here: He accounted for the differences
18 between the agreements and determined that they were not, in fact, economically comparable.
19 Instead, he proffered the agreements as "valuable insight" for a "lump-sum structure" to which
20 Dropbox might agree. *Id*. Entangled Media's arguments for excluding his opinions on economic
21 licensing go to the weight, not admissibility, of Mr. Martinez's expert opinion. *See ActiveVideo*
22 *Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of
23 comparability of the [two] license agreements as well as any failure on the part of ActiveVideo's
24 expert to control for certain variables are factual issues best addressed by cross examination and
25 not by exclusion."); *see also Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC,

---

[3] Dropbox's responded to Entangled Media's legal arguments about the "laundry list NIAs" without employing the phrase Entangled used in its own briefing. To the extent that Entangled Media argues that Dropbox has therefore waived this issue, the Court rejects the argument.

7

2022 WL 21306657, at *33 (N.D. Cal. Oct. 4, 2022) ("[A]s long as [an expert's] opinions permit the jury to properly evaluate the differences between the previous and the hypothetical licenses, the degree of comparability is 'a factual issue best addressed through cross examination' rather than exclusion.") (citing *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020). Entangled Media is free to revisit its arguments about Mr. Martinez's testimony on cross-examination.

### C. Dr. Gonsalves

Dr. Gregory Gonsalves is an expert retained by Dropbox for the purpose of providing analysis and testimony about the prosecution of the '366 patent application. He is a patent attorney with a Ph.D. in Computer Engineering. For three years, he also worked for the U.S. Patent and Trademark Office ("PTO"), first as an attorney and later as a judge. Entangled Media does not challenge Dr. Gonsalves's qualifications as an expert but argues that, because his expert report offers "largely legal arguments under the cover of expert testimony," portions of it should be excluded. Dkt. 242, at 1. Specifically, it seeks to strike paragraphs 32, 76–80, and 136–176 from the report. For the reasons outlined below, paragraphs 166, 171, 175 and 176 are stricken from Dr. Gonsalves's expert report and he may not offer the testimony therein at trial.

#### 1. Paragraphs 32 and 76–80

Paragraph 32 generally describes "procedures by which patents may be invalidated … in a court proceeding" if those patents "should not have been issued." Dkt. 242-1, at 8. Entangled Media seeks to exclude paragraph 32 for providing "generalized testimony that insinuates the U.S. Patent Office does not do its job properly." Dkt. 242, at 5.

When determining whether a patent attorney's opinion is proper, courts examine whether the expert is offering a legal conclusion or merely applying a legal framework to the factual record. *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, No. CV 07-8108 FMO (SHX), 2014 WL 12586105, at *9 (C.D. Cal. Jan. 3, 2014). Merely acknowledging that patents are sometimes improperly issued and outlining the procedures by which patents may be invalidated even after they have been granted is not an improper insinuation. Instead, it falls within the scope of appropriate expert testimony for a patent attorney. Dr. Gonzalves may provide background

8

information on PTO procedures in order to discuss facts relating to the prosecution here. *See Alfred E. Mann Found. for Sci. Rsch*, 2014 WL 12586105, at *9 ("Given the complexity of patent litigation, courts have regularly permitted expert testimony by patent attorneys on a range of issues, including proceedings before the Patent and Trademark Office.") (quoting *Szoka v. Woodle*, No. C 02-5524 SI, 2004 WL 5512964, at *3 (N.D. Cal. June 7, 2004)). Entangled Media fails to provide cause to strike paragraph 32.

Paragraphs 76 through 80 describe the "duty of candor and good faith" for all patent applicants under the PTO rules. The paragraphs also include direct excerpts from the relevant regulations and a general discussion on PTO policies regarding applicants and their representatives. Entangled Media seeks to exclude these paragraphs on the basis that "the fact-finder will not benefit from Dr. Gonsalves's recitation of the applicable law." Dkt. 277, at 5. Because these paragraphs provide useful background information for Dr. Gonsalves's opinions, they also will not be excluded. *See Alfred E. Mann Found. for Sci. Rsch*, 2014 WL 12586105, at *9; *see also Shire Viropharma Inc. v. CSL Behring LLC*, No. CV 17-414, 2021 WL 1227097, at *18 (D. Del. Mar. 31, 2021) (noting that "PTO procedures are generally foreign to the average person and even to the average jurist" and declining to strike sections of an expert report discussing internal PTO processes and procedures).

### 2. Paragraphs 136–158

Paragraphs 136 through 157 describe inequitable conduct, an equitable defense to patent infringement. Specifically, they outline Dr. Gonsalves's understanding of the legal framework regarding that area of law.

