United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br>Plaintiff,<br>v.<br>DROPBOX INC.,<br>Defendant. | Case No. 5:23-cv-03264-PCP<br>**ORDER RESOLVING DEFENDANT'S PRETRIAL MOTION RE: PROSECUTION HISTORY ESTOPPEL**<br>Re: Dkt. No. 398 |

Plaintiff Entangled Media, LLC brings this action against defendant and cross-claimant Dropbox, Inc., alleging that Dropbox's products infringe Entangled Media's patent for a cloud-based file system to virtually unify remote and local files across a range of devices' file systems. Less than a month before trial, Dropbox filed a motion arguing that prosecution history estoppel bars Entangled from asserting the doctrine of equivalents with respect to the "indistinguishable" limitation of its patent's claims. Entangled argues that the motion is both procedurally improper and fails on the merits. For the reasons set forth herein, the Court agrees with Dropbox that prosecution history estoppel precludes Entangled from relying upon the doctrine of equivalents theory with respect to the "indistinguishable" limitation.

**BACKGROUND**

Entangled Media owns U.S. Patent No. 8,296,338 ("the '338 Patent"). *See Entangled Media, LLC v. Dropbox Inc.*, 716 F. Supp. 3d 819 (N.D. Cal. 2024). The '338 Patent was issued on October 23, 2012, and is titled "Method for a Cloud-Based Meta-File System to Virtually Unify Remote and Local Files Across a Range of Devices' Local File Systems." Dkt. No. 19-1, '338 Patent, at 2. The claims generally relate to "a system and method for using data virtualization coupled with a cloud-based file system that is shared among devices and integrated into the device

operating system so as to unify the representation of files across devices for availability of and access to data across multiple devices a user might own.” ’338 Patent at 1:20–25. Claim one of the ‘338 Patent recites:

> A process for establishing a singular file system across multiple devices comprising:
>
> receiving user information to open an account for establishing a singular file system across multiple devices via a web-based system that includes at least one server;
>
> installing an individual software client on each of the multiple devices via the web based system;
>
> accepting registration of multiple devices via the web based system;
>
> Scanning each of the multiple devices by each of the individual software clients to inventory data on each of the multiple devices and create a meta-index of the files for the inventoried data;
>
> providing by the individual software clients via the multiple devices individual meta-indices of the inventoried data for each of the multiple devices to the at least one server;
>
> integrating by the at least one server the individual meta indices to create a single master meta index;
>
> providing by the at least one server the single master meta index and meta-indices for each of the other multiple devices to each of the multiple devices via the individual software clients;
>
> integrating metadata from the meta-indices of each of the other multiple devices into a local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system, *the virtual files indistinguishable from the local files by the local file system at each of the multiple devices*; and
>
> continually updating the single master meta-index on the at least one server and each of the multiple devices in response to changes to the data indexed thereon,
>
> wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the single meta-data index by modifying file systems of each of the multiple

> devices to include virtual files for data from the single metadata index that is not local to a multiple device.

(emphasis added). The Court previously construed the "indistinguishable" element in Claim 1 to cover "not only how the virtual and local files are acted upon, operated upon, or treated by the local file system, but also how they 'appear,' which goes to presentation." *Entangled Media, LLC v. Dropbox Inc.*, 747 F. Supp. 3d 1290, 1313 (N.D. Cal. 2024) ("*Claims Construction Order*").

Claim 1 did not always contain the "indistinguishable" element. Instead, it was added during the patent prosecution process. Entangled submitted the '338 Patent for consideration on May 5, 2010. While the original Claim 1 lacked the indistinguishability element at issue, related language could be found elsewhere in the patent. The original language of Claim 6 was as follows:

> The process according to claim 5, wherein the individual software clients facilitate creation of a visual representation of the virtual files on a remote one of each of the multiple devices *that is indistinguishable from a visual representation of an actual file* that is located on a local one of the multiple devices.

And the original language of Claim 5, which Claim 6 referenced, was as follows:

> The process according to claim 1**,** wherein the individual software clients facilitate storage of the data within each of the multiple devices in accordance with the meta-data by modifying file systems of each of the multiple devices to include virtual files for data from the single meta-data index that is not local to a multiple device.

