# EXHIBIT A

Anton "Tony" Handal (SBN 113812)
thandal@munckwilson.com
John E. Lord (SBN 216111)
jlord@munckwilson.com
Brent J. Lehman (SBN 282149)
blehman@munckwilson.com
Georgiana A. Nikias (SBN 283718)
gnikias@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 855-3311
Facsimile: (972) 628-3616

Alexander D. Jablonski (*Pro Hac Vice*)
ajablonski@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201
Telephone: (972) 628-3600

*Attorneys for Plaintiff*, Entangled Media, LLC

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br>Plaintiff,<br>v.<br>DROPBOX, INC.,<br>Defendant. | C.A. No. 5:23-cv-03264-PCP<br>**PLAINTIFF ENTANGLED MEDIA, LLC'S MOTION FOR RECONSIDERATION AND STAY OF ORDER**<br>Judge: Hon. P. Casey Pitts |

**<u>NOTICE OF MOTION AND MOTION FOR RECONSIDERATION AND STAY OF ORDER</u>**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Civil Local Rule 7-9 and the Court's Order Granting Defendants' Motion for Leave to File Motion for Reconsideration, Plaintiff Entangled Media, LLC ("Entangled") will and hereby does move the Court to reconsider its August 24, 2026 Order granting Dropbox's pretrial motion on prosecution history estoppel (the "PHE Order") (Dkt. No. 422). Specifically, Entangled seeks reconsideration of the PHE Order preventing Entangled from pursing a doctrine of equivalents claim regarding the "indistinguishability" "to the user" claim term found in the Court's construction of claim 1 of the '338 patent.

The Motion for Reconsideration and Stay of Order is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the attached Declarations of Drs. George Edwards and Jae Bang, and the pleadings and papers filed herein.

Dated: August 31, 2026

Respectfully submitted,

/s/ *John E. Lord*

Anton "Tony" N. Handal (SBN 113812)
thandal@munckwilson.com
John E. Lord (SBN 216111)
jlord@munckwilson.com
Brent J. Lehman (SBN 282149)
blehman@munckwilson.com
Georgiana A. Nikias (SBN 283718)
gnikias@munckwilson.com
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 855-3311
Facsimile: (972) 628-3616

Alexander D. Jablonski (*Pro Hac Vice*)
ajablonski@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201
Telephone: (972) 628-360

*Attorneys for Plaintiff* Entangled Media, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

"This court has broad discretion to reconsider and revise its prior orders." *Trazo v. Nestle USA, Inc.*, 113 F.Supp.3d 1047, 1048 (N.D. Cal. 2015) (granting motion for reconsideration).

Several factors exist that require the Court to reconsider its August 24, 2026 Order ("PHE Order," Dkt. No. 422) finding that Entangled Media is estopped from pursuing a doctrine of equivalents theory for the "indistinguishability to the user" element from the Court's construction of claim 1 of the '338 patent. Dropbox's prosecution history estoppel theory requires resolving several key factual issues that have yet to be presented to the trier of fact. There are four factual disputes that may not be decided summarily on the current record. Individually, each one requires vacating the PHE Order.

First, the trier of fact needs to weigh the evidence and resolve the factual dispute as to what transpired during prosecution and specifically the application of the Ben-Shaul reference which in part led to the amendment in the application. Exactly what Ben-Shaul's "images" and "identifiers" mean to a person of ordinary skill in the art in connection with asserted claims and prosecution history is an open factual question. Dropbox, without support, reads them as visual images to distinguish virtual disks to a user. Entangled presents evidence that a POSITA reading Ben-Shaul, and the prosecution history, would understand "a set of images" to refer to disk images, which are binary copies of a storage device's contents; not visual representations displayed to a user. Edwards Decl., ¶¶ 46-50; Bang Decl., ¶¶ 24-27. In the field of distributed computing and enterprise virtualization, "image" is a well-established term of art for a byte-for-byte snapshot of a storage volume. *Id.* That is a factual dispute about how a skilled artisan would understand a technical term, based upon the review of the intrinsic evidence.

