Anton "Tony" Handal (SBN 113812)
thandal@munckwilson.com
John E. Lord (SBN 216111)
jlord@munckwilson.com
Brent J. Lehman (SBN 282149)
blehman@munckwilson.com
Georgiana A. Nikias (SBN 283718)
gnikias@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 855-3311
Facsimile: (972) 628-3616

Alex Jablonski (admitted *PHV*)
ajablonski@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201

*Attorneys for Plaintiff*, Entangled Media, LLC

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ENTANGLED MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DROPBOX, INC.,<br><br>Defendant. | Case No. 5:23-cv-03264-PCP<br><br>**EXPERT DECLARATION OF DR. JAE YOUNG BANG IN SUPPORT OF PLAINTIFF ENTANGLED MEDIA'S MOTION FOR RECONSIDERATION AND STAY** |

I, Jae Young Bang, declare as follows:

1. I have been retained as a technical expert by Entangled Media, LLC ("Entangled Media") for its litigation against Dropbox, Inc. ("Dropbox") to provide analysis and opinions related to U.S. Patent No. 8,296,338 ("the '338 Patent").

2. I signed the Protective Order in this case on January 17, 2024.

**QUALIFICATIONS**

3. A detailed list of my qualifications is set forth in my curriculum vitae, attached hereto as Exhibit 1, which includes, among other things, information about my prior publications, prior litigation, and deposition testimony. Some highlighted information regarding my education, technical experience, and publications is provided below.

4. I received a PhD degree in Computer Science in 2015 from the University of Southern California ("USC"), where I was an Annenberg Graduate Fellow. My research during the time I was at USC focused on the architectural design of software systems, with an emphasis on distributed software systems and mobile operating systems. My research was funded by government agencies and large companies such as the National Science Foundation, Google, and Infosys. I presented my work at numerous conferences and in academic journals, industry magazines, and other publications.

5. I have delivered numerous invited lectures, seminars, and technology demonstrations related to software design and analysis for university courses, research symposia, conferences, workshops, and industry events in the field of computer science. I have also served as a reviewer or panelist for over a dozen computer science journals, magazines, and conferences.

6. I have several years of experience as a software engineer in the software industry at Kakao Corp., a leading social networking services company in South Korea. In that capacity, I designed and implemented the user identity and authentication platform for over 100 million users of Kakao's web and mobile services such as KakaoTalk the messaging app.

7. As Adjunct Faculty at the Viterbi School of Engineering, University of Southern California, I teach graduate-level software engineering classes. I regularly teach the Software Engineering course (CSCI-577a) and the Software Architectures course (CSCI-578). I also formerly taught the Software Design: Structure and Implementation course at the Donald Bren School of

Information and Computer Sciences, University of California, Irvine.

8. I have several years of experience working as a software technology consultant, performing software analysis on behalf of clients. I have reverse-engineered and analyzed the hardware and software designs of a broad variety of complex, real-world systems. I have conducted many investigations for various companies of the design and implementation of these systems with respect to copyright infringement claims and other intellectual property considerations, such as patent infringement and trade secret theft.

9. I currently hold the title Chief Executive Officer (CEO) at Cyberonix Experts, LLC ("Cyberonix"). Cyberonix is a software technology consulting company located in El Segundo, CA, that provides expert consulting services for software intellectual property litigation and for businesses seeking software technology advice. In addition to providing software consulting services, as the CEO of the company, I make the day-to-day decisions of managing the consultancy business.

10. Within the broad field of computer science, my specific areas of expertise encompass software engineering, distributed systems, software architecture, software analysis, computer programming, web and mobile application software, and Internet software. I have direct experience building and analyzing software applications and Internet services.

11. Based on my background listed above, as well as detailed in my CV, I am qualified to express expert opinions on the topic requested by counsel for Entangled Media.