"It is well-established that an expert witness may not explain the law to the jury." *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1031 (S.D. Cal. 2023) (citation omitted). But Dr. Gonsalves's report is offered, at least in part, to address the issue of inequitable conduct. Outlining the legal regulatory framework merely lays the foundation for his testimony. *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2037732, at *2 (N.D. Cal. May 12, 2008) ("[The] issue [of inequitable conduct] is for the judge, so no harm will be done in hearing out the legal regulatory framework supposedly behind the experts' testimony.")

9

1  If Dr. Gonsalves improperly instructs the jury on applicable law at trial, Entangled Media may
2  assert contemporaneous objections at that time. *Id*. ("To the extent the jury also hears the
3  testimony, curative instructions will eventually correct any misstatement of the law by the
4  experts.").

### 3. Paragraphs 158–176

Paragraphs 158 through 176 consist of Dr. Gonzalves's opinion that the recorded inventors of the patents at issue, Mr. Abraham and Mr. Caso, did not satisfy their duty to disclose. Dr. Gonzalves concludes that because "the evidence is consistent with [another inventor] having contributed to the conception" of at least part of the patent at issue, Mr. Abraham and Mr. Caso submitted false declarations during the patent filing process. Dkt. 242-1, at 50. Dr. Gonzalves then concludes that the filing of the false declaration was material and that there is no reasonable inference from Mr. Abraham and Mr. Caso's behavior other than an intent to deceive the PTO. Entangled Media challenges these paragraphs on the grounds that they are legal opinions that go to the ultimate issues of materiality, intent, and credibility in the case.

#### a. Materiality

Courts permit patent-law experts to testify to the materiality of patent-applicants' actions if that inquiry is undertaken from the perspective of the PTO. *Shire Viropharma Incorporated*, 2021 WL 1227097, at *30; *see also Therasense, Inc.*, 2008 WL 2037732, at *3 ("Some issues of materiality may be so independent of scientific complexity that even patent lawyers can understand them …. [therefore,] lawyers skilled in practice before the PTO and familiar with how the duty of candor works in practice should be allowed to opine on whether both should have been revealed to the PTO."). As a former administrative patent judge, Dr. Gonsalves has specialized knowledge about PTO procedures and what a patent examiner would have considered material in deciding whether to issue a patent. Dr. Gonsalves thus seeks to testify, from the perspective of the PTO, as to the materiality of the omission. This is permissible. If Dr. Gonsalves strays into impermissible territory while on the stand, Entangled Media may object at trial.

#### b. Intent

Generally, experts are not "allowed to speculate as to anyone's subjective intent or

knowledge." *Id*. at *4; *see also In re Tylenol (Acetaminophen) Mktg, Sales Prac. & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 295 n.27 (E.D. Pa. 2016) (collecting cases holding that expert witnesses are not permitted to testify regarding intent). Still, "while patent experts may not testify that they have divined a party's intent because they are not mind-readers, they may identify certain facts ... from the record to support an inference of a particular intent." *Pelican Int'l, Inc.*, 655 F. Supp. 3d at 1029 (internal quotations omitted).

Dr. Gonsalves expressly states that he does "not plan to opine on the intent to deceive the [PTO] by anyone involved in the prosecution of the Asserted Patents." Dkt. 242-1, at 51. Yet he also concludes that Caso and Abraham's actions "failed to show any reasonable inference … other than an intent to deceive the U.S. Patent & Trademark Office." *Id*. at 54. Dr. Gonsalves comes to that opinion after analyzing the patents' prosecution history and placing it in context of PTO procedures that require the disclosure of all inventors.

Dr. Gonsalves's opinion walks a narrow path between opining on subjective intent and identifying facts that could support a reasonable inference of intent based on the factual record. While he properly relies on certain facts to conclude that a reasonable inference of intent could be drawn, sections of his report cross the line. Specifically, paragraphs 166, 175, and 176—all of which state that, in Dr. Gonsalves's "opinion," Mr. Abraham and Mr. Caso fail to show any reasonable inference "other than intent to deceive"—are excluded.

### c.    Credibility

"[I]t is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *Bruce v. Terhune,* 376 F.3d 950, 957 (9th Cir. 2004) (internal quotations and citations omitted); *see also Ellis v. Navarro*, No. C 07-5126 SBA PR, 2012 WL 3580284, at *6 (N.D. Cal. Aug. 17, 2012) ("I]t is plain that [an expert] may not opine on whether another witness is credible."). Dr. Gonzalves may opine on what reasonable inferences may be drawn from the record evidence, but not on Mr. Caso's credibility. Therefore, Paragraph 171 is excluded.