(emphasis added). The U.S. Patent and Trademark Office rejected Claim 1 under 35 U.S.C. § 103(a) as being unpatentable over Vesper (U.S. 2011/0110568) in view of Wills (U.S. 2012/0079117). It rejected Claims 5 and 6 under 35 U.S.C. § 103(a) as being unpatentable over Vesper in view of Wills and further in view of Ben-Shaul (U.S. 2011/0231844).

The USPTO rejected Claim 1 because "Vesper disclose[d] substantially of the elements, a process for establishing a singular file system across multiple devices," and because "[i]t would have been obvious to one having ordinary skill in the art at the time the invention was made to scan and index data stored in a plurality of different devices as shown by Wills in Vesper."

In its explanation for rejecting Claim 5, the examiner noted that the combination of Vesper and Wills disclosed substantially all of the elements of Claim 1, "except wherein the individual

software clients facilitate storage of the data within each of the multiple devices … by modifying file systems of each of the multiple devices to include virtual files for data … not local to a multiple device." The examiner reasoned that Ben-Shaul bridges the prior art gap by teaching that the metadata information for a particular virtual disk may include "unique[] indentifie[rs]" that distinguish a virtual disk and its paired computing device. Therefore, the patent examiner concluded that it would have been obvious to a person having ordinary skill in the art at the time the invention was made "to use a device identifier that uniquely identifies a particular computing device that stores the disk content of that particular virtual disk; and any other data associated with the particular virtual disk and/or the particular computing device."

Claim 6 was rejected because Vesper and Wills disclosed substantially all the elements, "except where the individual software client create a visual representation of the virtual file on a remote one of each of the multiple devices that is indistinguishable from a visual representation of an actual file that is located on a local one of the multiple devices." The examiner again cited Ben-Shaul as a way to close the prior art gap, concluding that Ben-Shaul teaches a set of images that collectively represent data that is stored at a particular computing device. For example, virtual disk 112a stores a set of images representing data from computing device 130a, while virtual disk 112b stores a set of images representing data from computing device 130b.

In response to all three rejections, Entangled amended Claim 1 of the '338 patent to require virtual files "indistinguishable from the local files by the local file system." It did not alter either Claim 5 or Claim 6.

After the Court issued its ruling on claims construction, Dropbox moved for summary judgment, focusing on the "indistinguishable" element and arguing that no reasonable jury could find that its products infringe the '338 Patent because the files in the accused Dropbox products are distinguishable to both the user and the local file system. *Claims Construction Order*, 795 F. Supp. 3d at 1208. First, Dropbox pointed to the fact that the presence of certain markers on the icons of its files (a green checkmark) demonstrates to a user whether the file is local or virtual. While that checkmark precluded a finding of literal infringement, the Court accepted Entangled's argument that there was a genuine issue of material fact as to whether Dropbox infringes under the

doctrine of equivalents. *Id.* at 1209–13. Dropbox separately argued that its products do not meet the indistinguishable to the local file system" requirement because the local file system detects which files are virtual when the software seeks to "hydrate" the files by looking to the files' "nodes." These nodes, Dropbox argued, are necessarily distinguishable to the local file system. But Entangled provided evidence that would permit a jury to conclude that nodes exist on each file, such that having a node does not automatically tell the local file system whether a file is local or virtual. Entangled also provided evidence that the hydration of the virtual file by the Dropbox software allows the file to be accessed by the local file system regardless of any reading of nodes. The Court thus determined that there was a genuine dispute of a material fact as to whether the "indistinguishable to the file system" requirement is infringed both literally and via the doctrine of equivalents. *Id.* at 1213, 1214.

Dropbox now argues that prosecution history estoppel prevents Entangle from asserting any doctrine of equivalency theory as to the "indistinguishable" element.

**LEGAL STANDARD**

Under the doctrine of equivalents, "a product or process that does not literally infringe [ ] the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Werner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). "[A]n element in the accused [product] is equivalent to a claim limitation if it performs substantially the same function in substantially the same way to obtain substantially the same result." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citation omitted). But the doctrine of equivalents must be narrowly applied. "[A]llow[ing] [it] broad play" could "eliminate" each individual element of a claim. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

"[P]rosecution history estoppel [acts] as a legal limitation on the doctrine of equivalents." *Id*. at 31. The doctrine "prevents a patent owner from recapturing with the doctrine of equivalents subject matter surrendered to acquire the patent." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,* 523 F.3d 1304, 1312 (Fed. Cir. 2008) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushiki,* 344 F.3d 1359, 1365 (Fed. Cir. 2003) (*Festo IX*) (en banc)). Estoppel can be triggered either by making a narrowing amendment to the claim (amendment-based estoppel) or by surrendering claim scope through argument during the patent examination process (argument-based estoppel). *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019) (citing *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006)). If a patentee narrows her claims through amendment, she is presumed to have disclaimed the territory between the original and amended claim. *Id*.