Second, the trier of fact needs to weigh the evidence and resolve the factual dispute as to the rationale for why the applicant amended the claim to add "indistinguishability" to the file system. Dropbox suggests, without evidence, that the amendment concerned visual distinguishability, and argued Entangled had no explanation for why distinguishability was added. Entangled's position is that a POSITA would understand the objectively apparent reason for the amendment as architectural: to distinguish the claimed distributed-metadata system (in which each device integrates metadata into its

own file system to generate local virtual files) from Ben-Shaul's centralized architecture (in which all data resides at one data center and individual devices do not generate local virtual-file representations of other devices' data). Edwards Decl., ¶¶ 51-60. Critically, the phrase "indistinguishable from the local files by the local file system" describes the functional result of this distributed architecture, such that the amendment operates as a whole to address the objection. *Id.* A POSITA would understand the entire phrase to mean a single step of the process: "integrating metadata … to generate virtual files stored in the same locations as local files of the local file system *which results in* the virtual files being indistinguishable from the local files by a local file system …." *Id.* Therein lies a material factual dispute about the objectively apparent reason for the amendment, and Federal Circuit law requires that this raises material facts in dispute to be resolved with evidence, not by inference.

Third, the trier of fact needs to weigh the evidence and resolve the factual dispute as to whether Dropbox's specific technology, the use of visual file icons overlaying the screen as part of the graphical user interface, was foreseeable at the time of the amendment in 2012 in light of the cited references. Without evidence of foreseeability, the PHE Order's findings are premature and that inquiry needs to be re-opened. Edwards Decl., ¶¶ 67-68.

Fourth, the trier of fact needs to weigh the evidence and resolve the factual dispute as to whether the amendment bears merely a tangential relationship to the alleged equivalent of Dropbox's visual file icons. There is no support in the existing record to support a contrary finding. A POSITA would understand that the rationale for the "indistinguishable" amendment (distinguishing centralized from distributed architecture) bears no more than a tangential relation to the accused equivalents of visual file icons. These equivalents exist on a different technical axis than the distinction drawn during prosecution. Edwards Decl., ¶¶ 61-66. Whether that is true here is a fact question.

The Court should note that the factual issues raised here are not mere legal abstractions, nor are they repackaged versions of arguments the Court already considered. Each is a concrete, evidence-based dispute, that can be resolved through expert testimony, all of which is not in the record.

The standard to rebut the *Festo* presumption is a preponderance of the evidence. *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1359 (Fed. Cir. 2013). Entangled has more than met this preponderance of the evidence standard.

The Court should therefore vacate the PHE Order so that these disputes can be resolved on a full record. Pending that, the Court should stay the Order's effect.

## II. THE COURT SHOULD RECONSIDER BECAUSE THE COMPRESSED BRIEFING SCHEDULE DENIED ENTANGLED A FAIR OPPORTUNITY TO DEVELOP THE FACTUAL RECORD

The instant request is not made lightly. The Court's PHE Order is case-dispositive and forecloses trial. "This court has broad discretion to reconsider and revise its prior orders." *Trazo*, 113 F.Supp.3d at 1048 (granting motion for reconsideration); s*ee also, e.g., Gamevice, Inc. v. Nintendo Co., Ltd.,* 677 F.Supp.3d 1069 (N.D. Cal. 2023) (granting motion for reconsideration); In *re Apple Inc. Device Performance Litigation*, 386 F.Supp.3d 1155 (N.D. Cal. May 3, 2019) (granting motion for reconsideration); *Cyntec Co. Ltd. V. Chilsin Elecs.*, Case No. 18-cv-00939-TLT, Dkt. No. 609 (N.D. Cal. July 6, 2026) (granting motion for reconsideration).