12. For purposes of this declaration, I have been asked to provide my opinions and the technical facts the Court needs to apply relating to prosecution history estoppel with regard to whether certain patent applications disclose *how virtual and local files appear visually indistinguishable to the user or whether they disclose a file visual icon that distinguishes virtual and local files*.

## PERSON OF ORDINARY SKILL IN THE ART

13. I understand that a person of ordinary skill in the art ("POSITA") at the time of the '338 Patent would have had a bachelor's degree in computer science, electrical engineering, or a similar discipline, along with at least two years of relevant professional experience in software engineering or a similar field. Alternatively, a POSITA could have an advanced degree (such as a master's degree) in a relevant field with less professional experience. My analysis herein would not change if a slightly

revised definition of a POSITA were adopted, as advocated by Entangled Media's expert Dr. Edwards or Dropbox's expert Dr. McDaniel. My opinions below are given from the perspective of such a person.

## MATERIALS CONSIDERED

14. For the purposes of this declaration, I have analyzed the '338 Patent, portions of the file history for the '338 Patent, US patent application 2011/0110568 A1 ("Vesper"), US patent application US 2011/0231844 A1 ("Ben-Shaul"), and US patent application US 2012/00791 17 A1 ("Wills").[1] I also have relied on my academic and professional experience in reaching the opinions expressed in this Declaration.

## LEGAL PRINCIPLES

15. I am not a legal expert and offer no opinions on the law. I have, however, been informed by counsel of the various legal standards that apply with respect to the doctrine of equivalents and prosecution history estoppel.

16. My opinions herein, however, do not implicate specific application of legal principles; I only summarize the three references and express expert opinions on the topic requested by counsel for Entangled Media

## FACTS AND OPINIONS

### The Vesper Reference

17. Vesper is a lengthy patent application dated May 12, 2011, and it discloses a system and method for acquiring, hosting, and distributing medical images for healthcare professionals via web-enabled technologies. The system and method can split personal and non-personal information, may provide the non-personal information for study, and join the personal and non-personal information to form the medical imaging records.

18. The disclosed system and method store and distribute medical records including the DICOM format medical images (i.e., "DICOM files"), that have (1) actual body of the record, e.g., the image data and (2) the image header.[2] The header contains Protected Health Information ("PHI"). The

---

[1] I understand that the Vesper, Ben-Shaul and Wills references are attached to the accompanying Edwards declaration.

[2] Vesper, ¶¶ 69-71.

DICOM files are generally stored at the original site where they are created.[3] A component called Central Index maintains a PHI directory that tracks all copies of DICOM files.[4] There are record producers that store records in their local storage, record harvesters that collect records into the Central Index, and record consumers that receive record bodies.[5] For example, doctors, their proxies, hospital staff, patients, insurance companies, and administrators could be record consumers.[6] Record consumers may search for patient records and request a transfer.[7] Access to records can be controlled via "chain of trust."[8] Vesper also provides the system architecture and implementation details.

19. The disclosed system and method also include a peer-to-peer network in which DICOM files are transferred between nodes without storing them at a central location.[9] However, not all records may be shown to the record consumers: "Only records trusted to the record consumer *that are found on the target node* will be displayed in the application. Record consumers can request records that do not exist on the target, …"[10] (emphasis added).

20. It is my opinion that Vesper does not disclose how virtual and local files (i.e., in the context of Vesper, how records that are not locally stored and those that are) appear visually indistinguishable, and does not disclose visual distinguishability in any way (e.g., via a file visual icon).