## II.    Dropbox's Motions to Exclude

Dropbox moves to exclude the opinions of Entangled Media experts Dr. Savage, Mr.

Holzen, and Mr. Slifer.

### A. Dr. Savage

Dr. Scott J. Savage is a retained expert offered by Entangled Media to provide an opinion concerning damages suffered by the company for the alleged patent infringement. Dropbox does not challenge Savage's qualifications as an expert generally but argues that his opinions and testimony should be excluded for other reasons. Its motion is denied.

Damages contentions "serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1227 (N.D. Cal. 2019) (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)). "In determining whether to strike some or all of an expert report for failure to comply with the patent local rules, courts in this district have asked, '[W]ill striking the report result in not just a trial, but an overall litigation, that is more fair, or less?'" *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-CV-04738-WHO, 2025 WL 1918840, at *4 (N.D. Cal. July 11, 2025) (citing *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846–PSG, 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012)).

Dropbox argues that Entangled Media failed to give it enough notice that it would rely on a survey to support its damages theory. Entangled Media responds that it provided sufficient notice when it informed Dropbox of the possibility that it would use "survey analysis" as one of the income-based approaches in its damages calculation. Dkt. 262, at 4. Entangled Media did so twice, once when it served its original damage contention in January 2024 and once when it served its supplemental damages contention eight months later in August 2024.

Dropbox's reliance on *Looksmart* falls flat. There, the court considered whether to strike an expert report that failed to disclose a damage theory that the party later pursued. The court held that if a party's damage theory shifts in some material respect, that party is obligated to amend its damages contentions. *Looksmart Grp., Inc.*, 386 F. Supp. 3d at 1227. But here, there is no material shift because Entangled Media properly disclosed its damages theory twice. While Dropbox is correct that the recent amendments to Patent Local Rule 3-8 was done with the intent to "[r]equire greater specificity regarding damages theories," Entangled Media provides that specificity

12

elsewhere in its contentions. *See* Notice of Amended Patent Local Rules 3-2, 3-4, 3-8, & 3-9. Entangled Media explained that it was seeking reasonable royalty damages, explained in detail its basis for doing so, and included survey analysis as one of the possible income-based approaches it might use. Dropbox's attempt to apply a higher notice standard is unavailing.

Next Dropbox challenges the admissibility of the survey in two ways. First, it faults Dr. Savage for failing to determine whether the respondents in his survey ever paid for cloud storage or file-sharing services when using that survey to extrapolate a respondent's "willingness-to-pay" for the feature. Dkt. 249, at 2. Second, it challenges Dr. Savage's methodology as using an "arbitrary selection" of seven features that skewed the survey participants' responses. *Id*.

Neither of these are enough to find that the survey is inadmissible. The smart sync feature has been offered in unpaid Dropbox plans since 2022. Therefore, it is not unreliable for a survey expert to draw from both paying and non-paying users to understand what value they might place on the feature. Similarly, Dropbox's contention that the survey design "excludes important features" while "including an unimportant feature" is not enough to demonstrate unreliability. Dr. Savage explains the basis of his selection for the seven features. That is enough for this court to find that his methodology is sound and his opinion is reliable. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1048 (9th Cir. 2025) ("[T]he reliability test may be applied to an expert's reasoning process."). Dropbox may properly challenge Dr. Savage's survey design on cross-examination. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).

**B.    Mr. Holzen**

Mr. Holzen is an expert retained by Entangled Media to provide an analysis of damages suffered as a result of Dropbox's alleged patent infringement. Dropbox argues that Mr. Holzen's opinions should be stricken and excluded because he presents opinions based on theories that were not disclosed in Entangled Media's damages contentions and because his opinions are unreliable.[4] For the following reasons, Dropbox's motion is granted in part.

---

[4] Dropbox also argues that portions of Mr. Holzen's opinion should be struck because they are based on *other* unreliable expert opinions: Dr. Savage's survey and Dr. Edwards's testimony about "Business Plus" and "Essentials." Because the Court finds both to be admissible, the related portions of Mr. Holzen's opinion are also admissible.

13

Entangled Media's damage contentions included only one hypothetical negotiation date: January 2017. But Mr. Holzen's report uses two hypothetical negotiation dates, one in January 2017 and one in December 2015. Patent Local Rule 3-8 requires parties to disclose damages contentions early in patent cases. If the theories, factual support for those theories, or computations of damages change, then a party must supplement its disclosures. *Looksmart*, 386 F. Supp. 3d at 1232. Entangled does not dispute that it only included one hypothetical negotiation date in its damages contention, and that it failed to add its proposed December 2015 date to the amended contentions submitted eight months later. Because a hypothetical negotiation date is "essential for properly assessing damages," and because Entangled failed to provide one of the dates it relied on, Mr. Holzen's opinions regarding that date will be struck. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).