The presumption of amendment-based estoppel may be overcome if the patent owner shows that the equivalent was unforeseeable at the time of the application; that the rationale underlying the amendment was only tangentially related to the equivalent in question; or that there is some other reason suggesting that the patentee could not reasonably be expected to describe the insubstantial substitute in question. *Id*. (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740–41 (2002) (*Festo VIII*)). If "the reason for the narrowing amendment was peripheral … to the alleged equivalent," then it is tangential. *Festo IX*, 344 F.3d at 1365. But "an amendment made to avoid prior art that contains the equivalent in question is not tangential." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005) (citation omitted). The Federal Circuit has emphasized that "[t]he tangential relation exception is very narrow." *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1358 (Fed. Cir. 2013) (citation omitted).

Like claim construction, prosecution history estoppel presents a legal question. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 975 (Fed. Cir. 2018) (citation omitted). Indeed, the two are intimately related. Both rely on a close examination of the patent prosecution process. *See Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019) ("The specification and prosecution history are important to interpreting the claim language."); *see also Festo VIII*, 535 U.S. at 733 ("Estoppel is a 'rule of patent construction' that ensures that claims are interpreted by reference to those 'that have been cancelled or rejected.'" (quoting *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220–221 (1940)). Accordingly, once the claims have been construed and the doctrine of equivalents invoked, the court must consider the legal question of whether the prosecution history estops the patentee from

United States District Court
Northern District of California

relying upon that doctrine.

## ANALYSIS

As noted above, Entangled contends both that Dropbox's motion is procedurally improper and that it fails on its merits. Neither argument succeeds.

### I. Dropbox is not procedurally barred from raising amendment-based estoppel.

In opposing Dropbox's motion, Entangled primarily argues that it will be prejudiced by the Court's consideration of amendment-based estoppel on the eve of trial because Dropbox never disclosed its intention to pursue such a theory and, as a result, Entangled was deprived "of a full and fair opportunity to develop a full factual record."

Contrary to Entangled's representations, Entangled was on notice that Dropbox might pursue an amendment-based estoppel theory. Dropbox expressly pleaded prosecution history estoppel as a defense to the '338 patent. Dkt. 150, 22. It also invoked that theory twice in its interrogatory responses and again in its invalidity contentions.

Entangled argues that Dropbox's responses provided Entangled with notice of only an argument-based estoppel theory because Dropbox stated that the defense was "based on the patent applicant's statements, arguments, and acquiesce." In Entangled's view, an applicant's "statements, arguments, and acquiescence" are relevant only to an *argument*-based estoppel theory, and not to an amendment-based one. In fact, however, amendment-based estoppel can also involve the patent applicant's statements and arguments. *See Pharma Tech Solutions, Inc.*, 942 F.3d at 1381 (relying on "inventors' clear statements" to find both argument- and amendment-based estoppel). Regardless, the Court cannot conclude on the basis of Dropbox's ambiguous interrogatory response that it consciously waived its right to pursue an amendment-based theory of prosecution history estoppel. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012) ("Waiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)).

Further, Dropbox never expressly limited its prosecution history defense to argument-based estoppel. To the contrary, one of its expert witnesses (1) identified that the applicant amended Claim 1 in response to the office action, (2) acknowledged the legal standard for

amendment-based prosecution history estoppel, and (3) noted that the patent's indistinguishability element "was confirmed during prosecution." This was sufficient for Entangled to be on notice that Dropbox might raise an amendment-based prosecution history estoppel claim focused on the indistinguishability element. *See also Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005) ("Failure to raise an affirmative defense by responsive pleading does not always result in waiver. The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond.").