Entangled will not repeat the legal standards of prosecution history estoppel and incorporates the legal standard from its prior response and from the Court Order. Dkt. Nos. 408 and 422. Entangled agrees that prosecution history estoppel generally presents a question of law. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* (*Festo IX*), 344 F.3d 1359, 1367–68 (Fed. Cir. 2003) (en banc). That general rule, however, does not mean that the trier of fact should not seek a complete record or refuse to consider factual inquiries that inform the *Festo* rebuttal to estoppel. *Id.* at 1369 (resolution of prosecution history estoppel partially depends on "underlying factual issues relating to, for example, the state of the art and the understanding of a hypothetical person of ordinary skill in the art at the time of the amendment"). To resolve a prosecution history estoppel issue as a legal question, a Court does so only when "the evidence is clear" in the absence of genuine factual disputes. *Id.* at 1367-68. Here, the evidence is not clear. It is disputed. Drs. Edwards and Bang testimony establishes that a POSITA would understand the prosecution history differently from the interpretation the Court adopted, and that understanding is grounded in the technical meaning of the prior art references and the applicants' remarks. *See generally* accompanying expert reports of Drs. Edwards and Bang (Dr. Edwards' declaration addresses all factual disputes while Dr. Bang's declaration focuses just on the technical disclosures of the examiner cited references).

Expert testimony is especially important where the technology is not "easily understandable." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010). The asserted patent concerns distributed file systems, metadata indexing, virtual files, and the interaction between software clients and local file systems—technical subjects on which expert testimony bears directly on how a POSITA would understand the prior art and prosecution history.

The undeveloped state of the record on these factual questions from the initial briefings was not the product of Entangled's waiver or neglect. As Entangled argued in its motion for leave (incorporated herein), prosecution history estoppel "is to be determined" by summary judgment or a motion for judgment as a matter of law. *Warner-Jenkinson Co.,* 520 U.S. 17, 42 n.8 ("the various legal limitations on the application of the doctrine of equivalents" such as prosecution history estoppel "*are to be determined* by the court*, either on a pretrial motion for partial summary judgment* or on a motion for judgment as a matter of law *at the close of the evidence* and after the jury verdict") (emphasis added). Here, Entangled was deprived both of these procedures under the federal rules, and denied the built-in response period of at least fourteen days to marshal its evidence to properly respond to the motion.

Instead, the Court provided Entangled only four business days to oppose Dropbox's "limited pre-trial" motion, that it acknowledged was case-dispositive. Dkt. No. 399 ("PHE Motion"). Entangled was denied due process because it had no fair opportunity to marshal its evidence to respond to Dropbox's case dispositive motion. Through the reconsideration motion, Entangled can now present expert reports that raise factual disputes and address the estoppel issues it could not address previously.

The opportunity to file a responsive brief is not the same as the opportunity to develop a factual record, especially considering Dropbox had raised a new argument that had not been developed by either side, and one that this Court found that Dropbox had "ambiguously" disclosed in its discovery responses. PHE Order at 7. That compressed timeframe was wholly insufficient to develop, finalize, and submit expert declarations addressing the technical factual questions on which the Court ultimately ruled, while also addressing the procedural defects with the PHE Motion, all in the midst of other pretrial disclosures for a trial that was only a few weeks away.

Thus, Entangled satisfies Local Rule 7-9(b)(1) because there is "a material difference in fact … [that] exists from that which was presented to the Court" before the PHE Order. The PHE Order allowed

Dropbox to "bypass[] the process established" by Fed. R. Civ. P. 56 to provide adequate "notice in order that the nonmovant may marshal his or her evidence to show that there is a genuine issue of material fact." *Bradley v. Pittsburgh Bd. of Educ*., 913 F.2d 1064, 1069 (3d Cir. 1990); *see also Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) ("the requirement [is that] sufficient time be afforded for discovery necessary to develop 'facts essential to justify (a party's) opposition') to the motion"); *cf. In re Blixseth*, 2012 WL 3234205, at *14 (B.A.P. 9th Cir. Aug. 9, 2012) ("[S]ince there was no 'formal' motion for summary judgment, [nonmovant] was under 'no formal compulsion to marshal all the evidence in support of [its] claims'").