**<u>The Wills Reference</u>**

21. Wills is a patent application dated March 29, 2012, and it discloses a method and computer program product for scanning and indexing data for various purposes. In the disclosed method and computer program product, there is a centralized "hub" with control logic that communicates with software agents on each device,[11] wherein a software agent controls a universal engine that scans and indexes data stored on the device.[12] Each agent may be configured with a different policy for scanning and indexing of the data stored on the device for specific purposes.[13] The hub may

[3] Vesper, ¶ 72.
[4] Vesper, ¶ 76.
[5] Vesper, ¶¶ 85-89.
[6] Vesper, ¶ 88.
[7] Vesper, ¶¶ 162-169 and 184-189.
[8] Vesper, ¶¶ 209-212.
[9] Vesper, ¶ 97.
[10] Vesper, ¶ 161.
[11] Wills, ¶ 24.
[12] Wills, ¶ 21.
[13] Wills, ¶¶ 26-27.

store the aggregate of the collected data from the agents in a database.[14] Wills also discloses an embodiment in which a unified index connects to all data sources, each of which is a device with a software agent that enforces such policies.[15] The unified index may provide data that serves different purposes, such as supporting security, compliance, and/or search functionalities.[16]

22. In any case, the Wills disclosure addresses data scanning, indexing, and subsequent use of aggregated/unified data derived from the contents of scanned data files, rather than the files themselves. For example, the universal engine in each device "may include any combination of hardware and/or software for providing a 'natural language processor' that is capable of sorting through a plethora of business formatted information files, regardless of the data type, file type, file location, etc."[17] This means that the data flow between a device and the hub is not by files but the scanned and indexed content from the files stored on the device, after, for example, natural language processing.

23. It is my opinion that Wills does not disclose how virtual and local files appear visually indistinguishable, and does not disclose visual distinguishability in any way (e.g., via a file visual icon).

**<u>The Ben-Shaul Reference</u>**

24. Ben-Shaul is a patent application dated September 22, 2011, and it discloses techniques for desktop delivery in a distributed enterprise. A centralized data center hosts virtual disks of computing devices, called "Personal Virtual Disks" (PVDs). Each of the virtual disks is an image that "represents the data … that is stored at a computing device associated with the virtual disk."[18] The data center in Ben-Shaul "stores a separate virtual disk for each separate computing device,"[19] and each image includes an OS (including device drivers), applications for a user of the computing device, machine state and hardware-specific driver configuration, user data, and settings that are specific for the user of the computing device. An image in Ben-Shaul does not describe any visual appearance.

25. It is important to note that an "image" in Ben-Shaul is "data and executables," and the term does not represent the visual appearance of a file, data, or an executable. Ben-Shaul defines an

[14] Wills, ¶ 29.
[15] Wills, ¶¶ 42-44.
[16] Wills, ¶¶ 42-44.
[17] Wills, ¶ 20.
[18] Ben-Shaul, ¶ 28.
[19] Ben-Shaul, ¶ 30.

"image" as "a set of data and executables that is at least a portion of the disk content that is stored at a computing device."[20] An image in Ben-Shaul is essentially a data set, associated with a virtual disk.

26. In its disclosure, Ben-Shaul focuses on the system architecture and implementation, describing how the components such as the data center and computing devices interact with each other and the techniques such as Image Transfer and Synchronization Protocol (ITSP) used to synchronize a PVD and a computing device, data center logic about how it handles requests from computing devices, and the computing device component where an image is loaded via the ITSP into device cache and is integrated into the local file system via the File System Intercept Driver.[21]

27. It is my opinion that Ben-Shaul does not disclose how virtual and local files appear visually indistinguishable and does not disclose visual distinguishability in any way (e.g., via a file visual icon).

**CONCLUSION**

28. For the foregoing reasons, it is my opinion that none of the references Vesper, Wills, and Ben-Shaul disclose any visual indistinguishability between virtual and local files, and do not disclose visual distinguishability in any way (e.g., via a file visual icon).

---

[20] Ben-Shaul, ¶ 28.

[21] Ben-Shaul, the "3.0 Example System for Desktop management and Delivery" section, generally.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on August 31, 2026, in El Segundo, CA.

Jae Young Bang

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 31, 2026 to all counsel of record via the Court's CM/ECF system.

By: /s/ *John E. Lord*
John Lord