Dropbox also alleges that Mr. Holzen failed to apportion one of his royalty indicators, instead conflating the entire price increase to the asserted patents. Specifically, part of Mr. Holzen's damages calculation includes an estimated 44.6% price increase that he attributes to the Smart Sync product feature. Smart Sync utilizes multiple forms of technology, including some of the inventions in the asserted patent. Dropbox argues that Mr. Holzen failed to apportion his calculations because he attributed the entirety of the Smart Sync price increase to the asserted patents without making any further adjudgments.

"[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). "[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 4:17-CV-04405-HSG, 2021 WL 97544, at *3 (N.D. Cal. Jan. 12, 2021) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). The "entire market value rule" is an exception: If a patented feature "substantially creates the value of the component parts," then a patentee can receive damages based on the complete value of the accused products. *Id*. (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed.

14

Cir. 2011)).

Entangled Media argues that Mr. Holzen apportions the incremental profit driven by Smart Sync to the patented technology, but that is not what his report states. Entangled Media also claims that Mr. Holzen's calculations were based on the understanding that the asserted patents were "pillars" of the Smart Sync technology. Dkt. 261, 9. But Mr. Holzen provides "no analysis showing either that the allegedly infringing features … create the basis for all value of the [] platform or that they substantially create the value of the non-infringing portions of the [] platform." *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1115 (N.D. Cal. 2011). Therefore, Mr. Holzen's fourth royalty indicator will be struck.

### C.    Mr. Slifer

As explained above, Mr. Caso, Mr. Abraham, and a third inventor were all listed as inventors on the patent application, while the '338 Patent only lists Mr. Caso and Mr. Abraham as inventors. Dropbox retained expert witness Dr. Gonsalves concerning issues related to inequitable conduct and inventorship. After considering the relevant evidence as well as the Court's claim construction order, Dr. Gonsalves concluded that the third inventor should have been named on the '338 Patent. Entangled Media offers the opinions of Mr. Russel Slifer in rebuttal.

Mr. Slifer did not consider the Court's claim construction order when developing his expert opinion. For that reason, Dropbox moves to exclude Mr. Slifer's testimony concerning inventorship and inequitable conduct.[5] For the reasons that follow, Dropbox's motion is granted.

"[I]nventorship is a legal conclusion premised on underlying factual findings, and one that depends on claim construction…. Accordingly, who should be listed on the face of a patent may vary depending on what, exactly, is claimed and what, exactly, a court determines the claim scope to be." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020) (internal citations omitted).

Entangled Media does not dispute that Mr. Slifer did not consider the claim construction

---

[5] Dropbox also seeks to exclude Mr. Slifer's testimony because he purportedly failed to consider other relevant evidence. Because Mr. Slifer's failure to consider the Court's claims construction order is dispositive, it will not reach this issue.

order. Instead, it argues that his expertise does not require considering anything beyond the provisional patent application, which contains no claims at all. In addition, it argues that because his failure to consider the claim construction order goes to his opinion's weight and not its admissibility, this is an issue best left to cross-examination.

Mr. Slifer's failure to consider the court's claim construction order is fatal to his testimony. While it is true that the provisional patent application did not include any patent claims, the '338 Patent did. The issue of inventorship in this case is whether, after being named as an inventor on the provisional application, the third inventor also should have been named on the '338 Patent. As Dropbox points out, this requires understanding both parties' arguments regarding inventorship and the third inventor's contributions. It is impossible for Mr. Slifer to form a reliable basis for his opinion regarding inventorship without at least a basic understanding of what those inventions were. He cannot have that understanding without first considering the claim construction order.

Entangled Media next argues that Mr. Slifer's failure to consider the claim construction order goes to the weight of his testimony, not its admissibility. But an expert opinion must be based on a reliable application of principles and methods. *Engilis*, 151 F.4th at 1049. "Before the [2023] amendment, 'many courts' had erroneously held 'that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.'" *Id.* (citing Fed. R. Evid. 702 advisory committee's note to 2023 amendment). Both the amendment and this circuit's caselaw are clear: The district court must exercise its discretion to act as a gatekeeper and ensure that no expert opinion is omitted unless it is based on a reliable methodology. Only then may the weight of the testimony be challenged. As explained above, Mr. Slifer's opinion is not based on this Court's claim construction order. Therefore, it is inadmissible.

**IT IS SO ORDERED.**

Dated: November 20, 2025

P. Casey Pitts
United States District Judge

16