In any event, Entangled suffered no prejudice with respect to its ability to respond to Dropbox's motion as a result of Dropbox's failure to raise the issue at an earlier point in the litigation. Indeed, during the hearing on this motion, Entangled was asked to identify the specific facts it would have sought to develop had it received earlier notice, but Entangled failed to do so. This is perhaps because, as the Federal Circuit has explained, "[w]hether the tangential exception applies is a question of law, and a patentee seeking to use the exception must base his arguments solely upon the public record of the patent's prosecution." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1331 (Fed. Cir. 2019) (citations omitted).

While the Court *may* consider evidence in considering prosecution history estoppel, *requiring* it to do so would transform that inquiry into a mixed question of law and fact. The Federal Circuit has confirmed that courts are free to resolve that question without expert testimony when the intrinsic evidence speaks for itself. *See Festo IX*, 344 F.3d at 1369; *see also Hitkansut LLC v. United States*, 114 Fed. Cl. 410, 428 (2013) ("No extrinsic evidence is necessary for resolution of claim construction.").[1] In *Bayer AG v. Elan Pharm. Rsch. Corp.*, for example, the

[1] Entangled asserts that it is prejudiced by not being able to fully litigate foreseeability, but it did not argue foreseeability in its opposition to Dropbox's motion. Instead, it merely stated in a footnote that it "reserves all arguments on the foreseeability exception." "The summary mention of an issue in a footnote, without reasoning in support of the party's argument, is insufficient to raise the issue." *Complete Med. Sales, Inc. v. Genoray Am., Inc.*, No. 21-56390, 2023 WL 142546, at *3 (9th Cir. Jan. 10, 2023) (citing *United States v. Strong*, 489 F.3d 1055, 1060 n.4 (9th Cir. 2007)). And in any event, while "objective unforeseeability depends on underlying factual issues," a district court is not required to develop extrinsic evidence to resolve those issues. *Festo IX*, 344 F.3d at 1369. Instead, it "*may* hear expert testimony … relating to the relevant factual inquiries." *Id*. "[W]here the technology involved is easily understandable, expert testimony is not required." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010) (considering whether expert of

district court relied on the prosecution history of the patent in question to determine that Bayer had surrendered any claim under the doctrine of equivalents. Bayer appealed, arguing that the district court erred when it failed to address the factual question of what a "reasonable competitor" would conclude from reviewing the patent prosecution history. *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1251 (2000). The Federal Circuit affirmed the district court's approach, reasoning that requiring prosecution history estoppel to be resolved as a question of fact "would hamper the promotion of uniformity by binding this court to the deference required with respect to fact findings at the trial level." *Id.* at 1254. Instead, it explained, "[expert] testimony is only a tool, which the judge can use at his or her discretion, to aid in the legal determination of prosecution history estoppel." *Id.*

Because the Court concludes below that Dropbox's motion can be resolved on the basis of the intrinsic record alone and Entangled has not identified any further facts that would bear upon that analysis, Entangled cannot show any prejudice from not having an opportunity to develop an extrinsic factual record on the issue.

Finally, Entangled argues that Dropbox's motion constitutes an improper motion for summary judgement raised long after the deadline for such motions passed. Although the current procedural posture may mean that a ruling precluding Entangled from invoking the doctrine of equivalents would ultimately require judgment in Dropbox's favor, Dropbox does not ask the Court to grant judgment in its motion. Instead, it simply asks the Court to decide whether Entangled may invoke the doctrine at trial. Absent waiver, the Court will have to address Dropbox's argument at some point. *See e.g.*, *Colibri Heart Valve LLC v. Medtronic CoreValve, LLC*, No. 2023-2153, 2025 WL 2013690 (Fed. Cir. July 18, 2025) (finding no waiver where Medtronic had not invoked prosecution history estoppel in its pretrial briefing but subsequently

---

ordinary skill in the art was necessary to resolve obviousness defense); *see also Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1357 (Fed. Cir. 2003) (evaluating unforeseeability defense on the intrinsic record only). Finally, to invoke unforeseeability, a patentee must show that an alleged equivalent was unforeseeable at the time of amendment, typically because the equivalent involves newly-developed technology or technology not known in the relevant art. *Festo IX*, 344 F.3d at 1369. Here, the prior art explicitly disclosed visual distinguishability, as Entangled's own description of the patent acknowledged.