Entangled Media is not aware of any case where the defense of prosecution history estoppel was decided on a pre-trial motion in the manner here, without invoking Rule 56, and even then on a compressed schedule. Notably, in the *Colibri* case cited by the court, the *Colibri* district court addressed the issue based on both a summary judgment record and trial record. *Colibri Heart Valve LLC v. Medtronic CoreValue LLC,* 143 F.4th 1367, 1375-76 (Fed. Cir. July 18, 2025) (citing "Report and Recommendation on Summary Judgment" where "[t]he special master recommended that the court reject Medtronic's prosecution-history estoppel argument" and further providing that the parties went through a jury trial, and briefing on a motion for judgment as a matter of law at issue on appeal).

## III. <u>THE FACTUAL DISPUTES</u>

### A. <u>Factual Dispute One: What Ben-Shaul's "Images" and "Identifiers" Mean</u>

The parties dispute what Ben-Shaul's disclosure of "a set of images that collectively represents data stored at a particular computing device" would have communicated to a person of ordinary skill in the art—specifically, whether it refers to user-facing visual representations or to disk images (binary storage snapshots) used for backend data-center management. This factual question requires expert testimony because the term "image" has a specialized meaning in the field of distributed computing that differs from its colloquial usage.

The Court found that Ben-Shaul "necessarily required visually distinguishing each virtual disk so that it could be paired with its associated computing device." PHE Order at 12.

The record also supports a competing technical interpretation. That competing interpretation is supported by the record and established by expert testimony. Dr. George Edwards, a computer scientist

specializing in distributed systems, opines that "a POSITA reading Ben-Shaul would understand 'a set of images' to refer to disk images—binary copies of a storage device's contents—not visual representations displayed to a user," explaining that "image" is a well-established term of art for a byte-for-byte snapshot of a storage volume. Edwards Decl., ¶¶ 41-50. Dr. Edwards identifies pinpoint support from Ben-Shaul's own specification: Paragraph 28 defines "image" as "a set of data and executables that is at least a portion of the disk content," which may be "binary data, raw disk blocks, raw data partitions," or structured files, and Paragraph 46 confirms these images include "OS files," "configuration files," and "user area elements"—operating system files, configuration data, and user documents with no visual component. *Id.,* ¶ 48.

Similarly, Dr. Edwards explains that Ben-Shaul's identifiers are non-visual. Paragraph 47 states the metadata is used by data center logic to determine which virtual disk needs to be updated when disk content changes are received from a particular computing device, and to determine to which computing device to send images from a particular virtual disk. *Id.,* ¶ 49. These identifiers serve an automated routing function—they are never presented to or perceptible by an end user. The only "indicator" Ben-Shaul discloses is an "offline readiness indicator" described as "a flag in an associated data structure"—a binary value stored in memory, not a visual marker. *Id.*

Another expert and person of skill in the art, Dr. Bang, agrees. He opines that Ben-Shaul does not disclose how virtual and local files appear visually indistinguishable or disclose the visual distinguishability in any way (e.g., via a file visual icon). Bang Decl., ¶¶ 24-27.

Both Drs. Edwards and Bang agree that a POSITA would not understand Ben-Shaul as addressing the visual distinguishability of files. *Id.,* Edwards Decl., ¶ 50. Ben-Shaul's system distinguishes its virtual disks through backend metadata at the data-center level. No user interface, graphical display, or visual marker is involved in or required for this process. *Id.*

At the hearing, Mr. Lord also explained this: "They [Dropbox in discussing Ben-Shaul] mentioned disk images, that's not visual icons. Disk images is really very different than the visual appearance to the user." Dkt. No. 411 at 28.

If Ben-Shaul's identifiers are backend metadata rather than visual markers—as Drs. Edwards and Bang's testimony establish—then the prosecution history did not address visual distinguishability

as found by the Court, and the amendment bears no more than a tangential relation to the status-icon equivalent. Whether "images" and "identifiers" carry that technical meaning to a POSITA is a disputed factual question. *Festo IX*, 344 F.3d at 1370.

**B. Factual Dispute Two: The Rationale for the July 2012 Amendment**

The parties dispute the objectively apparent reason for the July 2012 amendment—specifically, whether a person of ordinary skill would understand the addition of "indistinguishable from the local files by the local file system" as addressing visual presentation to users or as describing the depth of architectural integration into each device's local file system. This factual question requires expert interpretation of the prosecution remarks in their technical context.