raised it under Rules 50(b) and 59). Given the purely legal nature of the inquiry and the fact that the Court's consideration of the matter does not turn on any disputed factual issues, it is far more efficient to resolve the issue at this time rather than after the trial has commenced. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

**II. Amendment-based estoppel precludes Entangled from relying upon the doctrine of equivalents with respect to the indistinguishability element.**

Entangled does not dispute that the amendment adding "indistinguishable" to the patent was narrowing and made for a substantial reason relating to patentability. Accordingly, Entangled is presumed to have disclaimed the territory between the original patent's language (which did not require indistinguishability) and the amended patent's language (which does). *Pharma Tech Sols., Inc.*, 942 F.3d at 1380. Entangled asserts, however, that it can overcome that presumption because the tangential relation applies with respect to indistinguishability to the user.

In arguing that user indistinguishability was tangential to its amendment, Entangled contends that the rejection and amendment focused entirely on "centralized versus distributed architecture" rather than "display or file identification." For support, it relies on remarks accompanying its resubmitted claim in which the patent applicants argued that Ben-Shaul stored device disk images in a central data center while Entangled's claimed invention involved virtual personal disks of computing devices that were distributed across other computing devices.

Entangled is correct that the amendment was made at least in part to differentiate its invention from the prior art's file system architecture. But the language of the amendment it made to secure patentability was not limited to that issue. Instead, Entangled amended Claim 1 to provide that its invention generated "*virtual files indistinguishable from the local files*." (emphasis added). As the Court previously explained in construing (at Entangled's request) the term "indistinguishable," "A straightforward reading of 'indistinguishability' in light of both the claim language and specification plausibly covers not only how the virtual and local files are acted upon, operated upon, or treated by the local file system, but also how they 'appear,' which goes to

presentation." *Claims Construction Order*, 747 F. Supp. at 1313.[2] The amendment made to secure patentability thus addressed both visual distinguishability and file system distinguishability.

Even if the applicants' amendment was arguably narrower than necessary, that does not rebut the presumption that its purpose was to secure patentability. *Integrated Technology Corp.*, 734 F.3d at 1358; *see also Bayer AG*, 212 F.3d at 1252 (concluding that "unmistakable assertions" made by the applicant during the prosecution history can preclude a doctrine of equivalency argument whether or not the assertion was required to secure the allowance of the claim). The Court "need not resolve the question of why [Entangled] amended its claims and whether its reasons related to patentability because it is clear that, regardless of why it amended its claims, when it did so it unmistakably surrendered coverage." *Id*. at 1252; *see also Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1359 (Fed. Cir. 2006) (where the PTO record did not reveal a reason for amendment, the court should presume that amendment was because of a substantial reason related to patentability) (citing *Warner-Jenkins*, 520 U.S. at 32–33). Entangled does not, and cannot, show that the patent prosecution history supplies any *other* reason for the amendment. Given that Entangled added the "indistinguishable" limitation to Claim 1 in order to secure patentability, it disclaimed systems in which virtual and local files are distinguishable.

At its core, Entangled's tangentiality argument focuses not on the indistinguishable element itself but on one aspect of this Court's construction of that limitation (which, again, was undertaken at Entangled's request): the requirement that files be indistinguishable *to the user*. The Court is aware of no authority suggesting that prosecution history estoppel can be applied to a particular limitation only in part. To the contrary, the Federal Circuit's cases generally apply such estoppel to the amended patent's limitations as a whole. But even if the Court were to look to the patent prosecution history's consideration of visual indistinguishability (as opposed to file system indistinguishability), Entanged would still not be able to overcome the presumption that it disclaimed both visual and file system distinguishability in amending Claim 1 because both the

[2] Dropbox did not seek construction of the term "indistinguishable," instead arguing that its plain and ordinary meaning should apply. *Claims Construction Order*, 747 F.Supp.3d at 1301.

patent examiner and Entangled addressed visual distinguishability therein.