The Court found that the "indistinguishable" amendment addressed "both visual distinguishability and file system distinguishability." PHE Order at 11. The record supports a competing interpretation: the amendment's objectively apparent purpose was to distinguish Ben-Shaul's centralized data-center architecture from the claimed distributed-metadata system. Dr. Edwards opines that "a POSITA reading the prosecution history would understand the objectively apparent reason for the amendment as architectural: to distinguish the claimed distributed-metadata system (in which each device integrates metadata into its own file system to generate local virtual files) from Ben-Shaul's centralized architecture." Edwards Decl. ¶¶ 51-60.

The phrase "indistinguishable from the local files by the local file system" describes the functional result of this distributed architecture: virtual files integrated into each device's local file system such that that the file system's own operations (list, open, read, write, metadata queries) have no need to differentiate them from files that originated locally. This is an architectural statement about file-system-level equivalence. *Id.*

The Court stated there was no objective explanation for the applicant to have added the indistinguishability requirement. PHE Order at 12. Dr. Edwards provides this objective explanation, from a POSITA perspective after careful review of the entire amendment and intrinsic evidence. Dr. Edwards opines that the amendment operates as a whole to address the objection. Edwards Decl., ¶¶ 56-60. A POSITA would understand the entire phrase to mean a single step of the process: "integrating metadata … to generate virtual files stored in the same locations as local files of the local file system

*which results in* the virtual files being indistinguishable from the local files by a local file system ….” Therefore, the last part of the amendment regarding indistinguishability was not related to a different objection or aspect of the prior art than the first part of the amendment. The last part was a functional result of the first part and was added by the applicant to overcome the examiner's architectural objection. *Id.*

As Dr. Edwards explains, within a software program, "distinguishing" between data objects refers to programmatic identification through unique keys or identifiers. For example, in Ben-Shaul a data center "distinguishes" a virtual disk 112a from virtual disk 112b by reading a metadata field, not by displaying a visual marker. *Id.* at ¶ 57.

Further, the concept of "indistinguishability" in the context of file systems relates to foundational computer science principles of information hiding, encapsulation, and abstraction—mechanisms by which one software or system component interacts with another through a common interface without knowledge of the underlying implementation. A POSITA would understand in the context of the amendment addressing the Ben-Shaul reference, the applicant added "indistinguishability" to describe this type of architectural transparency, not as a statement about visual presentation to human users. *Id.* at ¶ 58.

The applicants' prosecution remarks contain no discussion of visual icons, graphics, pictures, user-facing displays, visual status indicators, or any other mechanism by which files in Vesper, Wills, or Ben-Shaul would have different visual appearances or be rendered in a user interface in a way that would make them visually distinguishable. A POSITA reading those remarks would not understand the amendment as addressing or surrendering systems where virtual files bear cosmetic visual markers such as sync-status icon overlays. *Id.* at ¶ 59.

The applicants' remarks focused exclusively on architecture. In distinguishing Ben-Shaul, the applicants stated that Ben-Shaul "stores all virtual personal disks at a data center" and "does not disclose or suggest distributing the virtual personal disks to other computing devices." The applicants then contrasted this with the claimed invention, in which "metadata from the meta-indices of each of the other multiple devices" is integrated "into the local file system of each of the multiple devices to generate virtual files stored in the same locations as local files of the local file system." The entirety of

this distinction is architectural: centralized data-storage versus distributed local-device integration. There is no mention of icons, visual indicators, status markers, or any user-friendly display mechanism. *Id.* at ¶ 60.