The treatment of Claim 6 is particularly relevant. In rejecting rejection to Claim 6, the patent examiner reasoned that the combination of Vesper and Wills disclosed substantially all the elements except the visual element and then cited Ben-Shaul to bridge the prior art gap and address the visual element, concluding that Ben-Shaul "teaches a set of images that collectively represents data that is stored at a particular computing device." In their response, Entangled referenced the visual distinguishability of the system taught by Ben-Shaul, noting that "each virtual personal disk is a set of images that collectively *represents* data that is stored at a *particular* computing device," then discussed Ben-Shaul's file system architecture. While the applicants' remarks focused on Ben-Shaul's file system architecture, that architecture necessarily relied on distinguishing between the different virtual disks within it. In their response to the rejection of Claims 5 and 6, the applicants focused on Ben-Shaul's description of a desktop delivery system where multiple computing devices were connected to a single data center. The applicants noted that the Ben-Shaul patent teaches that the centralized data center includes a separate virtual disk for each computing device. By associating certain metadata information with each particular virtual disk, the central data center could identify which computing device was associated with that particular virtual disk.[3] Given that the system was designed to allow IT departments to manage multiple discrete devices, Ben-Shaul necessarily required visually distinguishing each virtual disk so that it could be paired with its associated computing device. That representation enabled the prior art to store and manage each device's virtual disk even though all devices' disks existed in the centralized data center.

Entangled insists that neither Ben-Shaul nor the applicants mentioned anything about "user-visible appearance, file-system identifiers, visual indicators, or nodes." Even accepting Entangled's argument, Entangled fails to explain why it amended its claim in response to the examiner's rejection under the prior art to include the indistinguishability requirement. And while

[3] *See Westcott v. United States*, 42 Fed. Cl. 202, 213 (1998) (noting that a court "may choose to examine prior art cited in the [prosecution history].").

the examiner may have misinterpreted Ben-Shaul's in reading a visual indistinguishability element into the prior art that was not there, "[i]t is the patentee's response to a rejection—not the examiner's ultimate allowance of a claim—that gives rise to prosecution history estoppel." *Cf. Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1182–83 (Fed. Cir. 2009). As noted above, the applicants specifically referenced Ben-Shaul in their remarks, emphasizing their amendment to require "virtual files indistinguishable from the local files," and submitted that the proposed combined teachings of Vesper, Wills, and Ben-Shaul failed to suggest the recited limitation that included the newly added indistinguishable element. The patent examiner accepted that argument and granted the patent on that basis.

Accordingly, Entangled cannot establish that the tangential relation doctrine applies to any aspect of the "indistinguishable" limitation of Claim 1 and cannot invoke the doctrine of equivalents to assert infringement of the indistinguishability limitation at trial.

## CONCLUSION

For the foregoing reasons, Entangled cannot rebut the presumption that, in amending its patent to include the "indistinguishable" element, it surrendered all equivalents between the original and amended language. It therefore cannot invoke the doctrine of equivalents as to the "indistinguishable" claim. Because the Court's prior summary judgment order precludes Entangled from establishing literal infringement of the indistinguishable element with respect to user indistinguishability, it appears that Entangled cannot possibly establish infringement of the '338 patent. The Court therefore vacates the final pretrial conference scheduled for September 3, 2026, and the trial set for September 8, 2026. The Court will instead hold a further status conference on September 3, 2026. By no later than August 31, 2026, the parties shall submit a joint statement regarding the manner in which this case should proceed in light of the Court's ruling on Dropbox's motion.

The parties are also ordered to prepare and submit, by August 31, 2026, a joint sealing motion that consolidates all pending sealing motions. The joint motion shall include a table organizing all pending sealing requests by document. One consolidated copy of every document that contains material any party seeks to sealed shall be attached, as an individual exhibit, with a

United States District Court
Northern District of California

consistent highlighting scheme that indicates which party (or parties) seeks to seal which material. Each attached document shall also be listed as one row in the table in the consolidated motion with the following information in columns:

- Name and exhibit number of the document
- Material proposed to be sealed in the document (e.g., by highlight color/location)
- Legal standard that applies (i.e., good cause or compelling reasons)
- Party or parties seeking to seal the material
- If the Court has previously ruled on any request to seal the material, the Court's ruling (with a citation). If the Court has not, a brief summary of the rationale for sealing.
- The docket citation to the original sealing motion for the document.

The motion should not include any requests to seal another party's material if the party whose material is at issue has not timely opposed its filing on the public docket. The joint motion shall identify by docket number all pending motions that will be rendered moot by its filing and all documents provisionally filed under seal for which no party continues to seek sealing.

**IT IS SO ORDERED.**

Dated: August 24, 2026

P. Casey Pitts
United States District Judge