Importantly, even if Ben-Shaul did disclose visual indistinguishability, for example under the examiner's statements regarding claim 6, that would then create an argument that would make "little sense" for the basis of the applicant's amendment. The Federal Circuit's *Eli Lilly* decision establishes that an amendment cannot plausibly have been directed at a feature the cited reference was found to already teach. *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1332 (Fed. Cir. 2019). In *Eli Lilly*, the accused infringer argued that a narrowing amendment from "an antifolate" to "pemetrexed disodium" was made to overcome an obviousness rejection. The court held that this argument "makes little sense" because the cited reference itself "discloses the results of a clinical trial of pemetrexed disodium," so "narrowing 'antifolate' to 'pemetrexed disodium' could not possibly distinguish the art cited in the obviousness ground of rejection." *Id.* The court looked for "a less sweeping and more sensible reason" and found one in the rest of the prosecution record. *Id.* at 1334.

The Court's PHE Order rests on the same reasoning that the Federal Circuit found made "little sense" in *Eli Lilly*. The applicant could not have amended claim 1 to overcome Ben-Shaul on visual indistinguishability grounds if Ben-Shaul taught that same visual element in claim 6. In other words, the amendment could not have been related to visual indistinguishability, because such an amendment would not have overcome the examiner's objection. This argument does not depend on the Examiner having been mistaken. Entangled agrees that the Examiner's stated reasoning is part of the objective context in which the applicant's response must be read. The objectively apparent reason for amending claim 1 was to overcome Ben-Shaul's centralized architecture, and could not possibly have been to add a requirement the Examiner had already located in the reference.

The hearing exposed the factual nature of the dispute, and the need for expert guidance. Dkt. No. 411 at 32. Mr. Lord identified the specific factual evidence needed: expert testimony to 'interpret the file history, interpret the prior art,' and determine whether a POSITA would understand that Entangled surrendered the specific equivalence of visual icons. *Id*. at 24. Mr. Lord explained that 'the *Festo* rebuttal requires expert testimony' and that the question of what 'one of skill in the art would

have understood in terms of the scope of the surrender, absolutely it requires that to be done according to one of skill in the art and would require expert testimony.' *Id*. at 30.

The question remains whether the amendment's objectively apparent rationale reached the particular equivalent of Dropbox's visual file icons. That is a disputed factual issue.

**C. <u>Factual Dispute Three: Whether the Accused Equivalents Were Foreseeable</u>**

The Court did not substantively address foreseeability, treating Entangled's foreseeability position as raised only in a footnote. Expressly reserving an argument in a footnote is the opposite of intentional relinquishment — it is an affirmative signal of intent to preserve the right.

Foreseeability is an independent basis to overcome the presumption of surrender. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740–41 (2002). It is not a redundant version of tangentiality; it asks whether the specific accused equivalent was foreseeable in the relevant art at the time of the amendment.

The parties dispute whether the cited references by the Examiner of Vesper, Wills and Ben-Shaul disclosed visual distinguishability. The Court made this factual finding. PHE Order at 9. Entangled Media presents factual evidence to the contrary. *See* Bang Decl. ¶ 28;.Edwards Decl., ¶ ¶ 34, 40, 45, 50. There is no contrary evidence that the specific accused equivalents of visual file icons as used by Dropbox were foreseeable to a person of ordinary skill in the art at the time of the July 2012 amendment. Dr. Edwards opines that given his factual findings and opinions throughout his report, the art that was cited by the Examiner did not relate to visual file icons, nor was the rationale for the amendment related to the visual file icons, and that it was not foreseeable. Edwards Decl., ¶¶ 67, 68.[1]

---

[1] This issue implicates the Court's claim construction of inserting visual indistinguishability of "to the user" into claim 1. Because original claim 6 (now claim 5) already covers visual distinguishability, there would be no reason for an applicant to foresee that visual distinguishability would also be covered by claim 1. The Court's construction counters at least the law of claim differentiation where different claims in the same patent are presumed to have different claim scope, where here claim 1 (as construed) and claim 5 cover the same scope of visual indistinguishability. Also, though Entangled requested construction of "indistinguishable" during *Markman*, the dispute about the scope of that term remains unresolved since the term "indistinguishable" still appears in the construction, which forced each side's experts to offer competing meanings for that term, as evident during summary judgment briefing, creating an *O2 Micro* problem. Construction of the term "indistinguishable" is needed to clarify the scope of the claim term. As it stands, there is a claim construction dispute that requires resolution under *O2 Micro*.

**D. <u>Factual Dispute Four: Whether the Amendment and Its Rationale Bears Merely a Tangential Relationship to the Alleged Dropbox Equivalent of Visual File Icons</u>**

The parties dispute whether the amendment's rationale—distinguishing centralized from distributed architecture—bears more than a tangential relation to the specific accused equivalents.

According to Dr. Edwards, a visual file icon does not have any relationship to the centralized-versus-distributed architecture that the amendment addressed. Visual file icons are orthogonal to the nature of the system architecture (centralized or distributed). Visual file icons are not related to whether the system uses centralized storage (like Ben-Shaul) or distributed local integration (like the '338 Patent). One could modify the visual file icons without altering the underlying system architecture. Edwards Decl., ¶ 63.

Dropbox's system achieves the same local-file-system integration that the amendment was directed to: each device's file system contains virtual file objects representing cloud-backed content, placed in the same directory locations as local files, and processed by the file system through the same operations. The visual file icons are additions to that architecture, not alternatives to it. *Id.* at ¶ 64.

Accordingly, a POSITA would understand that the rationale for the "indistinguishable" amendment (distinguishing centralized from distributed architecture) bears no more than a tangential relation to the accused equivalents of visual file icons. These equivalents exist on a different technical axis than the distinction drawn during prosecution. *Id.* at ¶ 65.

The prior art itself confirms that distributed file sharing can be achieved without visual status markers. Vesper, which was cited in the same rejection that prompted the amendment, describes a cloud-based system for distributing medical imaging records through a peer-to-peer network with centrally managed routing, caching, event-driven transfers, and authenticated web services. Vesper's system distributes contents across nodes without employing placeholders, hydration mechanisms, reparse points, or status icons to distinguish local from remote files. Instead, Vesper relies on application-layer viewers, dynamically generated schemas, and web-compatible transcoding to present distributed content to users. This further confirms that the architectural distinction the applicants drew was not related to whether a system uses visual markers to indicate file status. *Id.* at ¶ 66.

Taken together, these four factual disputes demonstrate that the Court's PHE Order resolved contested technical questions where factual disputes exist. Even if the Court were to disagree as to any single dispute standing alone, the cumulative weight of four independent grounds for rebutting the presumption of surrender—each supported by expert testimony—counsels against resolving estoppel as a matter of law on a record that lacks any expert opinion supporting the Court's adopted interpretation.

## IV. ALTERNATIVELY, RECONSIDERATION IS WARRANTED UNDER LOCAL RULE 7-9(b)(3)

Under Local Rule 7-9(b)(3), reconsideration is proper where the court failed to consider material facts or dispositive legal arguments presented before the order. This provision applies where omitted matters bear directly on the ruling and could affect the result.

In its opposition to Dropbox's PHE Motion, Entangled argued that the prosecution history did not clearly and unmistakably surrender the accused Dropbox functionality and that genuine factual disputes precluded summary resolution. *See generally* Dkt. No. 408. Entangled specifically identified the need to assess how a person of ordinary skill in the art would understand the relevant claim amendments and prosecution history. *Id.; see also* Dkt. No. 411 [hearing transcript], pp. 29:15-31:7.

The PHE Order did not address these arguments or explain why the factual disputes Entangled identified were not genuine. Nor did it explain why the disputed technical meaning of the claim amendments could be resolved without expert testimony. This omission constitutes a manifest failure to consider material facts and dispositive legal arguments presented before entry of the PHE Order. It independently warrants leave to seek reconsideration under Local Rule 7-9(b)(3), especially because the omitted matters bear directly on a case-dispositive ruling.

Similarly, the Court failed to consider Entangled's legal argument that Dropbox waived the defense of prosecution history estoppel because it already sought summary judgment on Entangled's doctrine of equivalents claim regarding the "indistinguishable" term, and raised one equivalent defense (claim vitiation) but did not raise the other equivalent defense (prosecution history estoppel) regarding the same indistinguishable limitation. Dkt. No. 411 [hearing transcript] at 22; Dkt. No. 241. *See Netlist v. Samsung Elecs.*, 2023 WL 6820683 at *3 (9th Cir. Oct 17, 2023) ("The district court correctly

precluded Samsung from asserting at trial affirmative defenses of waiver, estoppel, and acquiescence. Samsung pleaded all three defenses in its answer, but did not raise them in response to Netlist's motion for partial summary judgment *or in its own motion for summary judgment*. Samsung therefore abandoned the defenses.") (emphasis added); *Marentes v. State Farm Mut. Auto. Ins. Co*.., 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) ("Generally ... a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others."); *HDMI Licensing Admin. v. Avalink,* 816 F.Supp.3d 1047, 1057 (N.D. Cal. Jan. 20, 2026) ("Availink abandoned the affirmative defenses to liability that it did not raise at summary judgment.").

Lastly, the PHE Order stated that the Court was "aware of no authority suggesting that prosecution history estoppel can be applied to a particular limitation only in part," and that "the Federal Circuit's cases generally apply such estoppel to the amended patent's limitations as a whole." PHE Order at 11. That statement conflicts with how the Federal Circuit applies the tangential exception. The inquiry is equivalent-specific: it compares the reason for the amendment with the particular equivalent accused of infringement, and it can leave estoppel in place for some equivalents of an amended limitation while leaving others available. Indeed, in *Eli Lilly*, the court explicitly rejected a bright-line rule that would have barred tangentiality whenever the amendment and equivalent concerned the same claim element. 933 F.3d at 1332-33. For example, in *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1365-66 (Fed. Cir. 2020), the amendment added "non-fluorinated microchannels" to distinguish prior art fluorinated microchannels that reacted with the carrier fluid, and the accused product contained negligible, non-reacting fluorine. The Federal Circuit held that the applicants "surrendered microchannels coated with fluorine for a purpose—not those containing de minimis amounts of fluorine that have no effect on how the microchannel functions in the system." *Id.* Some fluorinated microchannels were surrendered and some were not, within one limitation. *Id.*; *see also Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1370 (Fed. Cir. 2004); *Regents of the University of California v. DakoCytomation California, Inc.*, 517 F.3d 1364, 1376-78 (Fed. Cir. 2008).

## V. THE COURT SHOULD STAY THE PHE ORDER PENDING RECONSIDERATION

The Court has inherent authority to stay its own orders pending reconsideration. *See Mir v. Little Company of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988) ("A trial court has the inherent power to modify interlocutory orders before entering a final judgment.") A stay is appropriate where, as here, the requesting party raises substantial issues warranting reconsideration and no prejudice results from maintaining the status quo.

No party is prejudiced by a stay. The PHE Order itself vacated the September 8, 2026 trial date. There is no pending deadline that a stay would disrupt. Dropbox's position is fully preserved regardless of whether the PHE Order remains in effect during the pendency of this motion. By contrast, if the PHE Order is not stayed and reconsideration is ultimately granted, the parties and the Court will have lost time that could have been spent preparing for trial on a complete record.

## VI. CONCLUSION

For the foregoing reasons, Entangled Media requests that this Court: (1) grant its Motion for Reconsideration to vacate its PHE Order so that the factual disputes identified herein may be resolved on a full evidentiary record; and (2) stay the effect of the PHE Order pending resolution of this motion.

Dated: August 31, 2026

Respectfully submitted,

/s/ *John E. Lord*

Anton "Tony" N. Handal (SBN 113812)
thandal@munckwilson.com
John E. Lord (SBN 216111)
jlord@munckwilson.com
Brent J. Lehman (SBN 282149)
blehman@munckwilson.com
Georgiana A. Nikias (SBN 283718)
gnikias@munckwilson.com
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 855-3311
Facsimile: (972) 628-3616

Alexander D. Jablonski (*Pro Hac Vice*)
ajablonski@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201
Telephone: (972) 628-3600

*Attorneys for Plaintiff* Entangled Media, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 31, 2026 to all counsel of record via the Court's CM/ECF system.

By: /s/ *John E. Lord*
John Lord